# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CAROL CHESEMORE, DANIEL DONKLE, THOMAS GIECK and MARTIN ROBBINS, on behalf of themselves, Individually, and on Behalf of All Others Similarly Situated, | **Civil Action No.**  09-CV-000413  **CLASS ACTION COMPLAINT** |

Plaintiffs,

v.

ALLIANCE HOLDINGS, INC., DAVID B. FENKELL, PAMELA KLUTE, ERIC M. LYNN, JAMES MASTRANGELO, STEPHEN W. PAGELOW, and JEFFREY A. SEEFELDT,

Defendants,

and

TRACHTE BUILDING SYSTEMS, INC. EMPLOYEE STOCK OWNERSHIP PLAN and ALLIANCE HOLDINGS, INC. EMPLOYEE STOCK OWNERSHIP PLAN,

Nominal Defendants.

Plaintiffs Carol Chesemore, Daniel Donkle, Thomas Gieck and Martin Robbins,

individually and on behalf of all those similarly situated, by and through their attorneys, hereby

allege as follows:

## NATURE OF THE ACTION

1.     This action arises under the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. § 1001, *et seq.*, and is brought on behalf of current and former employees

of Trachte Building Systems, Inc. ("Trachte" or the "Company") who are participants in the

Trachte Building Systems, Inc. Employee Stock Ownership Plan ("Trachte ESOP," or "the Plan") to restore losses to the Plan and obtain equitable relief to remedy violations of ERISA and/or breaches of fiduciary duty by Defendants.

2. This action arises out of a Transaction involving the Trachte ESOP that occurred on or about August 29, 2007 (the "2007 Transaction"). As the first part of the 2007 Transaction, the assets of the accounts of Trachte employees who were participants in the Alliance Holdings Employee Stock Ownership Plan ("Alliance ESOP"), consisting of Alliance Holdings, Inc. ("Alliance") stock and AH Transition, Inc. ("AH Transition") stock, were transferred into the Trachte ESOP (the "Spin-off"). Second, the Trachte ESOP exchanged the Alliance and AH Transition stock for Trachte stock and purchased additional shares of Trachte stock from Alliance, AH Transition, and Defendant Stephen W. Pagelow (the "Buyback").

3. Immediately after the 2007 Transaction, the value of Trachte ESOP participants' accounts was significantly less than the value was before the transaction, both because the Alliance and AH Transition stock had less value after the transfer than before the transfer, and also because the stock was exchanged for and conditioned on the purchase of overpriced Trachte stock. The value of the participants' accounts, consisting almost exclusively of Trachte stock, was further jeopardized because Trachte acquired more debt than it could reasonably service in order to finance the 2007 Transaction. Moreover, executive compensation of fiduciaries responsible for approving the transaction and valuing the Trachte stock for purposes of the 2007 Transaction was based on the price paid for the Trachte stock by the Trachte ESOP, putting those fiduciaries in such a position that their personal interests were in conflict with the interests of the Trachte ESOP participants and beneficiaries. As a result of the 2007 Transaction and the effect of the debt on Trachte, the accounts of the participants in the Trachte ESOP have significantly

declined in value and Trachte itself is burdened with excessive debt that is threatening the viability of the Company.

4.     This action seeks relief against Defendants for violations of ERISA's statutory and fiduciary provisions, including rescission of the Spin-off and restoration of the accounts of the Trachte ESOP participants and beneficiaries in the Alliance ESOP, recovery to the Trachte and Alliance ESOPs of any losses resulting from the breaches, disgorgement of any profits of any fiduciary which have been made through the use of assets of the Trachte ESOP, and other appropriate equitable  and remedial relief pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), ERISA § 409, 29 U.S.C. § 1109, and ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States and pursuant to 29 U.S.C. § 1132(e)(1), which provides for jurisdiction of actions brought under Title I of ERISA.

6.     This Court has personal jurisdiction over each of the Defendants because (a) upon information and belief, Defendants have, or during the times relevant to this Complaint, had extensive contacts with the State of Wisconsin as a result of their positions or affiliations with Trachte, (b) a number of Defendants, including Stephen W. Pagelow,  James Mastrangelo, Jeffrey A. Seefeldt and Pamela Klute, are or were at the time of the 2007 Transaction residents of the State of Wisconsin and (c) because ERISA provides for nationwide service of process.

7.     Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) because (a) the Trachte ESOP is administered in this District, (b) some or all of the breaches of fiduciary duty and violations of ERISA took place in this District and/or (c) at least one Defendant, and up to five Defendants, reside(s) or may be found in this District.

## PARTIES

**Plaintiffs**

8.      Plaintiff Carol Chesemore was an employee of Trachte from 1988 until May 2006.  She was a participant in an ESOP sponsored by Trachte prior to September 18, 2002 (the "Old Trachte ESOP") and a participant in the Alliance ESOP from September 18, 2002 until at least August 29, 2007[1] when her Alliance ESOP account was transferred to the new Trachte ESOP.  From August 29, 2007 until the present she has been a vested participant in the Trachte ESOP with Trachte stock shares allocated to her individual account.  She has been a resident of the State of Wisconsin from at least 1988 until the present and currently resides in Sun Prairie, Wisconsin, which is located in this District.

9.      Plaintiff Daniel Donkle was an employee of Trachte from 1988 until 1998.  He was a participant in the Old Trachte ESOP prior to September 18, 2002, and a participant in the Alliance ESOP from September 18, 2002 until at least August 29, 2007 when his Alliance ESOP account was transferred to the new Trachte ESOP.  From August 29, 2007 until the present he has been a vested participant in the Trachte ESOP with Trachte stock shares allocated to his individual account.  He has been a resident of the State of Wisconsin from at least 1988 until the present and currently resides in Cambridge, Wisconsin, which is located in this District.

10.     Plaintiff Thomas Gieck was an employee of Trachte from 1969 until he was laid off on April 30, 2009.  He was a participant in the Old Trachte ESOP prior to September 18,

---

[1]      The Plaintiffs continue to be participants in the Alliance ESOP under the terms of Section 16.5 of the Alliance ESOP plan document which states that "[f]or the  purposes hereof, former Participants and Beneficiaries shall be considered Participants."  The Plaintiffs have standing because they did not receive the full amount to which they were entitled from the Alliance ESOP after the 2007 Transaction.  *See Harzewski v. Guidant Corp.*, 489 F.3d 799, 804 (7th Cir. 2007) (the possible receipt of a money judgment is sufficient to confer standing); *Pilkington PLC v. Perelman*, 72 F.3d 1396, 1399-1400 (9th Cir. 1995) (fiduciaries of spun off plan have standing to sue fiduciaries of original plan from which the participants were transferred).

2002, and a participant in the Alliance ESOP from September 18, 2002 until at least August 29, 2007 when his Alliance ESOP account was transferred to the new Trachte ESOP.  From August 29, 2007 until the present he has been a vested participant in the Trachte ESOP with Trachte stock shares allocated to his individual account.  He has been a resident of the State of Wisconsin from at least 1969 until the present and currently resides in Sun Prairie, Wisconsin, which is located in this District.

11.     Plaintiff Martin Robbins was an employee of Trachte from 1972 until he was laid-off on April 30, 2009.  He was a participant in the Old Trachte ESOP prior to September 18, 2002, and a participant in the Alliance ESOP from April 18, 2002 until at least August 29, 2007 when his Alliance ESOP account was transferred to the new Trachte ESOP.  From August 29, 2007 until the present, he has been a vested participant in the Trachte ESOP with Trachte stock shares allocated to his individual account.  He has been a resident of the State of Wisconsin from at least 1972 until the present and currently resides in Madison, Wisconsin, which is located in this District.

**Trachte Defendants**

12.     Defendant Stephen W. Pagelow was the Chief Operating Officer of Trachte from 1984 until 2008.  From 1984 until August 29, 2007, Defendant Pagelow was a 10 percent or more shareholder of Trachte.  From 1984 until the present, Defendant Pagelow has also been a member of the Trachte Board of Directors.  From at least the spring of 2007 until August 29, 2007, Defendant Pagelow, as Trachte's Chief  Operating Officer and Board of Directors member, performed the duties and responsibilities assigned to Trachte in its role as the Trachte ESOP Administrator, including appointment of the Trachte ESOP trustees, and was a fiduciary with respect to the Trachte ESOP within the meaning of ERISA § 3 (21), 29 U.S.C. § 1002 (21),

because he exercised discretionary authority and control respecting management of the Trachte ESOP and exercised authority and control respecting management or disposition of its assets. Defendant Pagelow was at the time of the 2007 Transaction a party in interest with respect to the Trachte ESOP within the meaning of ERISA § 3(14)(A), (H) and/or (I), 29 U.S.C. § 1002(14)(A), (H) and/or (I) because he was a fiduciary of the Trachte ESOP, an officer and director of Trachte, and a 10 percent or more shareholder of Trachte.  On information and belief, Defendant Pagelow resides in Madison, Wisconsin, which is located in this District.

13.     Defendant James Mastrangelo, has been the Executive Vice President/Chief Operating Officer of Trachte since November 2007.  From the spring of 2007 to the present, Defendant Mastrangelo has been a Trustee of the Trachte ESOP.  As Trustee of the Trachte ESOP and as a result of his exercise of authority and control respecting management or disposition of the assets of the Trachte ESOP, Defendant Mastrangelo was at the time of the 2007 Transaction a fiduciary with respect to the Trachte ESOP within the meaning of ERISA § 3 (21), 29 U.S.C. § 1002 (21).  On information and belief, Defendant Mastrangelo resides in Sun Prairie, Wisconsin, which is located in this District.

14.     Defendant Jeffrey A. Seefeldt has been the Chief Executive Officer/President of Trachte since November 2007.  From the spring of 2007 to the present, Defendant Seefeldt has been a Trustee of the Trachte ESOP.  As Trustee of the Trachte ESOP and as a result of his exercise of authority and control respecting management or disposition of the assets of the Trachte ESOP, Defendant Seefeldt is and was at the time of the 2007 Transaction a fiduciary with respect to the Trachte ESOP within the meaning of ERISA § 3 (21), 29 U.S.C. § 1002 (21). On information and belief, Defendant Seefeldt resides in Middleton, Wisconsin, which is located in this District.

15.     Defendant Pamela J. Klute has been Vice-President of Human Resources for Trachte since 1995. From the spring of 2007 to the present, Defendant Klute has been a Trustee of the Trachte ESOP. At the time of the 2007 Transaction, Defendant Klute was President of the Wisconsin Chapter of the ESOP Association. As Trustee of the Trachte ESOP and as a result of her exercise of authority and control respecting management or disposition of the assets of the Trachte ESOP, Defendant Klute is and at the time of the 2007 Transaction was a fiduciary with respect to the Trachte ESOP within the meaning of ERISA § 3 (21), 29 U.S.C. § 1002 (21). On information and belief, Defendant Klute resides in Sun Prairie, Wisconsin, which is located in this District.

**Alliance Defendants**

16.     Defendant Alliance Holdings, Inc. ("Alliance") has been the sponsor and the Named Fiduciary of the Alliance ESOP since 1995. As the Alliance ESOP Named Fiduciary, it has the authority to appoint the Plan Administrator and Trustee and the responsibility to monitor their performance. Defendant Alliance is and was at the time of the 2007 Transaction a fiduciary with respect to the Alliance ESOP within the meaning of ERISA § 3 (21), 29 U.S.C. § 1002 (21), because of its position as the Named Fiduciary and because of its discretionary authority or discretionary responsibility in the administration of the Alliance ESOP. Alliance was also a party in interest to the Trachte ESOP from the formation of the Trachte ESOP in the spring of 2007 until August 29, 2007 within the meaning of ERISA § 3(14)(E), 29 U.S.C. § 1002(14)(E), because it owned 50 percent or more of the combined voting power of all classes of stock entitled to vote of Trachte, which is an an employer of employees covered by the Trachte ESOP.

17.     Defendant David B. Fenkell has been, from 1995 to the present, the Trustee of the Alliance ESOP and a member of the Alliance Board of Directors with responsibility for appointing the Plan Administrator and Trustee. Defendant Fenkell is and was at the time of the

2007 ESOP transaction a fiduciary of the Alliance ESOP within the meaning of ERISA § 3 (21),

29 U.S.C. § 1002 (21), because of his position as Trustee and because of his exercise of authority

and control respecting management or disposition of the Alliance ESOP's assets. As a member

of the Alliance Board of Directors, he is and was at the time of the 2007 ESOP transaction a

fiduciary with respect to the Alliance ESOP within the meaning of ERISA § 3 (21), 29 U.S.C.

§ 1002 (21), because of his discretionary authority or discretionary responsibility in the

administration of the Alliance ESOP. From at least the spring of 2007 until August 29, 2007,

Defendant Fenkell was also a member of the Trachte Board of Directors and performed the

duties and responsibilities assigned to Trachte in its role as the Trachte ESOP Administrator,

including appointment of the Trachte ESOP trustees, and was a fiduciary with respect to the

Trachte ESOP within the meaning of ERISA § 3 (21), 29 U.S.C. § 1002 (21), because he

exercised discretionary authority and control respecting management of the Trachte ESOP and

exercised authority and control respecting management or disposition of its assets. Upon

information and belief, Defendant Fenkell is a resident of Pennsylvania.

     18.    Defendant Eric M. Lynn, from 2001 until the present, has been the

Director/Portfolio Management of Alliance and a member of the Alliance Board of Directors

with responsibility for appointing the Alliance ESOP Plan Administrator and Trustee. As a

member of the Alliance Board of Directors, he is and was at the time of the 2007 Transaction a

fiduciary with respect to the Alliance ESOP within the meaning of ERISA § 3 (21), 29 U.S.C.

§ 1002 (21), because of his discretionary authority or discretionary responsibility in the

administration of the Alliance ESOP. From at least the spring of 2007 until August 29, 2007,

Defendant Lynn was also a member of the Trachte Board of Directors and performed the duties

and responsibilities assigned to Trachte in its role as Trachte ESOP Administrator, including

appointment of the Trachte ESOP trustees, and was a fiduciary with respect to the Trachte ESOP within the meaning of ERISA § 3 (21), 29 U.S.C. § 1002 (21), because he exercised discretionary authority and control respecting management of the Trachte ESOP and exercised authority and control respecting management or disposition of its assets. Upon information and belief, Defendant Lynn is a resident of Pennsylvania.

19.     Defendants Mastrangelo, Seefeldt and Klute are collectively referred to in this Complaint as "the Trachte Trustee Defendants."

20.     Defendants Pagelow, Fenkell and Lynn are collectively referred to as the "Trachte Director Defendants."

21.     Defendants Alliance and Pagelow are collectively referred to as the "Selling Defendants."

**Nominal Defendants**

### The Trachte ESOP

22.     Nominal Defendant Trachte Building Systems, Inc. Employee Stock Ownership Plan ("Trachte ESOP") is a defined contribution plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35) which is administered in Sun Prairie, Wisconsin. The Trachte ESOP is designed to be an employee stock ownership plan ("ESOP") that meets the requirements of Section 4975(e)(7) of the Internal Revenue Code and Section 54.4975-11 of the Regulations promulgated by the Secretary of the Treasury. The Trachte ESOP is named as a defendant in this action pursuant to Federal Rules of Civil Procedure Rule 19, solely to assure that complete relief can be granted.

### The Alliance ESOP

23.     Nominal Defendant Alliance Holdings, Inc. Employee Stock Ownership Plan ("Alliance ESOP") is an employee benefit plan within the meaning of ERISA § 3(3), 29 U.S.C. §

9

1002(3), a pension plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), and a defined contribution pension plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34). From April 18, 2002 until at least August 29, 2007, the participants of the Alliance ESOP included Trachte employees. The Alliance ESOP is designed to be an employee stock ownership plan ("ESOP") that meets the requirements of Section 4975(e)(7) of the Internal Revenue Code and Section 54.4975-11 of the Regulations promulgated by the Secretary of the Treasury. The Alliance ESOP is named as a defendant in this action pursuant to Federal Rules of Civil Procedure Rule 19, solely to assure that complete relief can be granted.

## RELEVANT NON-PARTY

24.     Trachte Building Systems, Inc. ("Trachte" or "TBS") is a Wisconsin corporation with its headquarters and principal place of business in Sun Prairie, Wisconsin. According to its website, www.trachte.com, Trachte is one of the largest manufacturers of steel storage systems in the industry. Trachte is currently 100% owned by the Trachte ESOP and shares of Trachte stock constitute almost all of the assets of the Trachte ESOP.

## CLASS ACTION ALLEGATIONS

25.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Classes:

> The Class:  All persons who were participants or beneficiaries of the
> Trachte ESOP at any time from August 29, 2007 to the present; and
>
> The Subclass:  All persons who were participants or beneficiaries of
> the Alliance ESOP at the time of the 2007 Transaction and whose
> accounts were transferred to the Trachte ESOP on or about
> August 29, 2007 as part of the 2007 Transaction.

26.    **Numerosity.**  The members of the Class and Subclass are so numerous that joinder of all members is impracticable.  According to the most recent Form 5500 filed with the Department of Labor, there were 288 participants of the Trachte ESOP as of December 31, 2007 all of whom are members of the Class.  Upon information and belief, most, if not all of the members of the Class was also participants in the Alliance ESOP at the time of the 2007 Transaction and are members of the Subclass.

27.    **Commonality.**  This case presents numerous common questions of law and fact. The following common questions of law and fact are among those applicable to members of the Subclass:

a.    Whether Alliance violated Section 208 of ERISA, 29 U.S.C. § 1108, by spinning off Trachte participants from the Alliance ESOP when the Trachte participants did not receive a benefit immediately after the transfer which was equal to or greater than the benefit they would have been entitled to receive immediately before the transfer (if the plan had then been terminated).

b.    Whether Defendant Fenkell breached his fiduciary duties of prudence and loyalty to the Trachte participants by failing to insure that, after the Spin-off of Trachte participants from the Alliance ESOP, the Trachte participants received benefits immediately after the transfer which were equal to or greater than the benefits they would have been entitled to receive immediately before the transfer (if the plan had then been terminated).

    c.        Whether the Trachte Trustee Defendants breached their fiduciary duties by failing to bring suit against Alliance and the Alliance ESOP fiduciaries for spinning off assets from the Alliance ESOP to the Trachte ESOP when the value of Trachte participant accounts in the Trachte ESOP was not equal to or greater than the value of Trachte participant accounts in the Alliance ESOP.

The following common questions of law and fact are among those applicable to members of the entire Class:

    a.        Whether the Trachte Trustee Defendants breached their fiduciary duties of prudence and loyalty by causing the Trachte ESOP to exchange shares of Alliance and AH Transition stock for over-priced Trachte stock.

    b.        Whether the Trachte Trustee Defendants breached their fiduciary duties by causing or permitting the Trachte ESOP to purchase Trachte stock for more than "adequate consideration."

    c.        Whether the Trachte Director Defendants  are liable for the breach of fiduciary responsibility of another fiduciary.

    d.        Whether the Plan has sustained losses and if so, what is the proper measure of such losses.

    e.        Whether the Selling Defendants are liable to disgorge any benefit that they received by knowingly participating in the foregoing breaches of fiduciary duty by the Trachte Trustee Defendants, the Trachte Director Defendants, Defendant Fenkell and/or Alliance.

     f.      Whether members of the Class are entitled to injunctive and declaratory

relief.

     g.      Whether members of the Class are entitled to attorneys fees.

28.    **Typicality.**  Plaintiffs' claims are typical of the claims of the Class and Subclass,

as plaintiffs are participants or beneficiaries of the Trachte ESOP and were participants of the

Alliance ESOP at the time of the 2007 Transaction and bring these claims for relief on behalf of

the Plan and/or seeking identical equitable relief.

29.    **Adequacy.**  Plaintiffs will fairly and adequately protect the interests of the

members of the Class and Subclass because of the following reasons:

     a.      Named Plaintiffs have no interests antagonistic to or in conflict with the

interests of the Class or the Subclass they seek to represent;

     b.      Named Plaintiffs are willing to participate in and vigorously represent the

interests of the Class and Subclass they seek to represent;

     c.      Named Plaintiffs have retained counsel to represent themselves and the

Class and Subclass and their counsel have significant experience

prosecuting class actions in general and ERISA litigation specifically,

including litigation involving ESOPs.

30.    **Rule 23(b)(1)(B).**  The requirements of Rule 23(b)(1)(B) are met in this action

because prosecution of separate actions by the members of the Class and Subclass would create a

risk of adjudications with respect to individual members of the Class and Subclass which would,

as a practical matter, be dispositive of the interests of the other members not parties to the

actions, or substantially impair or impede their ability to protect their interests.

31.     **Rule 23(b)(1)(A).**  The requirements of Rule 23(b)(1)(A) are met in this action because the prosecution of separate actions by the members of the Class and Subclass would create a risk of establishing incompatible standards of conduct for Defendants;

32.     **Rule 23(b)(2).**  The requirements of Rule 23(b)(1)(A) are met in this action because Defendants have acted or refused to act on grounds generally applicable to the Class and Subclass, and final injunctive, declaratory, and other appropriate equitable relief with respect to the Class as a whole is appropriate.  As to the claims asserted pursuant to ERISA § 502(a)(3), the only available relief is equitable relief.

33.     **Rule 23(b)(3).**  Additionally and alternatively, the requirements of Rule 23(b)(3) are met because the questions of law and/or fact set forth above are not only common, but will predominate over any individual questions in this action.  A class action is superior to the other available methods for the fair and efficient adjudication of this litigation.

### SUMMARY OF RELEVANT PLAN TERMS

**The Trachte ESOP**

34.     At the time of the 2007 Transaction, the terms of the Trachte ESOP were governed by the Trachte Building Systems Employee Stock Ownership Plan effective August 1, 2007, or upon information and belief, substantially similar terms (the "Trachte ESOP Plan Document").

35.     Section 2.2 of the Trachte ESOP Plan document defines "Administrator" to mean "the person or entity designated by the Plan Sponsor to administer the Plan as set forth in Section 7.2."

36.     Section 2.11 of the Trachte ESOP Plan document defines "Employer" to mean "the Plan Sponsor and its Affiliated Employers."

37.     Section 2.24 defines the "Plan Sponsor" to mean "Trachte Building Systems, Inc."

38.     Section 2.34 of the Trachte ESOP Plan Document defines the "Trustee" to mean "the person or entity serving as trustee of the Trust.  Initially, the Trustee is the following group: James M. Mastrangelo, Jeffrey A. Seefeldt, and Pamela Klute."

39.     Section 6.2 of the Trachte ESOP Plan Document provides as follows:  "Solely at the direction of the Administrator, the Trustee shall invest the Trust Fund primarily in Employer Stock.  The Administrator may direct the Trustee to incur debt from time to time to finance the acquisition of Employer Stock by the Trust Fund.  The Trustee may also invest the Trust Fund in cash, cash equivalents, certificates of deposit, money market funds, guaranteed investment contracts, short term securities, bonds, and other investments desirable for the Trust at the direction of the Administrator."

40.     Section 6.4 of the Trachte ESOP Plan Document provides in part:  "Solely at the direction of the Administrator, the Trust may borrow money for any lawful purpose, provided the proceeds of an Exempt Loan are used within a reasonable time after receipt only to acquire Employer Stock or repay that (or a prior) Exempt Loan."

41.     Section 7.1(a) of the Trachte ESOP Plan Document provides that "[t]he Employer shall have the sole fiduciary authority to appoint and remove the Trustee."

42.     Section 7.1(b) of the Trachte ESOP Plan Document provides that "[t]he Administrator shall be the named fiduciary and plan administrator, as those terms are defined by ERISA . . .."

43.     Section 7.1(c) of the Trachte ESOP Plan Document provides that "[t]he Trustee shall have the sole responsibility for administration of the Trust and the administration of assets

held under the Trust, all as specifically provided in the Trust, unless an investment manager has been appointed."

44.    Section 7.2 of the Trachte ESOP Plan document provides that "[t]he Administrator shall be the Employer or any other person or entity designated by the Employer from time to time."

45.    Section 8.1(a) of the Trachte ESOP Plan Document provides that the Trustee is authorized and empowered in its sole discretion "to invest and reinvest the principal and income of the Trust Fund without distinction between principal and income, in such stocks, bonds, notes, mortgages, or other obligations, trust and participation certificates, leaseholds, collective investment trust funds qualified under Code § 501(a) or any common trust funds qualified under Code § 584 now or hereafter established and maintained by the Trustee or any affiliate thereof, or any agent of either, or in such other property or interest therein, whether real or personal as the Trustee deems proper, provided that the indicia of ownership of all such investments are maintained within the jurisdiction of the United States."

46.    Section 8.1(g) of the Trachte ESOP Plan Document provides that the Trustee is authorized and empowered in its sole discretion "to do all acts, whether or not expressly authorized, which they may deem necessary and proper for the protection of the property held hereunder."

47.    Section 2 of the Trachte Building Systems Employee Stock Ownership Plan Summary Plan Description dated September 2007 ("Trachte SPD") identifies Trachte as the Administrator of the Trachte ESOP.

48.     According to representations made by Trachte management at a July 13, 2007 Town Hall Meeting with Trachte employees regarding the employee purchase of Trachte ("2007 Town Hall Meeting"), the Board of Directors of Trachte appoints the ESOP Trustee(s).

49.     Section 3 of the Trachte SPD provides that "[t]he Trustee currently consists of the following three individuals:  Jeffrey A. Seefeldt, James N. Mastrangelo, and Pamela J. Klute."

**The Alliance ESOP**

50.     At the time of the 2007 Transaction, the terms of the Alliance ESOP were governed by the Alliance Holdings, Inc. Employee Stock Ownership Plan and Trust effective January 1, 2007, or upon information and belief, substantially similar terms (the "Alliance ESOP Plan Document").

51.     Section 13.1 of the Alliance ESOP Plan Document provides that "[t]he Company [i.e. Alliance], as Plan Sponsor, shall serve as a Named Fiduciary having the following (and only the following) authority and responsibility:  (a) to establish and communicate to the Trustee a funding policy for the Plan; (b) to appoint the Trustee and Plan Administrator and to monitor each of their performances; (c) to communicate such information to the Plan Administrator and to the Trustee as each needs for the proper performance of its duties; and (d) to provide channels and mechanisms through which the Plan Administrator and/or Trustee can communicate with Participants and their Beneficiaries."

52.     Section 14.3 of the Alliance ESOP Plan Document provides as follows:  "The Trustee shall be the Named Fiduciary with respect to investment of the Fund assets and shall have the powers and duties set forth in the Trust Agreement."  Based on the Alliance ESOP Form 5500, Defendant David Fenkell is and was at the time of the 2007 Transaction the Alliance ESOP Trustee.

53.    Section 2.3(b) of the Trust Agreement authorizes the Alliance ESOP Trustee "to sell for cash or on credit, convert, redeem, exchange for another authorized investment, or otherwise dispose of, any authorized investment at any time held by him."

54.    Section 2.3(e) of the Trust Agreement gives the Trustee the power "to join in, consent to, dissent from or oppose the reorganization, recapitalization, consolidation, sale, merger, foreclosure, or readjustment of the finances of any corporations, entities or properties in which the Fund may be invested, or the sale, mortgage, pledge or lease of any such property or the property of any such corporation or entity on such terms and conditions as the Trustee may deem wise; to do any act (including the exercise of options, making of agreements or subscriptions, and payment of expenses, assessments or subscriptions) which may be deemed necessary or advisable in connection therewith; and to accept any authorized investment which may be issued in or as a result of any such proceeding, and thereafter to hold the same."

55.    Section 11.4(b) of the Alliance ESOP Plan Document provides: "If, at the time of distribution from the Fund, Employer Securities are not treated as 'readily tradeable on an established market' within the meaning of Code Section 409(h), then such Employer Securities shall be subject to a put option in the hands of a Qualified Holder. The put option shall enable the Qualified Holder to sell any or all of the Employer Securities received in the distribution to the Employer that employs or employed the Participant or, if either the Plan or Funds so elects, to the Plan or Fund at the fair market value of the Employer Securities."

56.    Section 16.5 of the Alliance ESOP Plan Document provides as follows: "In the event of any merger or consolidation with, or transfer of assets or liabilities to, any other plan, each Participant shall have a benefit in the surviving or transferee plan (determined as if such plan were then terminated immediately after such merger, consolidation or transfer) that is equal

18

in value to or greater in value than the benefit he would have been entitled to receive immediately before such merger, consolidation or transfer in the plan in which he was then a Participant (had such plan been terminated at that time).  For the purposes hereof, former Participants and Beneficiaries shall be considered Participants."

## FACTUAL ALLEGATIONS

### Background of Trachte Building Systems

57.     As described on its website, Trachte was originally founded in Madison, Wisconsin as Trachte Brothers Sheet-Metal Workers ("Trachte Brothers") in 1901.  Beginning in the 1920s, Trachte Brothers began to market steel buildings as the concept of self-storage began to emerge.  Throughout the 1930s and 1940s, Trachte Brothers continued to market and sell commercial and industrial metal buildings.  In 1952, Trachte Brothers changed its name to Trachte Metal Buildings Company.

58.     As described on Trachte's website, Trachte entered the self-storage industry in 1974 by pioneering one of the first all-steel min-warehouses in the United States.  In 1975, Trachte Metal Buildings Company changed its name to Trachte Building Systems, Inc.

59.     As described on Trachte's website, Robert Trachte, the son of founder Arthur Trachte, retired in 1978 and was the last Trachte family member to be actively involved in operation of Trachte.

60.     Defendant Pagelow purchased the majority control of Trachte Building Systems, Inc. in 1984.

61.     In 1985, Trachte purchased land in the Sun Prairie Business Park and established Sun Prairie as its corporate headquarters and its principal manufacturing facility.

62.     Upon information and belief, the majority of Trachte employees are employed in and around Sun Prairie, Wisconsin.

**Background of Alliance Holdings**

63.     Alliance was established in 1995 as a holding company for the acquisition of equity interests in small and medium sized operating companies.

64.     Alliance has a strategy of making opportunistic acquisitions of ESOP companies to build value quickly.

65.     According to the Alliance ESOP Form 5500s, Alliance sponsors the Alliance ESOP which directly, or indirectly through AH Transition, Inc., owns substantially all of Alliance's outstanding common stock.

66.     Upon information and belief, since 1994 Alliance has purchased at least 13 privately-owned operating companies and has sold at least 9 of those companies.  Employees of those operating companies become members of the Alliance ESOP at the time of purchase by Alliance and their Alliance ESOP accounts are spun off when the operating company is sold.

67.     Alliance markets itself to potential companies by stating that it provides a market for shareholders of privately held companies who want to sell their shares and defer taxation on the sale of the stock.  Additionally, Alliance informs potential buyers that it will create a phantom stock plan for the acquired company which, according to its website, "provides substantial reward for each of our management team."

**Alliance Purchase of Trachte**

68.     In September 2002, Alliance purchased Trachte for $24 million (the "2002 Transaction").

69.     Prior to the purchase by Alliance in 2002, Trachte sponsored an employee stock ownership plan ("the Old Trachte ESOP") which owned approximately 30 percent of Trachte's common stock.

70.     According to a June 4, 2002 memorandum to Trachte shareholders from Trachte management ("the June 4, 2002 Management Memorandum"), under the terms of the purchase agreement by Alliance of Trachte, the Old Trachte ESOP was required to purchase sufficient stock to obtain an 80 percent ownership interest in Trachte.  Trachte borrowed and, in turn, lent money to the Old Trachte ESOP which the Old Trachte ESOP used to purchase common shares of Trachte stock to reach the 80 percent ownership interest.

71.     At the time of the 2002 Trachte Transaction, the remaining Trachte shares were owned by Defendant Stephen Pagelow, Trachte's then-President and CEO.

72.     As outlined in the June 4, 2002 Management Memorandum, Alliance transferred Alliance shares equivalent in value to 80 percent of the Old Trachte shares to a newly-created, wholly-owned subsidiary corporation, the "Alliance Sub," and the Alliance Sub then exchanged the Alliance shares for the Trachte shares owned by the Old Trachte ESOP.   The Alliance Sub was then merged into Trachte, with Trachte being the surviving corporation.  At the same time, the Trachte ESOP was merged into the Alliance ESOP; the Old Trachte ESOP participants became Alliance ESOP participants and the Old Trachte ESOP assets and liabilities were transferred to the Alliance ESOP.

73.     According to the Trachte Consolidated Financial Report, effective October 1, 2002, Trachte established two phantom stock plans in order to reward key employees of Trachte and/or Alliance.  On information and belief, the Phantom Stock Plans entitled eligible employees to receive cash based, in part, on the value of Trachte stock.

74.     At the time of the merger of the Old Trachte ESOP with the Alliance ESOP, the Alliance ESOP owned most of the common stock of Alliance.  According to the Alliance ESOP Form 5500, in 2005 AH Transition Corporation ("AH Transition") was formed.  After the formation of AH Transition, the Alliance ESOP owned approximately half of Alliance's common stock and substantially all of the remaining Alliance common stock was owned by AH Transition.  The Alliance ESOP, in turn, owned all of the common stock of AH Transition.

**Alliance Attempts To Sell Trachte**

75.     In late 2006, Alliance began looking for a buyer for Trachte.

76.     In or around that time period, Alliance entered into negotiations with HIG Capital, which is a leading global private investment firm with over $7.5 billion of capital under management.  Upon information and belief, HIG Capital made an offer to purchase Trachte from Alliance.

77.     In the "2007 Town Hall Meeting"  Trachte management stated that HIG Capital and Alliance did not reach agreement on the terms, including the price, on which to sell Trachte.

78.     According to Trachte management, among the reasons that HIG Capital refused to purchase Trachte at the price that Alliance wanted was that "[m]arket data indicated [that] the self storage [industry] ha[d] matured" and that orders at Trachte had "softened in 2007."

**The Spin-off of Trachte from Alliance**

79.     Unable to obtain the price that Alliance wanted from third-party in an arms-length transaction, Alliance formulated a plan whereby it would create a new Trachte ESOP and sell Trachte to the new Trachte ESOP.

80.     In early 2007, a new Trachte ESOP was created.

81.     At or about the same time that the Trachte ESOP was created, the Trachte Board of Directors, which included Defendants Pagelow,  Fenkell and Lynn, appointed Defendants Seefeldt, Mastrangelo, and Klute as Trustees of the new Trachte ESOP.

82.     On or about April 29, 2007, the Alliance ESOP, Alliance, Defendant Pagelow and the new Trachte ESOP entered into a Letter of Intent setting forth the terms of a proposed Buyback by the Trachte ESOP.

83.     Upon information and belief, the proposed Buyback included the following terms: (1) the Alliance ESOP accounts of Trachte employees (containing Alliance and AH Transition stock) would be spun off from the Alliance ESOP into the Trachte ESOP; (2)  the Trachte ESOP would exchange the Alliance and AH Transition stock for Trachte stock which was equivalent in value to the Alliance and AH Transition stock; (3) the remaining common shares of Trachte would be purchased by the Trachte ESOP from Alliance and Defendant Pagelow or redeemed by Trachte; (4) Trachte preferred shares would be redeemed by Trachte; and (5) Trachte would pay $4,905,000 owing to non-Trachte employees under the Trachte Phantom Stock Plan.  The proposed consideration for the Buyback totaled $47,438,334.31.  At the end of the Buyback, the Trachte ESOP would be the sole shareholder of Trachte.

84.     Defendant Fenkell, as trustee of the Alliance ESOP, obtained valuations of the fair market value of Alliance, AH Transition and Trachte from Stout Risius Ross, Inc. ("SRR") for purposes of the Buyback.  SRR valued Alliance at approximately $72 million  with a per share value of approximately $17.15, on a controlling interest basis and applying a five percent discount for lack of marketability based on the "put" option contained in the Alliance ESOP and Alliance's overall financial condition.  SRR valued AH Transition at approximately $34 million with a per share value of approximately $23.65 on a controlling interest basis and applying a

discount for lack of marketability. SRR valued Trachte at approximately $44 million with a per share value of approximately $13,725.50 on a controlling interest basis and without applying a discount for lack of marketability.

85.     The Trachte Trustee Defendants obtained a fairness opinion of the proposed Buyback from Barnes Wendling Valuation Services, Inc. ("BWVS"). BWVS concluded that Trachte's common equity value ranged from $26.2 million to $40.1 million. BWVS compared this range of value to the SRR valuation of Trachte obtained by Defendant Fenkell. In order to make the valuations comparable, BWVS added a $1.9 million "tax shield" and subtracted "phantom equity" payments of $4.9 and $3 million from the SRR valuation and concluded that the SRR valuation of Trachte's common equity would have been $37,665.00 with these adjustments. BWVS compared its own valuation of Trachte's common stock at $40.1 million with SRR's adjusted valuation at $37.6 million and the Buyback proposal for Trachte common stock of $40.5 million and opined that the Buyback was "within the range of reasonableness, albeit near the upper end of the range." BWVS concluded that the terms of the proposed Buyback were "fair and reasonable for the purpose of the transaction" and that the Trachte ESOP would be paying "adequate consideration" for the Trachte stock.

86.     The Trachte Trustee Defendants obtained a second opinion from RSM McGladrey which reviewed the BWVS fairness opinion and valuations performed by SRR. In a July 6, 2007 letter to the Trachte Trustee Defendants, RSM McGladrey informed them that "you are paying at the high end of the value ranges" and pointed out concerns about the methodology used in the valuations, including increasing the value by $1.9 million for the ESOP tax shelter which did not have consensus in the valuation community and issues relating to valuation of the seller notes.

24

87.     On August 29, 2007, BWVS issued a final Fairness Opinion to the Trachte Trustee Defendants. The August 29, 2007 Fairness Opinion outlined the transaction as follows: (1) the Alliance ESOP accounts of Trachte employees would be spun off from the Alliance ESOP into the new Trachte ESOP; (2) the Alliance and AH Transition stock held in the Trachte ESOP would be exchanged for Trachte stock; (3) the remaining common shares of Trachte would be purchased by the Trachte ESOP or redeemed by Trachte for $38,329,447.53; (4) the Trachte preferred shares would be redeemed by Trachte for $2 million; and (5) Trachte would pay $4,905,000 owing to non-Trachte employees under the Trachte Systems, Inc. Phantom Stock Plan. The total consideration for the transaction would be $45,234,747.53. At the end of the transaction, the new Trachte ESOP would be the sole shareholder of Trachte.

88.     The August 29, 2007 BWVS Fairness Opinion also contained a valuation of Trachte which was the same as the valuation in its earlier draft Fairness Opinion, despite the concerns raised by RSM McGladrey. BWVS continued to add a $1.9 million "tax shield" and subtracted "phantom equity" payments of $4.9 and $3 million from the $43.7 million valuation by SRR and concluded that the SRR valuation of Trachte's common equity would have been $37,665.00 with these adjustments. BWVS continued to compare its own valuation of Trachte's common stock at $40.1 million with SRR's adjusted valuation at $37.6 million and the Buyback proposal for Trachte common stock of $40.5 million and opined that the Buyback was "within the range of reasonableness, albeit near the upper end of the range." BWVS concluded that the terms of the proposed Buyback were "fair and reasonable for the purpose of the transaction" and that the Trachte ESOP would be paying "adequate consideration" for the Trachte stock.

89.     The Spin-off of Trachte employees from the Alliance ESOP into the Trachte ESOP and the purchase of all outstanding shares of Trachte stock by the Trachte ESOP occurred

on August 29, 2007.   The terms of the transaction, as outlined in the August 29, 2007 Fairness Opinion, were as follows:

a.   The Alliance ESOP accounts of current/former Trachte employees were spun off from the Alliance ESOP into the Trachte ESOP pursuant to the terms of the Instrument of Spin-off.  These accounts held 32,449.1342 shares of Alliance Holding common stock ($17.85 per share), 306,428.3756 shares of AH Transition common stock ($23.65 per share) and $178,390.07 in cash.   The total value of the accounts transferred was $7,981,925.

b.   Alliance sold 568.5428 shares of Trachte common stock to the Trachte ESOP at the same value as above for $7,981,925.  The consideration was two promissory notes to Alliance and AH Transition which was repaid by exchanging the cash and Alliance common stock allocated to the Trachte employees' ESOP accounts.

c.   Trachte redeemed $2,000,000 of preferred stock held by Alliance and 573.7976 of common stock held by Alliance in exchange for a subordinated promissory note of $4,370,000, pursuant to the terms of a Stock Redemption Agreement.

d.   Trachte redeemed 92.5360 shares of common stock held by Defendant Pagelow in exchange for a subordinated promissory note of $1,300,000 pursuant to the terms of a Stock Redemption Agreement.

e.    Alliance redeemed 27,592.5453 shares of Alliance stock held by Trachte in exchange for consideration of 34.4769 shares of Trachte stock transferred from Alliance to Trachte.

f.    The Trachte ESOP purchased 1,530.1827 shares of Trachte common stock from Alliance for $21,002,523 pursuant to the terms of a Stock Purchase Agreement.

g.    The Trachte ESOP purchased 413.464 shares of Trachte common stock from Defendant Pagelow for $5,675,000 pursuant to the terms of a Stock Purchase Agreement.

h.    The cash requirements of the transaction were funded through (1) a Credit Agreement between Trachte and JP Morgan Chase Bank, and (2) a Credit Agreement between Store-N-Save Self Storage Ltd. (a Canadian subsidiary of Trachte referred to as "SNS") and GE Capital.

i.    Trachte loaned $26,677,523 to the Trachte ESOP pursuant to the terms of an ESOP Loan Agreement and Promissory Note.

j.    Trachte paid $4,905,000 to a non-Trachte employee under the Trachte Building Systems, Inc. Phantom Stock Plan.

90.    As a result of the 2007 Transaction, the Trachte ESOP owned all outstanding shares of Trachte stock.  The Trachte ESOP used the account balances of its participants and beneficiaries spun off from the Alliance ESOP (reported by the Alliance ESOP Form 5500 to be $9,249,470 and by the Trachte ESOP Form 5500 to be $7,803,534) and obtained a loan of $26,677,523 from Trachte in order to finance the purchase.  Trachte, itself, had borrowed the money to loan to the Trachte ESOP, borrowed an additional $5,630,000 to redeem preferred and

common Trachte stock held by Alliance and Defendant Pagelow, and paid out $4,905,000 in phantom stock payments. Thus, Trachte and the Trachte ESOP together paid $45,056,057 for the Buyback.

91.     Trachte management, including upon information and belief, the Trustee Defendants, told its employees that "We are buying the company with no cash up front, just the ESOP account values." However, in a March 18, 2008 Q&A Session, Trachte management told Trachte employees that it had the following loans outstanding as a result of the Buyback: (1) a $12.5 million loan from Chase with an open line of credit to $4 million; (2) a mezzanine loan of $15 million; (3) a SNS loan with G.E. for $12.5 million with an additional $2 million available as the cash flow of SNS increased; and (4) a loan from the sellers of $5.7 million. This amounted to $45.7 million which, together with the $7.9 million from Trachte employee account balances, equals $53.5 million – about $8 million more than the consideration for the Buyback listed in the Fairness Opinion.

**Effect of the 2007 Transaction on Trachte**

92.     The amount of debt incurred by Trachte in order to engage in the 2007 Transaction was more debt than the Company could reasonably be expected to service.

93.     In order to meet the loan covenants and service the debt, Trachte had to maintain a $ 6.3 million in annual earnings before interest, taxes, depreciation and amortization ("EBITDA").

94.     As set forth in the 2007 Town Hall Meeting, Trachte's historical annual EBITDA was as follows:

|      |             |
|------|-------------|
| 2003 | $5.7 million |
| 2004 | $4.5 million |
| 2005 | $6.8 million |
| 2006 | $6.3 million |

95.     Trachte's average EBITDA over the four years prior to the 2007 Transaction was only $5.8 million.  Indeed, in the four years prior to 2007 Transaction, Trachte had achieved EBITDA at or greater than $6.3 million in just two of those years.  In addition, Trachte's EBITDA *declined* in 2006 from the high in 2005 and by July 2007, it was known that sales in 2007 would be "softer," thus suggesting that the EBITDA for 2007 would fall below $6.3 million.  Moreover, the interest rates charged on Trachte's loans are contingent on reaching $7.5 minimum EBITDA annually, which Trachte had not once achieved in the four years preceding the 2007 Transaction.

96.     In response to the question "Will we be leveraged to the max?" in the "Employee Questions and Answers from Town Hall Meeting" on July 13, 2007, Trachte management responded:  "[Trachte] will be **highly leveraged**."  As a result of incurring so much debt, Trachte management stated that Trachte "need[ed] to do some belt tightening."  In order to increase its EBITDA to meet the loan terms, Trachte took the following "belt tightening" measures:

    a.     The Company contribution to the 401k plan was reduced from 6% to 3% for office employees and reduced from 8% to 3% for plant (i.e. non-office) employees.

    b.     The Company reduced the amount of paid sick leave from 80 hours to 56 hours effective January 2008.

    c.     The Company cut the amount of medical benefits provided to employees and shifted the amount of medical premiums to employees.

97.     In an effort to reduce expenses to service the debt from the 2007 Transaction, Trachte, which had approximately 220 employees at the time of the 2007 Transaction, has terminated approximately 48 employees and furloughed approximately 43 union employees,

leaving Trachte with a little more than 100 employees as of April 2009.  Trachte also cut the

hours and/or workdays for its remaining employees as a further effort to reduce its expenses.  In

addition, Trachte employees have been forced to take two pay cuts in 2009; one was a

percentage based on salary and the other was a ten percent pay cut across the board.

**Effect of the 2007 Transaction on the Trachte ESOP and the Trachte ESOP Participants**

98.     As soon as the accounts of the Trachte employees were transferred to the Trachte

ESOP, they were worth less than they were before the transfer because:  (1) The Alliance and

AH Transition stock held by the Trachte ESOP immediately went down in value because the

Trachte ESOP did not have a controlling interest in either company and the Trachte ESOP

participants no longer had a right to put the stock back to Alliance; and (2) as a condition of the

Spin-off transaction, the Alliance and AH Transition stock was immediately exchanged for

Trachte stock that was over-valued for purposes of the exchange and which would immediately

lose value after the transfer due to the heavy debt load Trachte took on in the 2007 Transaction in

order to finance the purchase of Trachte shares.

99.     The impact of this debt on the value of the Trachte ESOP is evident from the

Trachte ESOP's 2007 5500 Report.  As of December 31, 2007, three months after the 2007

Transaction, the 5500 Report listed the value of the Trachte stock held by the ESOP at

$16,989,988, the cost of the Trachte stock at $34,481,057 and the acquisition debt at

$26,484,144.  As a result, the overall net assets available for the payment of benefits are listed as

*negative* $9,311,074.

100.    The 2007 Transaction had a direct impact on the ESOP participants' accounts.

For example, the ESOP account balances for each of the named Plaintiffs declined by

approximately 50% within four months of the 2007 Transaction.  Upon information and belief, this loss was attributable, primarily or solely, to the immediate effect of the 2007 Transaction.

101.    On information and belief, the precipitous and immediate drop in the Trachte ESOP's assets was the result of overpaying for the new shares and the effect of the debt used in that Buyback on the value of existing shares.

**Effect of the Spin-off of Trachte on Alliance**

102.    In an August 2007 News Release, Alliance announced that it was "pleased to announce the Spin-off of Trachte" to the Trachte ESOP and that "Alliance was able to realize a significant return on its initial investment."  Alliance further announced that "[w]ith this move, Alliance significantly adds to its available capital to prudently and aggressively pursue its acquisition and diversification plan."  In this August 2007 News Release, Defendant Fenkell, stated that its "five-year association" with Trachte "created a substantial return for" Alliance.

**Inappropriateness of the 2007 Transaction**

103.    Contrary to the valuations obtained by Alliance and/or the Trachte Defendants, the valuation of $13,725.50 per share of Trachte stock for purposes of the 2007 Transaction constituted a price in excess of the fair market value of the stock as of August 29, 2007 due to the following reasons, as well as other factors:

      a.      the valuation did not take into account the ability of Trachte, which was obligated on the debt, to service the ESOP debt as well as other debt used to finance the Buyback;

      b.      the valuation did not address the likelihood of default on the loan covenant to maintain EBITDA of $6.3 million;

c.      the valuation included a "tax shield" which is not generally accepted in the valuation community;

d.      the valuation did not take into account the offer from HIG Capital;

e.      the valuation treated a $6.2 million cash balance as if it were a non-operating asset rather than as working capital;

f.      the Trachte common stock was valued as a controlling interest, however the amount and basis for any control premium was not disclosed or discussed;

g.      the valuation did not include a discount for lack of marketability; and

h.      the valuation did not take into account the $26 million in debt burden imposed on the company which was used to purchase the shares.

104.    No prudent and loyal fiduciary would have caused the Trachte ESOP to engage in the exchange of Alliance and AH Transition stock for Trachte stock and the purchase of additional Trachte stock at least because of the following:

a.      a prudent investigation would have revealed that the price of $13,725.50 per share represented a price in excess of the fair market value of the stock;

b.      the amount of debt incurred by Trachte and the Trachte ESOP as a result of the Buyback was more debt than Trachte could service thereby jeopardizing the value of the shares purchased in the Buyback;

c.      even apart from Trachte's ability to service the ESOP acquisition debt, the debt that Trachte took on to redeem common and preferred shares and to make payments under the Phantom Stock Plan reduced the value of the

shares purchased by the Trachte ESOP, such that much of the value already allocated to participants' accounts in the Alliance ESOP was destroyed by the purchase of the Trachte stock and the associated debt load;

d.     the Buyback was not for the primary or best interest of the participants and beneficiaries of the Trachte ESOP, but benefitted the sellers, the recipients of the payments on the Trachte Phantom Stock Plan, and the management of Trachte at the expense of the Trachte ESOP and its participants;

e.     the valuation opinions provided by SRR and BWVS were not reasonably justified under the circumstances;

f.     it was not reasonable to rely on the valuations performed by SRR and BWVS in light of the RSM McGladrey critique of those valuations; and

g.     in the case of the Defendants Pagelow, Fenkell and Lynn, no prudent and loyal fiduciary would have allowed the Trachte ESOP fiduciaries, whom they appointed and had a duty to monitor, to engage in the Buyback under the terms of the 2007 Transaction.

## COUNT I

**(VIOLATION OF ERISA § 208 AND THE TERMS OF THE PLAN AGAINST DEFENDANT ALLIANCE ON BEHALF OF THE SUBCLASS)**

105.     Plaintiffs repeat and incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

106.     ERISA § 208, 29 U.S.C. § 1108, prohibited Alliance from spinning off the Trachte employees' accounts in the Alliance ESOP to the Trachte ESOP unless each participant in the plan would (if the plan then terminated) receive a benefit immediately after the transfer

which was equal to or greater than the benefit he would have been entitled to receive immediately before the transfer (if the plan had then terminated).

107.    Section 16.5 of the Alliance ESOP Plan Document similarly prohibited Alliance from engaging in any merger or consolidation with, or transfer of assets or liabilities to, any other plan, unless each Participant would have a benefit in the surviving or transferee plan (determined as if such plan were then terminated immediately after such merger, consolidation or transfer) that would be equal in value to or greater in value than the benefit he would have been entitled to receive immediately before such merger, consolidation or transfer in the plan in which he was then a Participant (had such plan been terminated at that time).

108.    As part of the 2007 Transaction, Alliance caused the Alliance ESOP to transfer assets to the Trachte ESOP by having the accounts of the Trachte employees transferred from the Alliance ESOP into the Trachte ESOP.

109.    As soon as the accounts of the Trachte employees were transferred to the Trachte ESOP, they were worth less than they were before the transfer because: (1) The Alliance and AH Transition stock held by the Trachte ESOP immediately went down in value because the Trachte ESOP did not have a controlling interest in either company and the Trachte ESOP participants no longer had a right to put the stock back to Alliance; and (2) as a condition of the Spin-off transaction, the Alliance and AH Transition stock was immediately exchanged for Trachte stock that was over-valued for purposes of the exchange and which would immediately lose value after the transfer due to the heavy debt load Trachte took on in the 2007 Transaction in order to finance the purchase of Trachte shares.

110.     As a result of causing the accounts of Trachte employees to be spun off into the

Trachte ESOP under the circumstances described above, Alliance violated Section 208 of

ERISA, 29 U.S.C. § 1108, and Section 16.5 of the Alliance ESOP Plan Document.

**COUNT II**

**(VIOLATION OF ERISA § 404 AGAINST
DEFENDANT FENKELL ON BEHALF OF THE SUBCLASS)**

111.     Plaintiffs repeat and incorporate the allegations contained in the foregoing

paragraphs as if fully set forth herein.

112.     As the Trustee of the Alliance ESOP at the time of the 2007 Transaction,

Defendant Fenkell was required to act prudently and solely in the interest of all of the

participants and beneficiaries in the Alliance ESOP, including those participants and

beneficiaries whose accounts were to be spun off from the Alliance ESOP.

113.     As the Trustee of the Alliance ESOP at the time of the 2007 Transaction,

Defendant Fenkell had a duty to follow the terms of the Alliance Plan Document, including

Section 16.5.

114.     Upon information and belief, Defendant Fenkell had a personal interest in the

2007 Transaction because it allowed him to collect benefits under the Phantom Stock Plan

sponsored by Trachte.

115.     Upon information and belief, Defendant Fenkell either knew or was aware of

facts by which he should have known that the Trachte employee accounts would immediately

decrease in value after and as a result of the Spin-off because (1) a control premium no longer

applied to the Alliance and AH Transition stock and the Trachte participants no longer had a

right to put the stock back to Alliance, both of which decreased the value of the stock, and (2)

the transfer was conditioned on the exchange of the Alliance and AH Transition stock for over-

valued Trachte stock and the additional purchase of over-valued Trachte stock by the Trachte

ESOP which immediately depleted the account balances of Trachte ESOP participants and

beneficiaries.

116.    In the event that Defendant Fenkell did not know or was not aware of facts that

the Trachte employee accounts would immediately decrease in value after and as a result of the

Spin-off, Defendant Fenkell was required to undertake an appropriate investigation to determine

whether the Trachte Employee accounts would decrease in value after the Spin-off in order to

fulfill his fiduciary duties as a Trustee of the Alliance ESOP and to comply with Section 16.5 of

the Alliance ESOP Plan Document.

117.    Under the circumstances described above, transferring the Alliance ESOP

accounts to the Trachte ESOP in the Spin-off was not in the interests of the Alliance ESOP

participants who were transferred to the Trachte ESOP and violated Section 16.5 of the Alliance

ESOP Plan Document.

118.    No prudent and loyal fiduciary would have transferred the Trachte accounts to the

Trachte ESOP when he knew or should have known that the value of those accounts would be

substantially less immediately after the transfer due to the incorrect valuations of the Alliance,

AH Transition and Trachte stock and the heavy debt load Trachte took on in order to finance the

purchase.

119.    By transferring the Trachte employees accounts in the Alliance ESOP to the

Trachte ESOP when those accounts had less value after the Spin-off than before the Spin-off,

Defendant Fenkell breached his fiduciary duties under ERISA by failing to discharge his duties

with respect to the Alliance ESOP solely in the interest of the participants and beneficiaries (1)

for the exclusive purpose of providing benefits to participants and their beneficiaries; (2) with the

care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and like aims, and (3) in accordance with the documents and instruments governing the Alliance ESOP, all in violation of ERISA § 404(a)(1)(A), (B) and (D),  29 U.S.C. § 1104(a)(1)(A),(B), and (D).

### COUNT III

### (VIOLATION OF ERISA § 406(a)(1)(D) AGAINST DEFENDANT FENKELL ON BEHALF OF THE SUBCLASS)

120.    Plaintiffs repeat and incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

121.    As the Trustee of the Alliance ESOP at the time of the 2007 Transaction, Defendant Fenkell was a fiduciary and a party in interest to the Alliance ESOP and was prohibited from causing the Alliance ESOP to engage in a transaction, when he knew or should have known that the transaction constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest of any assets of the Alliance ESOP.

122.    Upon information and belief, Defendant Fenkell was a participant in the Trachte Phantom Stock Plan.

123.    Under the terms of the Trachte Phantom Stock Plan, Defendant Fenkell was entitled to a benefit when there was a change of control of Trachte, and the amount of that benefit was based on the value of Trachte stock at the time of the change of control.

124.    As the Trustee of the Alliance ESOP at the time of the 2007 Transaction, Defendant Fenkell was responsible for determining the conditions under which the Trachte participants' accounts would be transferred from the Alliance ESOP to the Trachte ESOP. Defendant Fenkell pre-arranged that transfer as part of an integrated 2007 Transaction, in which

the purchase or redemption of all Trachte stock was based on the price set forth in the August 29, 2007 Fairness Opinion and which resulted in a change of control of Trachte.

125.     By conditioning the transfer of Trachte participant accounts to the Trachte ESOP on a change of control of Trachte, Defendant Fenkell caused the Alliance ESOP to engage in a transaction, when he knew or should have known that such transaction constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest of any assets of the Alliance ESOP in violation of ERISA § 406(a)(1)(D).

## COUNT IV

### (VIOLATION OF ERISA § 406(b) AGAINST DEFENDANT FENKELL ON BEHALF OF THE SUBCLASS)

126.     Plaintiffs repeat and incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

127.     As the Trustee of the Alliance ESOP at the time of the 2007 Transaction, Defendant Fenkell was prohibited from engaging in transactions involving assets of the Alliance ESOP in his own interest or for his own account, from acting on behalf of someone whose interests were adverse to the plan or its participants and beneficiaries, and from receiving any consideration for his own personal account from any party dealing with the plan in connection with a transaction involving the Alliance ESOP.

128.     As the Trustee of the Alliance ESOP at the time of the 2007 Transaction, Defendant Fenkell was responsible for determining the conditions under which the Trachte participants' accounts would be transferred from the Alliance ESOP to the Trachte ESOP. Defendant Fenkell pre-arranged that transfer as part of an integrated 2007 Transaction, in which the purchase or redemption of all Trachte stock was based on the price set forth in the August 29, 2007 Fairness Opinion and which resulted in a change of control of Trachte.

129.     Upon information and belief, Defendant Fenkell was a participant in the Trachte Phantom Stock Plan.

130.     Under the terms of the Trachte Phantom Stock Plan, participants were entitled to payments based on the value of Trachte stock when there was a change of control of Trachte.

131.     As such, Defendant Fenkell's payment from the Trachte Phantom Stock Plan was based on the same value of Trachte as placed on Trachte for the Spin-off and Buyback.

132.     By conditioning the Spin-off on the price established in the August 29, 2007 Fairness Opinion for the redemption and purchase of Trachte stock, Defendant Fenkell violated his fiduciary duties under ERISA by dealing with the assets of the Alliance ESOP in his own interest or for his own account and by receiving consideration for his own personal account from a party dealing with the Alliance ESOP in connection with a transaction involving the assets of the Alliance ESOP in violation of ERISA § 406(b)(1) and (3), 29 U.S.C. § 1106(b)(1) and (3).

## COUNT V

### (VIOLATIONS OF ERISA § 404 AGAINST DEFENDANT ALLIANCE ON BEHALF OF THE SUBCLASS)

133.     Plaintiffs repeat and incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

134.     Pursuant to the terms of the Alliance ESOP Plan Document, Defendant Alliance had the authority to appoint, monitor and remove the Alliance ESOP Trustee.

135.     Pursuant to this authority, Alliance had an obligation to monitor Defendant Fenkell's conduct and to take appropriate action if Defendant Fenkell was not adequately protecting the interests of the Alliance ESOP participants and beneficiaries, including the employees of Trachte who were then participants and beneficiaries in the Alliance ESOP and whose accounts were transferred to the Trachte ESOP.

136.    Upon information and belief, Alliance knew that after the Spin-off each participant in the Trachte ESOP would not (if the Trachte plan then terminated) receive a benefit equal to or greater than the benefit the participant would have been entitled to receive immediately before the transfer (if the Alliance plan had then terminated) and that Defendant Fenkell would benefit from the Spin-off.

137.    Upon information and belief, Alliance never attempted to undo the Spin-off, remove Fenkell as Trustee, or otherwise correct the violations described herein.

138.    By  failing to properly monitor and remove Defendant Fenkell as the Alliance ESOP Trustee, Alliance breached its fiduciary duties under ERISA by failing to discharge its duties with respect to the Alliance ESOP solely in the interest of the participants and beneficiaries (1) for the exclusive purpose of providing benefits to the participants and beneficiaries, and (2) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and like aims, all in violation of ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B).

## COUNT VI

### (VIOLATION OF ERISA § 404(a) AND (b) AGAINST TRACHTE TRUSTEE DEFENDANTS ON BEHALF OF THE CLASS)

139.    Plaintiffs repeat and incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

140.    The Trachte Trustee Defendants caused and/or permitted the Trachte ESOP to engage in the 2007 Transaction.

141.    The Trachte Trustee Defendants failed to undertake an appropriate investigation of the 2007 Transaction as proposed.  An appropriate investigation of the 2007 Transaction

would have revealed at least (1) that the Alliance and AH Transition stock was not as valuable after the transfer and, therefore, the Trachte ESOP did not receive the assets to which it was entitled, (2) that the price paid for the Trachte shares exceeded the fair market value of the stock, (3) that the debt assumed by Trachte in connection with the Buyback diminished the value of the Trachte shares, (4) that much of the value already allocated to participants' accounts in the Alliance ESOP was destroyed by the purchase of the Trachte stock and the associated debt load, and (5) that the Company would likely have difficulty servicing the debt assumed in connection with the investment.

142.    Even if the Trachte Trustee Defendants were directed to engage in the 2007 Transaction, the Trachte Trustee Defendants had a duty not to engage in a transaction that violated ERISA.

143.    Additionally and alternatively, the Trachte Trustee Defendants were aware of facts, described above, by which they either knew or should have known that the 2007 Transaction was imprudent and not in the interest of the ESOP's participants and beneficiaries.

144.    Upon information and belief, the Trachte Trustee Defendants engaged in the 2007 Transaction in order to save their jobs.

145.    By causing and/or permitting the Trachte ESOP to engage in the 2007 Transaction, which was not in the interests of the Trachte ESOP's participants and beneficiaries, the Trachte Trustee Defendants breached their fiduciary duties under ERISA by failing to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries (1) for the exclusive purpose of providing benefits to participants and their beneficiaries; (2) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would

use in the conduct of an enterprise of like character and like aims, all in violation of ERISA §

404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B).

## COUNT VII

### (VIOLATION OF ERISA § 406(a)(1)(A) AND (D) AGAINST THE TRACHTE TRUSTEE DEFENDANTS ON BEHALF OF THE CLASS)

146.   Plaintiffs repeat and incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

147.   As part of the 2007 Transaction, the Trachte Trustee Defendants caused or permitted the Trachte ESOP to engage in a $26 million stock purchase from Defendants Pagelow and Alliance.

148.   By causing or permitting the Trachte ESOP to engage in the $ 26 million stock purchase from Defendants Pagelow and Alliance described above, in which the Trachte ESOP paid more than "adequate consideration," the Trachte Trustee Defendants violated their fiduciary duties under ERISA by causing the Trachte ESOP to engage in a transaction which they knew or should have known constituted a direct or indirect (1) sale or exchange of property between the Plan and parties in interest, or (2) transfer to, or use by or for the benefit of, a party in interest, of any assets of the Plan, all in violation of ERISA § 406(a)(1)(A) and (D), 29 U.S.C. § 1106(a)(1)(A) and (D).

## COUNT VIII

### (VIOLATION OF ERISA § 404(a) AGAINST THE TRACHTE DIRECTOR DEFENDANTS ON BEHALF OF THE CLASS)

149.    Plaintiffs repeat and incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

150.    Pursuant to the terms of the Plan, Trachte had the authority to appoint the Trachte ESOP Trustees and to direct them to purchase Trachte stock. Based on, among other things, the statements made by Trachte management at the 2007 Town Hall Meeting, the Trachte Director Defendants performed the functions assigned to Trachte in its role as the Trachte ESOP Administrator.

151.    If the Trachte Director Defendants directed the Trachte Trustee Defendants, then the Trachte Director Defendants had a fiduciary duty to undertake an appropriate investigation of the 2007 Transaction, including a valuation of the Alliance and AH Transition stock that was transferred to the Trachte ESOP.

152.    The Trachte Director Defendants failed to undertake an appropriate investigation of the 2007 Transaction as proposed. An appropriate investigation of the 2007 Transaction would have revealed at least (1) that the Alliance and AH Transition stock was not as valuable after the transfer and, therefore, the Trachte ESOP did not receive the assets to which it was entitled, (2) that the price paid for the Trachte shares exceeded the fair market value of the stock, (3) that the debt assumed by Trachte in connection with the Buyback diminished the value of the Trachte shares, (4) that much of the value already allocated to participants' accounts in the Alliance ESOP was destroyed by the purchase of the Trachte stock and the associated debt load, and (5) that the company would likely have difficulty servicing the debt assumed in connection with the investment.

153.    Additionally and alternatively, the Trachte Director Defendants were aware of facts, described above, by which they either knew or should have known that the 2007 Transaction was imprudent and not in the interest of the ESOP's participants and beneficiaries.

154.    As a consequence of their power to appoint and remove the Trachte Trustee Defendants on behalf of Trachte as the Trachte ESOP Administrator,  the Trachte Director Defendants had a fiduciary duty to monitor the actions of the Trustees of the Trachte ESOP, including the Trachte Trustee Defendants.

155.    Upon information and belief, the Trachte Director Defendants knew of certain material facts, which were unknown to the Trachte Trustee Defendants and which the Trachte Trustee Defendants needed to know in order to protect the Trachte ESOP, but the Trachte Director Defendants failed to disclose these facts to the Trachte Trustee Defendants.

156.    By (A) failing to properly appoint, monitor and remove the Trachte Trustee Defendants,  (B) directing or suggesting that the Trachte Trustee Defendants cause the Trachte ESOP to engage in the 2007 Transaction and/or (C) failing to disclose to the Trachte Trustee Defendants certain material facts about the 2007 Transaction, the Trachte Director Defendants breached their fiduciary duties under ERISA by failing to discharge their duties with respect to the Trachte ESOP solely in the interest of the participants and beneficiaries (1) for the exclusive purpose of providing benefits to the participants and beneficiaries, and (2) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and like aims, all in violation of ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B), because they had in their possession information suggesting that a

prudent fiduciary acting on behalf of the Trachte ESOP would not have entered into the 2007 Transaction.

**COUNT IX**

**(VIOLATION OF ERISA § 502(a)(3) AGAINST
DEFENDANTS ALLIANCE AND PAGELOW ON BEHALF OF THE CLASS)**

157.    Plaintiffs repeat and incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

158.    Defendants Alliance and  Pagelow knew or should have known of the existence of the Trachte ESOP and had actual or constructive knowledge that the Trachte Defendant Trustees caused the Trachte ESOP to pay more than adequate consideration for the Trachte stock purchased from Defendants Alliance and Pagelow.  Nonetheless, Defendants Alliance and Pagelow enabled the Trachte Defendant Trustees to engage in the 2007 Transaction.

159.    By knowingly participating in the foregoing breaches of fiduciary duty of ERISA § 404(a), 29 U.S.C. § 1104(a), and § 406(a), 29 U.S.C. § 1106(a), by the Trachte Trustee Defendants through the sale of their stock to the Trachte ESOP, Defendants Alliance and Pagelow are liable to disgorge any benefit that they received which is traceable to such breaches, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

160.    Upon information and belief, the proceeds Defendants Alliance and Pagelow received from the sale of Trachte stock to the Trachte ESOP are traceable because, in order to obtain the tax benefits from the sale, the proceeds must be invested in qualified replacement property (generally stocks and bonds or other debt instruments issued by United States operating companies) pursuant to Section 1042 of the Internal Revenue Code.

161.    By knowingly participating in the foregoing breaches of fiduciary duty of ERISA § 404(a), 29 U.S.C. § 1104(a), and § 406(a), 29 U.S.C. § 1106(a), by the Trachte Trustee

Defendants through the sale of their stock to the Trachte ESOP, Defendants Alliance and Pagelow may also be ordered to rescind the sale of their shares to the Trachte ESOP, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

**COUNT X**

**(VIOLATION OF ERISA § 406(a)(1)(D) AGAINST
DEFENDANT FENKELL ON BEHALF OF THE CLASS)**

162.    Plaintiffs repeat and incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

163.    Pursuant to the terms of the Plan, Trachte had the authority to appoint the Trachte ESOP Trustees and to direct them to purchase Trachte stock.  Based on, among other things, the statements made by Trachte management at the 2007 Town Hall Meeting, the Trachte Director Defendants performed the functions assigned to Trachte in its role as the Trachte ESOP Administrator.

164.    Defendant Fenkell was a member of the Trachte Board of Directors at the time of the 2007 Transaction and was a party in interest to the Trachte ESOP.

165.    As a fiduciary of the Alliance ESOP at the time of the 2007 Transaction, Defendant Fenkell was prohibited from causing the Trachte ESOP to engage in a transaction, when he knew or should have known that the transaction constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest of any assets of the Trachte ESOP.

166.    Upon information and belief, Defendant Fenkell was a participant in the Trachte Phantom Stock Plan.

167.    Under the terms of the Trachte Phantom Stock Plan, Defendant Fenkell was entitled to a benefit when there was a change of control of Trachte, and the amount of that benefit was based on the value of Trachte stock at the time of the change of control.

168.     By directing the Trachte Trustee Defendants to engage in the 2007 Transaction, Defendant Fenkell caused the Trachte ESOP to engage in a transaction, when he knew or should have known that such transaction constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest of any assets of the Trachte ESOP in violation of ERISA § 406(a)(1)(D).

## COUNT XI

### (VIOLATION OF ERISA § 406(b) AGAINST
### DEFENDANT FENKELL ON BEHALF OF THE CLASS)

169.     Plaintiffs repeat and incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

170.     As a fiduciary of the Trachte ESOP at the time of the 2007 Transaction, Defendant Fenkell was prohibited from engaging in transactions involving assets of the Trachte ESOP in his own interest or for his own account, from acting on behalf of someone whose interests were adverse to the plan or its participants and beneficiaries, and from receiving any consideration for his own personal account from any party dealing with the plan in connection with a transaction involving the Trachte ESOP.

171.     Upon information and belief, Defendant Fenkell was a participant in the Trachte Phantom Stock Plan.

172.     Under the terms of the Trachte Phantom Stock Plan, participants were entitled to payments based on the value of Trachte stock when there was a change of control of Trachte.

173.     As such, Defendant Fenkell's payment from the Trachte Phantom Stock Plan was based on the same value of Trachte as placed on Trachte for the Spin-off and Buyback.

174.     By directing the Trachte Trustee Defendants to engage in the 2007 Transaction, Defendant Fenkell violated his fiduciary duties under ERISA by dealing with the assets of the

Trachte ESOP in his own interest or for his own account and by receiving consideration for his

own personal account from a party dealing with the Trachte ESOP in connection with a

transaction involving the assets of the Trachte ESOP in violation of ERISA § 406(b)(1) and (3),

29 U.S.C. § 1106(b)(1) and (3).

**COUNT XII**

**(VIOLATION OF ERISA § 405(A) AGAINST TRACHTE
DIRECTOR DEFENDANTS ON BEHALF OF THE CLASS)**

175.    Plaintiffs repeat and incorporate the allegations contained in the foregoing

paragraphs as if fully set forth herein.

176.    As members of the Board of Directors of Trachte at the time of the 2007

Transaction, the Trachte Director Defendants were fiduciaries of the Trachte ESOP.

177.    As fiduciaries of the Trachte ESOP, the Trachte Director Defendants may be

liable, in addition to any other liability for their own personal acts, for the breach of fiduciary

responsibility of another fiduciary with respect to the Trachte ESOP.

178.    The Trachte Director Defendants, by directing the Trachte Trustee Defendants to

cause the Trachte ESOP to engage in the 2007 Transaction, by selling shares of stock to the

Trachte ESOP for more than fair market value, and by otherwise failing to take steps to protect

the Trachte ESOP in the 2007 ESOP transaction, including obtaining a valuation of the Alliance

and AH Transition stock shares, breached their fiduciary duties under ERISA:

      a.    by knowingly participating in an act or omission of such other fiduciaries,

           the Trachte Trustee Defendants, knowing that such act or omission was a

           breach;

      b.    by failing to comply with the duties imposed on them by ERISA

           § 404(a)(1), 29 U.S.C. § 1104(a)(1), in the administration of the specific

responsibilities which gave rise to their status as fiduciaries, enabled the Trachte Trustee Defendants to commit a breach; and

c.    by knowing of the breach by the Trachte Trustee Defendants and failing to make reasonable efforts under the circumstances to remedy the breach;

and, as such, are liable for the breaches of fiduciary responsibility of the Trachte Trustee Defendants, pursuant to ERISA § 405(a)(1)-(3), 29 U.S.C. § 1105(a)(1)-(3).

## ENTITLEMENT TO RELIEF

179.    By virtue of the violations of ERISA described in the preceding paragraphs, Plaintiffs are entitled to sue the fiduciaries who committed the breaches of fiduciary duty described therein pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) for relief on behalf of the Alliance and Trachte ESOPs as provided in ERISA § 409, 29 U.S.C. § 1109, including recovery for the Alliance and Trachte ESOPs of any losses to the Alliance and Trachte ESOPs resulting from each such breach, and such other equitable or remedial relief as the court may deem appropriate.

180.    Plaintiffs are entitled to sue Defendants Alliance and Pagelow pursuant to ERISA § 502(a)(3), whether or not they are fiduciaries, for appropriate equitable relief including disgorgement of profits traceable to their knowing participation in the forgoing breaches or rescission of the 2007 Transaction, whichever is in the best interests of the Trachte ESOP.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants on each Count of the Complaint and the following relief:

1.    An order rescinding the Spin-off and restoring the accounts of members of the Sub-class in the Alliance ESOP.

2.    An order requiring each fiduciary alleged herein to have breached his fiduciary duty to the Alliance and Trachte ESOPs to jointly and severally pay such amount to the Alliance and Trachte ESOPs as is necessary to make the Alliance and Trachte ESOP whole for any losses which resulted from said breaches of fiduciary duty or by virtue of liability pursuant to ERISA § 405, 29 U.S.C. § 1105.

3.    An order requiring (a) the disgorgement of profits made by the Selling Defendants, (b) rescission of the purchase of stock from the Selling Defendants, (c) a declaration of a constructive trust of the assets of the Trachte ESOP held by the Selling Defendants, or (d) any other appropriate equitable relief against the Selling Defendants, whichever is in the best interest of the Trachte ESOP.

4.    An order requiring the proceeds of any recovery for the Trachte ESOP to be allocated to the accounts of participants in the Trachte ESOP in proportion to the injury that they suffered as a result of the breach of fiduciary duty.

5.    An order requiring the forfeiture of any interest in the Trachte ESOP of any fiduciary alleged to have breached his fiduciary duty to the Plan to the extent necessary after any recovery for the Trachte ESOP to make whole the innocent participants of the Trachte ESOP.

6.    A declaration pursuant to ERISA that the Defendants have violated their fiduciary duty in the manner described.

7.    An injunction preventing any of the breaching fiduciaries from acting as fiduciaries for any plan that covers the employees of Trachte.

8.    An order removing the Trachte Trustee Defendants from their role as such for the Trachte ESOP and appointing an Independent Fiduciary to manage the Trachte ESOP.

9.     The cost of the suit, including attorneys' fees under ERISA § 502(g)(1), 29 U.S.C.

§ 1132(g)(1), and this Court's inherent equitable authority and powers.

10.     Pre-judgment and post-judgment interest.

11.     Other such and further relief as the Court deems appropriate.

Dated: June 30, 2009                      Respectfully submitted,


                               s/ Clifford Joe Cavitt
                              Marie A. Stanton
                              Clifford Joe Cavitt
                              **HURLEY, BURISH & STANTON, S.C.**
                              33 East Main Street, Suite 400
                              Madison, WI 53703
                              (608) 257-0945 Telephone
                              (608) 257-5764 Facsimile
                              mstanton@hbslawfirm.com
                              jcavitt@hbslawfirm.com

                              R. Joseph Barton
                              Karen L. Handorf
                              **COHEN, MILSTEIN, SELLERS**
                              **& TOLL, P.L.L.C.**
                              1100 New York Avenue, N.W.
                              West Tower, Suite 500
                              Washington, DC 20005-3934
                              (202) 408-4600 Telephone
                              (202) 408-4699 Facsimile
                              JBarton@cohenmilstein.com
                              KHandorf@cohenmilstein.com

Marc I. Machiz
**COHEN, MILSTEIN, SELLERS & TOLL, P.L.L.C.**
255 South 17th Street
Suite 1307
Philadelphia, PA 19103
(267) 773-4680 Telephone
(267) 773-4690 Facsimile
MMachiz@cohenmilstein.com

*Counsel for Plaintiffs*