# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

CAROL CHESEMORE, DANIEL DONKLE,
THOMAS GIECK, MARTIN ROBBINS, and
NANNETTE STOFLET, on behalf of
themselves, Individually, and on Behalf of All
Others Similarly Situated,

      Plaintiffs,

      v.

ALLIANCE HOLDINGS, INC., DAVID B.
FENKELL, PAMELA KLUTE, JAMES
MASTRANGELO, STEPHEN  W.
PAGELOW, JEFFREY A. SEEFELDT,
ALPHA INVESTMENT CONSULTING
GROUP, LLC, and JOHN MICHAEL
MAIER

      Defendants,

and

TRACHTE BUILDING SYSTEMS, INC.
EMPLOYEE STOCK OWNERSHIP PLAN
and ALLIANCE HOLDINGS, INC.
EMPLOYEE STOCK OWNERSHIP PLAN
AND TRUST,

      Nominal Defendants.

Case No. 09-CV-000413

Judge William M. Conley

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' <u>MOTION FOR CLASS CERTIFICATION</u>

# TABLE OF CONTENTS

**Page**

BACKGROUND ............................................................................................................. 1

   I. Overview of the Claims ........................................................................................ 1

      A. Claims Against the Alliance Defendants ..................................................... 2

      B. Claims Against the Trustee Defendants ....................................................... 3

      C. Claims Against the Alpha Defendants ......................................................... 4

      D. Claims Against Defendant Pagelow ............................................................ 4

   II. Factual Background Relevant to Plaintiffs' Claims ............................................ 4

      A. The August 29, 2007 Transaction ............................................................... 6

      B. The Effect of the Transaction on Trachte, the Trachte ESOP and the Trachte ESOP Participants ........................................................................... 7

ARGUMENT ................................................................................................................. 8

   I. Plaintiffs' Claims For Breach of Fiduciary Duty Under ERISA Are Uniquely Appropriate For Class Treatment ....................................................................... 9

      A. ERISA Section 502(a)(2) Claims Are Uniquely Appropriate For Class Certification Because These Claims Must be Brought "on Behalf of the Plan" ......... 9

      B. Plaintiffs' ERISA Section 502(a)(3) Claims Brought on Behalf of the Plan Are Also Uniquely Appropriate For Class Certification ........................... 10

   II. Plaintiffs Are Members of And Have Properly Defined The Class & Subclass ............. 11

      A. The Class and Subclass Are Sufficiently and Properly Defined .............................. 11

      B. Plaintiffs Have Standing To Assert Claims ................................................. 12

   III.    The Requirements of Rule 23(a) Are Satisfied ........................................ 13

      A. The Class And Subclass Is So Numerous That Joinder Of All Members Is Impracticable ............................................................................................ 13

      B. The Commonality Requirement of Rule 23(a) is Satisfied ........................ 14

      C. The Typicality Requirement Is Satisfied .................................................... 16

         1. Plaintiffs' Claims Are Typical of the Class and Subclass ................... 16

         2. There Are No Defenses Unique to the Proposed Class Representatives ............. 18

      D. Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of the Class And Subclass ........................................................... 19

         1. The Interests of the Proposed Class Representatives Are Identical To Those of the Absentee Members of the Class and Subclass ................... 20

         2. The Proposed Representatives Have Demonstrated Their Willingness to Fulfill Their Duties To The Class and the Subclass ........................... 22

## TABLE OF CONTENTS
### (continued)

**Page**

3.  Plaintiffs' Are Represented By Qualified and Competent Counsel And Plaintiffs' Counsel Should Be Appointed Class Counsel .................................... 25

IV.  The Class Is Properly Certified Under Rule 23(b) ................................................. 27

A.  The Class Should Be Certified Under Rule 23(b)(1) ............................................. 27

   1.  Certification Under Rule 23(b)(1)(B) is Proper ................................................ 27

   2.  Certification of a Class Under Rule 23(b)(1)(A) is Also Proper ......................... 29

B.  The Claims of the Class & Subclass Can Be Certified Under Rule 23(b)(2) ............ 30

   1.  Defendants Have Acted On Grounds Generally Applicable To the Class & Subclass ......................................................................................................... 31

   2.  The Complaint Seeks Declaratory & Injunctive Relief ..................................... 31

      a.  A Declaration Against the Fiduciaries Is A Proper Prelude To Other Injunctive & Monetary Relief ........................................................... 31

      b.  Rescission Requires Declaratory Relief ........................................... 31

      c.  Disgorgement Requires Injunctive Relief ....................................... 32

      d.  A Constructive Trust Is Declaratory Relief ...................................... 32

      e.  Claims For Monetary Relief Can Be Certified Under Rule 23(b)(2) ........... 32

   3.  Plaintiffs' ERISA § 502(a)(3) Claims Unquestionably Can Be Certified Under Rule 23(b)(2) As The Only Relief Is Equitable ....................................... 33

   4.  Plaintiffs' ERISA § 502(a)(2) Claims Also Seek Equitable Relief .................... 33

C.  The Claims Also Meet The Requirements of Rule 23(b)(3) .................................... 34

   1.  Common Issues Predominate Over Any Individual Issues ................................. 34

   2.  A Class Action is A Superior Method of Resolving These Claims .................... 35

CONCLUSION ................................................................................................................. 36

## INTRODUCTION

Pursuant to Fed. R. Civ. P. 23, Plaintiffs respectfully submit this memorandum of law in support of Plaintiffs' Motion for Class Certification of the following Class and Subclass:[1]

> The Class:  Participants in the Trachte ESOP at any time from August 29, 2007 to the present who had an account or received an allocation which they did not subsequently forfeit under the terms of the Plan and the beneficiaries of such participants.

> The Subclass:  All persons who were participants or beneficiaries of the Alliance ESOP at the time of the 2007 Transaction and whose accounts were transferred to the Trachte ESOP on or about August 29, 2007 as part of the 2007 Transaction.

This action satisfies the requirements of Rule 23 and is uniquely suited for class certification.  As each of the proposed class representatives are similarly situated and possess claims that are, in all material respects, identical to the claims of the Class and Subclass that they propose to represent, certification of the proposed Class and Subclass is appropriate.

## BACKGROUND

**I.**    Overview of the Claims

This is a putative class action brought on behalf of participants and beneficiaries of the Trachte Building Systems, Inc. Employee Stock Ownership Plan ("Trachte ESOP") alleging that Defendants[2] violated the Employee Retirement Income Security Act of 1974 ("ERISA") in connection with the August 29, 2007 spinoff of their accounts in the Alliance Holdings, Inc.

---

[1]    Excluded from the Class and the Subclass are the Defendants, any fiduciary of the Trachte ESOP at the time of the 2007 Transaction, any fiduciary of the Alliance ESOP at the time of the 2007 Transaction, members of their immediate families, and the legal representatives, heirs, successors or assigns of any such excluded party.

[2]    Defendants fall into four groups: (1) Alliance Holdings, Inc. and David B. Fenkell (the "Alliance Defendants"), (2) James Mastrangelo, Jeffrey A. Seefeldt, and Pamela Klute (the "Trachte Trustee Defendants"), (3) Alpha Investment Consulting Group, LLC, and John Michael Maier (the "Alpha Defendants") the purported "independent fiduciary," and (4) Stephen W. Pagelow, the former Chief Executive Officer of Trachte and Chairman of the Trachte Board of Directors, who sold his Trachte shares to the Trachte ESOP.

Employee Stock Ownership Plan and Trust ("Alliance ESOP") to the Trachte ESOP and the related purchase of all outstanding stock of Trachte Building Systems, Inc. ("Trachte") by the Trachte ESOP ("the 2007 Transaction"). Prior to August 29, 2007, Trachte was wholly-owned by Alliance Holdings, Inc. (or its subsidiaries) and Steven Pagelow ("Pagelow") (then Chief Executive Officer of Trachte and Chairman of the Trachte Board of Directors), and Trachte employees were participants in the Alliance ESOP. Am. Compl. (Dkt. #78) ¶¶ 2, 13, 18. In connection with the 2007 Transaction, the Alliance ESOP accounts of the current and former employees of Trachte (worth approximately $8 million) were spun-off to the newly created Trachte ESOP, their Alliance shares were exchanged for Trachte shares, and the Trachte ESOP purchased the remaining shares of Trachte from Alliance and Pagelow ("Alliance and Pagelow") for $26,677,523 million in a leveraged transaction, financed primarily by a bank loan. *Id.* ¶¶ 127-128. A little over a year later, Trachte was in violation of its loan covenants and the independent appraiser for the Trachte ESOP had concluded that the shares of Trachte were worthless. *Id.* ¶¶ 130-132. The Complaint alleges that by engaging in the 2007 Transaction, Defendants essentially bankrupted Trachte and turned $8 million worth of retirement accounts of employees, many of whom had spent nearly all their working lives at Trachte, into *nothing*. *Id.* ¶¶ 138-39.

**A.      Claims Against the Alliance Defendants**

The Complaint alleges that, as a fiduciary of the Alliance ESOP at the time of the 2007 Transaction, Alliance violated ERISA § 208, 29 U.S.C. § 1108, as well as terms of the plan, when it caused stock held in the Trachte participants' Alliance ESOP accounts to be transferred to the Trachte ESOP. *Id.* ¶¶ 143-148. As a result of this spin-off, immediately after the transfer the accounts of the Trachte employees were worth less than they were before the transfer because as a condition of the spin-off transaction, the Alliance and AH Transition stock was

2

immediately exchanged for overpriced Trachte stock which would immediately lose value due to the heavy debt Trachte incurred in order to finance the purchase of Trachte shares. *Id.* ¶ 147.

The Complaint further alleges that, as the sole trustee of the Alliance ESOP at the time of the 2007 Transaction, Defendant Fenkell violated ERISA § 404, 29 U.S.C. § 1104, when he implemented the transfer of the Trachte participants' Alliance ESOP accounts to the Trachte ESOP, and that Defendant Fenkell also violated ERISA § 406, 29 U.S.C. § 1106 by causing the Alliance ESOP to engage in a transaction which resulted in a payout to him from a Trachte Phantom Stock Plan. *Id.*. ¶¶ 149-171. Plaintiffs also allege that Alliance, which had the authority to remove Defendant Fenkell as Trustee of the Alliance ESOP, violated ERISA § 404, 29 U.S.C. § 1104, by failing to undo the transfer, remove Fenkell as trustee, or otherwise correct Fenkell's fiduciary violations. *Id.* ¶¶ 172-177.

### B.    Claims Against the Trustee Defendants

With respect to the Trustee Defendants, the Complaint alleges that they violated ERISA § 404, 29 U.S.C. § 1104, and § 406 , 29 U.S.C. § 1106, because:  (1) they caused or permitted the Trachte ESOP to engage in the transaction without undertaking an appropriate investigation of the 2007 Transaction as proposed; (2) they knew or should have known that Defendant Alpha had no authority to direct them under the terms of the Trachte ESOP Plan Document and that Alpha had not engaged in a prudent investigation of the 2007 Transaction; (3) they were aware of facts by which they either knew or should have known that the 2007 Transaction was imprudent and not in the best interest of the ESOP's participants and beneficiaries; (4) they engaged in the 2007 Transaction in order to save their jobs; and (5) by causing or permitting the Trachte ESOP to purchase Trachte stock from Alliance and Pagelow, they caused or permitted the Trachte ESOP to engage in a party in interest transaction. *Id.* ¶¶ 178-187.

**C.      Claims Against the Alpha Defendants**

The Complaint alleges that the Alpha Defendants violated their fiduciary duties under ERISA § 404, 29 U.S.C. § 1104, and that they violated ERISA § 406, 29 U.S.C. § 1106, by causing the Trachte ESOP to engage in the 2007 Transaction.  *Id.* ¶¶ 188-197.

**D.      Claims Against Defendant Pagelow**

Finally, the Complaint alleges that Defendant Pagelow violated ERISA § 405, 29 U.S.C. § 1105, and § 502, 29 U.S.C. § 1132, because: (1) he was a fiduciary of the Trachte ESOP because he appointed Alpha to be an independent fiduciary of the Trachte ESOP; (2) he breached his fiduciary duties by purportedly authorizing Alpha to direct the Trachte Trustees without properly appointing Alpha as the Administrator under the terms of the Trachte ESOP Plan Document; and (3) he received proceeds from his sale of stock to the ESOP, which constituted a prohibited transaction under ERISA.  *Id.* ¶¶ 198-208.

As relief, Plaintiffs seek to restore losses to the Trachte ESOP and obtain equitable relief to remedy Defendants' ERISA violations.  Compl. ¶¶ 209, 210.

## II.      Factual Background Relevant to Plaintiffs' Claims

Plaintiffs Carol Chesemore, Daniel Donkle, Thomas Gieck, Martin Robbins, and Nannette Stoflet are current[3] and former employees of Trachte many of whom have spent the majority of their working lives at the 100-year old Wisconsin company.  Carol Chesemore was employed at Trachte for approximately 18 years, from August 1988 until May 2006, in various accounting and administrative positions.  Ex. 1 (Deposition of Carol A. Chesemore, Jan. 26, 2010) at 10:9-12, 40:5-8.  Ms. Chesemore was a participant in the Alliance ESOP at the time of the spin-off in connection with the 2007 Transaction, and as of August 29, 2007, has been a

---

[3]      When she joined the current action as a named plaintiff in January 2010 (see Dkt. # 78), Ms. Stoflet was still employed at Trachte.  However, as of January, 2011, Ms. Stoflet has been laid off.

vested participant in the Trachte ESOP.  Ex. 1 at 46:7-20, 48: 22-49:6.  Dan Donkle was

employed in various positions within the manufacturing department of Trachte for 10 years, from

1998 until 1998.  Ex. 2 (Deposition of Daniel E. Donkle, Jan. 28, 2010) at 9:12-16, 12:12-15.

Mr. Donkle was a participant in the Alliance ESOP at the time of the spin-off in connection with

the 2007 Transaction, and as of August 29, 2007, has been a vested participant in the Trachte

ESOP.  Ex. 2at 14:19-15:1, 34:17.  Until he was laid off on April 30, 2009, Thomas Gieck was

employed as a draftsman at Trachte for 40 years.  Ex. 3 (Deposition of Thomas L. Gieck, Jan. 28,

2010) at 10:21-25, 13:21-14:2.  Mr. Gieck was a participant in the Alliance ESOP at the time of

the spin-off in connection with the 2007 Transaction, and as of August 29, 2007, has been a

vested participant in the Trachte ESOP.  Ex. 3, 35:13-16, 64:7-15.  Martin Robbins was

employed at Trachte, in various capacities – including as a drafting technician, sales coordinator,

customer service and quality control manager – for approximately 37 years, from 1972 until he

was also laid off on April 30, 2009.[4]  Ex. 4 (Deposition of Martin P. Robbins, Jan. 27, 2010) at

14:21-25.  Mr. Robbins was a participant in the Alliance ESOP at the time of the spin-off in

connection with the 2007 Transaction, and as of August 29, 2007, has been a vested participant

in the Trachte ESOP.  Ex. 4 at 30:2-5.  Finally, Nannette Stoflet was employed at Trachte for

over 24 years, from 1986 until early 2011, when she was effectively laid off.  Ex. 5 (Deposition

of Nannette Stoflet, Apr. 27, 2010) at 10:11-14, 17:9-11.  While at Trachte, Ms. Stoflet held

various positions within Trachte and Trachte's subsidiary, Trac Rite.  *Id.* at 10:16.  Ms. Stoflet

was a participant in the Alliance ESOP at the time of the spin-off in connection with the 2007

---

[4]       Mr. Gieck and Mr. Robbins have not worked at Trachte since January 2009, when they were
placed on "lay-off status."  In April 2009, they, along with approximately a dozen other Trachte
employees, were permanently laid off.  *See* Gieck Dep. 13-14, 16-17; Robbins Dep. 14-15.

Transaction, and as of August 29, 2007, has been a vested participant in the Trachte ESOP.  Ex.

5 at 18:23-19:4, 182:2-16.

Trachte is a Wisconsin corporation, founded in 1901, whose primary business is

designing and manufacturing customized steel self-storage systems.  Alliance is a holding

company that markets itself to individual shareholders of small and medium-sized privately held

operating companies who want to sell their stock in the operating company and defer taxation on

the sale.  Am. Compl. ¶¶ 76, 80.  Alliance sponsors the Alliance ESOP which directly, or

indirectly through AH Transactions, Inc., owns substantially all of Alliance's outstanding stock.

*Id..* ¶ 78.  When an operating company is purchased by Alliance, the operating company's

employees become participants in the Alliance ESOP and their Alliance accounts are spun off

when the operating company is sold.  *Id..* ¶ 79.  In conformity with this business plan, Alliance

purchased an 80 percent ownership interest in Trachte in 2002 by purchasing common stock held

by a previous employee stock ownership plan sponsored by Trachte ("the Old Trachte ESOP").

*Id.* ¶ 85.

In 2006, Alliance began looking for a buyer for Trachte.  *Id..* ¶ 88.  When Alliance was

unable to obtain the price it wanted for Trachte from a third-party in an arms-length transaction,

Alliance decided to sell Trachte to Trachte's own employees through a newly-created ESOP.  *Id.*

¶ 93.  In early 2007, Defendants Jeffrey Seefeldt and James Mastrangelo, acting as the new

Trachte "ESOP Representatives," began discussions with Defendant Fenkell concerning the new

Trachte ESOP's acquisition of Trachte.  *Id.* ¶ 94.

### A.    The August 29, 2007 Transaction

On or about April 19, 2007, the Alliance ESOP, Alliance, Pagelow, and the new Trachte

ESOP signed a Letter of Intent setting forth the terms under which the Trachte ESOP would

purchase Trachte in a series of interrelated steps:  (1) the Trachte employees' Alliance ESOP

6

accounts, consisting of Alliance and AH Transition stock, would be transferred into the Trachte ESOP; (2) the transferred Alliance and AH Transition stock would be exchanged for Trachte stock; and (3) the Trachte ESOP would purchase the remaining common shares of Trachte stock from Alliance and Pagelow.  *Id.*  ¶¶ 95, 96.  In addition, Trachte would make certain payments to Alliance employees under the Phantom Stock Plan.  *Id.*  Sometime between April 19, 2007 and August 1, 2007, the new Trachte ESOP was established.  *Id.* ¶ 100.

As part of the August 29, 2007 Transaction, the Alliance ESOP accounts of the current and former employees of Trachte (worth approximately $8 million), including the named plaintiffs, were spun-off to the newly created Trachte ESOP, their Alliance shares were exchanged for Trachte shares, and the Trachte ESOP purchased the remaining shares of Trachte from Alliance and Pagelow for $26,677,523 million in a leveraged transaction (financed primarily by a bank loan).  *Id.* ¶¶ 127-128.  The Trachte ESOP used a $26.6 million loan from Trachte to purchase the remaining Trachte shares.  *Id*. ¶ 128.  Trachte borrowed the money to loan to the ESOP, borrowed an additional $5.6 million to redeem preferred and common stock held by Alliance and Pagelow, and paid $4.9 million in phantom stock payments to Alliance employees, including Defendant Fenkell.  *Id*.

**B.    The Effect of the Transaction on Trachte, the Trachte ESOP and the Trachte ESOP Participants**

The 2007 Transaction had a devastating impact on Trachte and the retirement accounts of its employees.  As of December 31, 2007, four months after the 2007 Transaction, the overall net assets available for the payment of benefits listed in the 2007 Trachte ESOP 5500 Report was a *negative* $9.3 million.  *Id.*  ¶ 138.  The account balances of each of the named Plaintiffs declined by approximately 50% within this same four month period.  *Id.*  In order to increase its EBITDA to service its loans, Trachte reduced its contributions to its 401k plan, reduced the amount of paid

sick leave, cut the amount of medical benefits provided employees and shifted the amount of medical premiums to employees, terminated and furloughed employees, cut the hours and/or workdays of its remaining employees, and forced employees to take two pay cuts in 2009. *Id.* ¶¶ 134, 135.  A little over a year later after the 2007 Transaction, Trachte was in violation of its loan covenants and the independent appraiser for the Trachte ESOP had concluded that the shares of Trachte were worthless. *Id.* ¶¶ 130-132.  The Trachte participants and beneficiaries were informed that, as of December 31, 2008, the Trachte stock held by the Trachte ESOP is worthless.

## ARGUMENT

Rule 23(c)(1) requires the court to determine as soon as practicable whether to certify the action as a class action.  Fed. R. Civ. P. Rule 23(c)(1); *Thompson v. Ret. Plan for Emps. of S.C. Johnson & Sons, Inc.*, 265 F.R.D. 405, 410 (E.D. Wis. 2010) (certifying class prior to deciding the merits of ERISA action because doing otherwise "is only appropriate on rare occasions involving 'exceptional' cases").  To be certified, a class must meet all of the requirements of Rule 23(a) and must satisfy at least one of the three subsections of Rule 23(b).  *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992).  If the requirements of Rule 23 are satisfied, a plaintiff is entitled to pursue his claim as a class action.  *Shady Grove Orthopedics Assocs., P.A. v. Allstate Ins. Co.*, 130  S. Ct. 1431, 1437 (2010) (finding that a district court has no discretion to deny class because "[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action."); *Neil v. Zell*, 2011 WL 833350, *2 (N.D. Ill. March 4, 2011) (citing this "categorical rule" from *Shady Grove* and certifying class for ERISA fiduciary breach claim).  This case readily meets the requirements of Rule 23(a) and satisfies Rules 23(b)(1) and (b)(2), as well as (b)(3).

I.     **Plaintiffs' Claims For Breach of Fiduciary Duty Under ERISA Are Uniquely Appropriate For Class Treatment**

Litigation brought pursuant to ERISA is generally well suited for class treatment.  *In re Amsted Indus. ERISA Litig.*, No. 01-CV-2963, 2002 WL 31818964, at *2 (N.D. Ill. Dec. 16, 2002) (finding a "class action is … proper" where an ERISA claim seeks to restore full value of retirement accounts and adjudicate rights of former and current employees).

A.     **ERISA Section 502(a)(2) Claims Are Uniquely Appropriate For Class Certification Because These Claims Must be Brought "on Behalf of the Plan"**

ERISA Section 502(a)(2) permits a participant or beneficiary to bring a lawsuit *on behalf of the Plan* for relief under ERISA Section 409.  29 U.S.C. § 1132(a)(2).  In turn, ERISA § 409 imposes personal liability on plan fiduciaries who breach their fiduciary duties "to make good to such plan any losses *to the plan* resulting from each such breach … ."  29 U.S.C. § 1109 (emphasis added).  An action under ERISA § 502(a)(2) is brought in a representative capacity on behalf of the plan because such claims focus on the injury to the plan from the fiduciary's alleged breach, rather than on injury to the individualized participants.  *Harzewski v. Guidant Corp.*, 489 F.3d 799, 804 (7th Cir. 2007); *Graden v. Conexant Sys.*, *Inc.,* 496 F.3d 291, 295 (3d Cir. 2007) (explaining that "suits under [502(a)(2)] are derivative in nature" because the "various parties … entitled to bring suit . . . do so on behalf of the plan itself."). Given the representative nature of the suit, when a plaintiff is successful in recovering losses from a defendant, the plan takes legal title to any recovery, which then inures to the benefit of its participants and beneficiaries.  *Harzewski,* 489 F.3d at 804-05.  Under this statutory scheme, the issues raised in a claim of fiduciary breach by a participant on behalf of a plan are common to all participants of the plan.  *Id.* at 804.  For this reason, courts routinely grant class treatment in cases, such as this one, involving claims for breach of fiduciary duty under ERISA.  *George v. Kraft Foods Global, Inc.*, 270 F.R.D. 355, 366 (N.D. Ill. 2010).  A multitude of courts have certified a class under

9

ERISA § 502(a)(2).  *See Lively v. Dynegy, Inc.,* No. 05-CV-00063-MJR, 2007 WL 685861, at

*16 (S.D. Ill. March 2, 2007) (certifying class on plaintiffs' ERISA breach of fiduciary claim and

citing cases).  Class certification of the claims in this case is similarly appropriate, as the claims

are representative actions on behalf of the plan.

**B.      Plaintiffs' ERISA Section 502(a)(3) Claims Brought on Behalf of the Plan
            Are Also Uniquely Appropriate For Class Certification**

ERISA § 502(a)(3) permits a participant to seek equitable relief against any person "for

the purpose of 'redress[ing any] violations or . . . enforc[ing] any provisions' of ERISA or an

ERISA plan." *Harris Trust & Sav. Bank v. Solomon Smith Barney, Inc.* 530 U.S. 238, 239 (2000)

(alterations in original).  As ERISA § 502(a)(3) has "no limit . . . on the universe of possible

defendants," such actions may be brought against fiduciaries and non-fiduciaries alike.  *Id.*

(finding that an action under ERISA § 502(a)(3) against non-fiduciaries for engaging in self-

dealing transaction "to recover money or other property *for the trust*" was proper) *id.* at 239; *see

also Chesemore v. Alliance Holdings, Inc.*, No. 09-cv-413-wmc, 2011 WL 857142, at *25 (W.D.

Wis. Feb. 17, 2011) (denying defendant's motion to dismiss ERISA § 502(a)(3) claims,

explaining that "§ 502(a)(3) provides a mechanism for pursuing equitable relief" from both

fiduciaries and from non-fiduciaries who knowingly participate in an ERISA violation).  Courts

have certified claims under ERISA § 502(a)(3) brought on behalf of the plan as *mandatory* class

actions.  *E.g., Tussey v. ABB, Inc.*, No. 06-04305-CV-NKL, 2007 WL 4289694, at *7 (W.D. Mo.

Dec. 3, 2007) (certifying ERISA § 502(a)(3) claims under Rule 23(b)); *In re Williams Cos.

ERISA Litig.*, 231 F.R.D. 416, 424-25 (N.D. Okla. 2005) (same).  Here, Plaintiffs' ERISA §

502(a)(3) claim alleges that "[b]y knowingly participating in the . . . breaches of fiduciary duty . .

. by the Trachte Trustee Defendants," Defendants Pagelow and Alliance are liable to disgorge

any benefit they received that is traceable to such breaches, and may also be ordered to rescind

the sale of their shares to the Trachte ESOP, "whichever is in the best interest of the Trachte

ESOP."  *See* Am. Compl. ¶¶ 206-208, 210 & Prayer for Relief.  Thus, Plaintiffs' 502(a)(3) claim

seeking equitable relief for the plan, is ideally suited for class certification.

**II.      Plaintiffs Are Members of And Have Properly Defined The Class & Subclass**

Before addressing Rule 23's express requirements, the Court makes an initial assessment

whether:  (1) the proposed class definition is definite, i.e., ascertainable, precise, and objective

and (2) the plaintiffs must have standing as members of the class they propose to represent.

*Ruppert v. Alliant Energy Cash Balance Pension Plan*, 255 F.R.D. 628, 633 (W.D. Wis. 2009).

**A.      The Class and Subclass Are Sufficiently and Properly Defined**

Rule 23 requires that a class certification order sufficiently define the class.  Fed. R. Civ.

P. 23(c)(1)(B); *see Alliance to End Repression v. Rochford*, 565 F.2d 975, 977-78 (7th Cir.

1977).  This merely requires that the members of the class are capable of being identified and

ascertained by objective measures, but does not require that all members of the class be presently

identifiable.  *See Davis v. Astrue*, 250 F.R.D. 476, 484 (N.D.Cal. 2008); *see also In re Plastics

Additives Antitrust Lit.*, 2006 WL 6172035 *14 (E.D. Pa. 2006 Aug. 31, 2006) ("A proposed

class is ascertainable, or identifiable, if its members can be ascertained by reference to objective

criteria); *see generally* C. Wright & A. Miller, Federal Practice and Procedure 590 (3d ed.)

(under Fed. R. Civ. P. 23, a class must not only meet the four perquisites listed in 23(a), but also

the additional prerequisite that the class be ascertainable and identifiable).  In ERISA cases

alleging breach of fiduciary duties, a class definition that includes all participants in the plan.

*E.g.*, *George*, 2010 WL 3386402, at *4 (finding that such a class, including future participants,

was sufficiently definite); *accord Neil v. Zell*, 2011 WL 833350, at *2 (N.D. Ill. Mar. 4, 2011)

11

(defining class as plan participants or beneficiaries at the time of the ESOP transaction).[5]  Here, the Subclass includes all Trachte employees whose accounts were spun-off from the Alliance ESOP into the Trachte ESOP (and their beneficiaries) in the 2007 Transaction.  Am. Compl. ¶ 29.  The Class includes the members of the Subclass plus all subsequent participants and beneficiaries of the Trachte ESOP.  *Id.*.  For example, Defendant Klute, who signed Trachte's Form 5500 for the plan administrator, identified 288 persons as members of the Subclass.  Ex. 6, Deposition of Pamela J. Klute, Feb. 9, 2011, at 202:7-15.  Thus, the Class and the Subclass are objectively defined.

###     B.      Plaintiffs Have Standing To Assert Claims

ERISA confers standing to sue under ERISA § 502(a) to those who are participants.  29 U.S.C. § 502(a)(2) & (3).  Under ERISA § 3(7), a participant includes "any employee or former employee … who is or *may become eligible* to receive a benefit of any type" from the plan.  29 U.S.C. § 1002(7) (emphasis added).  There appears to be no dispute that Plaintiffs are all participants in the Trachte ESOP.  Am. Compl. ¶¶ 8-12; Alliance Answ. ¶¶ 8-12, Trustee's Answ. ¶¶ 8-12, Pagelow Answ. ¶¶ 8-12.  Thus, there is no question that Plaintiffs have standing to sue on behalf of the Class.

The Seventh Circuit has also concluded that participant includes persons who cashed out of a defined contribution plan where, but for a violation of ERISA, they would be entitled to benefits (or would otherwise be a participant in the plan).  *Harzewski*, 489 F.3d at 804-05, 806; *see Berger v. Xerox Corp. Ret. Income Guarantee Plan*, 338 F.3d 755, 763 (7th Cir. 2003) (explaining "ERISA defines 'participants' to include former participants with a colorable claim

---

[5]      Even if the class definition needs further refinement, that is not reason to deny class; instead, the court can modify the class definition.  *E.g.*, *Kasten v. Saint-Gobain Performance Plastics Corp.*, 556 F.Supp.2d 941, 958 (W.D.Wis.  2008) (modifying class definition).

to benefits.").  It is undisputed that Plaintiffs were participants in the Alliance ESOP until the 2007 Transaction.  Am. Compl. ¶¶ 8-12; Alliance Answ. ¶¶ 8-12, Trustee's Answ. ¶¶ 8-12, Pagelow Answ. ¶¶ 8-12.  As the Complaint alleges that their accounts were transferred from the Alliance ESOP to the Trachte ESOP in violation of ERISA § 208, but for that illegal transfer, Plaintiffs would and should be participants in the Alliance ESOP.  *See* Am. Compl. ¶ 32.  As such, Plaintiffs have standing to sue for the relief on behalf of the Subclass for the claims against the Alliance Defendants.

## III.    The Requirements of Rule 23(a) Are Satisfied

To be certified, a class must satisfy all four requirements of Rule 23(a):

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representatives are typical of claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *Ruppert*, 255 F.R.D. at 632-33.  Here, the proposed Class and Subclass satisfy each of these requirements.

### A.    The Class And Subclass Is So Numerous That Joinder Of All Members Is Impracticable

Rule 23(a)(1) permits class treatment where "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Permissive joinder is usually deemed "impracticable" where the class members number 40 or more.  *Temme v. Bemis Co.,* No. 08-CV-090, 2009 WL 1505120, at *2 (E.D. Wis. May 2, 2009) (certifying class in ERISA action and holding that "determination [of numerosity requirement] is not a mere numerical threshold; as few as 40 members can render joinder impractical); *see also Musch v. Dumtar Indus., Inc.*, 252 F.R.D. 456, 460 (W.D. Wisc. 2008) (over 100 class members makes the class so numerous that joinder would be impracticable).

13

Here, Defendants have provided Plaintiffs with data and/or testimony concerning the proposed class and subclass that shows the Subclass contains approximately 288 members. Ex. 6 (Deposition of Pamela J. Klute, Feb. 9, 2011) at 202:7-15; *see also* Ex. 7 (Klute Deposition, Ex. 20 - Trachte ESOP Form 5500 for calendar year beginning 8/1/2007 and ending 12/31/2007). As the Class includes members of the subclass, in addition to participants employed by Trachte subsequent to the 2007 Transaction, the numerosity requirement of Rule 23(a) is readily satisfied.

### B.     The Commonality Requirement of Rule 23(a) is Satisfied

Rule 23(a)(2) requires the existence of "questions of law **or** fact common to the class." (emphasis added) Fed. R. Civ. P. 23(a). This is a permissive standard, thus, commonality is generally satisfied "[s]o long as [plaintiff's] and the class members' injuries arose out of the same violative conduct." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998); *see also Wagner v. NutraSweet Co*., 170 F.R.D. 448, 451 (N.D. Ill. 1997) (noting that some factual variations among class members will not defeat class certification so long as "there is at least one question of law or fact common to the class"). In making an assessment of commonality in ERISA fiduciary breach cases, the appropriate focus is on the conduct of the defendant, not the plaintiffs. *Lively*, 2007 WL 685861, at *8. Commonality requirements in ERISA cases are satisfied by the following common questions, among others: whether the defendants acted as fiduciaries; what duties, if any, were violated by the defendants with respect to the plan; and whether the plan was damaged by the alleged breaches. *Id.*

Similar to other ESOP transaction cases, the present case is based upon a single transaction, and involves multiple common questions of law and fact which pervade both the subclass and class members' claims. *Neil v. Zell*, 20ll WL 833350 (finding commonality

requirement satisfied in ERISA breach of fiduciary action arising from a single transaction).  For

example, common questions of law or fact applicable to members of the Subclass include:

> (a) whether Alliance violated Section 208 of ERISA, 29 U.S.C. § 1058, by
> spinning off Trachte participants from the Alliance ESOP when the Trachte
> participants did not receive benefits immediately after the transfer which were
> equal to or greater than the benefit they would have been entitled to receive
> immediately before the transfer (if the plan had then been terminated);
>
> (b) whether Defendant Fenkell breached his fiduciary duties of prudence and
> loyalty to the Trachte participants by failing to insure that, after the Spin-off of
> Trachte participants from the Alliance ESOP, the Trachte participants received
> benefits immediately after the transfer which were equal to or greater than the
> benefits they would have been entitled to receive immediately before the transfer
> (if the plan had then been terminated); and
>
> (c) whether the Trachte Trustee Defendants breached their fiduciary duties by
> failing to bring suit against Alliance and the Alliance ESOP fiduciaries for
> spinning off assets from the Alliance ESOP to the Trachte ESOP when the value
> of Trachte participant accounts in the Trachte ESOP was not equal to or greater
> than the value of Trachte participant accounts in the Alliance ESOP.

Am. Compl. ¶ 31.  Similarly, examples of the common questions of law or fact applicable to

members of the entire Class include:

> (a) whether the Alpha Defendants and/or the Trachte Trustee Defendants
> breached their fiduciary duties of prudence and loyalty by causing the Trachte
> ESOP to exchange shares of Alliance and AH Transition stock for over-priced
> Trachte stock;
>
> (b) whether the Alpha Defendants and/or the Trachte Trustee Defendants
> breached their fiduciary duties by causing or permitting the Trachte ESOP to
> purchase Trachte stock for more than "adequate consideration";
>
> (c) whether Defendant Pagelow is liable for the breach of fiduciary responsibility
> of another fiduciary;
>
> (d) whether the Plan has sustained losses and if so, what is the proper measure of
> such losses; and
>
> (e) whether Alliance and Pagelow are liable to disgorge any benefit that they
> received by knowingly participating in the breaches of fiduciary duty by the
> Trachte Trustee Defendants.

*Id.*  Accordingly, the commonality requirements of Fed. R. Civ. P. 23(a)(2) are satisfied here.

### C.   The Typicality Requirement Is Satisfied

Rule 23(a)(3) requires that "the claims **or** defenses of the representative parties [be]

typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3) (emphasis added).  In this

Circuit, the typicality requirement is satisfied if the claim "arises from the same event or practice

or course of conduct that gives rise to the claims of other class members "and the claims of the

plaintiff and the class members "are based on the same legal theory."  *Keele*, 149 F.3d at 595.

Courts focus on the conduct of the defendant and determine whether the putative class

representative and the members of the putative class claim similar injuries due to the defendant's

alleged actions.  *George*, 270 F.R.D. at 366-67 (certifying class and explaining that regardless of

intraclass factual differences, such as individual investment decisions, typicality requirement is

met in ERISA fiduciary breach action where the defendants' relevant conduct and the underlying

legal theory are the same for plaintiffs and other members of the proposed class); *see also*

*Wagner v. Nutrasweet Co.,* 95 F.3d 527, 534 (7th Cir. 1996) (vacating lower court's denial of

class certification and advising that on remand "[t]ypicality under Rule 23(a)(3) should be

determined with reference to the [defendant's] actions").  Here, Plaintiffs' claims are not only

typical of those of the class and subclass, they are identical, and there are no unique

defenses.**Plaintiffs' Claims Are Typical of the Class and Subclass**

By statutory definition, an action brought pursuant to ERISA § 502(a)(2) is brought "on

behalf of the plan" and any recovery must be paid to the plan.  29 U.S.C. § 1132(a)(2).  Courts

generally find that ERISA fiduciary breach cases meet the typicality requirement because the

"action is brought on behalf of the Plan, not the individual participants, so that Plaintiffs' claims,

of necessity, are typical of the claims of the members of the proposed class."  *Lively*, 2007 WL

685861, at *10.  Here, Plaintiffs ERISA § 502(a)(2) claims are brought on behalf of the plan

against the Trachte and Alliance ESOP fiduciaries for any losses or profits attributable to their

breaches.  The unlawful activity challenged by the Plaintiffs which allegedly resulted in breaches under ERISA, namely, the inadequate transfer of assets from the Alliance ESOP to the Trachte ESOP (in the case of the Subclass) and the related purchase of Trachte stock for more than fair market value (in the case of the entire Class), affects both the plaintiffs and the putative members of the class and subclass alike.

Likewise, claims brought under ERISA § 502(a)(3) are typical when, as here, they are brought to obtain equitable relief.  *See Harris Trust & Sav. Bank*, 530 U.S. at 252 (actions under ERISA § 502(a)(3) seek to recover relief for the plan).  Plaintiffs ERISA § 502(a)(3) claims allege that, by knowingly participating in the breaches of fiduciary duty by the Trustee Defendants, Alliance and Pagelow are liable to disgorge any benefit they received which is traceable to such breaches, and may also be ordered to rescind the sale of their shares to the Trachte ESOP.  Furthermore, Plaintiffs ERISA § 208 claim, brought against Alliance for violating the statute as a result of the unlawful spin-off of the Alliance ESOP participants accounts into the Trachte ESOP affected both the plaintiffs and putative members of the subclass alike.

By virtue of being participants in the Alliance and Trachte ESOP, all subclass members suffered the identical injuries – the over-valuation of the shares by the plan fiduciary at the time of the ESOP's formation, resulting in fewer high priced shares allocated to participants' accounts.  *George*, 270 F.R.D. at 367.  Moreover, the remedies pursued by Plaintiffs for the Trachte ESOP – disgorgement of the proceeds of the 2007 Transactions from Alliance and Pagelow – benefit the Plan and ultimately will benefit all the participants of the Trachte ESOP in a like manner.  Thus, as the claims of all class and subclass members in the instant case "stem

from a single event" and are "based on the same legal or remedial theory on behalf of the Plan," the claims of the named plaintiffs are not only typical of the class, but identical.

### 2.   There Are No Defenses Unique to the Proposed Class Representatives

A defense undermines typicality only if it is unique to the named plaintiff and threatens to play a major role in the litigation. *Lively*, 2007 WL 685861, at *11. Moreover, typicality is determined based on defendant's conduct, "not with respect to particularized defenses [defendants] might have against certain class members." *Wagner*, 95 F.3d at 534.

Here, the relevant conduct upon which plaintiffs claims are based is the same for plaintiffs and other members of the proposed class. Defendants have not identified any facts that suggest that plaintiffs' claims are atypical, and none of defendants' affirmative defenses raise individual issues that undermine a typicality finding. Rather, defendants' affirmative defenses generally fall into two categories, and illustrate that there are no defenses unique to the named plaintiffs.

The first category consists of "defenses" that appear to be aimed at all members of the class, including such boilerplate "defenses" as failure to name all parties (see Alliance Defendants' Answ. ¶ 214, Alpha Defendants' Answ., Sixth Affirmative Defense), failure to state a claim (see e.g., Alpha Defendants' Answ., First Affirmative Defense, Pagelow's Answ. ¶ 110), and the unsupported assertions that plaintiffs claims are barred by laches, waiver, estoppel, and unclean hands (see Alliance Defendants' Answ. ¶ 212, Pagelow's Answ. ¶ 111, Trustee Defendants' Answ. ¶ 7[6]).

---

[6]   The Trustees assert that "Plaintiffs knew the material terms" of the 2007 transaction and "consulted counsel prior to the effective date." However, this "defense" is hardly unique to the named plaintiffs, as the knowledge any one of them may have had was no different than that of every other Trachte employee in attendance of the July 2007 Town Hall meeting presided over by the Trustee Defendants. Moreover, as the Town Hall meeting was open to Trachte employees only, Ms. Chesemore and Mr. Donkle were not in attendance. Furthermore, that one or more of the named plaintiffs consulted

18

The second category consists of "defenses" based on defendants' conduct generally regarding the Plan and its participants, including assertions that the 2007 Transaction was in compliance with ERISA requirements, and for adequate consideration (see Alliance Defendants' Answ. ¶¶ 215-219, Alpha Defendants' Answ., Seventh Affirmative Defense,  Trustee Defendants' Answ.  ¶ 1), and defendants acted in good faith (see Alpha Defendants' Answ., Third Affirmative Defense,  Trustee Defendants' Answ.  ¶ 2).

None of defendants' affirmative "defenses" apply only to the named plaintiffs, nor do they "affect the relationship of the legal theories between the named and unnamed class members." *George*, 270 F.R.D. at 368 (certifying class and rejecting defendants' assertion that plaintiffs claims fail to meet the typicality requirement in light of defendant's affirmative defenses).  Accordingly, the typicality requirement is satisfied.

### D.     Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of the Class And Subclass

Rule 23(a)(4) requires that the representative parties "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The focus is on whether the class representatives have the same interests and suffer the same injury as the class members. *Lively*, 2007 WL 685861, at *11; *see also Musch*, 252 F.R.D. at 461.  The adequacy of representation requirement is met so long as (1) the class representatives' claim is not in conflict with or antagonistic to those of other class members, and (2) the class representatives demonstrate that they will vigorously prosecute the interest of the class through qualified counsel. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *Ruppert*, 255 F.R.D. at 635-36 (rejecting defendants

---

counsel after learning of the impending transaction is also not a unique defense, as many of the employees were not in favor of the transaction, and several inquired about their legal rights. Ex. 5, 45:17-46:24 (Stoflet explaining that following the July 2007 Town Hall meeting "[t]here were a number of [Trachte ESOP participants] . . . [l]ooking for somebody to give us some legal advice on this tracnsaction.").

assertion that in order to satisfy the adequacy requirement plaintiffs "must have a threshold level of knowledge," particularly in complex matters involving ERISA claims").

### 1. The Interests of the Proposed Class Representatives Are Identical To Those of the Absentee Members of the Class and Subclass

In evaluating the adequacy requirement, a court is required to ensure that there are no inconsistencies between the interests of the named parties and the class they seek to represent. *Amchem*, 521 U.S. at 625.  In an ERISA action such as the instant, the proposed class representatives and the class members share the same interests because each class member is bringing suit on the plan's behalf to recover losses caused by the defendants' alleged fiduciary breaches.  *Lively*, 2007 WL 685861, at *13.

Here, the adequacy of the proposed class representatives is readily apparent.  The named plaintiffs and each member of the proposed Class and Subclass have the same legal and financial interest in establishing liability and accountability of defendants, and seeking to make the ESOP whole for losses as a result of defendants' violative actions.  No particular group of participants is distinguishable as to the harm suffered by <u>all</u> members of the class and subclass because "everyone lost" as a result of defendants' unlawful actions in connection with the 2007 Transaction.  Ex. 1 at 197:2-7 (Chesemore Tr.); *see also* Ex. 3, Gieck Dep. Tr. at 110:20-22 (rejecting the assertion that there is a distinction or conflict between class members because "we all come up zero"); Ex. 2, Donkle Dep. Tr. at 64:15-65:12 (explaining that he was in no better position that any other class members regardless of a purported 80% price floor because "80 percent of zero is still zero."); Ex. 4, Robbins Dep. Tr. at 214:13-25 (stating that he can be an adequate class representative "because I want everyone to receive what is rightfully theirs").

Moreover, the interests of all Subclass members are served by undoing the spinoff and sale transaction, restoring the status quo ante, before the transaction eviscerated the value of their

pre-transaction account balances.  Thus, rescission would benefit all Class members by eliminating the debt taken on in the purchase of Trachte and permitting all contributions to the Trachte ESOP made since the transaction to be credited to accounts in the Alliance ESOP.  *See, e.g., Thompson v. Ret. Plan For Emps. of S.C. Johnson & Sons, Inc.* 265 F.R.D. 405, 411 (E.D. Wis. 2010) (holding that proposed representatives can adequately represent the class, as well as subclasses).

Likewise, the interests of plaintiffs as former employees in no way conflicts with the interests of class members who are currently employed at Trachte, such that plaintiffs cannot adequately represent the class.  *See In re FedEx Ground Package Sys., Inc., Emp't Practices Litig.*, No. 3:05-MD-527 RM, 2008 WL 7764456, at *6 (N.D. Ind. Mar. 25, 2008) (rejecting defendants' argument that former employees are inadequate class representatives and noting that "[m]any courts have noted the benefits of having former employees named as class representatives."); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2000 WL 1774091, at*6 (N.D. Ill. Dec. 1, 2000) (holding that a former employee who "alleges the same violation and remedy for the rest of the class" is an adequate class representative, as he "possesse[d] the same interest and has suffered the same injury as the other proposed … class members, whether former or current."); *see also Kohen v. Pac. Inv. Mgmt*. Co., 571 F.3d 672, 679-80 (7th Cir. 2009) (affirming class certification and rejecting defendants' assertion that counsel could not adequately represent class where defendants' offending conduct affected some class members differently than others).  As Mr. Gieck succinctly expressed in deposition testimony, he is capable of representing the interests of all class members, including current employees because "we're all in the same [class], we're all part of the same ESOP, we all share the loss of the game."  Ex. 3 at 169:5-16.

Thus, the interests of the Plaintiffs and the absent class and subclass members are identical and there are no foreseeable conflicts which would prevent the Plaintiffs from fairly and adequately protecting the interests of the Class.

>    **2.     The Proposed Representatives Have Demonstrated Their Willingness to Fulfill Their Duties To The Class and the Subclass**

"Class representatives need not have special understanding of the factual or legal issues in their cases." *Jones v. NovaStar Fin., Inc.*, 257 F.R.D. 181, 192 (W.D. Mo. 2009) (citing *Amchem*, 521 U.S. at 625). In complex ERISA actions such as the instant, it is unrealistic to expect a layman to have an in-depth understanding of the claims. *Ruppert*, 255 F.R.D. at 636 (explaining that there is no "threshold" knowledge requirement for class representative under Rule 23(a)(4)). Thus, to satisfy the adequacy requirement, "a class representative must only maintain an understanding of the basic facts underlying the claims, some general knowledge, and a willingness and ability to participate in discovery.'" *George*, 270 F.R.D. at 368-69 (citing cases).

Here, through their actions, the named plaintiffs have demonstrated both an understanding of the litigation, their duties as class representatives, and willingness to participate in discovery and carry out those duties. Plaintiffs' understanding of this litigation is evidenced throughout their deposition testimony. For example, when asked of her understanding of the fiduciary breach claims against the Trustee defendants, Ms. Stoflet explained "[i]t means they weren't looking out for the best interest of the plan or the ESOP and that they sold [sic] it for too much money." Ex. 5 at 51:22-52:4. Similarly, Ms. Chesemore stated the fiduciary breach against the Trustee Defendants "means that they were not looking out for the best interest of the participants of that Plan." Ex. 1 at 51:1-11. Mr. Robbins expressed a similar understanding of the fiduciary breach claims against the Trustee Defendants. Ex. 4 at 196:5-20 (stating his

understanding that "they did not act on the best interest of myself and all the rest of the members of the class."); see also Ex. 3 at 86:20-24 (Mr. Gieck explaining that the breach of fiduciary duties against certain defendants means "they had a legal obligation to do the best they could for the members.").

When asked about the claims against Alliance defendants, Ms. Chesemore expressed her understanding "that when this transaction happened, that the money that was there should have been equal in the Trachte ESOP that it was in the Alliance ESOP; and I don't think that happened." Ex. 1 at 239:12.  Similarly, as to the claims against the Alliance Defendants, Mr. Gieck stated his understanding that they did not "fulfill their . . . trustee requirements," and that "the sale was over-inflated."  Ex. 3 at 137:21-138:8.  Mr. Robbins expressed his understanding that an action was brought against Defendant Fenkell because "[h]e was a trustee of the [Alliance] ESOP, and I don't believe that he had the best interests of the ESOP participants in mind when they entered into the agreement."  Ex. 4 at 103:4-15.  Ms. Stoflet expressed her understanding of the claims against Defendant Fenkell, stating, "I'm assuming that Mr. Fenkell is an officer of Alliance, and I believe he knew or should have known that the transaction would have greatly decreased the value of our ESOP monies."  Ex. 5 at 199:2-10.  Finally, in response to defense counsel's inquiry as to claims against Defendant Pagelow, Mr. Donkle explained "[Pagelow] appears to be one of the beneficiaries of the deal, because I believe he owned shares of the stock; and he would have got it at a higher price value than what I think was appropriate." Ex. 2 at 81:18.

In addition to availing themselves for deposition and preparation, each of the named plaintiffs has worked diligently and vigorously in moving this action forward including active communication and participation in meetings and status updates with counsel,

searching for, preserving, collecting, and producing all documents in their possession that are relevant to this litigation and/or responsive to defendants' document requests, and readily and timely providing information to counsel in order to satisfy Defendants' discovery requests.

- *Carol Chesemore*:  Ms. Chesemore volunteered to be a class representative, produced documents, was deposed by defendants, and actively participated in meetings and status calls with counsel and other named plaintiffs.  *See* Ex. 1 at 193:8-194:2, 112:1-17, 98:7-13, 203:18-206:24, 242:1-243:1.

- *Dan Donkle*:  Mr. Donkle volunteered to be a class representative, produced documents, was deposed by defendants, and actively participated in meetings and status calls with counsel and other named plaintiffs.  *See* Ex. 2 at 86:8-87:2, 87:7-88:23, 96:16-98:12.

- *Tom Gieck*:      Mr. Gieck volunteered to be a class representative, produced documents, was deposed by defendants, and actively participated in meetings and status calls with counsel and other named plaintiffs.  *See* Ex. 3 at 96:8-17, 104:3-15, 106:7-107:10, 113:2-117:19.

- *Marty Robbins*:  Mr. Robbins volunteered to be a class representative, produced documents, was deposed by defendants, and actively participated in meetings and status calls with counsel and other named plaintiffs.  *See* Ex. 4 at 115:11-19, 118:19-119:19, 214:13-25.

- *Nann Stoflet*:  Ms. Stoflet volunteered to be a class representative, produced documents, was deposed by defendants and attended two other depositions, and actively participated in meetings and status calls with counsel and other named plaintiffs.  *See* Ex. 5 at 47:4-11, 87:8-19, 104:23-105:13, 187:3-192:8.

Accordingly, there is no reason to believe that the named plaintiffs will not zealously represent the interests of the Class and Subclass.

### 3. Plaintiffs' Are Represented By Qualified and Competent Counsel And Plaintiffs' Counsel Should Be Appointed Class Counsel

The adequacy of counsel focuses on whether plaintiffs' counsel is qualified to conduct the litigation. *West v. Timberlake*, No. 08-cv-670, 2009 WL 959655, at *3 (E.D. Wis. Apr. 8, 2009). The Third Circuit recently explained that the adoption of Rule 23(g) supplanted the traditional method of analyzing class counsel under Rule 23(a)(4). *Sheinberg v. Sorensen*, 606 F.3d 130, 132-33 (3rd Cir. 2010). For purposes of 23(a)(4) the determination regarding the competency of counsel is based on counsel's experience in handling class actions and knowledge of the applicable law, competence, and ability to conduct the proposed litigation vigorously. *Wagner*, 170 F.R.D. at 451; *see also* Fed. R. Civ. P. 23(g)(1)(A)(i). In this case, Plaintiffs have retained qualified, experienced attorneys with broad-based, multi-jurisdictional experience in complex class action litigation, especially in the context of breach of fiduciary duty cases under ERISA. Thus, as Plaintiffs have no interests antagonistic to the Class or Subclass, their interests are co-extensive with those of the Class and Subclass, and they are prepared to vigorously prosecute this action through able and experienced ERISA and class action counsel, Rule 23(a)(4) is satisfied.

Pursuant to Fed. R. Civ. 23(c)(1)(B) and 23(g), a court certifying a proposed class must appoint counsel based on a consideration of a variety of factors. As noted above, Fed. R. Civ. P. 23(g) complements Rule 23(a)(4), and focuses on the qualifications of plaintiffs' counsel. Specifically, it instructs the court to consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation; (3) claims of the type asserted in the action; (4) counsel's knowledge of

25

the applicable law; and (5) the resources counsel will commit to representing the class, as well as any other matter pertaining to counsel's ability to fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g). Here, each of these considerations weighs in favor of proposed Class and Subclass Counsel's adequacy, as Plaintiffs' counsel has the necessary experience, knowledge and resources to prosecute this litigation:

•       Cohen Milstein Sellers & Toll, PLLC has been recognized by the National Law Journal as one of the leading plaintiffs' and class action law firms in the United States. Bunch Decl. Ex. A. Joseph Barton, the partner on this case from Cohen Milstein, has nearly 10 years experience handling a wide variety of class action cases and ERISA class actions in particular. This action is also staffed by Monya Bunch, an associate who has six years of litigation experience and recently joined the firm after completing services as a Senior Clerk to Judge Damon J. Keith of the Sixth Circuit Court of Appeals. In this action, Cohen Milstein, as proposed lead class counsel, has vigorously prosecuted this litigation as evidenced by the filing of a factually detailed Complaint [Dkt. 1] and Amended Complaint [Dkt. 78] and extensive briefing of motions to dismiss filed by all defendants other than Alpha. In addition Plaintiffs' counsel have undertaken substantial discovery, including taking depositions and filing Motions to Compel where appropriate.

•       Hurley, Burish & Stanton, S.C. has experience litigating class actions. Andrew Erlandson, the counsel on this case from Hurley Burish, has 14 years of trial experience, handling a wide variety of litigation actions. Bunch Decl. Ex. B.

All counsel are prepared to and will continue to vigorously prosecute this action on behalf of plaintiffs and the Class as a whole to obtain the best possible recovery for the Plan. Thus, the Court can be assured that the class will have highly qualified and able counsel pressing

their claims if this matter is certified as a class action.  Accordingly, Rule 23(a)(4) is satisfied

and thus, Cohen Milstein should be appointed Lead Class Counsel and Hurley Burish should be

appointed Liaison Class Counsel.

## IV.   The Class Is Properly Certified Under Rule 23(b)

In addition to Rule 23(a), a case must satisfy one of the three alternative requirements of

Rule 23(b).  Fed. R. Civ. P. Rule 23(b).  This case meets the requirements of Rule 23(b)(1) and

(b)(2) as well as Rule 23(b)(3).

### A.     The Class Should Be Certified Under Rule 23(b)(1)

The district courts in this District and this Circuit, have repeatedly recognized ERISA

case involving a breach of trust to "restore the subject of the trust" are the classic examples of

Rule 23(b)(1) class actions.  *Neil*, 2011 WL 833350 at *11 (citing numerous cases).  This is

particularly true for cases challenging an ESOP transaction.  *E.g. Neil*, 2011 WL 833350 at *12

(certifying Rule 23(b)(1) class challenging ESOP transaction) ; *Montgomery*, 1996 WL 189347,

at *5 (same).  This case is no different.

### 1.     Certification Under Rule 23(b)(1)(B) is Proper

Rule 23(b)(1)(B) applies where "*any* individual adjudication by a class member disposes

of, or substantially affects the interests of absent class members." *Ortiz v. Fibreboard Corp.* 527

U.S. 815, 834 (1999) (emphasis added).[7]  One of the "classic examples" that the Supreme Court

identified for Rule 23(b)(1)(B) is an action "charging 'a breach of trust by … [a] fiduciary

similarly affecting the members of a larger class of beneficiaries, requiring an accounting or

similar procedures to restore the subject of the trust." *Id.* at 833-34  (citing 1966 Advisory

---

[7]     A party may invoke Rule 23(b)(1)(B) without demonstrating that separate actions are likely or
feasible." *Eliasen v. Green Bay & Western Railroad Co.*, 93 F.R.D. 408, 412 (E.D. Wis. 1982) (citing
Wright & Miller, Fed. Practice and Procedure, § 1774, at 14 (1972)); *Westefer v. Snyder,* 2006 WL
2639972, at *8 (S.D. Ill. Sept. 12, 2006) (certifying class under Rule 23(b)(1)(B).

Committee Note).  Caims involving breach of fiduciary duties and engaging in prohibited

transactions under ERISA § 404 and 406, must be brought in a representative capacity.  *Neil*,

2011 WL 833350, at *12 (certifying ESOP case under Rule 23(b)(1)(B)).  *Lively,* 2007 WL

685861, at * 16 (certifying class alleging breach of fiduciary duties under ERISA under Rule

23(b)(1)).  These same principles apply here as this case will necessarily adjudicate the rights of

the other participants whether they are parties to this litigation.

The central allegation in this case is that Defendants caused the Alliance ESOP and

Trachte ESOP to engage in a transaction whereby (1) class members accounts in the Alliance

ESOP were transferred into the Trachte ESOP, their stock in Alliance stock exchanged for

Trachte stock, and (2) the Trachte ESOP then purchased additional Trachte stock at an inflated

price.  *See Chesemore*, 2011 WL 857142 at *1.  As a result of the heavy debt the ESOP incurred

in order to finance the purchase of the Trachte shares, the pre-exisiting shares immediately lost

value and as a result of the overpayment and excessive debt incurred in the transaction, Trachte

teeters on the brink of bankruptcy and its shares are worthless.  *Id.* at *1, 7; *see* Ex. 8 at 180:21-

181:3 (Deposition of Trachte ESOP 30(b)(6) representative, acknowledging the zero value of

Trachte stock was caused by the debt incurred in connection with the 2007 Transaction).  Among

the issues that will be resolved in this litigation is whether (1) the value of class members'

Alliance ESOP accounts immediately before the 2007 Transaction were "equal to or greater

than" the benefits immediately after the 2007 Transaction and (2) the correct price of the Trachte

stock.

As any money recovered for the Trachte ESOP will have to be paid into the Plan,

resolution of these issues will affect *all* participants in the Trachte ESOP.  *See Brieger v. Tellabs,*

*Inc.*, 245 F.R.D. 345, 357 (N.D. Ill. 2007) (certifying a Rule 23(b)(1)(B) class in an ERISA case for this reason); *Lively*, 2007 WL 685861 at *16 (same).  The same applies here.

As the representative of the Trachte ESOP explained, the Trachte shares that were purchased using the loan proceeds are held in a suspense account and are released as the loan is paid down.  Ex. 8 at 167-168.  As payments on the loan are made, the price at which shares are released is *at the price paid* in the 2007 Transaction.  *Id.* at 169.  In the event that additional money is infused into the Plan, that money would then be used to release more shares, which would then be allocated to individual participants according to the terms of the Plan.  *Id.* at 170-71.  As this litigation will require a determination of whether the Trachte employees received equal benefits in the spin-off and whether the correct price was paid, recovery would include relief returning the excess amount paid and rescission of the transaction or recovery of additional benefits to be paid.  Am. Compl. at Prayer for Relief.  As a practical matter, the relief sought will affect the rights of all participants included in the Class and Subclass.  Accordingly, this case should be certified under Rule 23(b)(1)(B) so that all affected participants are class members.

## 2.    Certification of a Class Under Rule 23(b)(1)(A) is Also Proper

Rule 23(b)(1)(A) "takes in cases where the party is obliged by law to treat the members of the class alike . . . , or where the party must treat all alike as a matter of practical necessity." *Amchem,* 521 U.S. at 614 (citations omitted).  "ERISA requires plan administrators to treat all similarly situated participants in a consistent manner."  *Alday v. Raytheon Co.*, 619 F. Supp. 2d 726, 736 (D. Ariz. 2008) (citing cases).  For this reason, courts inside and outside this Circuit have certified cases involving breach of fiduciary duties and/or violations of ERISA under Rule 23(b)(1)(A).  *E.g.*, *Neil*, 2011 WL 833350 at * 12 (ESOP transaction); *Smith v. Aon Corp.*, 238 F.R.D. 609 at 617-18 (N.D. Ill. 2006) (breach of fiduciary duty); *Buus,* 251 F.R.D. 578 at 588 (statutory violations) (W.D. Wash. 2008); *In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D.

172, 180 (S.D.N.Y. 2006) (statutory violations).The risk of inconsistent adjudications is similarly apparent in this case.

As one of the central allegations in this case concerns the amount at which the Trachte ESOP purchased Trachte shares, separate actions could readily result in a variety of different results.  For example, this Court could reach one conclusion about the appropriate price, while another court might conclude that there was another appropriate price.  Likewise, this Court might determine that all of the proceeds of the sale were traceable, while another court in another jurisdiction might find that only certain such proceeds or proceeds from certain defendants were traceable.  Similarly, different conclusions could be reached about the appropriateness of the transfer of shares under ERISA § 208.  Yet, this would place the plan administrator in an untenable position as the Trachte ESOP requires the Administrator "uniformly and consistently appl[y]" the Plan to "all participants in similar circumstances."  Ex. 9 at § 7.7; *see also* Ex. 10 § 13.6.  As the Trachte ESOP representative explained, under the terms of the Trachte ESOP, similarly situated participated participants would need to be similarly treated with respect to the allocations made into their accounts.  Ex. 8 at 166.  As a result, inconsistent adjudications obtained by similarly-situated participants about the value of the benefits transferred, the correct purchase price in the 2007 Transaction and the remedies to be paid to the plan, would make it impossible for the plan administrator to treat similarly situated participants alike.  Accordingly, certification under Rule 23(b)(1)(A) is appropriate to avoid such inconsistent adjudications.

     **B.**     **The Claims of the Class & Subclass Can Be Certified Under Rule 23(b)(2)**

Rule 23(b)(2) permits certification where "the party opposing the class has acted or refused to act on grounds generally applicable to the class making appropriate final injunctive relief or corresponding declaratory relief to the class as a whole."  Fed. R. Civ. P. 23(b)(2); *Amchem*, 521 U.S. at 614.

### 1. Defendants Have Acted On Grounds Generally Applicable To the Class & Subclass

Defendants "act[] or refused to act in a manner generally applicable to the class whe[re] they made certain uniform decisions about … the Plan as it applies to the putative class members." *Mezyk v. U.S. Bank Pension Plan*, 2011 WL 601653, at * 9 (S.D. Ill. Feb. 11, 2011) (certifying ERISA claims). Here, these Defendants made uniform decisions about all class members culminating in a single transaction: (1) there was a decision to transfer the accounts of *all* current and former Trachte employees from the Alliance ESOP to the Trachte ESOP; (2) there was a uniform decision by the Trachte fiduciaries about whether to engage in the 2007 Transaction and (3) a decision in a single day by each of the Selling Defendants to sell Trachte shares to the Trachte ESOP as part of a single transaction.

### 2. The Complaint Seeks Declaratory & Injunctive Relief

#### a. A Declaration Against the Fiduciaries Is A Proper Prelude To Other Injunctive & Monetary Relief

The Seventh Circuit has explained that "a declaratory judgment is *normally* a prelude to a request for other relief, whether injunctive or monetary." *Berger v. Xerox Corp. Ret. Income Guarantee Plan,* 338 F.3d 755, 763-64 (7th Cir. 2003). "As long as the concrete follow-on relief that is envisaged if ordered . . . be the direct, anticipated consequence of the declaration, rather than something unrelated to it, the suit can be maintained under Rule 23(b)(2)." *Id.*; *Ruppert*, 255 F.R.D. at 637 (same). Here, the relief sought pursuant to ERISA § 409 is directly follows from the declaration that the fiduciaries of the Trachte and Alliance ESOPs have violated their fiduciary duties.

#### b. Rescission Requires Declaratory Relief

The remedy of rescission is also accomplished by issuing a declaration. Dan B. Dobbs, *The Law of Remedies, supra* § 4.3(6) at 415 (2d ed. 1993) ("In equity rescission… the rescission

31

does not take place until the court *declares* it.") (emphasis added).  Thus, rescission requires declaratory relief.

### c.  Disgorgement Requires Injunctive Relief

"Nothing is more clearly a part of the subject matter of a suit for an injunction than the recovery of that which has been illegally acquired and which has given rise to the necessity for injunctive relief." *Porter v. Warner Holding Co.,* 328 U.S. 395, 398-99 (1946) (concluding order for return of illegal rents is injunctive relief); *Harris Trust,* 530 U.S. at 250-53 (explaining requiring the return of monies wrongfully transferred is done by an injunction).  Courts have characterized disgorgement as "a continuing injunction."  *S.E.C. v. AMX, Int'l,* 7 F.3d 71, 76 n.8 (5th Cir. 1993).  Thus, disgorgement of profits is injunctive relief.

### d.  A Constructive Trust Is Declaratory Relief

A constructive trust is merely *declared* by the court to have arisen when a certain state of facts is shown. Dan B. Dobbs, *The Law of Remedies* § 4.3(2) at 393 (2d ed. 1993) (explaining that a constructive trust is obtained when the court "*declares* [the defendant] to be [the] constructive trustee, [and] then orders him as trustee to make a transfer of the property to beneficiary of the constructive trust, the plaintiff"); George G. Bogert, et al., *The Law Of Trusts And Trustees* § 471 (2010) (explaining that a constructive trust is accomplished "by merely issuing a decree that the defendant convey" property to the plaintiff).  By definition, imposition of a constructive trust *is* declaratory relief.

### e.  Claims For Monetary Relief Can Be Certified Under Rule 23(b)(2)

The Seventh Circuit has clearly explained that there is no issue about certifying claims seeking "equitable monetary relief" under Rule 23(b)(2).  *Jefferson v. Ingersoll Int'l, Inc.*, 195

F.3d 894, 899 (7th Cir. 1999).[8]  The Seventh Circuit has long held that ERISA claims are

equitable, not legal.  *Richardson v. Astellas U.S. LLC Employee Ben. Plan*, 610 F. Supp. 2d 947,

951-52 (N.D. Ill. 2009) (citing numerous cases).  As such, all of the remedies sought are

equitable.

### 3.    Plaintiffs' ERISA § 502(a)(3) Claims Unquestionably Can Be Certified Under Rule 23(b)(2) As The Only Relief Is Equitable

ERISA § 502(a)(3) provides a mechanism to redress violations of ERISA or the terms of

the Plan.  *Chesemore*, 2011 WL 857142 at *25-26.  But, the remedy is expressly limited to

"equitable relief."  *Id.*  As such, there can be no question that Counts I and XII can be certified

under Rule 23(b)(2).

### 4.    Plaintiffs' ERISA § 502(a)(2) Claims Also Seek Equitable Relief

ERISA § 502(a)(2) claims provide for relief against fiduciaries (1) for "losses to the

plan," (2) to "restore to [the] plan any profits" through the use of plan assets, and/or (3) "other

equitable and remedial relief."  29 U.S.C. § 1132(a)(2) & 1109(a).  These same remedies are

available under traditional trust law.  William. F. Fratcher, *Scott on Trusts* § 205 (4th ed. 1988).

Such remedies were available to beneficiaries by "maintain[ing] a suit in equity."  *Id.* § 199.3;

*see George v. Kraft Foods Global, Inc.*, 2008 WL 780629, *5 (N.D. Ill. 2008) (finding that this

same analysis applies to ERISA § 502(a)(2) claims are equitable).  At the very least, "[m]onetary

relief in a plan-wide action brought under ERISA section 502 is incidental, and flows from relief

to the plan."  *Smith v. Aon Corp.,* 238 F.R.D. 609, 618 (N.D. Ill. 2006) (certifying claims under

Rule 23(b)(2)); *see Neil*, 2011 WL 833350 at *12-13 (same).  Thus the claims of the Class and

---

[8]    Moreover, "[w]hen the main relief sought is injunctive or declaratory, and damages are only 'incidental,' the suit may be maintained under Rule 23(b)(2)."  *Drinkman v. Encore Receivable Management, Inc.*, No. 07-C-363-S, 2007 WL 4458307, *5 (W.D. Wis. Dec. 7, 2007).  "Incidental" damages are defined by the Seventh Circuit as damages where the computation 'is mechanical, 'without the need for individual calculation,' . . . so that a separate damages suit by individual class members would be a waste of resources.  *Id.*

Subclass can be certified under Rule 23(b)(2).

### C. The Claims Also Meet The Requirements of Rule 23(b)(3)

A case should be certified under Rule 23(b)(3) only if the court concludes that the requirements of Rule 23(b)(1) or (2) are not met. *Ruppert*, 255 F.R.D. at 637 (finding that "it would be counterproductive to allow class members to opt out in an action that may be maintained under Rule 23(b)(1) or b(2)."); *Neil*, 2011 WL 833350 at \*13 (same).

The leading case on this issue has explained, "virtually every class action that meets the requirements of 23(b)(1) or 23(b)(2) will also meet the less severe requirements of 23(b)(3)." *Van Gemert v. Boeing Co*., 259 F. Supp. 125, 130 (S.D.N.Y. 1966); *see* 2 Newberg, *supra* § 4:20 at 147-48 (explaining that *Van Gemert* "has been uniformly endorsed"); Fed. R. Civ. P. 23(b)(1) 1966 Advisory Committee Notes (explaining Rule 23(b)(1) addresses cases in which class treatment is "clearly called for" while Rule 23(b)(3) permits certification as "may be convenient and desirable").  "Certification under Rule 23(b)(3) requires that 'the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.'"  *Pella Corp. v. Saltzman*, 606 F.3d 391, 393 (7th Cir. 2010).

### 1. Common Issues Predominate Over Any Individual Issues

The predominance inquiry tests whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623; *see also Robbins v. Wolpoff & Abramson*, LLP, No. 05-C-0315, 2006 WL 2473334, at \*2 (E.D. Wis. Aug. 24, 2006) ("[t]he predominance of questions of law and fact affecting the class over individual members of the class is primarily resolved by assessing 'the proof necessary to establish the class members' claims under the applicable substantive law.") (quoting *Retired Chicago Police Assoc*., 7 F.3d at 598).  An ERISA fiduciary breach case is not a "determination of personal causes of action

34

brought by individuals." *Brieger v. Tellabs, Inc.*, 245 F.R.D. 345, 357 (N.D. Ill. 2007). Illustrating that the focus on this case is on defendants' conduct, defendants' Rule 26(a) disclosures have identified virtually no class members as persons with knowledge. Exs. 11, 12, 13, 14.[9]  Thus, liability in this case will focus on the defendants' conduct in connection with 2007 Transaction and not on individual class members' knowledge or action.

Courts have repeatedly held that predominance exists even if there are individual differences in damages from individual class members. *Arreola v. Godinez*, 546 F.3d 788, 800-801 (7th Cir. 2008) (explaining that the need for individual damages determinations does not defeat class certification under Rule 23(b)(3) impossible).  In a case involving relief on behalf of the plan, individual participants varying damages are irrelevant because any relief will be paid to the Plan and then allocated to the individual participants accounts according the pre-existing allocation formula in the Plan. *Neil*, 2011 WL 833350, at*14.  Here, the designated representative of the Trachte ESOP confirmed that any would be allocated to the individual participants according to the terms of the Plan.  Ex. 8, 170:17-171:24 (Deposition of Trachte ESOP 30(b)(6) representative).

### 2. A Class Action is A Superior Method of Resolving These Claims

At the heart of the superiority requirement is an assessment of whether the interests of efficiency and economy will be advanced by class treatment. *Amchem*, 521 U.S. at 617; *see Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 n.11 (1980) ("Rule 23 expresses 'a policy in favor of having litigation in which common interests, or common questions of law or fact prevail, disposed of where feasible in a single lawsuit.").  Factors considered in this assessment include:

---

[9]     Although the Trustee Defendants identified class member and former Trachte employee Jill McDowell in their Second Amended Rule 26(a) disclosures, it was based on the belief that Ms. McDowell has knowledge of relevant documents produced by plaintiffs in this litigation.

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.  Fed. R. Civ. P. 23(b)(3).

In the instant matter, Plaintiffs' action is a representative action on behalf of the Plan. First, all of the common questions relate to Defendants' actions with respect to the Plan rather than to the specific individual participants.  Thus, it is most efficient to resolve this issue in one single class action, rather than pursing separate actions seeking the same discovery and evidence in multiple actions, with potentially inconsistent or varying adjudications.  Second, Plaintiffs' counsel is aware of no other litigation commenced regarding the issues presented in this lawsuit. Bunch Decl. ¶ 3.  Third, Defendants have admitted that venue is proper in this district.  Alliance Answ. ¶ 7; Trustee Defendants' Answ. ¶ 7, Alpha Defendants' Answ. ¶ 7, Pagelow's Answ. ¶ 7. Moreover, the class involves the claims of current and former employees of Trachte Building Systems, located in Sun Praire, Wisconson, thus, concentrating the litigation in this forum is appropriate.  Finally, common questions clearly predominate and, given the representative nature of the lawsuit, the case presents no manageability issues as any calculation of damages will be a mechanical task performed based on objective criteria.  As such, certification of a class action under Rule 23(b)(3) is appropriate, although certification under either Rule 23(b)(1) or (b)(2) would be more appropriate.

<u>**CONCLUSION**</u>

For the foregoing reasons, these ERISA claims are well-suited to class certification and Plaintiffs' motion for class certification under Fed. R. Civ. P. 23(a), (b)(1) and (b)(2), or alternatively, (b)(3), should be granted.

36

Dated:  March 17, 2011

By:   /s/ Monya M. Bunch
R. Joseph Barton
Karen L. Handorf
Monya M. Bunch
**COHEN MILSTEIN SELLERS**
**& TOLL PLLC**
1100 New York Avenue, N.W.
Suite 500 West
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile:  (202) 408-4699
jbarton@cohenmilstein.com
khandorf@cohenmilstein.com
mbunch@cohenmilstein.com

Marc I. Machiz
**COHEN MILSTEIN SELLERS**
**& TOLL PLLC**
255 South 17th Street
Suite 1307
Philadelphia, PA 19103
Telephone: (267) 773-4682
Facsimile:  (267) 773-4690
mmachiz@cohenmilstein.com

Marie A. Stanton
Andrew W. Erlandson
**HURLEY, BURISH & STANTON, S.C.**
33 East Main Street, Suite 400
Madison, WI 53703
Telephone: (608) 257-0945
Facsimile:  (608) 257-5764
mstanton@hbslawfirm.com
aerlandson@hbslawfirm.com

*Plaintiffs' Counsel*