IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CAROL CHESEMORE, DANIEL
DONKLE, THOMAS GIECK, MARTIN
ROBBINS, and NANETTE STOFLET, on
behalf of themselves, individually, and on
behalf of all others similarly situated,

                    Plaintiffs,                  OPINION AND ORDER

    v.

                                                  09-cv-413-wmc

ALLIANCE HOLDINGS, INC., A.H.I., INC.,
AH TRANSITION CORPORATION,
DAVID B. FENKELL, PAMELA KLUTE,
JAMES MASTERANGELO, STEPHEN W.
PAGELOW, JEFFREY A. SEEFELDT, ALPHA
INVESTMENT CONSULTING GROUP, LLC,
and JOHN MICHAEL MAIER,

                    Defendants.

---

      Before the court is plaintiffs' motion for leave to amend their complaint to name Karen Fenkell as a defendant. (Dkt. #689.)[1] Defendants oppose plaintiffs' motion on several bases. (Defs.' Opp'n (dkt. #693).) For the reasons that follow, the court will grant plaintiffs' motion to add Karen Fenkell and to assert a new claim against her as a gratuitous transferee in violation of ERISA § 502(a)(3).

---

[1] The motion as filed contained two requests. The court has already ruled on plaintiffs' request to clarify that Count XIV -- asserting a claim for knowing participation in a breach of fiduciary duty under ERISA § 502(a)(3) -- is asserted against the Alliance Defendants, not simply A.H.I. (*See* Post Trial Order (dkt. #733) 91 n.26.)

OPINION

Plaintiffs seek to add defendant David Fenkell's wife, Karen Fenkell, as a defendant and propose a new cause of action, Count XVI, alleging that Karen Fenkell is liable as a gratuitous transferee of phantom stock plan proceeds pursuant to ERISA § 502(a)(3). (Declaration of Monya M. Bunch ("Bunch Decl."), Ex. A. (Pl.'s Proposed 3d Am. Compl.) (dkt. #690-1) Count XVI, ¶¶ 299-306).) Plaintiffs allege that on August 30, 2007, defendant David Fenkell's $2,896,100 payment from the Phantom Stock Plan for Alliance Employees was deposited into an account jointly held in the name of David Fenkell and his wife Karen Fenkell. (*Id.* at ¶ 300.) Plaintiffs further allege that between August 31, 2007 and October 31, 2007, all of the monies in that jointly-held account were transferred to accounts held solely in the name of Karen Fenkell. (*Id.* at ¶ 301.) Finally, plaintiffs allege that Karen Fenkell did not pay or provide anything of tangible value to David Fenkell in exchange for the transfer of funds to accounts held solely in her name. (*Id.* at ¶ 304.)

A. Federal Rule of Civil Procedure 16 Requirement

Plaintiffs concede, as they must, that this motion comes more than two years after the amendment deadline established by this court. (Pretrial Conf. Order (dkt. #62) ¶ 1.) Where a scheduling order is in place, such as here, modification of the order requires a showing of "good cause." Fed. R. Civ. P. 16(b)(4). This standard primarily concerns the "diligence of the party seeking amendment." *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005) (internal citation omitted). Plaintiffs originally sought production of discovery necessary to trace David Fenkell's phantom

stock payment in June 2011. After Fenkell refused to produce the documents (no doubt on grounds that this discovery should await entry of an adverse judgment) *and* after the completion of the Phase I trial on liability (and a preliminary ruling by the court that defendant David Fenkell would likely be found liable), plaintiffs filed a motion to compel production, which the court granted on December 7, 2011. In late December, Fenkell produced account statements demonstrating the transfer of his phantom stock payment from a joint account to an account held solely by his wife. Additional account statements were produced on December 30, 2011. On January 6, 2012, plaintiffs sought discovery as to whether David Fenkell had received anything of value from Karen Fenkell in exchange for the transfer of funds. In a March 21, 2012 email, David Fenkell's attorney advised plaintiffs' counsel that David Fenkell had not received anything in return for the transfer. Forty-three days later, plaintiffs filed their motion to amend to add a claim against Karen Fenkell as a gratuitous transferee.

    In response, defendants argue plaintiffs were not diligent in seeking leave for two main reasons. First, plaintiffs should have sought discovery on the tracing issue much sooner and should have been more diligent in filing a motion to compel production after David Fenkell refused to produce the requested documents. On this, the court simply disagrees. Indeed, the court likely would not have granted a motion to compel discovery before completion of Phase I trial. In light of this, plaintiffs cannot be faulted for postponing discovery -- or rather a motion to compel discovery -- until after the completion of Phase I of this complicated case. On the contrary, given the bifurcation of the issues in this case, plaintiffs' approach was reasonable.

Second, defendants challenge plaintiffs' assertion that they only recently became aware that David Fenkell received nothing of value in exchange for the transfer of phantom stock proceeds to his wife. Defendants point to plaintiffs' brief in support of a motion to compel Karen Fenkell's personal financial records filed on January 6, 2012, in which plaintiffs argue that the funds in Karen Fenkell's sole accounts "are likely traceable and subject to disgorgement." (Defs.' Opp'n (dkt. #693) 9 (citing Pls.' Br. in Supp. of Mot. to Comply (dkt. #623) 5).) Defendants also point to a telephone conference in which defendants' counsel states that he told plaintiffs' counsel that "the transfers were made for estate-planning purposes, and that Mr. Fenkell did not receive any property or thing in exchange for the transfers." (Defs.' Opp'n (dkt. #693) 9.) At most, the first example discloses plaintiffs' speculation that "funds" belonging to David Fenkell were inappropriately transferred to Karen Fenkell's accounts, not that phantom stock proceeds were transferred without her paying anything of value.[2] As for the February 7, 2012 telephonic conference, plaintiffs contend that defendants' counsel represented that "he believed that Mr. Fenkell had not received anything of value, but needed to confirm with his client." (Pls.' Reply (dkt. #696) 5.) Regardless of David Fenkell's counsel's exact phrasing, it was reasonable for plaintiffs to wait for written assurance before filing a proposed claim based on a gratuitous transfer.

On April 13, 2012, plaintiffs informed the court that they intended to seek leave to amend their complaint to add Karen Fenkell as a defendant. The court ordered

---

[2] As described below, the fact that Karen Fenkell received these proceeds as a gratuitous transferee is relevant in determining whether plaintiffs must demonstrate "knowing participation."

4

plaintiffs to file the present motion by May 7, 2012. (Dkt. #688.) Plaintiffs did so on May 3, 2012. From March 21, 2012 -- when plaintiffs definitively learned that Karen Fenkell received the funds traceable to the phantom stock option without payment -- plaintiffs waited approximately six weeks to file the present motion. The court finds that such a delay does not undermine the "good cause" requirement of Rule 16.

### B. Federal Rule of Civil Procedure 15 Requirements

Having found that plaintiffs were sufficiently diligent in seeking leave to meet the requirements of Fed. R. Civ. P. 16, the court must also consider whether leave is appropriate pursuant to Fed. R. Civ. P. 15. On this issue, the parties dispute at the outset whether the court should consider plaintiffs' request under subsection (a) or (b) of Rule 15. Subsection (a) governs motions filed before trial, whereas subsection (b) governs motions to amend filed during or after trial.

Defendants contend that plaintiffs' request must satisfy the stricter requirements of subsection (b) because the Phase I trial on liability has already been completed. In what amounts to a tautology, defendants argue that a trial -- regardless of whether that trial is germane to the amendment sought -- requires courts to consider a request to amend under subsection (b).

At least one district court has recently described this issue in the context of a bifurcated action as an issue of first impression. *See SRI Int'l Inc. v. Internet Sec. Sys., Inc.*, 817 F. Supp. 2d 418, 421 (D. Del. 2011) (noting that issue presented in motion "whether leave to amend between the liability and damages phases of a bifurcated patent trial is subject to the liberal standard set forth in Federal Rule of Civil Procedure 15(a)

5

or, as SRI suggests, the more conservative standard set forth in Federal Rule of Civil Procedure 15(b)" is an issue of first impression). Unfortunately, the court in *SRI International* did not attempt to answer the question, finding the motion failed to meet even the more liberal 15(a) standard and leaving this court with no more guidance than do the parties.

The plain language of Rule 15(b) only applies where the issue presented in the proposed amended pleading was tried (or was in the process of being tried) when the motion for leave to amend the complaint was filed.[3] In Phase II of this case, plaintiffs seek disgorgement of David Fenkell's phantom stock payments (or its proceeds) and any profits earned on the proceeds. Since plaintiffs have now traced these proceeds to an account held solely in the name of Karen Fenkell, adding Karen Fenkell as a defendant

---

[3] Federal Rule of Civil Procedure 15(b) provides:

> (b) AMENDMENTS DURING AND AFTER TRIAL.
>
> (1) Based on an Objection at Trial. If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits. The court may grant a continuance to enable the objecting party to meet the evidence.
>
> (2) For Issues Tried by Consent. When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

and asserting a claim of liability as a gratuitous transferee of phantom stock plan proceeds solely concerns issues yet to be addressed in Phase II of this case. Indeed, unless the court finds in Phase II that disgorgement is an appropriate remedy against David Fenkell, any claim against Karen Fenkell for gratuitous transfer pursuant to ERISA § 502(a)(3) is moot. Because plaintiffs' motion for leave to amend occurred before the start of the trial on Phase II, the court finds it more appropriate to analyze plaintiffs' request under subsection (a).

      Under Rule 15(a)(2), courts should "freely give leave" to amend pleadings "when justice so requires." Still, "leave is inappropriate where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." *Villa v. City of Chi.*, 924 F.2d 629, 632 (7th Cir. 1991) (citing *Foman v. Davis*, 371 U.S. 178, 183 (1962)). In addition to asserting undue delay, which the court already addressed above in the context of the Rule 16 analysis, defendants claim that plaintiffs fail to meet the requirements of Rule 15(a)(2) because the proposed amendment (i) would unduly prejudice Karen Fenkell and (ii) would be futile.

      As for prejudice to Karen Fenkell, the court might be persuaded that amendment at this late stage in a typical case would unduly prejudice a new defendant. Moreover, typically -- at least in a non-bifurcated case -- the issue plaintiffs seek to raise by way of amendment would be pursued after judgment, because collection efforts, including discovery concerning tracing of money, would not be appropriate until entry of a money judgment. But, this case is not typical. Phase II concerns the appropriate remedies

7

under ERISA, and the § 502(a)(3) claim against Karen Fenkell falls squarely within the scope of that phase. Indeed, assuming disgorgement is ordered by this court, the proposed claim appears to be straight-forward because there appears to be no factual basis to dispute that the phantom stock proceeds were transferred gratuitously to Karen Fenkell.

Given the complexity of the transaction involved in this case and the fact that class certification has already been considered and approved, it would be far more efficient for this court to decide the proposed claim against Karen Fenkell, rather than punting it to another court. Moreover, there is at least a risk that, if this court were to deny leave and plaintiffs were to pursue a separate action against Karen Fenkell, another court might view the new action as being precluded by plaintiffs' failure to bring a claim against Karen Fenkell here.

On the other hand, the court is concerned about any prejudice to Karen Fenkell -- including protecting her due process rights -- in allowing an amendment at this stage in the proceedings. Specifically, defendants contend that Karen Fenkell has "substantive defenses to liability," including "statute of limitations, personal jurisdiction, detrimental change in position and laches." (Defs.' Opp'n (dkt. #693) 15.) Any prejudice to Karen Fenkell, however, can be addressed by providing an opportunity for her to raise these defenses in a motion to dismiss. Moreover, unless addressed in this way, there is a real possibility that another court might rule on these defenses in a way that is inconsistent with the holdings of this court, even after expending time and judicial resources in certifying a new class and understanding this court's rulings.

Defendants also contend that the court should deny amendment because the claim against Karen Fenkell would be futile. Defendants specifically argue that plaintiffs' claim (1) would be barred by the statute of limitations and (2) would fail because plaintiffs did not allege the requisite element of "knowing participation" to hold Karen Fenkell liable under ERISA § 502(a)(3). As for the statute of limitations argument, the court will reserve deciding definitively this issue until it has a complete record, if and when raised by Karen Fenkell in response to plaintiffs' claim. At this stage, defendants have not demonstrated that plaintiffs' claim would be time barred. As plaintiffs indicate, there is at least an argument that ERISA's six-year limitation set forth in § 413 applies to the non-fiduciary § 502(a)(3) claim asserted against Karen Fenkell. *See Landwehr v. Dupree*, 72 F.3d 726, 731-32 (9th Cir. 1995) (applying the statute of limitations in ERISA § 413 to a § 502 claim for "other appropriate equitable relief" arising out a fiduciary breach); *Solis v. Couturier*, No. 2:08-cv-02732-RRB-GGH, 2009 WL 1748724, at *2 (E.D. Cal. June 19, 2009) (same, citing *Landwehr*). Even if this statute of limitations does not apply, there is an argument that Wisconsin's analogous statute of limitations applies as the forum state[4] and not the two-year statute of limitations under Pennsylvania state law as proposed by defendants.

As for defendants' contention that plaintiffs' proposed claim against Karen Fenkell is futile because they have failed to plead "knowing participation," the court will also

---

[4] There are a number of analogous statute of limitations from Wisconsin, all of which provide six years to bring suit. *See* Wis. Stat. § 893.35 (action to recover personal property); Wis. Stat. § 893.51 (action for wrongful taking of personal property); Wis. Stat. § 893.93 (an action upon a liability created by statute when a different limitation is not prescribed by law).

reserve a final determination on this issue until it has heard more fully from both sides, As the court reads the Supreme Court's decision in *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000), knowledge -- whether actual or constructive -- of the existence of some fiduciary duty and breach of that duty is *only* required if the transferee of the trust proceeds purchased them for value.[5] In other words, to pursue a claim against a gratuitous transferee, such as Karen Fenkell, an allegation or proof of knowing participation does not appear to be required. For this reason, defendants have failed to demonstrate that plaintiffs' proposed pleading would be futile simply because it fails to plead Karen Fenkell's knowing participation.

Accordingly, the court will allow plaintiffs to amend their complaint to add Karen Fenkell as a defendant and to add a new cause of action, Count XVI, alleging that Karen Fenkell is liable as a gratuitous transferee of phantom stock plan proceeds pursuant to ERISA § 502(a)(3). To address any possible prejudice, Karen Fenkell will also have an

---

[5] In reaching this preliminary conclusion, the court primarily relies on the following passages:

> [I]t has long been settled that when a trustee in breach of his fiduciary duty to the beneficiaries transfers trust property to a third person, the third person takes the property subject to the trust, unless he has purchased the property for value *and* without notice of the fiduciary's breach of duty.

*Harris Trust*, 530 U.S. at 250.

> Only a transferee of ill-gotten trust assets may be held liable, and then only when the transferee (*assuming he has purchased for value*) knew or should have known of the existence of the trust and the circumstances that rendered the transfer in breach of the trust.

*Id.* at 251 (emphasis added).

opportunity to bring a motion to dismiss and/or for summary judgment on this claim or on any defenses she may have to this claim.

ORDER

IT IS ORDERED that:

1) Plaintiffs' motion for leave to amend their complaint to add Karen Fenkell as a defendant and to assert a claim against her as a gratuitous transferee in violation of ERISA § 502(a)(3) (dkt. #689) is GRANTED. Plaintiffs' proposed third amended complaint (dkt. #690-1) is now the operative pleading in this case.

2) Plaintiffs shall immediately serve Karen Fenkell with the third amended complaint and summons. Consistent with Federal Rule of Civil Procedure 12(a)(1), Karen Fenkell may answer, move, or otherwise respond to the complaint within 21 days of service and this court will hold a scheduling conference thereafter to establish a fair and orderly process to resolve this claim.

3) All other defendants are relieved of any obligation to respond to the third amended complaint, their current pleadings remaining operative, and the court will proceed to a damages trial as previously scheduled.

Entered this 25th day of July, 2012.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge