*Chesemore, et al. v. Alliance Holdings, Inc., et al.*, **3:09-cv-00413-wmc**
**Partial Settlement Term Sheet**
**(this "Settlement Term Sheet")**
**With David B. Fenkell and Karen G. Fenkell (the "Fenkell Defendants")**

WHEREAS, in its October 16, 2013, Order (D.E. 824) (the "October 16th Order"), the U.S. District Court for the Western District of Wisconsin (the "Court") ordered in *Chesemore, et al. v. Alliance Holdings, Inc., et al.*, 3:09-cv-00413-wmc (this "Litigation" or "*Chesemore*"), among other things, the following remedies in this Litigation: "Defendant Fenkell shall restore to Trachte Building Systems, Inc. the $2,896,000 received in phantom stock proceeds as part of the August 29, 2007 Transaction, provided Trachte restores Fenkell's phantom stock plan in return;"

WHEREAS, the "$2,896,000 received in phantom stock proceeds as part of the August 29, 2007 Transaction" are hereby referred to as the "Phantom Stock Plan Proceeds";

WHEREAS, in the October 16th Order, the Court permitted Plaintiffs to proceed with their claim against Karen G. Fenkell ("Karen Fenkell");

WHEREAS, David B. Fenkell ("David Fenkell") and Karen Fenkell represent as follows:

(a) The Fenkell Defendants paid at least $1,212,316.00 in Federal and Pennsylvania income taxes, including, without limitation, income, withholding, Medicare and unemployment taxes (the "Phantom Stock Plan Proceeds Taxes"), that were wholly attributable to the Phantom Stock Plan Proceeds; and

(b) To the best of the Fenkell Defendants' knowledge, the Phantom Stock Plan Proceeds did not earn or otherwise increase in value by more than approximately $50,000 between August 29, 2007, and the date of this Settlement Term Sheet;

(c) The Fenkell Defendants had the opportunity to and did consult with their counsel in this Litigation, Jackson Lewis LLP, prior to entering into this Settlement;

WHEREAS, Class Counsel in this Litigation and the *Chesemore* Plaintiffs have relied on the truth and accuracy of the foregoing representations in deciding to enter into this Settlement Term Sheet on behalf of the Subclass (as certified by the Court);

WHEREAS, Class Counsel has consulted with the *Chesemore* Plaintiffs prior to entering into this Settlement; and

WHEREAS, the Fenkell Defendants acknowledge and agree that Class Counsel's and the *Chesemore* Plaintiffs' reliance on the representations by the Fenkell Defendants, as identified and described in the "WHEREAS" clause above, is reasonable and that the representations are material and essential conditions of this Settlement Term Sheet.

IT IS HEREBY AGREED by and between the *Chesemore* Plaintiffs on behalf of themselves and the certified Subclass, and the Fenkell Defendants to resolve the *Chesemore* Plaintiffs' Phantom Stock Plan Claims (defined below) against the Fenkell Defendants in

*Chesemore* on the following terms and conditions, which will be incorporated into a Final Settlement Agreement after the execution of this Settlement Term Sheet:

1.  **Court Approval of Class Settlement**.  This Settlement is conditioned upon the Court approving this Settlement under Rule 23 of the Federal Rules of Civil Procedure as fair, reasonable and adequate on behalf of both the Subclass and Class originally certified by the Court, except to the extent necessary to clarify that Stephen Pagelow (and his beneficiaries) are not members of the Class or Subclass.  Exclusion of the "Trachte Trustee Defendants" (James Mastrangelo, Jeffrey A. Seefeldt, and Pamela J. Klute) and their beneficiaries from the Class, Subclass and this Settlement by the Court is a material condition of this Settlement.

    (a)  After execution of this Settlement Term Sheet, the Fenkell Defendants' counsel will submit the executed Settlement Term Sheet to the Court *in camera* and under seal (after approval by the Court to do so) and notify the Court that the *Chesemore* Plaintiffs and the Fenkell Defendants have settled the aspects of this Litigation as set forth in this Settlement Term Sheet and will seek a stay of the discovery and other proceedings in the Court only related to the Phantom Stock Claims (defined below).  Class Counsel will not oppose these requests.

    (b)  As soon as reasonably practicable after the contingencies and conditions in this Settlement Term Sheet (other than the court clarification of the class definition and approval of the settlement) have been satisfied, Class Counsel and the Fenkell Defendants will cooperate in preparing a Final Settlement Agreement.

    (c)  As soon as reasonably practicable after executing the Final Settlement Agreement, Class Counsel will prepare a motion for preliminary approval of the Final Settlement Agreement and the *Chesemore* Plaintiffs and the Fenkell Defendants will cooperate to have the Final Settlement Agreement approved by the Court.

    (d)  After the Court grants preliminary approval of the Final Settlement Agreement, Class Counsel shall provide a Notice of the Settlement and Plaintiffs' proposed Plan of Allocation of the Settlement Proceeds hereunder (defined below) to the Class and the Subclass.  To the extent electronic notification (*e.g*, e-mail) is available and approved by the Court, notice can be provided by electronic means and the *Chesemore* Plaintiffs and Class Counsel will attempt to provide Notice and other settlement-related communications by electronic means.

    (e)  The Fenkell Defendants will pay fifty percent (50%) of the costs of providing notice to the Subclass of this Settlement, which shall be paid with funds other than the Settlement Proceeds.  In the event that Plaintiffs' combine the Notice of this Settlement with another Settlement or another Notice related to this Litigation, that will not reduce the percentage owed by the Fenkell Defendants regarding costs of Notice.

2. **Contingency of Trachte Building Systems, Inc. Agreement Regarding this Settlement:**

   (a) This Settlement is contingent upon the *Chesemore* Plaintiffs reaching agreement with Trachte Buiding Systems, Inc. ("Trachte") regarding all of the following: (1) the allocation between the *Chesemore* Plaintiffs and Trachte of the Settlement Proceeds paid pursuant to this Settlement, (2) an amount to be paid to Class Counsel in attorneys' fees and expenses out of the Settlement Proceeds, and (3) Trachte's agreement that this Settlement resolves all claims by Trachte as to the Phantom Stock Plan Claims. In the event that Class Counsel is unable to reach an agreement with Trachte satisfying this contingency within thirty (30) days of the date of this Settlement Term Sheet, either Party may withdraw from this Settlement and resume the Litigation.

   (b) This Settlement is contingent upon Trachte agreeing and executing the Final Settlement Agreement and agreeing to release the Fenkell Defendants substantially in the form of the release set forth below. In the event that Trachte refuses to do so, the Fenkell Defendants may withdraw from this Settlement and resume the Litigation.

3. **Other Conditions of this Settlement:**

   (a) Within fourteen (14) days of the date that Class Counsel has confirmed that the *Chesemore* Plaintiffs have reached agreement with Trachte with respect to this Settlement Term Sheet:

   (1) The Fenkell Defendants will provide declarations, given under penalty of perjury, and attesting that to the best of their knowledge after reviewing any necessary documentation and consulting with their tax professionals, that the Fenkell Defendants paid at least $1,212,316.00 in Phantom Stock Plan Proceeds Taxes, that were wholly attributable to the receipt of $2,896,000 originally received as payment pursuant to the Trachte Phantom Stock Plan.

   (2) The Fenkell Defendants will provide Class Counsel with sufficient confidential confirmatory discovery reasonably acceptable to the Fenkell Defendants and Class Counsel ("Confidential Confirmatory Discovery") that the $2,896,000 received as payment pursuant to the Trachte Phantom Stock Plan did not have earnings or otherwise increase in value by an amount of more than approximately $50,000 between August 29, 2007, and the date of this Settlement Term Sheet.

   (b) The Confidential Confirmatory Discovery will be designated confidential pursuant to the terms of the Protective Order in this Litigation and be disclosed only to the Class Representatives, Class Counsel, any consultants employed by Class Counsel who have agreed to be bound by the Protective Order and the Court (under seal). The Confidential Confirmatory Discovery may be provided to Trachte's counsel if (1) Trachte has agreed to be bound by the Protective Order,

            or (2) reaches some other agreement with the Fenkell Defendants regarding confidentiality.

    (c)    In the event that the Fenkell Defendants have not provided Class Counsel with the Declaration provided for in Section 3(a)(1) or Class Counsel concludes that the Fenkell Defendants have not provided Class Counsel with sufficient Confidential Confirmatory Discovery reasonably acceptable to Class Counsel as required by Section 3(a)(2), Class Counsel will have the unilateral right to withdraw from this Settlement, seek an end of the stay and resume this Litigation.

    (d)    In the event that the Court has not entered a stay of this Litigation within five (5) business days of the date that this Settlement Term Sheet is signed, either the Fenkell Defendants or Class Counsel may withdraw from this Settlement at anytime thereafter by giving notice to the other party.

4. **Settlement Proceeds**:

    (a)    Karen Fenkell will pay $1,800,000 into an escrow account to be agreed upon by the *Chesemore* Plaintiffs and the Fenkell Defendants (the "Escrow Account") on the following timeframe: (a) $600,000 within ten (10) business days of the execution of this Settlement Term Sheet and (b) $1,200,000 within sixty (60) days of the execution of this Settlement Term Sheet.

    (b)    In the event that either the Fenkell Defendants or Class Counsel exercise their respective rights to withdraw from this Settlement or the Court refuses to grant either preliminary approval or final approval of the Final Settlement Agreement, the amount in the Escrow Account minus any reasonable expenses incurred (including any necessary reserve for taxes or tax preparation) will be returned to an account specified by Karen Fenkell within ten (10) business days of the order denying approval by the Court or the written notice exercising the right to withdrawal.

5. **Partial Release**:

    (a)    As part of the Final Settlement Agreement, the *Chesemore* Plaintiffs, Trachte, and the Subclass will release David Fenkell *solely* with respect to the $2,896,000 that David Fenkell received in Phantom Stock Plan Proceeds in the August 29, 2007, transaction, the transfer of any portion of those proceeds to his wife, Karen Fenkell, and any claim for attorneys' fees or expenses related solely to or incurred specifically in pursuit of the claims against Karen Fenkell (the "Phantom Stock Claims"). The *Chesemore* Plaintiffs, Trachte, the Class, and the Subclass will release Karen Fenkell from the Phantom Stock Claims and any other claims that were brought or could have been brought against Karen Fenkell in the Litigation related to her receipt of the Phantom Stock Proceeds. The Final Approval Order of this Settlement will contain a dismissal with prejudice of the Phantom Stock Claims against David Fenkell and the claims brought against Karen Fenkell pursuant to the Third Amended Class Action Complaint.

4

(b) Nothing in this Settlement Term Sheet or the Final Settlement Agreement will release any other claims, remedies or relief that *Chesemore* Plaintiffs, the Subclass or the Class have against the Fenkell Defendants or any other defendant in the Litigation. The Final Approval Order will specifically provide that no other claims against David Fenkell have been dismissed and that no other claims or relief has been settled or compromised as a result of this Settlement, including the claims for which the Court has found that David Fenkell is jointly liable with the Alliance Entities and the claims for indemnification as set forth in the October 16th Order.

6. **Allocation of Proceeds:** After the deduction of any amounts agreed-upon between the *Chesemore* Plaintiffs and Trachte (and any amounts deducted to pay attorneys' fees and expenses), the Settlement Proceeds shall be allocated to members of the Subclass on an allocation plan to be submitted by Class Counsel to the Court for approval and which shall be subject to modification by the Court. The Fenkell Defendants will not have any input on the method or plan of allocation.

7. **Tax Benefits**: The Fenkell Defendants will not take any action that impedes payment of the Settlement Proceeds in a manner that enables the Subclass to obtain tax favorable treatment of the proceeds of the Settlement Proceeds, including by paying the proceeds through a qualified retirement plan and will cooperate with Class Counsel to enable to such tax favorable treatment if their cooperation is necessary. The Final Settlement Agreement will provide that the Fenkell Defendants are not making any representations regarding and the Subclass is not relying upon representations regarding any tax advice from the Fenkell Defendants related to the Settlement Proceeds.

8. **Waiver of Any Right to Receive Settlement Proceeds.** Neither the Fenkell Defendants nor any of their beneficiaries will receive, either directly or through allocations to their Alliance Holdings, Inc. ESOP accounts, any of the Settlement Proceeds. To the extent that any portion of the Settlement Proceeds is paid into the Alliance ESOP or some other qualified retirement plan, the Fenkell Defendants and any other person who receives a release in this Settlement Term Sheet or the Final Settlement Agreement agree not to receive any allocation of any amount from the Settlement Proceeds and will obtain an authorization from any current spouse or other beneficiary necessary to forego any such allocation (unless consent from a non-spousal beneficiary is not possible).

9. **Removal As Fiduciary:** David Fenkell will not challenge or appeal the Court's order removing him as a fiduciary of the Alliance ESOP and will not seek to serve as a fiduciary of the Alliance ESOP so long as any member of the Subclass is a participant in the Alliance ESOP.

10. **Attorneys' Fees:** The Fenkell Defendants will not take any position on Class Counsel's request for attorneys' fees or expenses from the Settlement Proceeds.

1828312.1.2

November 29, 2013

By: _____
R. Joseph Barton
COHEN MILSTEIN
    SELLERS & TOLL, PLLC
1100 New York Avenue, Suite 500
Washington D.C. 20005

*On Behalf of & As Counsel for
Plaintiffs & the Subclass*

By: _____
David B. Fenkell

By: _____
Karen G. Fenkell

6

1828315.2