## *Chesemore v. Alliance Holdings* Settlement Term Sheet
## With Alliance Defendants

WHEREAS in its October 16, 2013 Order, the Court has ordered, among other things, the following remedies in this litigation:

(a) Defendants Alliance Holdings, Inc., David B. Fenkell, A.H.I., Inc. and AH Transition Corporation are jointly and severally liable to restore to the Alliance ESOP $7,803,543 plus prejudgment interest, which shall in turn be distributed in cash according to the accounts of the members of the subclass in proportion to their holdings in the Alliance ESOP as of August 29, 2007, with the exclusion of defendants Mastrangelo, Seefeldt and Klute, unless any member of the class should elect to receive their pro rata share in stock in lieu of cash, in which case the stock allocation shall be made by an independent fiduciary as set forth above.

(b) Defendant Fenkell shall restore to Trachte Building Systems, Inc. the $2,896,000 received in phantom stock proceeds as part of the August 29, 2007 Transaction, provided Trachte restores Fenkell's phantom stock plan in return.

(c) Defendants Mastrangelo, Seefeldt and Klute shall pay to the Trachte ESOP $6,473,856.82 plus prejudgment interest, which shall be allocated to the class members' accounts according to their current shares as of the date of this judgment, with the exclusion of defendants Mastrangelo, Seefeldt and Klute.

(d) Defendants Alliance and Fenkell shall indemnify defendants Mastrangelo, Seefeldt and Klute for any compensatory relief they are required to pay.

WHEREAS Plaintiffs, on behalf themselves and the Class, have executed a Settlement in Principle with Pamela Klute, James Mastrangelo and Jeffrey Seefeldt ("the Trustee Defendants") and Defendant Pagelow (collectively with the Trustee Defendants, the "Trachte Defendants"), which, among other things, requires the Trachte Defendants to pay $3.25 million to settle the claims by the Class and includes an assignment of the Trachte Defendants' claims against any other defendant for "contribution, indemnification or otherwise in the 2007 Transaction."

WHEREAS, in return for the consideration in this Agreement, including the assignment of claims set forth herein, Alliance Holdings, Inc., A.H.I., Inc. and AH Transition Corporation (the "Alliance Defendants") are willing to bear all of the liability to Plaintiffs, the Class and the Subclass that is currently a joint and several liability of the Alliance Defendants and Fenkell, and which exceeds the amount in David Fenkell's account in the Alliance ESOP. As the Alliance Defendants have not agreed in this Agreement to bear either (i) David and Karen Fenkell's (the "Fenkells") liability as to the Phantom Stock Payment or (ii) the Class's claims against the Fenkells under ERISA § 502(g), the Class and the Subclass expressly retain these claims against the Fenkells, as well any right to have the proceeds of David Fenkell's Alliance ESOP account applied toward his liability to the Class or Subclass.

1

WHEREAS the Alliance Defendants represent that the amount of Stephen Pagelow's Alliance ESOP account transferred as part of the 2007 Transaction was valued for purposes of the 2007 Transaction at $ 1,069,700.25, and that the combined total value of the Trustee Defendants' Alliance ESOP accounts for purposes of the 2007 Transaction was $478,805.24.

WHEREAS the Alliance Defendants represent that the seller's note which AHI received in the 2007 Transaction has a principal amount of $4,370,000, continues to accrue interest, and had a market value of $369,000 as of the Alliance ESOP valuation dated December 31, 2012.

WHEREAS the Alliance Defendants represent that the dollar value of David Fenkell's Alliance ESOP account as of December 31, 2012, was $502,619.91.

WHEREAS the Alliance ESOP represents, based on its good faith analysis of the relevant business records, that the value of the accounts of those participants who are entitled to immediate distribution rights under this Settlement had a value of approximately $2,465,000 for purposes of the 2007 Transaction.

IT IS HEREBY AGREED by and between Plaintiffs on behalf of themselves and the certified Class and Subclass, and Defendants Alliance Holdings, Inc., A.H.I., Inc., and AH Transition Corporation (collectively, "the Alliance Defendants") and Nominal Defendant the Alliance Holdings, Inc. Employee Stock Ownership Plan ("Alliance ESOP") to resolve all of Plaintiffs' claims against the Alliance Defendants and Fenkell in *Chesemore et al. v. Alliance Holdings, Inc., et al.*, Case No. 09-cv-413, **except** the Retained Claims (defined below), on the following terms and conditions which will be incorporated into a Final Settlement Agreement after the execution of this Agreement in Principle:

1. **Court Approval of Class Settlement.** This settlement is conditioned upon the Court approving this settlement under Rule 23 as fair, reasonable and adequate on behalf of both the Subclass and Class originally certified by the Court. Exclusion of the Trachte Defendants, Stephen Pagelow, and their beneficiaries from the Class, Subclass and the Settlement is a material condition of this Settlement.

    (a) Once the final settlement agreement is executed, Class Counsel will prepare a motion for preliminary approval and all parties will cooperate to have the settlement approved.

    (b) After preliminary approval is granted, Notice of the Settlement and Plaintiffs' proposed Plan of Allocation of the Settlement will be provided to the Class. To the extent electronic notification (*e.g.*, e-mail) is available and approved by the Court, notice may be provided by electronic means, and the Alliance Defendants and Class Counsel will attempt to provide Notice and other settlement-related communications by electronic means.

    (c) Alliance Defendants will bear all administration costs of implementing the settlement, including the costs of providing notice to the class and the appointment of an Independent Fiduciary and a qualified independent valuation firm (if the valuation is not performed by the Independent Fiduciary itself), and

2

1851679.1

any steps necessary to ensure the continued tax-qualification of the Alliance ESOP.

2. **Settlement of the Subclass Claims:** As settlement of the claims of the Subclass for their accounts transferred from the Alliance ESOP to the Trachte ESOP in the 2007 Transaction, the Alliance Defendants will restore the accounts of the Subclass in the Alliance ESOP in the amount of $ 7,000,000, consisting of $5,500,000 in stock and $1,500,000 in cash paid as follows:

   (a) The $5,500,000 in stock will be paid to the Subclass's restored Alliance ESOP accounts one business day after Final Approval becomes effective and will be allocated pursuant to the Plan of Allocation. To the extent such stock is available, the Alliance Defendants will contribute a sufficient amount of both Alliance and AH Transition stock so that the restored Alliance ESOP accounts of the Subclass will contain the same proportion of Alliance versus AH Transition stock as they contained immediately before the 2007 Transaction.

   (b) The $1,500,000 in cash will be paid into an Escrow Account within 30 days of execution of this Agreement. After approval of the Settlement becomes final, the amount in the Escrow Account (less any amounts awarded for fees or expenses) will be distributed to the restored Alliance ESOP accounts of the Subclass based on an allocation plan to be submitted by Class Counsel to the Court for approval and which shall be subject to modifications by the Court.

   (c) Class Counsel will propose a Plan of Allocation to be approved by the Court that allocates the $5.5 million in stock and the amount in the Escrow Account on a pro rata basis based on the value of each Subclass members' account in the Alliance ESOP as of August 29, 2007. Class Counsel intends to propose a Plan of Allocation whereby, along with the $1,528,300 of liquidity that the Alliance Defendants have agreed to provide pursuant to Section 3.2(b), sufficient cash will be allocated to immediately liquidate and distribute benefits to the Participants in Section 3.2. The Alliance Defendants (including the Alliance ESOP) will have no input on the method or plan of allocation and modification by the Court will not constitute a modification of the Settlement. If the Plan of Allocation fails to provide a sufficient amount of cash to immediately distribute benefits to the Participants in Section 3.2, that will not alter the liquidity that the Alliance Defendants are required to provide pursuant to Section 3.2(b) to repurchase the stock allocated to the accounts of the Participants described in Section 3.2. In no event will the Plan of Allocation or Settlement require the Alliance Defendants to liquidate those immediate stock distributions in an amount exceeding the $1,528,300 of liquidity provided in Section 3.2(b).

3. **Distribution and Put Rights of Subclass.** Any member of the Subclass shall be entitled to receive distributions as follows:

   3.1 <u>Distributions of Cash Allocated to Participant Accounts</u>

(a) Any member of the Subclass who receives an allocation of cash to his Alliance ESOP account pursuant to the Plan of Allocation will be entitled to elect to receive a distribution of the cash portion of his/her account.

(b) To the extent that a Subclass member makes an election prior to Final Judgment to receive the cash portion of his/her account, such distribution will be paid within 30 days after Final Judgment becomes effective. To the extent that a Subclass member makes an election after Final Judgment to receive the cash portion of his/her account, such distribution will be paid within 60 days of receipt of the election (so long as it is after the effective date of the Settlement).

3.2 <u>Participants Entitled to Immediate Liquidity of Stock in their Accounts</u>:

(a) Subject to and limited by the availability of funding as described in subsection 3.2(b), the following members of the Subclass, whose accounts are to be restored in part with Alliance or AH Transition stock, shall be entitled to receive distributions as follows:

(i) Any Subclass member who, as of Final Judgment, has either reached Normal Retirement Age (e.g. age 65), become disabled, or died shall be entitled (or in the case of death, his/her beneficiary shall be entitled) to elect to receive an immediate distribution of his restored Alliance ESOP account to be paid within 30 days after Final Judgment has been entered if elected prior to Final Judgment or 60 days after receipt of the election (so long as it is after the effective date of the Final Judgment).

(ii) Subclass members who have reached 55 years of age or older and have ten years of participation in the Alliance ESOP at the time that their accounts are restored shall be designated as Qualified Participants under the Alliance ESOP Section 7.9(c) and shall have the right to immediately elect to diversify their accounts and receive an immediate distribution to be paid within 30 days after Final Judgment has been entered if elected prior to Final Judgment or 60 days after receipt of the election (so long as it is after the effective date of the Final Jugment). If a Subclass member is a Qualified Participant who would have attained the sixth year of the Qualified Election Period under Alliance ESOP Section 7.9(c), that Subclass member shall be eligible to liquidate up to fifty percent (50%) of that Subclass member's account balance (regardless of the portion which constitutes stock) and receive a distribution of all portions that qualify for liquidation or were restored with cash. For purposes of this subsection 3.2(a)(ii), Subclass members who were participants in the Alliance ESOP on the date of the 2007 Transaction shall have participation counted as if they continued to be participants in the Alliance ESOP after the 2007 Transaction.

(b) The Alliance Defendants will make $1,528,300 available to provide liquidity for immediate cash distributions with respect to stock allocated to the members of the Subclass described subsection 3.2(a), which is then put to Alliance. To the extent that the entire $1,528,300 in liquidity is not used to fund distributions

4

1851679.1

immediately after Final Judgment, the remainder shall remain available to pay distributions requested after Final Judgment, which are covered by this Section 3.2. Should the amounts described in this subsection (b) be exhausted prior to payment of all amounts described in Section 3.2(a), the remaining amounts shall be subject to the five-year payout rules set forth in Section 3.4.

3.3  <u>Participants Entitled to Deferred Distributions of Stock Allocated to the Accounts</u>

(a) For any participant whose account is not entitled to an immediate distribution in full at the time of Final Judgment either under the Plan or pursuant to this Agreement and who is a member of the Subclass, such participant will be entitled to request a distribution under the Plan of all or a portion of his/her Alliance ESOP account.

(b) For these participants, the Alliance Defendants will be required to pay the portion of the account for which they request distribution in five equal annual installments subject to the timing rules in Section 3.4.

3.4  Timing of Distribution

(a) For any accounts distributed via the put option on an installment basis for which any member of the Subclass exercises the right to take a distribution in whole or in part prior to Final Judgment,

   (i) The price of the stock will be the price determined pursuant to Section 4(c).

   (ii) The first installment will be paid no earlier than January 1, 2015 and no later than January 31, 2015 (unless the Final Judgment is not effective by that date in which case it shall be paid 60 days after the effective date). Subsequent installments will be paid no later than 30 days after each anniversary of the date of the first installment payment..

   (iii) The amount payable will be secured by a note from Alliance, which shall accrue simple interest at the prime rate and which shall not be subordinated to any debt incurred after the date of Final Judgment.

(b) For any accounts distributed on an installment basis for which any member of the Subclass exercises the right to take a distribution in whole or in part after Final Judgment,

   (i) The price of the stock will be the price determined in the then-most recent annual valuation as described in Section 4(d).

   (ii) The participant will be entitled to elect to put the stock beginning in January 2015 (or, if later, the date of Final Judgment), with the first installment to be paid within 30 days after the request for distribution. All subsequent

installments will be paid no later than 30 days after each anniversary of the date of the first installment payment..

(iii)   The amount payable will be secured by a note from Alliance including simple interest at the prime rate pursuant to the terms of the Plan Document.

3.5   <u>Additional Rights of Members of the Subclass</u>

(a)   In addition to any rights afforded in this Settlement, any member of the Subclass will be entitled to exercise, at the participant's option, any rights to diversification or distribution available under the Plan Document in effect either (1) the earlier of their termination of employment with Trachte or the 2007 Transaction or (2) at the time they exercise their distribution rights. This Section 3.5(a) shall only apply to determine the plan terms that govern Subclass members' distribution rights, and does not permit any Subclass member to make retroactive distribution elections.

(b)   In the event that Alliance elects to cash-out or distribute benefits to other similar categories of non-Trachte participants in the Alliance ESOP sooner than permitted with respect to the Subclass under this Agreement, the Alliance ESOP shall permit each member of the Subclass to receive his/her distribution under the same timeframe notwithstanding any contrary provision in this Agreement or the Plan.

4.   **Valuation of the Accounts of the Subclass**

(a)   The Court will appoint an Independent Fiduciary to make the determination of fair market value in accordance with DOL Proposed Regulation § 2510.3-18 and to oversee the restoration of the Alliance ESOP accounts of the Subclass. The Parties shall attempt to agree on an independent fiduciary to propose to the Court or if unable to agree upon one, will separately submit proposals to the Court. No person or firm retained or consulted by any Party to this litigation to provide any opinion or services in or related to this litigation shall be eligible to serve as Independent Fiduciary.

(b)   All valuations of any stock in the restored Alliance ESOP accounts of members of the Subclass will be based on a valuation performed by a qualified independent appraiser (which may include the Independent Fiduciary if the Independent Fiduciary is a qualified appraiser) and will meet the requirements of DOL Proposed Regulation § 2510.3-18. The Independent Fiduciary will choose the person or firm to perform the valuation for purposes of restoring the Subclass's Alliance ESOP accounts. The following firms are ineligible to serve as appraiser for this purpose: Stout Risius Ross (including any current or former employee or partner at SRR who was involved with a prior valuation of Alliance); Barnes Wendling Valuation Services (or any person at BWVS who was involved with 2007 Transaction); and any other person retained or consulted by any Party to this litigation to provide any valuation-related opinion in or related to this litigation.

1851679.1

    (c)    With respect to distributions made to participants who, prior to Final Judgment, elect to receive a distribution, the valuation used to calculate the value of the $5,500,000 in Alliance in AH Transition shares provided for under Section 2(a) shall also be the valuation used to calculate the amount to be distributed (before any interest).

    (d)    With respect to distributions made to participants who do not elect until after Final Judgment to receive a distribution, the valuation used for purposes of calculating their distribution will be the valuation of Alliance and AH Transition stock currently being used for all other distributions of the same type so long as the valuation is performed in accordance with DOL Proposed Regulation § 2510.3-18 and shall not require the use of an Independent Fiduciary or separate appraiser or valuation firm. For purposes of clarity, the bar on specific firms listed in Section 4(b) shall not apply for purposes of this Section 4(d).

    (e)    None of the amounts of this Settlement, nor any of the expenses incurred in administering the Settlement, nor the payment of any amounts to the Fenkells to resolve any claims by or against them shall be charged as an expense against any account of the Subclass nor used or considered (as an expense or liability), directly or indirectly, in determining the value of the stock in the accounts of the Subclass.

    (f)    Until the time that all members of the Subclass have received their distributions from the Alliance ESOP, the Alliance ESOP will provide Class Counsel with a copy of any valuations within 30 days of the issuance of the valuation report and will provide any member of the Subclass with a copy of the valuation report upon written request within 30 days of the request.

    (g)    For purposes of confirming certain representations related to this Agreement, Alliance will provide Class Counsel with copies of the Alliance Defendants' most recent audited financial statement and, prior to final approval, its then most recent monthly financial statement.

5. **Tax Treatment**: The Alliance Defendants and the Alliance ESOP will use their best efforts, including any correction procedures necessary (e.g. through EPCRS), to ensure that the settlement comports with IRS rules, and that the Alliance ESOP maintains its tax qualification. The Alliance Defendants will be responsible for bearing all costs related to such procedures and maintaining the tax qualification of the Alliance ESOP. In the event that the IRS raises any issues concerning the settlement, the Alliance Defendants and/or the Alliance ESOP will provide copies to Class Counsel of such correspondence to and from the IRS. Class Counsel and the Class agree to work cooperatively with the Alliance Defendants and the Alliance ESOP to resolve any such IRS issues concerning the settlement.

6. **Settlement of the Class Claims**. To settle the claim for indemnification and contribution awarded by the Court to Pagelow and the Trachte Trustee Defendants and assigned to the Class by Pagelow and the Trustee Defendants:

7

1851679.1

(a) The Alliance Defendants will pay $150,000 into a Settlement Fund within 30 days after execution of a Settlement Agreement. The Settlement Fund for the Class Claims (net of any attorneys' fees and expenses approved by the Court) will be allocated to members of the Class based on an allocation plan to be submitted by Class Counsel to the Court for approval and which shall be subject to modifications by the Court. Defendants will have no input on the method or plan of allocation.

(b) The Alliance Defendants will assign to the Class the Seller's Note that the Alliance Defendants received as part of the 2007 Transaction.

7. **Assignment of Claims.**

(a) Plaintiffs and the Class will assign to Alliance and the Alliance ESOP any claims that they may have against David Fenkell related to the 2007 Transaction -- other than the claim for fees and costs pursuant to ERISA § 502(g) -- to the extent such claims are above the dollar amount in Fenkell's Alliance ESOP account, and except as to any claim with respect to $2,896,0000 that Fenkell received in phantom stock proceeds, the proceeds transferred to his wife, Karen Fenkell, and any claim for attorneys' fees or expenses related solely to or specifically incurred in pursuit of those claims ( "the Phantom Stock Claims") (altogether, the claims up to the amount of David Fenkell's Alliance ESOP account, the Phantom Stock Claims and the 502(g) claims against the Fenkells are the "Retained Claims"). However, any amounts recovered against the Fenkell Defendants on any of the Retained Claims, whether by Settlement or Judgment, will belong to the Subclass and are not assigned.

(b) The Class will also assign any and all claims that have been assigned to the Class by the Trustee Defendants or Pagelow as against David Fenkell arising from the 2007 Transaction. In consideration of this assignment, Alliance shall defend, indemnify and hold harmless the Class, Class Counsel and the Class's predecessor(s) in interest as to any assigned claims against Fenkell (i.e. the Trustee Defendants and Pagelow), in any litigation to enforce the judgment against Fenkell, as well as against any claims asserted by Fenkell against the assigning parties in any other litigation.

(c) At Class Counsel's option, the Alliance Defendants will either assign any claims that they may have against the Alpha Defendants (i.e. John Michael Maier and Alpha Investment Consulting), the Trustee Defendants and Pagelow to Plaintiffs and the Class or release any such claims that the Alliance Defendants have against the Alpha Defendants, the Trustee Defendants and Pagelow.

(d) No claim for fees or costs against David Fenkell or Karen Fenkell is being released by this Agreement nor is any claim or amount for fees or costs against David Fenkell or Karen Fenkell being assigned pursuant to this Agreement and are specifically retained by Plaintiffs. Plaintiffs and Class Counsel agree that, if claims under ERISA § 502(g) for fees and costs against Fenkell are settled after

8

the date of this Agreement, Plaintiffs shall require, as a condition to any settlement, that Fenkell expressly waive any and all claims against the issuer(s) of Federal Insurance Policy No. 8173-2200 and National Union Fire Insurance Company of Pittsburgh PA Policy No. 01-257-67-31, or any of their affiliates (the "Insurers"), which claims arise from or relate to the 2007 Transaction or the action known as *Chesemore et al. v. Alliance Holdings, Inc., et al.*, Case No. 09-cv-413. The waiver shall be in a form approved by the Insurers, such approval not to be unreasonably withheld.

8. **Releases**

    (a) Plaintiffs and the Class will release any and all claims whatsoever, whether known or unknown, against the Alliance Defendants, any and all past and present officers, employees, directors, principals, insurers, advisors, attorneys and agents of the Alliance Defendants, and all predecessors and successors thereof, based upon, arising out of, or in any way related to, directly or indirectly, any duty, responsibility, act or omission related to the 2007 Transaction, except as follows: (i) the Retained Claims against the Fenkells shall not be released and (ii) any claim for attorneys' fees or expenses shall be released only upon execution and approval of a satisfactory agreement on payment of fees, or upon Final Judgment of the Court resolving any claim for attorneys' fees.

    (b) The Alliance Defendants will release any and all claims whatsoever, whether known or unknown, against Plaintiffs, the Class, Class Counsel, any and all past and present officers, employees, directors, principals, insurers, advisors, attorneys and agents related to this litigation including any claims for attorney's fees, costs, expenses or sanctions, relating to the filing, commencement, prosecution or settlement of this litigation.

    (c) Except as to Pagelow and the Trachte Trustee Defendants, the Alliance Defendants will release any and all claims against Trachte, any and all past and present officers, employees, directors, principals, insurers, advisors, attorneys and agents of Trachte, and all predecessors and successors thereof, based upon, arising out of, or in any way related to, directly or indirectly, any duty, responsibility, act or omission related to the 2007 Transaction.

9. **Attorneys' Fees to Class Counsel.**

    (a) Alliance Defendants agree to pay $5.325 million to Class Counsel as attorneys' fees and costs as follows:

    (i) $4.25 million within 30 days after entry of Final Judgment;

    (ii) $300,000 by December 1, 2015;

    (iii) $300,000 by December 1, 2016;

    (iv) $237,500 by December 1, 2017;

9

1851679.1

      (v)      $237,500 by December 1, 2018.

      (vi)     If Defendants' insurer(s) make(s) payment to the Alliance Defendants related to the 2007 Transaction, the Alliance Defendants will share fifty percent of any such payment in order to accelerate the payments otherwise to Class Counsel due in 2017 and 2018, with the latter obligation being satisfied first. Such payments will be made to Class Counsel within 30 days of the date that the Alliance Defendants receive payment(s) from their insurer(s). Acceleration of either or both of the 2017 or 2018 payments to Class Counsel shall not delay or otherwise alter the Alliance Defendants' payment obligations to Class Counsel under section 9(a)(i), (ii) or (iii).

(b)    The Alliance Defendants will reimburse Class Counsel for any out-of-pocket expenses incurred in 2014 up to $20,000, which amounts will be paid within 30 days of the entry of Final Judgment or, if submitted after Final Judgment, within 30 days of Class Counsel submitting proof of the itemized expenses to the Alliance Defendants' counsel.

(c)    With respect to any amounts that the Alliance Defendants pay to Class Counsel in this Section, which are paid prior to the exhaustion of all appeals, in the event that approval of the Settlement is reversed on appeal, Class Counsel will return to the Alliance Defendants all such amounts within 30 days of the Alliance Defendants' written request..

(d)    It is expressly contemplated that Class Counsel will seek an award of attorneys' fees and reimbursement of expenses in an amount to be awarded by the Court in addition to the amount of fees and expenses to be paid by the Alliance Defendants as part of this Settlement. With respect to any request for attorneys' fees or expenses to be paid out of any Settlement Fund created by this Settlement or any other Settlement, neither the Alliance Defendants nor the Alliance ESOP will take any position on any such request or the amount to be awarded pursuant to any such request.

(e)    Class Counsel will file any request for attorneys' fees expenses/costs or service award to be paid out of this Settlement prior to the expiration of the time for any Subclass member or Class member to object.

10

Dated: February 12, 2014

| On behalf of Plaintiffs, the Class & the Subclass | On behalf of the Alliance Defendants | On behalf of the Alliance ESOP |
|---|---|---|
| *[signature]* <br> R. Joseph Barton <br> COHEN MILSTEIN SELLERS & TOLL PLLC <br> 1100 New York Avenue, N.W. <br> West Tower, Suite 500 <br> Washington, D.C. 20005 | *[signature]* <br> Charles Clark Jackson <br> MORGAN LEWIS & BOCKIUS LLP <br> 77 W. Wacker Drive, 5th Fl. <br> Chicago, IL 60601 | *[signature]* <br> Lars C. Golumbic <br> GROOM LAW GROUP, CHTD. <br> 1701 Pennsylvania Avenue NW, Suite 1200 <br> Washington, DC 20006 |