UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CAROL CHESEMORE, DANIEL DONKLE, THOMAS GIECK, MARTIN ROBBINS, and NANNETTE STOFLET, on behalf of themselves, Individually, and on Behalf of All Others Similarly Situated,<br><br> Plaintiffs,<br><br> v.<br><br>ALLIANCE HOLDINGS, INC., A.H.I., INC., AH TRANSITION CORPORATION, DAVID B. FENKELL, PAMELA KLUTE, JAMES MASTRANGELO, STEPHEN W. PAGELOW, JEFFREY A. SEEFELDT, ALPHA INVESTMENT CONSULTING GROUP, LLC, and JOHN MICHAEL MAIER<br><br> Defendants,<br><br>and<br><br>TRACHTE BUILDING SYSTEMS, INC. EMPLOYEE STOCK OWNERSHIP PLAN and ALLIANCE HOLDINGS, INC. EMPLOYEE STOCK OWNERSHIP PLAN,<br><br>Nominal Defendants. | **Civil Action No. 09-CV-00413-wmc**<br><br>Judge William M. Conley |

**PLAINTIFFS' MOTION FOR PRELIMINARY
<u>APPROVAL OF CLASS ACTION SETTLEMENTS</u>**

 Plaintiffs, on behalf of the certified Class and Subclass, respectfully move this Court for an Order (1) preliminarily approving the proposed Settlements with (a) the Trustee Defendants and Stephen Pagelow; (b) the Alliance Entities, (c) a partial settlement with the Fenkells, and (d)

the agreement between Plaintiffs, Trachte and the Trachte ESOP;[1] (2) approving the proposed Class Notice as to form and content and authorizing distribution of the Notice to the Class as set forth in the proposed Settlement Agreement; and (3) establishing dates for the submission of any objections to the Settlement Agreement, for a final Fairness Hearing for approval of the Settlement, and for consideration of Class Counsel's applications for an award of attorneys' fees, reimbursement of litigation expenses and costs, and incentive awards for the Class Representatives. At this point, Plaintiffs have only entered into term sheets with these Defendants, but expect to enter into fuller Settlement Agreements before Final Approval.

## BACKGROUND

As the Court is familiar with this case as a result of the two trials, Plaintiffs do not believe it necessary to describe in detail the allegations or procedural background of this litigation, but provide the following summary for this Motion.

### I.   PROCEDURAL HISTORY OF THE LITIGATION

Plaintiffs initially filed this lawsuit on June 30, 2009. On March 1, 2010, the Alliance Entities, Fenkell, the Trustee Defendants, and Defendant Pagelow filed motions to dismiss the Amended Complaint. On February 17, 2011, the Court granted Alliance's motion to dismiss on two of Plaintiffs' three theories of liability but denied Defendants' motions to dismiss in all other respects. On March 17, 2011, Plaintiffs filed their motion for class certification, which the Court granted on September 22, 2011, and certified the following Class and Subclass:

> **CLASS:** Participants in the Trachte ESOP at any time from August 29, 2007 to the present who had an account or received an allocation which they did not subsequently

---

[1] Defendants fall into five groups: (1) Alliance Holdings, Inc., A.H.I., Inc., and AH Transition Corp. ("the Alliance Entities"); (2) David B. Fenkell and Karen Fenkell ("the Fenkells"); (3) Pamela Klute, James Mastrangelo, and Jeffrey A. Seefeldt ("the Trachte Trustees" or "Trustee Defendants"); (4) Alpha Investment Consulting Group, LLC and John Michael Maier ("the Alpha Defendants"); and (5) Stephen W. Pagelow.

forfeit under the terms of the Plan and the beneficiaries of such participants, excluding any fiduciary of the Trachte ESOP or Alliance ESOP during the 2007 Transaction on or about August 29, 2007 and any members of their immediate families, legal representatives, heirs, successors or assigns.

**SUBCLASS:** All persons who were participants or beneficiaries of the Alliance ESOP at the time of the 2007 Transaction and whose accounts were transferred to the Trachte ESOP on or about August 29, 2007 as part of the 2007 Transaction, excluding any fiduciary of the Trachte ESOP or Alliance ESOP during the 2007 Transaction on or about August 29, 2007 and any members of their immediate families, legal representatives, heirs, successors or assigns.

*Chesemore v. Alliance Holdings, Inc., et al.*, 276 F.R.D. 506 (W.D. Wis. 2011).

The parties engaged in extensive discovery in this litigation. After discovery was substantially completed, all Defendants filed motions for summary judgment. The Court denied Defendants' motions, with the exception of Defendant Pagelow, to whom the Court granted summary judgment and dismissed from the case prior to trial and Alliance's motion on Plaintiffs' ERISA § 208 claim. In October 2011, the Court held the Phase One Liability Trial. On July 24, 2012, the Court issued its decision on liability, finding the Alliance Entities, Fenkell and the Trustee Defendants liable for breaches of their fiduciary duties and/or prohibited transactions in connection with the 2007 Transaction, but concluding that the Alpha Defendants were liable in connection with their role in the 2007 Transaction. *Chesemore v. Alliance Holdings, Inc., et al.*, 886 F. Supp. 2d 1007 (W.D. Wis. 2012).

Beginning on July 25, 2012, the Court held the Phase Two Trial on Remedies. On August 23, 2012, Plaintiffs filed a Third Amended Class Action Complaint, asserting claims against Defendant Karen Fenkell. On September 28, 2012, the parties engaged in mediation before Magistrate Judge Peter A. Oppeneer, but did not reach a final settlement. On May 27, 2013, prior to the Court issuing its determination on remedies, Plaintiffs reached a settlement in principle with the Trachte Trustees and Pagelow.

On June 4, 2013, the Court issued its determination in the Phase Two Relief Trial, ordering the Trachte Trustees to restore $6.7 million to the Trachte ESOP (plus prejudgment interest), the Alliance Defendants to reinstate Trachte ESOP participants in the Alliance ESOP and restore $7.8 million to the plan accounts (plus prejudgment interest), and Defendant Fenkell to restore to Trachte the $2.8 million he received in phantom stock proceeds as part of the 2007 Transaction.  *Chesemore v. Alliance Holdings, Inc., et al.*, No. 09-cv-413-wmc, 2013 WL 2445036 (W.D. Wis. June 4, 2013).  The Court also ordered Defendants Alliance and Fenkell to indemnify the Trustee Defendants for any relief they are required to pay.

This Settlement Agreement was the product of lengthy arms' length negotiations between Class Counsel and Counsel for each of the settling Defendants.  The settlement with the Trachte Trustees and Pagelow was facilitated by Magistrate Judge Oppeneer.  The settlement with the Alliance Entities was facilitated by Retired United States District Judge Wayne Andersen.  The Class Representatives and Class Counsel concluded that each of these Settlements constituted a reasonable compromise and was the prudent and advisable course of action because it avoided the further risks inherent in this litigation, as well as the costs and delays associated with potential appeals.

## II.     MATERIAL TERMS OF THE PROPOSED SETTLEMENTS

The Settlements resolve claims brought against three groups of Defendants: (1) the Trachtee Trustees and Pagelow; (2) the Fenkells as to the Phantom Stock Claims; and (3) the Alliance Entities.  In total, the Settlements provide for more than $11.4 million in direct benefits to the Classes, plus indirect financial benefits through the amount provided to Trachte by the Phantom Stock proceeds, and the cancellation/assignment of the Sellers' Notes (worth at least another $ 1.2 million).  Additionally, the Settlement provides for removal of former fiduciaries

4

whom Plaintiffs allege breached their fiduciary responsibilities, and other relief to Plaintiffs, the Class, and Subclass.

### A. The Settlement with the Trachte Trustees and Pagelow

The significant economic terms of this Settlement consist of the following components:

(1) A payment of $3.25 million which, after the deduction of any court-approved fees and expenses, will be distributed to Class Members according to a Plan of Allocation to be approved by the Court.

(2) Cancellation of the Seller's Note of $1.3 million received by Pagelow in the 2007 Transaction. This Sellers Note, which is still reported as a liability on the financial statements of Trachte and has accrued interest at a rate of 8% from the date of the 2007 Transaction until February 28, 2010 and 13% thereafter, provides some financial benefit to Trachte, and if the price of Trachte stock recovers, will also benefit the participants in the Trachte ESOP (which continues to hold Trachte stock).

(3) Assignment of the indemnification and contribution claims against any Non-Settling Defendants.

### B. The Partial Settlement with the Fenkells Regarding the Phantom Stock Claims & the Agreement with Trachte Regarding Division of the Proceeds

The significant economic terms of this Settlement consist of a payment of $1.8 million that will be divided evenly between Trachte and the Subclass. The Court ordered the amount received by the Fenkells in the form of proceeds from the phantom stock to be repaid to Trachte, but pursuant to the agreement with Trachte, the $1.8 million will be split evenly between Trachte and the Subclass. Out of its share, Trachte has agreed to pay 30% toward attorneys' fees and up to $25,000 in expenses. As this is a partial settlement only with David Fenkell, Plaintiffs, have

5

other claims against David Fenkell which Class Counsel will continue to pursue (to the extent they are not assigned in the settlement with the Alliance Entities).

    **C.**    **The Settlement with the Alliance Entities**

The significant economic terms of this Settlement consist of the following components:

    *1.*    <u>*Benefits For the Subclass*</u>:

(1)    The Alliance Entities will restore the Alliance ESOP accounts of the Subclass by paying $7 million, consisting of $5.5 million in Alliance and AH Transition stock and $1.5 million in cash. The $5.5 million in stock and the $1.5 million in cash will be distributed to the restored Alliance ESOP accounts of the Subclass according to a Plan of Allocation to be approved by the Court.

(2)    The Settlement provides that for any Subclass member who receives an allocation of stock to his or her restored Alliance ESOP Account and, as of Final Judgment, has either reached Normal Retirement Age (e.g. age 65), become disabled, or died will be entitled (or in the case of death, his/her beneficiary shall be entitled) to elect to receive an immediate distribution. Additionally, any member of the Subclass who is fifty-five years of age or older and has participated in the Alliance ESOP for at least ten years will immediately have the right to elect to diversify his or her account and receive an immediate distribution of the stock up to the portion of the account eligible for diversification (as if the participant had continued as a participant since August 29, 2007). For these participants, the Alliance Entities have agreed to make $1,528,300 available to provide immediate liquidity (i.e. cash distributions) to Subclass members who elect to receive an immediate distribution of their Alliance stock.

(3)    All other members of the Subclass will be entitled to elect to receive a distribution of the stock portion of their restored Alliance ESOP accounts to be paid in equal annual

installments over 5 years beginning as early as January 2015. Alternatively, a Subclass member may choose to have his/her account value increase (or decrease) with the price of Alliance stock. If the Subclass member does nothing, the latter option will be the default.

(4) Any member of the Subclass who receives an allocation of cash to his/her Alliance ESOP account pursuant to the Plan of Allocation will be entitled to elect to receive a distribution of the cash portion of his/her account.

### 2. *Benefits for the Class*

The Alliance Entities will also pay $150,000 into a Settlement Fund for the benefit of the Class (which may be reduced to pay certain fees and expenses) and will assign to the Class the Seller's Note that the Alliance Entities received as part of the 2007 Transaction, which has a principal amount of $4,370,000, has accumulated interest since 2007 and the market value of which was $369,000 per the December 31, 2012 valuation of Alliance.

### 3. *Attorneys' Fees & Expenses*

The Alliance Entities have agreed to pay $5.325 million toward attorneys' fees and expenses, part of which Class Counsel has agreed to receive in installment payments, and also reimbursement of some expenses in 2014, plus the costs of notice.

### D. Releases

In exchange for the consideration of the settlements, Plaintiffs and the Class will be required to release claims against the Settling Defendants relating to or arising out of the 2007 Transaction (or, as to the settlement with the Fenkells, as to the claims settled).

## ARGUMENT

Approval of a proposed class action settlement is a two-step process whereby: the court first makes a preliminary determination as to the fairness of the settlement, approves notice to the

7

class, and sets a final hearing date; and then second holds a final hearing during which the court determines whether the settlement is fair, reasonable, and adequate and therefore, warrants final approval. *Manual for Complex Litigation* § 21.632 (4th ed. 2011)

## I. SETTLEMENTS OF CLASS ACTIONS ARE FAVORED

It is a "well settled principle that the law generally encourages settlements." *Dawson v. Pastrick*, 600 F.2d 70, 75 (7th Cir. 1979). In particular, in the class action context, "there is an overriding public interest in favor of settlement.'" *Armstrong v. Board of School Directors of City of Milwaukee*, 616 F.2d 305, 313 (7th Cir. 1980); *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."). The Seventh Circuit has recognized that "[s]ettlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *Armstrong*, 616 F.2d at 312-13).

## II. THE PROPOSED SETTLEMENTS ARE WITHIN THE RANGE OF FINAL APPROVAL

Courts review a motion for preliminary approval of a class action settlement to determine whether the proposed settlement is within the range of possible final approval. *Armstrong*, 616 F.2d at 314. A proposed settlement falls within the range of possible approval under Rule 23(e) when it is conceivable that the proposed settlement will meet the standard for final approval – that is, the proposed settlement is "fair, reasonable, and adequate." *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002). At this juncture, the Court is not required to make a determination that the settlement is fair, reasonable and adequate, but only whether the settlement may meet those factors. *AIG v. ACE INA Holdings, Inc.*, Nos. 07-C-2898, 09-C-2026, 2011 WL 3290302, at *6 (N.D. Ill. July 26, 2011). The purpose of preliminary approval is to determine whether there is any reason to notify the class members of the proposed

settlement and to proceed with a fairness hearing. *Manual for Complex Litigation* § 30.41 (4th ed. 2011) (the Court should direct notice to issue and schedule a final hearing "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies . . . and appears to fall within the range of possible approval."); 5 *Moore's Federal Practice* § 23.165[2-3] (3d ed. 2006) (determination that a proposed settlement is "fair reasonable, and adequate" is made only at the final approval hearing, after notice of the settlement has been given to the class and they have had an opportunity to voice their views of, or exclude themselves from, the settlement). Relevant to whether a proposed settlement should be preliminarily approved is whether it "has no obvious deficiencies and does not improperly grant preferential treatment to class representatives or segments of the class," and is "not a product of collusion." *Kaufman v. Am. Exp. Travel Related Servs. Co., Inc.*, 264 F.R.D. 438, 447 (N.D. Ill. 2009); *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002). Finally, the proposed settlement is entitled to a presumption of fairness. ("There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval."); *See* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (3d ed. 1992) *see also Mangone v. First USA Bank*, 206 F.R.D. 222, 225-26 (S.D. Ill. 2001) ("[A] settlement proposal arrived at after arms-length negotiations by fully informed, experienced and competent counsel may be properly presumed to be fair and adequate.")

    **A.    The Strength of Plaintiffs' Case on the Merits Compared to the Amount of the Settlement Offer**

The most important factor in evaluating the settlement at a final fairness hearing is the strength of the plaintiff's case compared to the amount of the settlement offer. *AIG*, 2011 WL 3290302, at *6 (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th

9

Cir. 2006)). On preliminary approval, a court must only conclude that the settlement figure is within a reasonable range. *Id.* at *7; *In re Bromine Antitrust Litigation*, 203 F.R.D. 403, 416 (S.D. Ind. 2001). The Court's determinations in the Phase One Liability Trial, issued in July 2012, and the Phase Two Relief Trial, issued in June 2013, are probably the best measures of the strength of Plaintiffs' case and the amount that Plaintiffs are likely to achieve if there is further litigation. In the 2013 Remedies Order, the Court awarded Plaintiffs and the Class and Subclass $17.2 million (plus prejudgment interest). *Chesemore*, 2013 WL 2445036, at *1. This amount was arguable subject to a reduction of $1 million to $1.5 million, if the accounts of Pagelow and the Trachte Trustees were excluded. Of course, the amount awarded would be subject to appeals by all defendants found liable and further delayed as a result of the further litigation.

In addition, Plaintiffs have obtained some recovery from Pagelow, which would only have been feasible if Plaintiffs were successful on appeal and such success was far from certain. Plaintiffs were aware of potential limitations on collecting any significant judgment from either the Trustee Defendants or Fenkell even if Plaintiffs were successful on the merits. As a result of the Settlement, Plaintiffs have secured agreements for the Defendants to pay a combined total of $12.2 million plus the assignment of both the Seller's Notes. This constitutes – without the Sellers' Notes – approximately 71% of the original amount awarded (before prejudgment interest).

### B. The Settling Defendants' Ability to Pay

Through discovery, Class Counsel was aware that the total insurance available for Pagelow and the Trachte Trustees was $7 million. Class Counsel was also provided information regarding the Settling Defendants' finances, including that the Trustee Defendants' personal non-exempt assets, collectively, do not exceed $900,000. In addition, Class Counsel has been provided representations that, of the $7 million of insurance coverage available to satisfy the

claims against the Trachte Trustees at the initiation of this litigation, $3.5 million or less remains. Finally, Class Counsel believed that there would likely be significant difficulties collecting monies from the Fenkells. And Class Counsel was aware that there were issues with the insurance coverage for the Alliance Entities and Fenkell. Based upon this information, Class Counsel believe that the risks of uncollectability and/or significant depletion of available insurance coverage as a result of further litigation were high under these circumstances and weigh heavily in favor of the Settlement at this time, when these Settling Defendants are well able to pay the amount of the Settlement.

      C.      **The Complexity and Length of Further Litigation**

ERISA breach of duty cases are well known for their complexity and expense, and this case is certainly no exception. *See In re IKON Office Solutions, Inc. Securities Litig.*, 209 F.R.D. 94, 104-07 (E.D. Pa. 2002) (noting that the complexity, expense and duration of litigation of breach of fiduciary duty claims weighed heavily in favor of settlement). Plaintiffs' claims raised numerous complex legal and factual issues under ERISA. This lawsuit involved substantial fact and expert discovery, extensive briefing on a variety of motions – motions to dismiss, motion for class certification, motions for summary judgment, a myriad motions relating to discovery disputes, motions in limine – a seven-day Phase One Liability Trial, a Phase Two Remedies Trial, multiple rounds of mediation, and extensive settlement negotiations. Although the Court has issued its determination on liability and relief, the litigation and associated costs are far from over. An appeal would certainly follow as would a trial on the claims against Karen Fenkell. Thus, this Settlement conserves significant judicial resources, reduces the expense associated with preparing and/or opposing any appeals of claims against these Settling Defendants, and provides immediate and certain resolution.

11

### D. There Is No Evidence of Collusion

A court is entitled to rely on the opinion of competent counsel where there is no legitimate reason to doubt counsel's integrity and motives. *AIG*, 2011 WL 3290302, at *8. Here, Class Counsel have diligently litigated on behalf of the Class through motions to dismiss, class certification, summary judgment, motions to compel discovery, and trials on liability and relief. In addition, the settlements with the Trachte Trustees and Pagelow and the Alliance Entities were conducted with the respective aid of Magistrate Judge Peter Oppeneer and former Judge Wayne Andersen. Thus, there is no evidence of collusion.

### E. The Stage of the Proceedings and the Amount of Discovery Completed

As the court is "entitled to rely heavily on the opinion of competent counsel," the stage of proceedings at which settlement is reached is "important because it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *AIG*, 2011 WL 3290302 at *8. Here, Class Counsel has litigated this action over the course of four years and two trials. Thus, this Settlement was reached after Plaintiffs had reviewed tens of thousands of pages of documents, propounded, reviewed and responded to numerous interrogatories, document requests, and requests for admission, taken numerous depositions, submitted and analyzed expert reports, briefed oppositions to Defendants' motions to dismiss, motion for class certification, motions for summary judgment, and numerous discovery motions, engaged in two trials, and received a favorable determination on liability against the Trustees, Alliance Entities and Fenkell. As a result of being at such an advanced stage of litigation, Class Counsel was certainly sufficiently informed to evaluate the merits of the case.

## III. THE CLASS NOTICE SHOULD BE APPROVED

Once the parties obtain preliminary approval of the settlement, Rule 23(e) requires that the Court direct notice in a reasonable manner to all members of the Class who would be bound

by the proposed settlement. Fed. R. Civ. P. 23(e). There is no mandated form of notice, but this requirement is satisfied if the notice informs the class members of "the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the hearing." *In re AT&T Mobility Wireless Data Services Sales Litig.*, 270 F.R.D. 330, 351 (N.D. Ill. 2010) (citing 3 *Newberg on Class Actions* § 8.32 (4th ed. 2010); *Butler v. American Cable & Telephone LLC*, No. 09-cv-5336, 2011 WL 4729789, at *13 (N.D. Ill. Oct. 6, 2011); *see Manual for Complex Litigation* § 21.312 (4th ed. 2004). Here, the proposed notice provides information on all these subjects and informs members of the Class about their rights under the Settlement as well as their right to be heard at the final hearing.

## IV. THE PLAN OF ALLOCATION SHOULD BE PRELIMINARILY APPROVED

Assessment of a plan of allocation of settlement proceeds in a class action is governed by the same standard of review applicable to the settlement as a whole – the plan must be fair, reasonable and adequate. *See e.g.*, *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 891 (7th Cir. 1985) (considering reasonableness of settlement disbursement). Class Counsel has submitted a Plan of Allocation that describes the manner by which the cash, stock and notes will be distributed. The Plan of Allocation is based primarily on the *pro rata* amount in Class Members' Alliance ESOP accounts at the time of the 2007 Transaction or in their Trachte ESOP accounts presently.

With respect to the Alliance settlement, the Settlement and Plan of Allocation provides greater liquidity for certain Class Members than others. But, "[a] class action settlement need not necessarily treat all class members equally." *Cohen v. Resolution Trust Corp.*, 61 F.3d 725, 728 (9th Cir. 1995), *vacated on other grounds*, 72 F.3d 686 (9th Cir. 1996). While there is a heightened concern when the terms of the settlement require "differential treatment of the named

13

plaintiffs" than the unnamed class members, "there is less concern [where] the named plaintiffs are not receiving preferential treatment vis a vis the unnamed plaintiffs." *Id.* (contrasting *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1148 (11th Cir. 1983) (where named plaintiffs were to receive half of the settlement fund)). Even when the named plaintiff receives differential treatment from the rest of the class, which is not the situation here, such a class settlement is proper and may be approved if the differential treatment is "rationally based on legitimate considerations." *Id.* In a case in which a subgroup of the class is treated differently, the court must ensure that the settlement is "fair, reasonable and adequate to *all* concerned." *Id.* Where the disparate treatment is rationally based on legitimate considerations and there was no indication of any collusion against them, the settlement may be approved. *See id.* at 727, 728 (approving such a settlement). Here, the greater liquidity under the Settlement and the Plan of Allocation is a result of different circumstances (either retirement, death, disability) or diversification rights (which are triggered by being closer to retirement) that make these Class Members in greater need of a cash distribution of their retirements. As such, the Settlement and the Plan of Allocation appropriately take that into account.

## V. THE COURT SHOULD ESTABLISH DATES FOR FINAL APPROVAL AND FAIRNESS HEARING

The Court should approve a schedule to, among other things, notify Class Members of the proposed Settlement, provide Class Members an opportunity to object to the proposed Settlement, and set a date for the Fairness Hearing to consider any Class Members' objections to the Settlement; whether the Settlement is fair, reasonable and adequate; Class Counsel's application for an award of attorneys' fees, reimbursement of expenses, and incentive awards for the Named Plaintiffs; and whether the Court will enter an order granting Final Approval of the Settlement. Class Counsel provides the following timeline as an outline of dates:

| DATE | EVENT |
|---|---|
| 10 Days After Filing of Proposed Settlement | Defendants to Provide Notices and Materials Required by CAFA, 28 U.S.C. § 1715(b) |
| 10 Business Days After Preliminary Approval | * Trachte ESOP to provide Class member data (including: names, email and mailing addresses, social security numbers and account data) to Class Counsel in electronic form; <br><br> * Alliance ESOP to provide or confirm that Subclass member data (including: names, email and mailing addresses, social security numbers and account data) has been previously provided Class Counsel in electronic form |
| 30 Days After Preliminary Approval | Notice to be sent to the Class & Subclass |
| 60 Days After Preliminary Approval | Declaration to be filed with Court confirming compliance with Notice procedures |
| 45 Days Before Preliminary Approval Hearing | Deadline for Class Counsel to file motion for attorney's fees and costs and motion for service award for the Class Representative |
| 30 Days Before Hearing | Deadline for Class Members to mail any objection to Settlement |
| 14 Days Before Hearing | Deadline for Plaintiff to file motion for final approval |
| No fewer than 90 Days after United Mails CAFA Materials (*i.e.*, 100 Days After Preliminary Approval). See 28 U.S.C. § 1715(b),(d) | Fairness Hearing |

## CONCLUSION

For all the foregoing reasons, Plaintiffs request that the Court (1) preliminarily approve the proposed Settlement, (2) approve the proposed Class Notice as to form and content and authorize distribution of the Notice to the Class as set forth in the Settlement Agreement, (3) Order Defendants to provide the Class Action Fairness Act notice pursuant to 28 U.S.C. § 1715, and (4) establish a Final Approval Hearing and Objections and related briefing schedule.

Dated: February 13, 2014            Respectfully submitted,

    /s/ R. Joseph Barton
R. Joseph Barton
**COHEN MILSTEIN SELLERS**
**& TOLL, PLLC**
1100 New York Avenue, NW
West Tower, Suite 500
Washington, DC 20005-3934
(202) 408-4600 Telephone
(202) 408-4699 Facsimile
jbarton@cohenmilstein.com

Andrew W. Erlandson
**HURLEY, BURISH & STANTON, S.C.**
33 East Main Street, Suite 400
Madison, WI 53703
(608) 257-0945 Telephone
(608) 257-5764 Facsimile
aerlandson@hbslawfirm.com

*Counsel for the Class & Subclass*