UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CAROL CHESEMORE,  DANIEL DONKLE, THOMAS GIECK, MARTIN ROBBINS, and NANNETTE STOFLET, on behalf of themselves, Individually, and on Behalf of All Others Similarly Situated,<br><br>     Plaintiffs,<br><br>     v.<br><br>ALLIANCE HOLDINGS, INC., A.H.I., INC., AH TRANSITION CORPORATION, DAVID B. FENKELL, PAMELA KLUTE, JAMES MASTRANGELO, STEPHEN  W. PAGELOW, JEFFREY A. SEEFELDT, ALPHA INVESTMENT CONSULTING GROUP, LLC, and JOHN MICHAEL MAIER<br><br>     Defendants,<br><br>and<br><br>TRACHTE BUILDING SYSTEMS, INC. EMPLOYEE STOCK OWNERSHIP PLAN and ALLIANCE HOLDINGS, INC. EMPLOYEE STOCK OWNERSHIP PLAN,<br><br>Nominal Defendants. | **Civil Action No. 09-CV-00413-wmc**<br><br>Judge William M. Conley |

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENTS

Plaintiffs, on behalf of the certified Class and Subclass, respectfully move this Court for

an Order (1) preliminarily approving (a) a partial settlement with the Fenkells, and (b) a

settlement with the Alpha Defendants; [1]  (2) approving the revised proposed Class Notice; and

---

[1]  Defendants fall into five groups: (1) Alliance Holdings, Inc., A.H.I., Inc., and AH
Transition Corp. ("the Alliance Entities"); (2) David B. Fenkell and Karen Fenkell ("the
Fenkells"); (3) Pamela Klute, James Mastrangelo, and Jeffrey A. Seefeldt ("the Trachte

(3) establishing dates for the submitting objections to these Settlements and(4) either establishing a date for a final Fairness Hearing for approval of these Settlements or setting a new combined date for a Fairness Hearing for all settlements. [2] At this point, Plaintiffs have only entered into term sheets with these Defendants, but expect to enter into fuller Settlement Agreements before Final Approval.[3]

## BACKGROUND

As the Court is familiar with this case as a result of the two trials, Plaintiffs do not believe it necessary to describe in detail the allegations or procedural background of this litigation, but provide the following summary for this Motion.

## I.   PROCEDURAL HISTORY OF THE LITIGATION

Plaintiffs' prior Motion for Preliminary Approval of the Settlements with the Alliance Entities, Fenkell, the Trustee Defendants, and Defendant Pagelow summarized the procedural history of the litigation.

## II.   MATERIAL TERMS OF THE PROPOSED SETTLEMENTS

The Settlements resolve claims brought against two groups of Defendants: (1) the Fenkells as to David B. Fenkell's Alliance ESOP Account; and (2) the Alpha Defendants.

### A.   The Partial Settlement with the Fenkells

The significant economic terms of this Settlement consist of a $375,000 cash payment (out of a possible $502,619.91, which would consist largely of stock that would need to be

---

Trustees" or "Trustee Defendants"); (4) Alpha Investment Consulting Group, LLC and John Michael Maier ("the Alpha Defendants"); and (5) Stephen W. Pagelow.

[2] As a result of the requirements of the Class Action Fairness Act, which requires 100 days between preliminary approval and final approval, the final approval hearing should be set at least 100 days from final approval.

[3] At the time of the filing of this motion, the Fenkells were not available to sign the term sheet, but both the Fenkell's counsel and Class Counsel has signed and Fenkell's counsel has assured Class Counsel that the agreement will be signed by the Fenkells and filed this evening.

liquidated), plus an additional amount if the value of Fenkell's Alliance ESOP account as of

December 31, 2013 is more than $502,619.91.   This settlement will resolve all remaining claims

retained by Plaintiffs against the Fenkells except the claim for attorneys' fees and expenses.

### B.       The Settlement with the Alpha Defendants

The economic benefit of this Settlement consist of the Alpha Defendants agreement not

to seek attorneys' fees or costs from the Plaintiffs, the Class or the ESOPs (or their sponsors) as

the Class and Subclass will have an economic interests in those ESOPs and the value of their

sponsors' stock as a result of the other settlements.   The Alpha Defendants have also agreed not

to ever serve as fiduciaries of the Alliance ESOP or the Trachte ESOP.   The settlement with the

Alpha Defendants is contingent upon the settlements with the other Defendants.

### C.       Releases

In exchange for the consideration of the settlements, Plaintiffs and the Class will be

required to release claims against the Settling Defendants relating to or arising out of the 2007

Transaction (or, as to the settlement with the Fenkells, as to the claims settled).

**ARGUMENT**

Approval of a proposed class action settlement is a two-step process whereby:  the court

first makes a preliminary determination as to the fairness of the settlement, approves notice to the

class, and sets a final hearing date; and then second holds a final hearing during which the court

determines whether the settlement is fair, reasonable, and adequate and therefore, warrants final

approval. *Manual for Complex Litigation* § 21.632 (4th ed. 2011)

## I.       SETTLEMENTS OF CLASS ACTIONS ARE FAVORED

It is a "well settled principle that the law generally encourages settlements." *Dawson v.*

*Pastrick*, 600 F.2d 70, 75 (7th Cir. 1979).  In particular, in the class action context, "there is an

overriding public interest in favor of settlement.'" *Armstrong v. Board of School Directors of*

3

*City of Milwaukee*, 616 F.2d 305, 313 (7th Cir. 1980); *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation.").  The Seventh Circuit has recognized that "[s]ettlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *Armstrong*, 616 F.2d at 312-13).

## II.   THE PROPOSED SETTLEMENTS ARE WITHIN THE RANGE OF FINAL APPROVAL

Courts review a motion for preliminary approval of a class action settlement to determine whether the proposed settlement is within the range of possible final approval.  *Armstrong*, 616 F.2d at 314.  A proposed settlement falls within the range of possible approval under Rule 23(e) when it is conceivable that the proposed settlement will meet the standard for final approval – that is, the proposed settlement is "fair, reasonable, and adequate." *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002).   At this juncture, the Court is not required to make a determination that the settlement is fair, reasonable and adequate, but only whether the settlement may meet those factors.  *AIG v. ACE INA Holdings, Inc.*, Nos. 07-C-2898, 09-C-2026, 2011 WL 3290302, at *6 (N.D. Ill. July 26, 2011).  The purpose of preliminary approval is to determine whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. *Manual for Complex Litigation* § 30.41 (4th ed. 2011) (explain the Court should direct notice to issue and schedule a final hearing "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies . . . and appears to fall within the range of possible approval."); 5 *Moore's Federal Practice* § 23.165[2-3] (3d ed. 2006) (determination that a proposed settlement is "fair reasonable, and adequate" is made only at the final approval hearing, after notice of the settlement has been given to the class and they have had an opportunity to voice their views of,

4

or exclude themselves from, the settlement).  Relevant to whether a proposed settlement should be preliminarily approved is whether it "has no obvious deficiencies and does not improperly grant preferential treatment to class representatives or segments of the class," and is "not a product of collusion." *Kaufman v. Am. Exp. Travel Related Servs. Co., Inc.*, 264 F.R.D. 438, 447 (N.D. Ill. 2009); *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002).   Finally, the proposed settlement is entitled to a presumption of fairness.  ("There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval."); *See* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (3d ed. 1992) *see also Mangone v. First USA Bank*, 206 F.R.D. 222, 225-26 (S.D. Ill. 2001) ("[A] settlement proposal arrived at after arms-length negotiations by fully informed, experienced and competent counsel may be properly presumed to be fair and adequate.")

A.     **The Strength of Plaintiffs' Case on the Merits Compared to the Amount of the Settlement Offer**

The most important factor in evaluating the settlement at a final fairness hearing is the strength of the plaintiff's case compared to the amount of the settlement offer.  *AIG*, 2011 WL 3290302, at *6 (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)).  On preliminary approval, a court must only conclude that the settlement figure is within a reasonable range.  *Id.* at *7; *In re Bromine Antitrust Litigation*, 203 F.R.D. 403, 416 (S.D. Ind. 2001).  The Court's determinations in the Phase One Liability Trial, issued in July 2012, and the Phase Two Relief Trial, issued in June 2013, are probably the best measures of the strength of Plaintiffs' case and the amount that Plaintiffs are likely to achieve.

*1.*     The Alpha Defendants

After the Liability Trial, this Court concluded that the Alpha Defendants were not liable and dismissed them with prejudice.   In order for Plaintiffs to obtain any recovery as to the Alpha Defendants, Plaintiffs would have had to succeed on reversing the Court's liability decision on appeal and also then succeed at a trial on the issue of remedies as to the Alpha Defendants, in which they theoretically could request the Court to reconsider the Remedies decision based on any additional evidence that they presented.

*2.*     The Fenkells

This settlement with the Fenkells resolves only Plaintiffs' claims to the extent of the value of Fenkell's Alliance ESOP account, which, based on information from both the Fenkells and the Alliance ESOP is a little over $500,000.  The Settlement with the Fenkells resolves this claim for $375,000 plus 100% of any increase in the account between December 31, 2012 and December 31, 2013.   This represents at least 75% of the value of what Plaintiffs could obtain from the Alliance ESOP account.  And of course, Plaintiffs' ability to eventually obtain that amount would be subject to appeals by Fenkell both as to the underlying decision on liability and remedies and the order allowing Fenkell's ESOP account to be used to satisfy the judgment against him.

**B.     The Alpha Defendants' Ability to Pay**

Through discovery, Class Counsel was aware that the total insurance available for the Alpha Defendants was $2 million and there were multiple potential exclusions to coverage. Class Counsel was also provided information regarding the Alpha Defendants' finances, which suggests that the Alpha Defendants would not likely be in a position to pay even a fraction of any award that might be entered against them, even if the liability decision was reversed on appeal.

Based upon this information, Class Counsel believe that the risks of uncollectability were high under these circumstances and weigh heavily in favor of the Settlement.[4]

### C.      The Complexity and Length of Further Litigation

ERISA breach of duty cases are well known for their complexity and expense, and this case is certainly no exception. *See In re IKON Office Solutions, Inc. Securities Litig.*, 209 F.R.D. 94, 104-07 (E.D. Pa. 2002) (noting that the complexity, expense and duration of litigation of breach of fiduciary duty claims weighed heavily in favor of settlement).  Plaintiffs' claims raised numerous complex legal and factual issues under ERISA.  This lawsuit involved substantial fact and expert discovery, extensive briefing on a variety of motions – motions to dismiss, motion for class certification, motions for summary judgment, a myriad motions relating to discovery disputes, motions in limine – a seven-day Phase One Liability Trial, a Phase Two Remedies Trial, multiple rounds of mediation, and extensive settlement negotiations.  Although the Court has issued its determination on liability and relief, the litigation and associated costs are far from over.  This Settlement conserves significant judicial resources, reduces the expense associated with preparing and/or opposing any appeals of claims against these Settling Defendants, and provides immediate and certain resolution.

In addition, the Alpha Defendants would likely have sought the costs incurred in the litigation, which likely were in the tens of thousands, and which, if awarded, might reduce the amounts from the other settlements.

### D.      There Is No Evidence of Collusion

A court is entitled to rely on the opinion of competent counsel where there is no legitimate reason to doubt counsel's integrity and motives. *AIG*, 2011 WL 3290302, at *8.

---

[4] Ability to pay is not an issue with respect to the claim against Fenkell's Alliance ESOP account.

Here, Class Counsel have diligently litigated on behalf of the Class through motions to dismiss, class certification, summary judgment, motions to compel discovery, and trials on liability and relief.

> E.      **The Stage of the Proceedings and the Amount of Discovery Completed**

As the court is "entitled to rely heavily on the opinion of competent counsel," the stage of proceedings at which settlement is reached is "important because it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *AIG*, 2011 WL 3290302 at *8. Here, Class Counsel has litigated this action over the course of four years and two trials. Thus, this Settlement was reached after Plaintiffs had reviewed tens of thousands of pages of documents, propounded, reviewed and responded to numerous interrogatories, document requests, and requests for admission, taken numerous depositions, submitted and analyzed expert reports, briefed oppositions to Defendants' motions to dismiss, motion for class certification, motions for summary judgment, and numerous discovery motions, engaged in two trials, and received a favorable determination on liability against Fenkell and an unfavorable decision as to the Alpha Defendants. As a result of being at such an advanced stage of litigation, Class Counsel was certainly sufficiently informed to evaluate the merits of the case.

## III.    THE REVISED CLASS NOTICE SHOULD BE APPROVED

Plaintiffs provide a slightly revised class notice – with changes shown in redline -- to address these two additional settlements.

## IV.    THE COURT SHOULD APPROVE THE SLIGHTLY REVISED PLAN OF ALLOCATION

Plaintiffs submit a slightly revised plan of allocation that provides that the net proceeds of the current settlement with the Fenkells will be distributed to the Subclass by paying money to them through the Alliance ESOP.

## V.  THE COURT SHOULD ESTABLISH DATES FOR FINAL APPROVAL AND FAIRNESS HEARING

As a result of the requirements of the Class Action Fairness Act, which requires 90 days between the time that Defendants must issue the CAFA notices about these new settlements and the date that final judgment may be entered, the Court will need to either reschedule the final approval hearing or set a separate schedule for these Settlements.  As such, Class Counsel provides the following timeline as an outline of dates that would need to be separately set:

| DATE | EVENT |
|---|---|
| 10 Days After Filing of Proposed Settlement | Defendants to Provide Notices and Materials Required by CAFA, 28 U.S.C. § 1715(b) |
| 20 Days Before Hearing | Deadline for Class Members to mail any objection to Settlement |
| 14 Days Before Hearing | Deadline for Plaintiff to file motion for final approval |
| No fewer than 90 Days after United Mails CAFA Materials (*i.e.*, 100 Days After Preliminary Approval). *See* 28 U.S.C. § 1715(b),(d) | Fairness Hearing |

## CONCLUSION

For all the foregoing reasons, Plaintiffs request that the Court (1) preliminarily approve the proposed Settlements, (2) approve the proposed Class Notice as to form and content and authorize distribution of the Notice to the Class as set forth in the Settlement Agreements, (3) Order Defendants to provide the Class Action Fairness Act notice pursuant to 28 U.S.C. § 1715, and (4) establish a Final Approval Hearing and Objections and related briefing schedule.

Dated:   March 28, 2014                        Respectfully submitted,


    /s/ R. Joseph Barton
R. Joseph Barton
**COHEN MILSTEIN SELLERS
& TOLL, PLLC**
1100 New York Avenue, NW
West Tower, Suite 500
Washington, DC 20005-3934
(202) 408-4600 Telephone
(202) 408-4699 Facsimile
jbarton@cohenmilstein.com

Andrew W. Erlandson
**HURLEY, BURISH & STANTON, S.C.**
33 East Main Street, Suite 400
Madison, WI 53703
(608) 257-0945 Telephone
(608) 257-5764 Facsimile
aerlandson@hbslawfirm.com


*Counsel for the Class & Subclass*