# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CAROL CHESEMORE,  DANIEL DONKLE, THOMAS GIECK, MARTIN ROBBINS, and NANNETTE STOFLET, on behalf of themselves, Individually, and on Behalf of All Others Similarly Situated, | |
| Plaintiffs, | |
| v. | |
| ALLIANCE HOLDINGS, INC., A.H.I., INC., AH TRANSITION CORPORATION, DAVID B. FENKELL, PAMELA KLUTE, JAMES MASTRANGELO, STEPHEN  W. PAGELOW, JEFFREY A. SEEFELDT, ALPHA INVESTMENT CONSULTING GROUP, LLC, and JOHN MICHAEL MAIER | **Civil Action No. 09-CV-00413-wmc**  Judge William M. Conley |
| Defendants, | |
| and | |
| TRACHTE BUILDING SYSTEMS, INC. EMPLOYEE STOCK OWNERSHIP PLAN and ALLIANCE HOLDINGS, INC. EMPLOYEE STOCK OWNERSHIP PLAN, | |
| Nominal Defendants. | |

## CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

# TABLE OF CONTENTS

**Page**

BACKGROUND ...................................................................................................................... 2

I.    INCEPTION OF THE LITIGATION.................................................................. 2

II.   EXTENSIVE DISCOVERY............................................................................... 5

III.  TWO TRIALS ..................................................................................................... 8

IV.  POST TRIAL LITIGATION AND SETTLEMENT NEGOTIATION ........................... 10

ARGUMENT ....................................................................................................................... 12

V.    THE PAYMENT OF ATTORNEYS' FEES BY THE ALLIANCE ENTITIES
SHOULD BE APPROVED ................................................................................ 12

VI.  THE PAYMENT OF ATTORNEYS' FEES & EXPENSES BY TRACHTE
SHOULD BE APPROVED ................................................................................ 14

VII. CLASS COUNSEL IS ALSO ENTITLED TO AN AWARD OF ATTORNEYS'
FEES FROM THE FUND CREATED BY THE OTHER SETTLEMENTS ................. 17

       A.    The Market Rate for Class Counsel's Services is One-Third of the Class
           Members' Total Recovery ....................................................................... 19

              1.    The Complexity of the Case & the Quality of the Legal Services
                    Supports the Requested Fee ................................................... 19

              2.    The Contingent Nature of the Representation Supports the
                    Requested Fee ...................................................................... 21

              3.    The Awards in Other Class Action Cases Support the Fee Request........ 21

              4.    Actual Fee Agreements Evidence the Market Rate of One-Third........... 23

       B.    The Requested Fees are Fair and Reasonable as a Percentage of the Fund.......... 25

       C.    The Lodestar Method Confirms the Requested Attorneys' Fees are Fair
           and Reasonable .................................................................................... 26

## **TABLE OF CONTENTS**

**Page**

VIII.   CLASS COUNSEL'S OUT-OF-POCKET EXPENSES ARE REIMBURSABLE......... 31

IX.   NO CLASS MEMBER HAS OBJECTED TO THE REQUESTED
ATTORNEYS' FEES AND EXPENSES........................................................................ 33

CONCLUSION............................................................................................................. 33

# TABLE OF AUTHORITIES

**Page**

CASES

*Aspacher v. Rosenthal Collins Group*,
   No. 00 C 7520, 2001 WL 1386614 (N.D. Ill. Nov. 7, 2001)...................................................27

*Becher v. Long Island Lighting Co.*,
   64 F. Supp. 2d 174 (E.D.N.Y. 1999) ...................................................................................22

*Beesley v. Int'l Paper Co.*,
   No. 3:06-cv-703-DRH-CJP, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014).......................... passim

*Blanchard v. Bergeron*,
   489 U.S. 87 (1989)...............................................................................................................25

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980).............................................................................................................17

*Boos v. AT & T, Inc.*,
   704 F. Supp. 2d 600 (W.D. Tex. 2010)..............................................................................19

*Campbell v. Advantage Sales & Mktg. LLC*,
   No. 09–01430, 2012 WL 1424417 (S.D. Ind. Apr. 24, 2012) .................................................23

*Chesemore v. Alliance Holdings, Inc.*,
   270 F.R.D 633 (D. Minn. 2010)............................................................................................7

*Chesemore v. Alliance Holdings, Inc.*,
   276 F.R.D. 506 (W.D. Wis. 2011) ...................................................................................7, 20

*Chesemore v. Alliance Holdings, Inc.*,
   284 F.R.D. 416 (W.D. Wis. 2012) ....................................................................................19

*Chesemore v. Alliance Holdings, Inc.*,
   770 F. Supp. 2d 950 (W.D. Wis. 2011) ...............................................................................4

*Chesemore v. Alliance Holdings, Inc.*,
   948 F. Supp. 2d 928 (W.D. Wis. 2013) ...................................................................9, 20, 31

*Chesemore v. Alliance Holdings, Inc.*,
   No. 09-cv-413-WMC, 2013 WL 6989526 (W.D. Wis. Oct. 16, 2013) .....................10, 14, 16

*Chesemore v. Alliance Holdings, Inc.*,
   No. 1:10 MC 46, 2011 WL 2037624 (N.D. Ohio May 24, 2011) .........................................6

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

*Chesemore v. Alliance Holdings, Inc.*,
   No. 1:11 MC 43, 2011 WL 4458782 (N.D. Ohio Sept. 23, 2011)............................................6

*Chesmore v. Alliance Holdings, Inc.*,
   886 F. Supp. 2d 1007 (W.D. Wis. 2012) ..........................................................................9, 20

*Chesmore v. Alliance Holdings, Inc.*,
   No. 09-cv-413-WMC, 2014 WL 325238 (W.D. Wis. Jan. 29, 2014)....................................11

*City of Greenville v. Syngenta Crop Protection, Inc.*,
   904 F. Supp. 2d 902 (S.D. Ill. 2012)..........................................................................22, 23, 31

*Cook v. Niedert*,
   142 F.3d 1004 (7th Cir. 1998) ..........................................................................................26, 30

*Cooper v. IBM Pers. Pension Plan*,
   No. 99 -829-GPM, 2005 U.S. Dist. LEXIS 17071 (S.D. Ill. Aug. 16, 2005).........................25

*Florin v. Nationsbank of Ga., N.A. (“Florin I”)*,
   34 F.3d 560 (7th Cir. 1994) ...........................................................................17, 18, 21, 25

*Florin v. Nationsbank of Georgia, N.A.*,
   60 F.3d 1245 (7th Cir. 1995) ...........................................................................19, 21, 27

*Ford v. Sprint Commc'ns Co. L.P.*,
   No. 3:12-CV-00270-SLC, 2012 WL 6562615 (W.D. Wis. Dec. 14, 2012) .....................27, 33

*Freeland v. Unum Life Ins. Co. of Am.*,
   No. 11-CV-053-WMC, 2014 WL 988761 (W.D. Wis. Mar. 13, 2014) ..........................27, 28

*Gaffney v. Riverboat Servs. of Indiana, Inc.*,
   451 F.3d 424 (7th Cir. 2006) ...........................................................................15, 16

*Gaskill v. Gordon*,
   160 F.3d 361 (7th Cir. 1998) ...........................................................................18, 22, 23, 25

*Goldsmith v. Tech. Solutions Co.*,
   No. 92 C 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995)..............................................23

*Goodyear v. Estes Exp. Lines, Inc.*,
   No. 1:06-CV-863-JDT-TAB, 2008 WL 687130 (S.D. Ind. Mar. 10, 2008)......................12, 13

*Grace v. Burger*,
   763 F.2d 457 (D.C. Cir. 1985) ...........................................................................15

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

*Hall v. Cole,*
    412 U.S. 1 (1973)..........................................................................................................16

*Halverson v. Convenient Food Mart, Inc.,*
    458 F.2d 927 (7th Cir. 1972) ......................................................................................17

*Heder v. City of Two Rivers,*
    255 F. Supp. 2d 947 (E.D. Wis. 2003).......................................................................31

*Holmstrom v. Metropolitan Life Ins., Co.,*
    No. 07-CV-6044, 2011 WL 2149353 (N.D. Ill. May 31, 2011)..................................30

*In re Initial Pub. Offering Sec. Litig.,*
    671 F. Supp. 2d 467 (S.D.N.Y. 2009).........................................................................23

*In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.,*
    733 F. Supp. 2d 997 (E.D. Wis. 2010)...........................................................18, 19, 23, 31

*In re Marsh ERISA Litig.,*
    265 F.R.D. 128 (S.D.N.Y. 2010) ..........................................................................19, 22

*In re NASDAQ Mkt.-Makers Antitrust Litig.,*
    187 F.R.D. 465 (S.D.N.Y. 1998) ................................................................................27

*In re Ready–Mixed Concrete Antitrust Litig.,*
    No. 05–00979, 2010 WL 3282591 (S.D. Ind. Aug. 17, 2010) ...................................23

*In re Remeron Direct Purchaser Antitrust Litig.,*
    No. 03-0085, 2005 WL 3008808 (D.N.J. Nov. 9, 2005) .............................................23

*In re Synthroid Marketing Litig.,*
    264 F.3d 712 (7th Cir. 2001) ..........................................................................27, 31, 32

*In re Synthroid Mktg. Litig. (“Synthroid II”),*
    325 F.3d 974 (7th Cir. 2003) ...................................................................................2, 18

*In re WorldCom, Inc. ERISA Litig.,*
    No. 02 Civ. 4816, 2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004) ...............................19

*Kearney v. Hyundai Motor Am.,*
    No. SACV 09-1298-JST, 2013 WL 3287996 (C.D. Cal. June 28, 2013)...................12

*Long v. Trans World Airlines, Inc.,*
    No. 86 C 7521, 1993 WL 121824 (N.D. Ill. Apr. 19, 1993)......................................23

## TABLE OF AUTHORITIES

**Page**

*Luciano v. Olsten Corp.*,
    109 F.3d 111 (2d Cir. 1997)......................................................................27

*Mathur v. Bd. of Trs. of S. Ill. Univ.*,
    317 F.3d 738 (7th Cir. 2003) ...................................................................28

*Matter of Cont'l Illinois Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ...............................................17, 18, 25, 30

*McKinnie v. JP Morgan Chase Bank, N.A.*,
    678 F. Supp. 2d 806 (E.D. Wis. 2009).............................................22, 25

*Mills v. Electric Auto–Lite Co.*,
    396 U.S. 375 (1970)...............................................................................15

*Mkt. St. Sec., Inc. v. Midwest Air Grp., Inc.*,
    No. 07-CV-345, 2009 WL 2985451 (E.D. Wis. Sept. 15, 2009)...........15

*Mogck v. Unum Life Ins. Co. of Am.*,
    289 F. Supp. 2d 1181 (S.D. Cal. 2003)..................................................28

*Mohr v. Chicago Sch. Reform Bd. of Trustees of Bd. of Educ. of the City of Chicago*,
    194 F. Supp. 2d 786 (N.D. Ill. 2002) .....................................................29

*Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*,
    924 F.2d 633 (7th Cir. 1991) .................................................................32

*Redman v. RadioShack Corp.*,
    No. 11 C 6741, 2014 WL 497438 (N.D. Ill. Feb. 7, 2014)....................12

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
    No. 97 C 7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ..........22, 23

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) .....................................................32

*Shaw v. AAA Engineering & Drafting, Inc.*,
    213 F.3d 538 (10th Cir. 2000) ...............................................................29

*Silverman v. Motorola Solutions, Inc.*,
    739 F.3d 956 (7th Cir. 2013) .................................................................33

*Smith v. Vill. of Maywood*,
    17 F.3d 219 (7th Cir. 1994) ...................................................................31

## TABLE OF AUTHORITIES

**Page**

*Spegon v. Catholic Bishop of Chicago,*
  175 F.3d 544 (7th Cir. 1999) ............................................................................29

*Staton v. Boeing Co.,*
  327 F.3d 938 (9th Cir. 2003) .............................................................................12

*Summers v. UAL Corp. ESOP Comm.,*
  No. 03 C 1537, 2005 WL 3159450 (N.D. Ill. Nov. 22, 2005)...............................27

*Taubenfeld v. Aon Corp.,*
  415 F.3d 597 (7th Cir. 2005) ..............................................................18, 19, 23

*Torgeson v. Unum Life Ins. Co. of Am.,*
  No. C05-3052-MWB, 2007 WL 433540 (N.D. Iowa Feb. 5, 2007)......................28

*Tussey v. ABB, Inc.,*
  No. 06-04305, 2012 WL 5386033 (W.D. Mo. Nov. 2, 2012) ..........................29, 30

*U.S. Football League v. Nat'l Football League,*
  887 F.2d 408 (2d Cir. 1989)...............................................................................30

*Will v. Gen. Dynamics Corp.,*
  No. 06-698-GPM, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010).....................22, 26

*Winston & Strawn LLP v. F.D.I.C.,*
  894 F. Supp. 2d 115 (D.D.C. 2012) ....................................................................15

*Young v. Verizon's Bell Atl. Cash Balance Plan,*
  783 F. Supp. 2d 1031 (N.D. Ill. 2011) ...............................................................29

**STATUTES**

ERISA ............................................................................................................ passim

ERISA § 502(g) ........................................................................2, 12, 30, 32

**OTHER AUTHORITIES**

Eisenberg & Miller, *Attorney Fees & Expenses in Class Action Settlements: 1993-2008*...........23

Fed. R. Civ. P. 23(h) .........................................................................1, 12, 30, 32

Pursuant to Rule 23(h) and Rule 54 of the Federal Rules of Civil Procedure, Class Counsel respectfully requests that this Court (1) approve the payment of attorneys' fees to Class Counsel that the Alliance Entity Defendants agreed to pay as part of the settlement, (2) approve the payment of the attorneys' fees and expenses to Class Counsel that Trachte agreed to pay out of its share of the Phantom Stock Settlement with the Fenkells, and (3) award an amount of attorneys' fees and reimbursement of expenses out of the common funds created for the Class out of the other settlements.  First, Class Counsel seeks approval of the payment of $5.325 million by the Alliance Entity Defendants (i.e. Alliance Holdings, Inc., A.H.I., Inc., and AH Transition Corp.), plus the reimbursement of $ 20,000 to be paid for expenses incurred in 2014. Second, Class Counsel seeks approval of the payment of 30% (or approximately $270,000) that Trachte agreed to pay out of its agreed-upon share of the recovery of the Phantom Stock payment to Fenkell, plus up to $ 25,000 of expenses related to the prosecution of that claim and the claims against Karen Fenkell.  Finally, Class Counsel requests an award of attorneys' fees and reimbursement of expenses from the common funds of the other settlements.  This request is fair and reasonable because Class Counsel invested over 16,000 professional hours in the entire litigation, and advanced over $1 million in costs on behalf of the Class Members, all without any guarantee of payment.  As a result of the efforts of Class Counsel, the Alliance Entities settlement will restore 100% of what the Subclass members had in their ESOP accounts before the 2007 Transaction.  In addition, the settlements with the Trachte Trustees and Pagelow and the settlements with Fenkell have created a common fund of more than $4.5 million in cash (plus interest),[1] in addition to several valuable non-cash components that directly or indirectly benefit

---

[1] In a common fund case, Class Counsel is entitled to interest on the portion of the common fund that is awarded for fees. *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 980 (7th Cir.

the Class.  Out of *only* the cash components procured for the Class from only these settlements,[2] Class Counsel seeks one-third of only of the cash fund value.  In light of the magnitude of Class Counsel's efforts, the risks and challenges posed by the litigation, and the outstanding results and recovery achieved for the Class, the requested fee is fair, reasonable, and well-supported by the relevant case law.[3]

## BACKGROUND

Class Counsel began their investigation into the breaches of fiduciary duty and prohibited transactions underlying the complicated ESOP transaction at issue in this ERISA case nearly seven years ago.  In the intervening time, Class Counsel engaged in extensive fact and expert discovery, multiple rounds of motion practice and prevailed at two trials.  This extraordinary effort resulted in a significant benefit to the Class and Subclass.  As a result of these efforts, the Court awarded over $17.2 million, plus prejudgment interest, in remedies.  Class Counsel then successfully negotiated multiple settlements on behalf of the Class and Subclass, thus foreclosing the possibility of appeal and effectuating the immediate receipt of settlement proceeds.

## I.    INCEPTION OF THE LITIGATION

Cohen Milstein was contacted in 2008 by Nannette Stoflet and Marty Robbins, Trachte employees and participants in the ESOP who were concerned that their retirement accounts

---

2003) (*Synthroid II*) ("The award in absolute dollars must be adjusted to reflect the interest that the fund has been accumulating").

[2] As the Alliance Entities agreed to pay a specified amount toward attorneys' fees, Class Counsel has not included the $150,000 paid by the Alliance Entities to the Class in the amount from which it is seeking a common fund award.

[3] In a separate, concurrently-filed motion, Plaintiffs are seeking an award of attorneys' fees against Defendant David Fenkell pursuant to ERISA's fee-shifting provision, ERISA § 502(g)(1), 29 U.S. Code § 1132(g)(1).  To the extent that the amount awarded is recoverable, amounts paid to Class Counsel out of the common funds will be repaid to the Class, minus any additional fees awarded to Class Counsel upon recovery of such amounts.

either would be or had been substantially reduced as a result of the 2007 Transaction.

Declaration of Nannette Stoflet ("Stoflet Decl.") ¶ 10; Declaration of Martin Robbins ("Robbins

Decl.") ¶ 8.  Ms. Stoflet and other Plaintiffs first attempted to find local attorneys to represent

them.  Stoflet Decl. ¶¶ 8-9; Declaration of Daniel Donkle ("Donkle Decl.") ¶ 8.  Ms. Stoflet was

referred to "the only attorney in Madison with significant experience with ESOPs," Brian

Anderson, but Mr. Anderson could not represent her because he represented the Trachte ESOP.

Stoflet Decl. ¶ 8.  Ms. Stoflet and others then attempted to locate other attorneys with experience

in ESOP litigation.  Stoflet Decl. ¶ 9; Donkle Decl. ¶ 8.  Based on their research, Ms. Stoflet and

Mr. Robbins located Cohen Milstein, one of the few law firms in the country which represents

ESOP participants in ERISA litigation, and contacted Joseph Barton, who had handled a number

of prior ESOP valuation cases and other employer stock cases.  Stoflet Decl. ¶¶ 9-10; Robbins

Decl. ¶ 8; Donkle Decl. ¶ 8.

   After being contacted by Ms. Stoflet and Mr. Robbins, Class Counsel undertook an

investigation of the 2007 Transaction, including reviewing documents provided by Plaintiffs,

contacting a valuation professional, and researching the law pertinent to the claims and the

potential defenses.  Declaration of R. Joseph Barton ("Barton Decl.") ¶ 24.  After conducting this

review and research, attorneys from Cohen Milstein met with a group of interested employees in

November 2008, explained their rights, options, the mechanics of litigation, and arrangements by

which Cohen Milstein would undertake the representation.  *Id*. ¶ 25; Declaration of Carol

Chesemore ("Chesemore Decl.") ¶ 7; Donkle Decl. ¶ 9; Robbins Decl. ¶ 10; Stoflet Decl. ¶ 12.

In early 2009, the Plaintiffs formally agreed to retain Cohen Milstein.  Barton Decl. ¶ 26.

   Cohen Milstein then began drafting a detailed and comprehensive complaint, which was

eventually filed in June 2009.  *Id*. ¶ 29.  Cohen Milstein entered into an agreement with the

Madison, Wisconsin-based law firm of Hurley, Burish & Stanton in May 2009, whereby Hurley

Burish would act, as local counsel in the case also on contingency-fee basis. *Id*. ¶ 28.  The

complaint alleged numerous ERISA violations against the Trustee Defendants, acting in their

capacity as fiduciaries of the Trachte ESOP, against Defendant Pagelow, as a knowing

participant in a fiduciary breach, and against the Alliance Defendants, as fiduciaries of the

Alliance ESOP and as non-fiduciaries for violations of ERISA's statutory provisions, as well as

for engaging in a prohibited transaction by receiving proceeds from Phantom Stock payments

received as part of the 2007 Transaction.  Complaint ("Compl.") (ECF No. 1).  In response to the

Complaint, Defendants filed motions to dismiss, which revealed for the first time to Plaintiffs

and Class Counsel that Alpha Investments Consulting had been retained to act as an independent

fiduciary during the 2007 Transaction.  *See* Trustee Defendants' Motion to Dismiss (ECF No.

17); Defendant Pagelow's Motion to Dismiss (ECF No. 18); Alliance Defendants' Motion to

Dismiss (ECF No. 39).  As a result of this new information, Plaintiffs filed an Amended

Complaint on January 25, 2010, which, among other things, included Alpha as a Defendant.

ECF No. 79.  In response, Defendants insisted on re-filing their motions to dismiss, which meant

that Plaintiffs had to expend additional time to respond to this second round of motions to

dismiss.  Barton Decl. ¶ 31.  As a result, Plaintiffs briefed the motions to dismiss filed by the

Trachte Trustee Defendants, Defendant Pagelow and the Alliance Defendants.  *Id*.  Ultimately,

the Court granted Defendant A.H.I.'s motion to dismiss, and granted Alliance's motion to

dismiss on two of Plaintiffs' three theories of liability against Defendant Alliance, but denied

Defendants' motions to dismiss in all other respects.  *Chesemore v. Alliance Holdings, Inc.*, 770

F. Supp. 2d 950, 979-80 (W.D. Wis. 2011).  Defendants (other than Alpha, which had answered

the original complaint) finally filed answers to the Complaint in February and March of 2011.

Alpha Defendants' Answer (ECF No. 117), Defendant Pagelow's Answer (ECF No. 178),

Trustee Defendants' Answer (ECF No. 181), Alliance Defendants' Answer (ECF No. 186).

## II.   EXTENSIVE DISCOVERY

During the year that the motions to dismiss remained pending, Plaintiffs engaged in

discovery.  Barton Decl. ¶ 32.  Because Defendants were represented by four different law firms,

cooperation and agreement by all Defendants was difficult.  Obtaining even a response from

Defendants' counsel about extensions took significant effort and often produced no result.  *E.g.*,

Motion for Extension of Time (ECF No. 169) (requesting extension on class certification while

motions to dismiss were pending, but Alliance Defendants failed to respond).  For example, the

Trustee Defendants opposed extensions on discovery  even while the motions to dismiss were

pending (and expected Plaintiffs to submit an expert report without the benefit of Defendants'

answer) and the other Defendants simply refused to respond to Plaintiffs' counsel as to whether

they opposed such a request.  Motion to Modify Scheduling Order (ECF No. 151) ¶ 8.  As a

result, this necessitated a fully briefed motion which was eventually granted.  Order (ECF No.

158).  Similarly, Class Counsel also had to file motions in order to exceed the presumptive limit

of interrogatories, which Defendants only agreed to *after the motion was filed*.  Motion for

Discovery for Leave to Serve Nine Additional Interrogatories (ECF No. 194).  Despite

collectively identifying over 30 persons with knowledge, Defendants initially refused to agree to

increase the number of depositions that Class Counsel could take and entered into a stipulation

*only after a hearing with Magistrate Judge Crocker*.  Motion to Exceed the Number of

Depositions (ECF No. 198), Stipulation to Increase the Number of Depositions (ECF No. 209).

These examples are illustrative of the lack of cooperation by Defendants throughout the

litigation, which led to additional time and resources being expended by Plaintiffs' Counsel.

Defendants, of course, had the advantage of being four sets of firms against one set.

As a result of the complicated nature of the transaction, the number of parties, and, most significantly, the number of third-party advisors in the Transaction, as well as prior contemplated transactions, discovery was extensive. Barton Decl. ¶ 34. Class Counsel propounded interrogatories, document requests, and requests for admission to each of the Defendants. *Id*. ¶ 35. Class Counsel reviewed over 435,000 pages of documents produced in the case. *Id*. ¶ 42. In addition to discovery of the party Defendants' documents, Class Counsel also issued at least eleven document subpoenas to various non-parties. *Id*. ¶ 35. These included subpoenas to the banks, valuation firms, law firms, the two ESOP administrators, and the would-be Trachte ESOP potential buyers, among others, all of whom provided services to the Defendants involved in the 2007 Transaction. *Id*. Nearly all of the non-parties who had any knowledge about the Transaction were aligned with one of the Defendants. *Id*. ¶ 37. A number of these non-parties, including William Blair (the investment bank hired by Alliance), HIG (the potential third party buyer of Trachte), JP Morgan Chase (Trachte's lender), initially resisted the subpoenas. *Id*. In addition, two non-parties, Squire Sanders & Dempsey (Alliance's transaction counsel) and McGladrey & Pullen (Alliance's auditing firm), refused to produce documents at all, thereby requiring Class Counsel to file motions to compel in foreign jurisdictions, both of which were granted. *Id*. ¶¶ 39-40; *see Chesemore v. Alliance Holdings, Inc.*, No. 1:10 MC 46, 2011 WL 2037624 (N.D. Ohio May 24, 2011) (Plaintiffs' motion to compel production of documents by Squire Sanders); *Chesemore v. Alliance Holdings, Inc.*, No. 1:11 MC 43, 2011 WL 4458782, at *2 (N.D. Ohio Sept. 23, 2011) (granting Plaintiffs' motion to compel depositions of Squire Sanders transactional counsel); *Chesemore v. Alliance Holdings, Inc.*, 270 F.R.D 633, 634 (D. Minn. 2010) (granting in part Plaintiffs' motion to compel discovery from McGladrey & Pullen).

More than twenty-seven fact witness depositions were taken in eight different states, and nearly all of those witnesses – except for some employees at Trachte (who were generally nervous about being involved in litigation concerning their employer) – were adverse to Plaintiffs.  Barton Decl. ¶ 44.  Class Counsel also defended the five Plaintiffs in their respective individual depositions as well as certain absentee Class members; each of Plaintiffs faced questions from multiple defense counsel.  *Id.*; Chesemore Decl. ¶ 15; Donkle Decl. 15; Gieck Decl. 12; Robbins Decl. 19; Stoflet Decl. 19.

Plaintiffs moved for class certification on March 17, 2011.  Motion to Certify Class (ECF No. 187).  This motion was opposed by all Defendants.  Defendant Pagelow's Opposition (ECF No. 211), Alpha Defendants' Opposition (ECF No. 213), Trustee Defendants' Opposition (ECF No. 214), Alliance Defendants' Opposition (ECF No. 216).  Class Counsel also submitted a reply in support of Plaintiffs' motion, along with substantial declarations and other exhibits to address Defendants' numerous arguments.  Brief in Reply (ECF Nos. 248-50).  On September 22, 2011, the Court granted Plaintiffs' motion as requested, certifying the case as a class action with a Class and Subclass as requested and appointing Plaintiffs as class representatives and appointing Plaintiffs' Counsel as Class Counsel.  *Chesemore v. Alliance Holdings, Inc.*, 276 F.R.D. 506, 518 (W.D. Wis. 2011).

Class Counsel initially retained just two experts: Kevin Kreitzman, a valuation expert, and Lucian Morrison, a fiduciary expert.  Barton Decl. ¶ 45.  Defendants retained four different valuation experts (Robert Gross, Paul Halverson, John Murphy and Shannon Pratt), one fiduciary expert (David Heald), two quasi-legal/fiduciary experts (Stephen Fischer and Charles Stevens), and one tracing expert (John Davis).  *Id.*; *see also* Barton Decl., Ex. E.  To rebut the legal-fiduciary experts, Class Counsel retained Jeffrey Krenzel, an ESOP transaction lawyer who

formerly represented ESOPs or their fiduciaries.  Barton Decl. ¶ 45.  Class Counsel deposed each

of the valuation experts and all of the fiduciary experts but Pagelow's.  *Id.*  Defendants' experts

rendered overlapping opinions, and the failure of Defendants to jointly proffer an expert,

necessitated additional work by Class Counsel.

On June 27, 2011, all Defendants filed motions for summary judgment requesting the

Court to find that there was insufficient evidence for the case to proceed to trial.  Alpha

Defendants' Motion (ECF No. 288), Trustee Defendants' Motion (ECF No. 292), Alliance

Defendants' Motion (ECF No. 299), Defendant Pagelow's Motion (ECF No. 303).  In total,

Defendants submitted a combined total of 166 pages of briefing (not including their separate

statements of fact) and 532 paragraphs of proposed findings of fact in support of their motions

for summary judgment.  *See id.*  Plaintiffs filed a motion for partial summary judgment on Count

I and seeking a determination that Alpha was a fiduciary as a matter of law.  Motion for Partial

Summary Judgment (ECF No. 307).  The Court subsequently granted Plaintiffs' motions for

partial summary judgment in part (concluding that Alpha was a fiduciary as a matter of law).

Order (ECF No. 677).  The Court also found that there was sufficient evidence to hold a trial as

to all of the Defendants except Pagelow.  *Id.*

## III.   TWO TRIALS

The Court had ordered bifurcated trials on liability ("Phase One") and equitable relief

("Phase Two").  Order (ECF No. 256).  Beginning on October 11, 2011, the Court held the Phase

One Liability Trial over the course of seven trial days.  Minute Entries (ECF Nos. 556, 557, 558,

559, 577, 578, 579).  As the Court may recall, trial days were generally held from 8am to 8pm.

*Id.*[4]  The Court eventually issued a finding of liability as to the Trustee Defendants, the Alliance

---

[4] To accommodate the vacation of a non-party witness, the Parties also took the trial
testimony of Thomas Klingele before the start of trial.  (ECF No. 580)

Entity Defendants, and Fenkell.  *Chesmore v. Alliance Holdings, Inc.*, 886 F. Supp. 2d 1007 (W.D. Wis. 2012).

As ordered by the Court, Class Counsel submitted a comprehensive brief on the potential remedies, which was extensive as Class Counsel did not have the benefit of the Court's opinion on liability.  Plaintiffs' Memorandum on Remedies and Relief (ECF No. 634).  Between the Phase One trial and the Phase Two trial, Class Counsel sought discovery on the traceability on the proceeds received by the Alliance Entities and the Fenkells.  Barton Decl.  ¶¶ 49-50.  For that purpose, Class Counsel engaged Michael Spang, a former IRS investigator, to offer an opinion as to the disposition of the funds the Trachte ESOP paid to Alliance and Fenkell, and also had Kevin Kreitzman supplement his expert report.  *Id.*

On July 24, 2012, the Court issued its decision on liability, finding, among other things, that Defendant Fenkell breached his fiduciary duty and engaged in prohibited transactions in connection with the 2007 Transaction.  *Chesmore*, 886 F. Supp. 2d at 1060.  Beginning on July 25, 2012, the Court held the Phase Two Relief Trial over the course of four trial days.  On June 4, 2013, the Court issued its determination in the Phase Two Relief Trial, ordering, among other things: (1) the Alliance Defendants to restore to the Alliance ESOP $7,803,543 plus prejudgment interest; (2) Defendant Fenkell to restore to Trachte the $2,896,000 he received in connection with the 2007 Transaction; (3) the Trustee Defendants to pay to the Trachte ESOP $6,473,856.82 plus prejudgment interest; and (4) the Alliance Defendants to indemnify the Trustee Defendants for any compensatory relief they are required to pay.  *Chesmore v. Alliance Holdings, Inc.*, 948 F. Supp. 2d 928, 950 (W.D. Wis. 2013).

9

IV.     **POST TRIAL LITIGATION AND SETTLEMENT NEGOTIATION**

After the trial on remedies, Class Counsel attended a mediation in Madison with Magistrate Judge Opeeneer, which all Defendants attended.  Barton Decl. ¶ 52.  Between the mediation and before the issuance of the remedies decision, Class Counsel was able to reach a settlement, through the assistance of Magistrate Judge Openeeer, with the Trustee Defendants and Defendant Pagelow.  *Id.*

After the Court issued its remedies opinion, the Alliance ESOP requested clarification as to whether the Alliance ESOP accounts could be restored with Alliance stock, to which Class Counsel filed a response.  Alliance Defendants' Motion for Clarification (ECF No. 799), Plaintiffs' Opposition (ECF No. 812).  Additionally, Mrs. Fenkell filed a motion to dismiss Plaintiffs' claim against her, which Class Counsel opposed, and the Court ultimately denied.  Defendant Karen Fenkell's Motion to Dismiss (ECF No. 803), Plaintiffs' Opposition (ECF No. 818), Order (ECF No. 824); *see Chesemore v. Alliance Holdings, Inc.*, No. 09-cv-413-WMC, 2013 WL 6989526, at *6 (W.D. Wis. Oct. 16, 2013).  After the denial of Mrs. Fenkell's motion to dismiss, Class Counsel issued discovery to Mrs. Fenkell.  Barton Decl. ¶ 49.  Additionally, Class Counsel hired Michael Spang, a former IRS forensic investigator to provide an opinion regarding the tracing of assets, and retained Kristina Harrigan, an experienced tax expert, to offer an opinion with respect to Fenkell's argument about an offset to taxes paid on the Phantom Stock proceeds.  *Id*. ¶ 50.  Ms. Harrigan substantially completed her expert report before Plaintiffs reached a settlement with Mrs. Fenkell.  *Id.*

Class Counsel and the Alliance Entity Defendants' newly retained counsel, Morgan Lewis, began discussing settlement in Fall 2013 and exchanged settlement proposals in October 2013.  *Id.* ¶ 54.  Class Counsel and the Fenkells' newly retained counsel, Jackson Lewis, began discussing settlement after the Court denied Karen Fenkell's motion to dismiss.  *Id.* ¶ 63.

Plaintiffs and the Fenkells reached an agreement in principle about the Phantom Stock claims over the Thanksgiving holidays 2013. *Id*. Plaintiffs and the Alliance Defendants reached an agreement in principle concerning the underlying claims at a mediation with Retired Judge Wayne Andersen in January 2014, and an agreement on the fee claim at a subsequent mediation in February 2014. *Id.* ¶¶ 54-55.

In December 2013, Class Counsel filed a motion requesting the Court enter an order allowing Plaintiffs to use Fenkell's Alliance ESOP account to satisfy the award against him. Motion for an Order that David Fenkell's ESOP Account May Be Used to Satisfy the Award Against Him (ECF No. 855). The Court largely granted that request. *Chesmore v. Alliance Holdings, Inc.*, No. 09-cv-413-WMC, 2014 WL 325238, at *2 (W.D. Wis. Jan. 29, 2014). Thereafter, at a mediation with Judge Wayne Andersen, Plaintiffs and Fenkell reached an agreement to resolve that issue. Barton Decl ¶ 63.

The settlements represent an excellent result for the Class and Subclass. First, the settlements will restore the accounts of the members of the Subclass to the amounts they had prior to the 2007 Transaction plus interest. Additionally, the settlements will provide for both cash and the Sellers' Notes to be paid to the Trachte ESOP and to be distributed among the accounts of the participants (other than Defendants). Third, the settlements provide an amount of cash to Trachte itself. Finally, the settlements provide numerous components of additional relief and protections that benefit the Class and the Subclass.

In total, Class Counsel has expended over 16,285 hours to date litigating this case on behalf of the Class and Subclass. Barton Decl. ¶ 68; Declaration of Andrew W. Erlandson ("Erlandson Decl.") ¶ 19. At current hourly rates, the time Class Counsel spent working on behalf of the Class and Subclass amounts to $7,948,619.50. Class Counsel has also advanced

11

$1,061,266.48 in expenses for litigation costs, including filing and service of process costs, expert witness fees, document discovery, deposition expenses, and the cost of travel and legal research.  Barton Decl. ¶ 78; Erlandson Decl. ¶ 24.  Based on the hard work expended and the excellent results achieved, Class Counsel seeks compensation for their attorneys' fees and costs through an award of fees of one-third of the cash settlement fund as well as for approval of the payment of attorneys' fees by certain settling Defendants.  Even if the Court grants this motion in its entirety, Class Counsel will receive less than its lodestar, unless Defendant Fenkell is ordered to and pays additional fees pursuant to Plaintiffs' ERISA § 502(g) motion.

## ARGUMENT

## V.   THE PAYMENT OF ATTORNEYS' FEES BY THE ALLIANCE ENTITIES SHOULD BE APPROVED

"In a certified class action, the court may award reasonable attorney's fees . . . that are authorized by law or *by the parties' agreement*."  Fed. R. Civ. P. 23(h).  Even when the defendant "agrees to pay the fees independently of any monetary award or injunctive relief provided to the class" in the settlement agreement, the court must still approve the fees to be paid to class counsel.  *Staton v. Boeing Co*., 327 F.3d 938, 964 (9th Cir. 2003).  When the settlement provides a separate amount for attorneys' fees and the "award will not reduce recovery by class members, and will be paid apart from relief to the class," then the fairness of the proposed attorneys' fees is "assessed using the lodestar method."  *Redman v. RadioShack Corp.*, No. 11 C 6741, 2014 WL 497438, at *9 (N.D. Ill. Feb. 7, 2014); *see Kearney v. Hyundai Motor Am*., No. SACV 09-1298-JST, 2013 WL 3287996, at *7-8 (C.D. Cal. June 28, 2013) (finding that where fees are not paid out of a common fund, the lodestar approach is used).  Even though an award of attorneys' fees under a fee-shifting provision of a statute utilizes lodestar as a basis to determine the appropriate attorneys' fees, "the task" is "somewhat different."  *Goodyear v. Estes Exp.*

*Lines, Inc.*, No. 1:06-CV-863-JDT-TAB, 2008 WL 687130, at *4 (S.D. Ind. Mar. 10, 2008).

When the fee has been agreed to by the party who will bear the cost and the amount of fees will

not "be diminished by this award," the award is considered presumptively reasonable. *Id.*

      Here, Class Counsel conducted arms-length and good faith negotiations with the Alliance

Entities Defendants over a period of several months, with the full knowledge and participation of

the Class Representatives. *See, e.g.*, Stoflet Decl. ¶ 28 (describing her participation in the

settlement negotiation process). Specifically, in September 2012, all of the parties participated in

a mediation held in Madison, Wisconsin; this mediation did not lead to any settlement

agreement. Barton Decl. ¶ 52. Next, in the Fall of 2013, Plaintiffs and the Alliance Entities

Defendants began to discuss a structured settlement. *Id.* ¶ 54. By January 2014, the Honorable

Judge Wayne Andersen began acting as a mediator between the parties. *Id.* Judge Andersen

assisted with the settlement agreement, which was reached in principle on February 6, 2014.

Pursuant to the settlement agreement, the Alliance Entities Defendants will immediately restore

to the Alliance ESOP accounts of the Subclass $7 million in stock and cash. In addition to that

relief, the Alliance Entities have agreed to pay $5.235 million toward attorneys' fees and

expenses. As part of the settlement, Class Members agreed to assign to the Alliance Entities

Defendants any further claims that Class Members had against David Fenkell, with the exception

of previously-settled claims related to Defendant Fenkell's Alliance ESOP account and the

Phantom Stock proceeds, as well as Plaintiffs' claims for statutory fees against Fenkell.

      Following trial, the Alliance Entities Defendants indicated that they would challenge this

Court's finding of liability, and would thereby attempt to reverse or reduce the amount of their

liability. *Id.* ¶ 56. The settlement agreement at issue provides fair and adequate compensation to

the Subclass by providing a significant and immediate benefit to the Subclass, while forestalling

the possibility of further delay, expense, and risk on an appeal of the Court's trial decision.  *Id*. Moreover, there was no collusion among the counsel for the Alliance Entities Defendants and Class Counsel.  *Id*. ¶ 57.  The settlement was the product of arms-length negotiation supervised by a skillful and experienced mediator, Judge Andersen, and Class Representatives participated in the process.  *Id*.; Stoflet Decl. ¶ 28; Donkle Decl. ¶ 23.  The fees that the Alliance Entities Defendants have agreed to pay represent fair and adequate compensation for Class Counsel's efforts in reaching this result.

## VI.   THE PAYMENT OF ATTORNEYS' FEES & EXPENSES BY TRACHTE SHOULD BE APPROVED

As part of its remedies order, the Court determined that "Fenkell shall restore to Trachte Building Systems, Inc. the $2,896,000 received in Phantom Stock proceeds as part of the August 29, 2007 Transaction, provided Trachte restores Fenkell's Phantom Stock plan in return." *Chesemore*, 2013 WL 6989526, at *6.  Ultimately, the Fenkells agreed to pay $1.8 million to resolve this claim (but not require the return of Phantom Stock units, which, as a result, meant that Trachte had no future liability to Fenkell).  Partial Settlement Term Sheet with David B. Fenkell (ECF No. 854) ¶ 4.  Of the $1.8 million, Plaintiffs and Trachte agreed to split the amount recovered evenly between Trachte and the Subclass.  Agreement Between Plaintiffs and Trachte Building Systems, Inc. and the Trachte Building Systems, Inc. Employee Stock Ownership Plan ("Trachte Agreement") (ECF No. 875) ¶ 3(b).  In addition, Trachte agreed to pay 30% of its share in attorneys' fees to Class Counsel plus reimburse Class Counsel up to an additional $25,000 in expenses.  *Id*. ¶ 3(c).

The common fund doctrine or the related common benefit doctrine,[5] applies to the amount that Trachte has agreed to pay.  Under these doctrines, attorneys' fees and expenses may be imposed on persons not participating in the litigation that received "a substantial benefit" from that litigation and would have had to pay the fees had they brought the suit.  *Gaffney v. Riverboat Servs. of Indiana, Inc*., 451 F.3d 424, 466-67 (7th Cir. 2006) (citing *Hall v. Cole*, 412 U.S. 1, 5 (1973)); *Mills v. Electric Auto–Lite Co*., 396 U.S. 375, 393-99, (1970).  Under these doctrines, fees are spread proportionately among the persons who benefit from the lawsuit.  *Id*. at 396–97.  The "theory is designed to avoid unjust enrichment of beneficiaries to a law suit who are not named plaintiffs."  *Grace v. Burger*, 763 F.2d 457, 460 (D.C. Cir. 1985); *see Gaffney*, 451 F.3d at 466 ("[A]llow[ing] [these persons] to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich [them] unjustly at the plaintiff's expense.").  These principles apply precisely to the award conferred on Trachte by this litigation and the Fenkell Phantom Stock settlement.

While the common fund doctrine is often associated with payment of attorneys' fees in class actions, "[t]he common fund doctrine itself is not limited to class actions."  *Winston & Strawn LLP v. F.D.I.C.*, 894 F. Supp. 2d 115, 124 n.4 (D.D.C. 2012) (citing *Sprague v. Ticonic National Bank*, 307 U.S. 161, 167 (1939) (recognizing the equitable power of courts to award attorney's fees where equity demands, regardless of the "formalities of the litigation [or] the absence of an avowed class suit or the creation of a fund")).[6]  To apply the doctrine to persons

---

[5] The common benefit doctrine recognizes that attorneys' fees should be shared by those who receive a common benefit arising from a suit, even if that benefit is not a monetary fund from which the fees can be extracted before the funds are disbursed to the recipients.  *Mkt. St. Sec., Inc. v. Midwest Air Grp., Inc*., No. 07-CV-345, 2009 WL 2985451 (E.D. Wis. Sept. 15, 2009).

[6] The most common application of these doctrines in non-class actions is in shareholder derivative litigation and litigation involving union members.  *E.g.*, *Mills*, 396 U.S. at 396–97

who are not members of a certified class, the Seventh Circuit requires (1) identifying a readily ascertainable group of persons benefitting from their successful litigation and (2) suggesting a workable strategy for distributing the costs of representation among such persons. *Gaffney*, 451 F.3d at 467.  Both requirements are readily met here.

There can be no question that the litigation conferred a benefit directly on Trachte.  As a result of Plaintiffs' efforts, the Court entered an order, which would have been reduced to judgment, requiring Fenkell to return the $2.896 million that he received in Phantom Stock proceeds in exchange for Trachte returning essentially worthless Phantom Stock units. *Chesemore*, 2013 WL 6989526, at *6.  As Plaintiffs would have had an argument on appeal that, as the Phantom Stock payment was paid as a result of the improper use of their Alliance ESOP accounts, the entire disgorgement should be paid to the Subclass, not Trachte, the settlement with the Fenkells will ultimately confer a $900,000 gross benefit on Trachte.  Trachte Agreement ¶ 3.  By agreement, Plaintiffs and Trachte, by and through their respective counsel, have negotiated and agreed to a formula for assessing the fees and expenses. *Id.* at ¶ 3(c) & (d).  Out of its share, Trachte will pay 30% in attorneys' fees plus expenses to pursue the claims against Karen Fenkell and the expenses of confirmatory discovery up to $25,000.  This agreement was negotiated at arms-length by parties represented by counsel and the share of attorneys' fees was negotiated only after the split had been agreed upon.  Barton Decl. ¶ 61.  If assessed under the Seventh Circuit's standards for assessing fees, it merits approval. *Infra* Section III.  As such, this agreement on fees and expenses is fair, reasonable, and should be approved.

---

(allowing reimbursement to plaintiffs for attorneys' fees from the corporate treasury, thus spreading the costs across the benefitting shareholders); *Hall*, 412 U.S. at 8-9 (holding that the plaintiffs acted on behalf of all union members, and were entitled to reimbursement of attorneys' fees from the union treasury so that all union members equally contributed to the costs of litigation).

**VII.   CLASS COUNSEL IS ALSO ENTITLED TO AN AWARD OF ATTORNEYS'
FEES FROM THE FUND CREATED BY THE OTHER SETTLEMENTS**

It is well-settled that attorneys who, by their efforts, create a common fund for the benefit

of a class are entitled to reasonable compensation for their services.  *Boeing Co. v. Van Gemert*,

444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit

of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund

as a whole."); *Florin v. Nationsbank of Ga., N.A. ("Florin I")*, 34 F.3d 560, 563 (7th Cir. 1994)

("When a case results in the creation of a common fund for the benefit of the plaintiff class, the

common fund doctrine allows plaintiffs' attorneys to petition the court to recover its fees out of

the fund."); *Matter of Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992) (approving

award of fees from the common fund, where class counsel "employed their professional skills to

create a cornucopia for the class").  The Seventh Circuit has long recognized that, in addition to

providing just compensation, substantial counsel fees encourage forceful prosecution of cases.

*Halverson v. Convenient Food Mart, Inc.*, 458 F.2d 927, 931 n.5 (7th Cir. 1972).

In an ERISA case (in fact, an ESOP case brought by Cohen Milstein in this District), the

Seventh Circuit concluded that class counsel may seek an award of fees in an ERISA settlement

out of a settlement fund based on common law principles.  *Florin I*, 34 F.3d at 563-64.  Indeed,

the settlement agreement in *Florin* "provide[d] that the defendants are released from potential

liability for statutory attorney's fees" and that "class counsel may instead petition the court for an

award of fees from the settlement fund." *Id.* at 564.  Based on that provision, the Seventh Circuit

concluded that "the settlement agreement seems to anticipate that the amount paid by the

defendants into the fund includes an unspecified sum for class counsel's fees." *Id.*  The same is

precisely true with respect to the settlements with the Trachte Trustees and Pagelow.   ECF No.

899 at §VIII ¶ 2.  Similarly, the agreement with the Fenkells regarding the Phantom Stock

proceeds contemplates a partial release of attorneys' fees, and therefore also contemplates that the fund includes an amount to be paid in attorneys' fees and expenses. Partial Settlement Term Sheet with David B. Fenkell and Karen G. Fenkell (ECF No. 854) ¶ 5(a).

In determining the appropriate amount of attorneys' fees to be awarded to class counsel in successful litigation that produces a common fund, the Seventh Circuit has consistently instructed courts "to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Taubenfeld v. Aon Corp.*, 415 F.3d 597, 599 (7th Cir. 2005) (citing prior cases). In doing so, "it is not the function of judges in fee litigation to determine the equivalent of the medieval just price." *In re Cont'l Ill.*, 962 F.2d at 568. Instead, the court is to "determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." *Id.* In other words, courts "must attempt to estimate what the parties would have agreed to had negotiations occurred at the outset" of a case. *In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 733 F. Supp. 2d 997, 1013 (E.D. Wis. 2010); *see Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) ("The judge, in other words, is trying to mimic the market in legal services."). "[I]n common fund cases, the decision whether to use a percentage method or a lodestar method" – as what best reflects the market – "remains in the discretion of the district court." *Florin I*, 34 F.3d at 566. Some district courts in this Circuit employ the "percentage of the fund method" and "[c]ross-check[] this fee against the fee that would be awarded under the lodestar method." *Lawnmower Engine*, 733 F. Supp. 2d at 1015. A lodestar cross-check, however, "has fallen into disfavor" for a variety of reasons. *Beesley v. Int'l Paper Co.*, No. 3:06-cv-703-DRH-CJP, 2014 WL 375432, at *3 (S.D. Ill. Jan. 31, 2014) (citing *Synthroid II*, 325 F.3d at 979-80 (discussing the rationale for discounting a lodestar cross-check)).

18

A.   <u>The Market Rate for Class Counsel's Services is One-Third of the Class Members' Total Recovery</u>

In determining the market price for legal services in class action litigation, courts in this Circuit will consider the quality of legal services rendered, the contingent nature of the case, and awards made by courts in other class actions as well as empirical studies of class action settlements. *Taubenfeld*, 415 F.3d at 600; *Lawnmower Engine*, 733 F. Supp. 2d at 1013-15. An examination of these factors in this case demonstrates that an award of attorneys' fees equal to one-third of the dollars in the common fund is both fair and reasonable here, whether calculated as a percentage of the fund or under the lodestar calculation method.

1.   <u>The Complexity of the Case & the Quality of the Legal Services Supports the Requested Fee</u>

The quality of Class Counsel's representation is demonstrated by the quality of the results obtained in this litigation, particularly in light of the complexity of the underlying transaction. "Many courts have recognized the complexity of ERISA breach of fiduciary duty company stock claims." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138 (S.D.N.Y. 2010); *In re WorldCom, Inc. ERISA Litig.*, No. 02 Civ. 4816, 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (noting a "general risk inherent in litigating complex claims" in ERISA fiduciary breach cases); *see Boos v. AT & T, Inc.*, 704 F. Supp. 2d 600, 612 n.13 (W.D. Tex. 2010) (observing that ERISA is "an area repeatedly referred to as complex and difficult."). In this complex area, the Seventh Circuit has observed that "[v]ery few areas of the law are as unsettled and complex as ESOP valuation." *Florin v. Nationsbank of Georgia, N.A.*, 60 F.3d 1245, 1248 (7th Cir. 1995) (citing Robert J. Gross, *ESOP Valuation Issues*, 3 J. of Employee Ownership L. & Fin. 53 (Winter 1991)). This case was no exception. *Chesemore v. Alliance Holdings, Inc.*, 284 F.R.D. 416, 418 (W.D. Wis. 2012) (describing this as a "complicated case"). Lead Class Counsel practices extensively in this highly challenging area of law. Barton Decl. ¶ 7.

In its decision on class certification, this Court observed that "plaintiffs' counsel's filings and performance at hearings up to this point have shown that they are capable of handling the complex nature of this case and properly presenting the case to the court." *Chesemore*, 276 F.R.D. at 516. Not only do Class Counsel have considerable expertise in this area of litigation, but their skills are also recognized by their peers. Declaration of Daniel Feinberg ("Feinberg Decl.") ¶ 18; Declaration of Gary Greenwald ("Greenwald Decl.") ¶¶ 13-14. The skills and expertise that Class Counsel brought to this case proved essential in litigating Class Members' claims, and obtaining the success on the merits.

Throughout the course of this case, Defendants were represented by skilled lawyers from some of the largest firms in the country. Defendants consistently maintained the propriety of their conduct and mounted a vigorous defense to Plaintiffs' claims. *E.g.*, *Chesemore*, 886 F. Supp. 2d at 1055-56 (summarizing and rejecting defendants' arguments at trial). Despite the complexity of the issues and the formidable defense, Class Counsel was able to present a case that established liability and substantial recovery of more than $17 million. *Chesemore*, 948 F. Supp. 2d at 950. Only after obtaining an order on remedies was Class Counsel able to negotiate with the multiple sets of Defendants to reach settlements that eliminated the risks of appeal and effectuated the immediate receipt of settlement proceeds by the Class Members. As a result of these settlements, the Subclass will have their accounts restored to the position they were in prior to the 2007 Transaction plus prejudgment interest, the Class will receive payments to their Trachte ESOP accounts, the Trachte ESOP will receive the Sellers' Notes, and Trachte, in which all Class Members have an interest, will receive an infusion of cash plus an increased likelihood of being able to refinance debt with the Sellers' Notes in the hands of the Trachte ESOP. *See* Burbach Decl. ¶ 12.

2.     The Contingent Nature of the Representation Supports the Requested Fee

As the  Seventh Circuit observed in determining that a multiplier is "mandated" in class action common fund suits, "[t]he lawyers for the class receive no fee if the suit fails, so their entitlement to fees is inescapably contingent." *Florin I*, 34 F.3d at 565.  Here, Class Counsel undertook significant risk of nonpayment of attorneys' fees.  Plaintiffs, neither individually nor collectively, had the resources to pay counsel on an hourly-fee basis.  Chesemore Decl. ¶ 9; Donkle Decl. ¶ 11; Robbins Decl. ¶ 12; Stoflet Decl. ¶ 14.  Class counsel took this case on an entirely contingent basis.  Chesemore Decl. ¶ 9; Donkle Decl. ¶ 11; Robbins Decl. ¶ 12; Stoflet Decl. ¶ 14; Barton Decl. ¶ 26.  Additionally, Class Counsel also advanced all of the costs of the litigation.  Barton Decl. ¶ 27.  As this complex case involved significant discovery, required several experts, and two trials, and lasted more than five years, the out-of-pocket costs of the litigation themselves exceeded $1 million.  *Id*. ¶ 78.

As in the *Simmons* ESOP case, this was not case in which class counsel "were assured of a paycheck." *Florin*, 60 F.3d at 1247 (finding district court erred in refusing to grant multiplier). As in that case, here there existed the significant possibility that Defendants might prevail on motion, at trial, or on appeal – and hence Class Counsel would receive no compensation for their work on behalf of the Class.  *See id.*  Many of the same risk factors were present: an independent fiduciary had condoned the sale, there were purportedly independent appraisers conducting a valuation, there were independent lenders, "a number of the defendants with the deepest pockets" contended they "were not fiduciaries," and defendants made numerous arguments about the cause of any losses.  *See id.* at 1248.  Thus, Class Counsel risked significant amounts of time and money to achieve a recovery for Class Members.

3.     The Awards in Other Class Action Cases Support the Fee Request

"[T]he third benchmark for gauging the market price for fee awards is the amount of court-awarded attorneys' fees in comparable cases." *City of Greenville v. Syngenta Crop Protection, Inc.*, 904 F. Supp. 2d 902, 908 (S.D. Ill. 2012). "Courts throughout the Seventh Circuit routinely consider the fee awards in other class actions and conclude that a one-third contingency fee is standard." *Id.* at 909 (citing cases); *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 816 (E.D. Wis. 2009) (citing Newberg on Class Actions for the proposition that fee awards in common fund class actions were between 20% and 40% of the settlement); *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) ("A customary contingency fee would range from 33 1/3% to 40% of the amount recovered."). Indeed, the Seventh Circuit has approved percentages of over one-third. *Gaskill*, 160 F.3d at 363 (approving district judge's award of 38 percent of $20 million fund).

A number of courts, including several in this Circuit, have concluded that in ERISA cases "a one-third fee is consistent with the market rate in settlements concerning this particularly complex area of law." *Beesley*, 2014 WL 375432, at *2; *Will v. Gen. Dynamics Corp.*, No. 06-698-GPM, 2010 WL 4818174, at *3 (S.D. Ill. Nov. 22, 2010) (awarding one-third in an ERISA case); *In re Marsh*, 265 F.R.D. at 149 (awarding 1/3 and observing that courts have award one-third or higher in ERISA company stock cases); *Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174, 182 (E.D.N.Y. 1999) (awarding 33.33% in ERISA case). In short, in complex class action cases like this one, courts in this Circuit "commonly award attorneys' fees equal to

approximately one-third or more of the recovery." *Goldsmith v. Tech. Solutions Co.*, No. 92 C 4374, 1995 WL 17009594, at *8 (N.D. Ill. Oct. 10, 1995).[7]

The reasonableness of the requested amount is also borne out by empirical evidence.  In an updated study released in 2010, Theodore Eisenberg and Geoffrey Miller analyzed 689 common fund fee award opinions spanning 18 years.  Eisenberg & Miller, *Attorney Fees & Expenses in Class Action Settlements: 1993-2008*, 7 J. of Empirical Legal Stud. 248 (2010) (attached to Barton Decl. as Exhibit J); *see Lawnmower Engine*, 733 F. Supp. 2d at 1013-15 (discussing the study as "the best indicator of what the market would pay class counsel for their services").  The Eisenberg & Miller analysis examined total class recovery by deciles.  *Id.* According to this study, the amount and percentage sought by Class Counsel – looking solely at the cash component of the settlement – would fall within the third decile of recoveries and are reasonable when compared to similar cases.  Eisenberg & Miller, *supra* at Table 7; *see also Lawnmower Engine*, 733 F. Supp. 2d at 1014 (citing Eisenberg & Miller).

> 4.   Actual Fee Agreements Evidence the Market Rate of One-Third

Actual fee contracts that were privately negotiated for similar litigation is another indicia of the reasonableness of a few awarded in a class action.  *Taubenfeld*, 415 F.3d at 599; *City of Greenville*, 904 F. Supp. 2d at 909.  As the Seventh Circuit and other courts have observed, "[t]he typical contingent fee is between 33 and 40 percent."  *Gaskill*, 160 F.3d at 362;  *In re*

---

[7] *See Campbell v. Advantage Sales & Mktg. LLC*, No. 09–01430, 2012 WL 1424417, at *2 (S.D. Ind. Apr. 24, 2012) (awarding one-third of recovery as attorney's fees); *In re Ready–Mixed Concrete Antitrust Litig.*, No. 05–00979, 2010 WL 3282591, at *3 (S.D. Ind. Aug. 17, 2010) (awarding 33.3% of the common fund as fees in antitrust action); *Retsky*, 2001 WL 1568856, at *4 (awarding 33 1/3% of fund); *Goldsmith*, 1995 WL 17009594, at *8 (awarding fee of 33 1/3%); *Long v. Trans World Airlines, Inc.*, No. 86 C 7521, 1993 WL 121824, at *2 (N.D. Ill. Apr. 19, 1993) (awarding 32% of settlement or $1.3 million); *see also In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding 33.3% of $586 million settlement).

*Remeron Direct Purchaser Antitrust Litig.*, No. 03-0085, 2005 WL 3008808, at*16 (D.N.J. Nov. 9, 2005) ("Attorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation.").  In addition to handling ERISA class actions, Cohen Milstein is also hired in a variety of non-class action litigation (usually on behalf of plaintiffs), including in litigation involving ERISA breaches of fiduciary duties.  Barton Decl. ¶ 12.  For example, in one recent representation involving approximately the same size anticipated recovery as this case, Cohen Milstein was retained by the fiduciaries of a pension plan on a contingency basis to take over ERISA breach of fiduciary litigation against former fiduciaries where all fact discovery had been completed.  *Id.* ¶ 13.  In the case, the fiduciaries agreed to pay for the first $50,000 in litigation (primarily expert) expenses and agreed to a contingency arrangement that included the following provision related to the payment of fees if the case proceeded to trial:

> In the event that case settles within 30 days of trial (or after a trial commences or after a decision of liability in favor of the Plans) or there a judgment in favor of Plaintiffs, the Firm will be paid the greater of (A) its lodestar at then-current rates (time incurred multiplied by standard billable rate applicable at the time of settlement or judgment), (B) one-third of the settlement before deducting expenses, or (C) any fee award made by the Court against the Defendants in favor of the Firm.  If a fee award is made by the Court to the Firm and such fee is less than (A) and/or (B) herein, such fee award shall not be in addition to (A) or (B), but shall be considered as an offset to (A) or (B) herein.

*Id.*[8]  In a similarly-sized case where the clients had money to pay significant litigation expenses and, at initiation, counsel expected that there would be far less discovery expenses (because only expert discovery remained), the fiduciaries (who were represented by corporate counsel in negotiating the fee) agreed to retain Cohen Milstein on a similar, if not a better, basis than what

---

[8] Lead Class Counsel is willing to provide a copy of this retainer agreement *in camera*.

is sought by Class Counsel here.  *See id.*  This provides strong evidence that the fee request here

is the market rate.

### B.      The Requested Fees are Fair and Reasonable as a Percentage of the Fund

The Seventh Circuit has endorsed the percentage of the fund method, pursuant to which

fees are awarded as a percentage of the total recovery, because it most closely approximates the

manner in which attorneys are compensated in the marketplace for contingent work.  *Gaskill*,

160 F.3d at 362 ("When a class suit produces a fund for the class, it is commonplace to award

the lawyers for the class a percentage of the fund . . . in recognition of the fact that most suits for

damages in this country are handled on the plaintiff's side on a contingent-fee basis").[9]  The

Seventh Circuit has recognized "that there are advantages to utilizing the percentage method in

common fund cases because of its relative simplicity of administration."  *Florin I*, 34 F.3d at

566; *cf. In re Cont'l Ill.*, 962 F.2d at 573 (noting it is easier to award a percentage "than it would

be to hassle over every item or category of hours and expense and what multiple to fix and so

forth").

Both the Manual for Complex Litigation and courts have cautioned against the over-

emphasis of using solely cash components of settlements to analyze the basis for the fee award.

Manual for Complex Litigation (Fourth) § 21.71, at 557-58 (2011); *cf. Blanchard v. Bergeron*,

489 U.S. 87, 95 (1989) (cautioning against an "undesirable emphasis" on monetary "damages"

that might "shortchange efforts to seek effective injunctive or declaratory relief."); *Beesley*, 2014

---

[9] *See McKinnie*, 678 F. Supp. 2d at 816 ("The 'percentage of the fee' method is
preferable because it more closely replicates the contingency fee market rate for counsel's legal
services."); *Cooper v. IBM Pers. Pension Plan*, No. 99 -829-GPM, 2005 U.S. Dist. LEXIS
17071, at *13 (S.D. Ill. Aug. 16, 2005) ("'[T]he approach favored in the Seventh Circuit is to
compute attorney's fees as a percentage of the benefit conferred on the class,' particularly where
that percentage of the benefit approach replicates the market") (quoting *Williams v. General
Elec. Capital Auto Lease*, No. 94-C-7410, 1995 U.S. Dist. LEXIS 19179, at *9 (N.D. Ill. Dec.
26, 1995)).

WL 375432, at *1 (considering non-cash components of a settlement); *Will*, 2010 WL 4818174, at *1 (same).  But Class Counsel's request is calculated solely as a percentage of only a fraction of the cash settlement funds.

The non-cash components of the settlements here are significant.  First, the settlements require the assignment of the Pagelow's Sellers' Note with a face value of $1.3 million (and accumulated interest of $1.42 million) and the Alliance Entities' Sellers' Note with a face value of $4.3 million (and accumulated interest of $4.85 million).  Burbach Decl. ¶¶ 3-4.  Although these likely have little present fair market value, they are more valuable in the possession of the Trachte ESOP than they are to a third-party.  *Id.* ¶¶ 5-6.  Pagelow also released his claim to have his Alliance ESOP account restored, which was worth in excess of $1 million at the time of the 2007 Transaction.  Settlement Agreement Between Plaintiffs and Defendants Mastrangelo, Seefeldt, Klute, and Pagelow (ECF No. 899) § XI(2).  Finally, the settlements require the Alliance Entities to bear all expenses related to the Notice and Administration of the settlement.  Settlement Term Sheet with Alliance Defendants ("Alliance Agreement") (ECF No. 874) ¶ 1(c).  Thus, an award of one-third of *the cash* components of these settlements does not really result in Class Counsel receiving one-third of the settlement value, but does constitute reasonable compensation for their work in this litigation.

## C.    The Lodestar Method Confirms the Requested Attorneys' Fees are Fair and Reasonable

Attorneys' fees in class actions may be calculated by using the lodestar approach, under which reasonable hourly rates are multiplied by the hours reasonably expended by the attorneys, which is then multiplied by a risk multiplier that is to be determined at the district court's discretion.  *Cook v. Niedert*, 142 F.3d 1004, 1013 (7th Cir. 1998).  The starting point for the lodestar method is "the number of hours reasonably expended on the litigation multiplied by a

reasonable hourly rate." *Freeland v. Unum Life Ins. Co. of Am.*, No. 11-CV-053-WMC, 2014 WL 988761, at *2 (W.D. Wis. Mar. 13, 2014) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  Once the court has reached the starting point, it "may then increase or reduce the modified lodestar amount by considering a variety of factors."  *Id.* (internal citations omitted).  In the class action context, the Seventh Circuit has concluded that a multiplier is mandated based on the risk of non-payment.  *Florin*, 60 F.3d at 1247-48.  When the lodestar method produces what is known as a "negative multiplier," that indicates reasonableness of the fees.  *See Ford v. Sprint Commc'ns Co. L.P.*, No. 3:12-CV-00270-SLC, 2012 WL 6562615, at *4 (W.D. Wis. Dec. 14, 2012); *Summers v. UAL Corp. ESOP Comm.*, No. 03 C 1537, 2005 WL 3159450, at *1 (N.D. Ill. Nov. 22, 2005).  Here, even with the payment of $5.325 million and an award of one-third of the common fund from other settlements, Class Counsel will not receive the full amount of their fees unless additional fees are ultimately paid by Fenkell.

The Seventh Circuit has held that the hourly rates to be applied in calculating the lodestar are those normally charged for similar work by attorneys of comparable skill and experience in the community where the attorney practices.  *In re Synthroid Marketing Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("when deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time").[10]  "The attorney's actual billing rate for comparable work is 'presumptively appropriate' to use as the market rate."  *Aspacher v.*

---

[10] *See also Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997) ("The 'lodestar' figure should be 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'") (quoting *Blum v. Stevenson*, 465 U.S. 886, 896 n.11 (1984)); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (appropriate rate in performing lodestar analysis is "the rate 'normally charged for similar work by attorneys of like skill in the area,' taking into account factors such as the experience of the attorney performing the work and the type of work performed") (quoting *City of Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1098 (2d Cir. 1977)).

*Rosenthal Collins Group*, No. 00 C 7520, 2001 WL 1386614, at *1 (N.D. Ill. Nov. 7, 2001)

(quoting *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996)).  The

Seventh Circuit has held that "if an out-of-town attorney has a higher hourly rate than local

practitioners, district courts should defer to the out-of-town attorney's rate when calculating the

lodestar amount."  *Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 743–44 (7th Cir. 2003);

*Freeland*, , 2014 WL 988761, at *2.  Nonetheless, courts have concluded that "the market for

legal services" by plaintiffs' firms handling ERISA breach of fiduciary duty cases "is a national

one."  *Beesley*, 2014 WL 375432, at *3;*see also Torgeson v. Unum Life Ins. Co. of Am.*, No.

C05-3052-MWB, 2007 WL 433540, at *6 (N.D. Iowa Feb. 5, 2007) (finding out-of-town

counsel's rate was reasonable because "ERISA cases involve a national standard"); *Mogck v.

Unum Life Ins. Co. of Am.*, 289 F. Supp. 2d 1181, 1191 (S.D. Cal. 2003) (finding attorneys' rates

were reasonable because ERISA cases involve a national standard).  The hourly fee rates claimed

by Class Counsel are on par with the market rates charged by other plaintiffs' firms handling

ERISA breach of fiduciary cases.  Greenwald Decl. ¶ 16; Feinberg Decl. ¶ 19.  The number of

law firms that have ESOP class action expertise and which frequently bring such cases is

extraordinarily small.  Greenwald Decl. ¶ 11 (declaring that 3 firms, including Cohen Milstein,

are ESOP class action specialists); Feinberg Decl. ¶ 14 (same).  Within that nationwide market,

Class Counsel's rates are similar to those charged by other ERISA litigators and those who bring

ESOP class action cases.  Greenwald Decl. ¶ 16; Feinberg Decl. ¶ 19.

A comparison of Cohen Milstein's rates to both of the other plaintiffs' counsel handling

ERISA breach of fiduciary cases in general and ESOP valuation litigation in particular reveals

that Class Counsel's rates are reasonable.  For example, the *Beesley* and *Tussey* courts found

other plaintiffs' counsel's rates ranging from $394 per hour for junior attorneys to $892 per hour

for senior attorneys reasonable. *Beesely*, 2014 WL 375432, at *3; *Tussey v. ABB, Inc.*, No. 06-04305, 2012 WL 5386033, at *3 (W.D. Mo. Nov. 2, 2012) ("For attorneys with 25 years or more experience, $800 per hour; for attorneys with 15–24 years of experience, $625 per hour; 5–15 years of experience, $450 per hour; 2–4 years of experience, $325 per hour; and for professional support staff, $125 per hour."). Similarly, Class Counsel's rates are in line with those charged by the other two Plaintiffs' firms handling ESOP valuation litigation on behalf of plaintiffs. Greenwald Decl. ¶ 16; Feinberg Decl. ¶ 19.

The Seventh Circuit has explained that the reasonableness of the hours should be measured by what a lawyer would charge a paying client and, as a result, should exclude hours that are "excessive, redundant, or otherwise unnecessary." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 552 (7th Cir. 1999). At the same time, the mere fact that some attorney – especially an assertion by counsel for a losing defendant – says that he could have done the winning counsel's work in less time, is not worth much standing by itself. *Mohr v. Chicago Sch. Reform Bd. of Trustees of Bd. of Educ. of the City of Chicago*, 194 F. Supp. 2d 786, 789 (N.D. Ill. 2002) ("If the winning counsel had taken less time, he might not be a position to ask for attorneys' fees as the prevailing party's representative."); *see Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 538, 543 (10th Cir. 2000) (finding the opponent's time is not an "immutable yardstick of reasonableness."). As was the case here, a plaintiff must invest greater effort to investigate a claim and carry the burden of proof than a defendant who merely responds to the plaintiff's arguments and those differences justify plaintiff's counsel in spending more time on the case than defense counsel. *Young v. Verizon's Bell Atl. Cash Balance Plan*, 783 F. Supp. 2d 1031, 1039 (N.D. Ill. 2011).

In this case, Class Counsel made efforts to be efficient in litigating this action by

assigning work to junior attorneys and paralegals with lower hourly rates.  Barton Decl. ¶ 75.

Prior to submitting this request, Class Counsel reviewed time entries and, just as Class Counsel

does prior to sending bills to paying clients, removed time entries for duplicative or unnecessary

work that would not ordinarily be billed to a fee-paying client.  *Id*. ¶ 76.  Based on these adjusted

time records, Class Counsel collectively expended over 16,000 hours of professional time

prosecuting this case.  *Id*. ¶ 68.[11]  By way of comparison, in an ERISA breach of fiduciary case

that did *not* proceed to trial, class counsel expended 18,000 attorneys hours and over 4,000 non-

attorney professional hours (or 22,000 hours combined), generating a lodestar of more than $12

million.  *Beesley*, 2014 WL 375432, at *3.  And in the other, most recently reported ERISA

fiduciary duty class action to proceed to trial successfully on behalf plaintiffs, class counsel

expended over 25,000 hours, generating a lodestar of over $14 million.  *Tussey*, 2012 WL

5386033, at *4.  In connection with Plaintiffs' Motion Pursuant to ERISA § 502(g), Plaintiffs are

submitting Class Counsel's detailed time records, although such records are not necessary to

submit a fee request pursuant to Rule 23(h).  *See Beesley*, 2014 WL 375432, at *3 n.1.  The

comparison to these other cases illustrates the reasonableness of the time that Class Counsel

expended in prosecuting this case.

Class Counsel's total lodestar, which is derived by multiplying the number of hours by

---

[11] As it is customary to bill paralegals at hourly rates, it is appropriate to include their
time in the lodestar.  *In re Cont'l Ill.*, 962 F.2d at 569.  Courts have recognized the economic
value of using paralegals to do work that otherwise would be performed by attorneys.  *Id.*; *U.S.
Football League v. Nat'l Football League*, 887 F.2d 408, 416 (2d Cir. 1989).  Consistent with the
Seventh Circuit's determination, the amount for the fee awarded to class counsel does not need
to consider the time spent on the fee petition.  *Cook*, 142 F.3d at 1015.  But such time can be
used for Plaintiffs' request for fees under ERISA § 502(g). *Holmstrom v. Metropolitan Life Ins.,
Co.*, No. 07-CV-6044, 2011 WL 2149353, at *8 (N.D. Ill. May 31, 2011)

each firm's current hourly rates,[12] amounts to more than $7.9 million.  Barton Decl. ¶ 69.

## VIII.   CLASS COUNSEL'S OUT-OF-POCKET EXPENSES ARE REIMBURSABLE

"It is well established that counsel who create a common fund . . . are entitled to the reimbursement of litigation costs and expenses."  *Beesley*, 2014 WL 375432, at *3.  "The Seventh Circuit's view of cost reimbursement mirrors its view of attorneys' fees."  *City of Greenville*, 904 F. Supp. 2d at 910.  Reducing litigation expenses because they are higher than the private market would permit is fine; reducing them because the district judge thinks the costs are too high in general is not.  *Synthroid*, 264 F.3d at 722.  Costs are reimbursable if they are reasonably incurred in furtherance of the litigation and a private client would reimburse their attorney for such costs separate from any payment for hourly rates.  *Lawnmower Engine*, 733 F. Supp. 2d at 1013 (approving class counsel's request for reimbursement of costs).  Expenses such as "experts' fees, other consulting fees, deposition expenses, travel, and photocopying costs" are all "of the type that are routinely reimbursed by paying clients."  *City of Greenville*, 904 F. Supp. 2d at 910; *see Beesley*, 2014 WL 375432, at *3 (finding expert witness fees, computerized research, court reporters, travel expense, copy, phone, facsimile and mediation expenses are all reimbursable).

"Likewise the amount of itemization and detail required is a question for the market. If counsel submit bills with the level of detail that paying clients find satisfactory, a federal court

---

[12] Courts have held that the use of current rates is appropriate to compensate counsel for the loss of use of funds.  *Heder v. City of Two Rivers*, 255 F. Supp. 2d 947, 958 (E.D. Wis. 2003) ("awarding fees at the current rate … is an accepted method").  A court may either "calculate the fee award using the attorney's current rates" or "base the award on the rates the lawyers charged when they rendered the services to the [client] and to add interest on that amount to the present." *See Smith v. Vill. of Maywood*, 17 F.3d 219, 221 (7th Cir. 1994); *Chesemore*, 948 F. Supp. 2d at 948 (finding plaintiffs "entitled to quarterly compounding interest at the current prime rate[,]" in addition to their judgment award).  Class Counsel provides the Court with a calculation of the professional time billed to date, at current rates and also at historical rates, with the addition of prejudgment interest calculated at the current prime rate.  Barton Decl., Ex G.

should not require more." *Synthroid*, 264 F.3d at 722 (7th Cir. 2001). Usually, the party seeking reimbursement of costs should provide a summary document of sufficient detail to enable the Court to perform its oversight function. *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 600 (N.D. Ill. 2011); *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co*., 924 F.2d 633, 643 (7th Cir. 1991) (requiring "the best breakdown obtainable from retained records" in support of request for cost reimbursement). Class Counsel has advanced approximately $1,054,550.37 in costs and expenses over the course of this litigation, as reflected on the attached summary. Barton Decl., Ex. I.[13]

Because the settlement agreement with the Alliance Entities includes a payment of $5.325 million for attorneys' fees *and* expenses, it is fair to allocate a portion of that sum specifically to expenses. As the Alliance Entity Defendants have agreed to pay about 61% of the overall total recovery (which is equal to $7.15 million promised by Alliance in cash and stock out of the $11.675 million total recovery to the Class and Subclass, Plaintiffs have calculated that the Alliance settlement should cover about 61% of the total costs, or approximately $631,649. As such, Plaintiffs propose that remaining costs – or approximately $403,841 – should be paid from the common fund. As such, Class Counsel requests reimbursement of their taxable and non-taxable costs expended in the amount of $403,841 pursuant to Rule 23(h)[14]

---

[13] As Trachte agreed to pay for expenses related to the Phantom Stock claims and the claims against Karen Fenkell up to $25,000, Class Counsel has removed $13,454.92 from the total expenses for such costs. Trachte Agreement ¶ 3(c). As the Alliance Entity Defendants agreed to pay the out-of-pocket expenses Class Counsel incurred for this litigation in 2014, up to a cap of $20,000, Class Counsel has not included expenses incurred in 2014. Alliance Agreement ¶ 9(b).

[14] Plaintiffs are seeking reimbursement of costs from Defendant Fenkell in the concurrently-filed ERISA § 502(g) motion to the full extent recoverable.

**IX.     NO CLASS MEMBER HAS OBJECTED TO THE REQUESTED ATTORNEYS' FEES AND EXPENSES**

Lack of objection by well-informed members of the class can support the reasonableness of a fee petition.  *Ford*, 2012 WL 6562615, at *4 (citing *Armstrong v. Bd. of School Directors of City of Milwaukee*, 616 F.2d 305, 326 (7th Cir. 1980)); *see Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 959 (7th Cir. 2013) (citing lack of class objection as one reason to approve a high percentage fee award).  In accordance with the Court's April 9, 2014 Order, over 390 copies of the Class Notice were sent to the Class and Subclass.  To date, no Class Member has objected to the settlements or the requested for fees or reimbursement of expenses.  Barton Decl. ¶ 82.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to for an award of fees from the common fund and for approval of payment of attorneys' fees and costs by settling Defendants should be granted.

Dated:   June 13, 2014                    Respectfully submitted,

                                              /s/ R. Joseph Barton
                                              R. Joseph Barton
                                              **COHEN MILSTEIN SELLERS & TOLL PLLC**
                                              1100 New York Avenue, NW
                                              East Tower, Suite 500
                                              Washington, DC 20005-3934
                                              (202) 408-4600 Telephone
                                              (202) 408-4699 Facsimile
                                              jbarton@cohenmilstein.com

                                              Andrew W. Erlandson
                                              **HURLEY, BURISH & STANTON, S.C.**
                                              33 East Main Street, Suite 400
                                              Madison, WI 53703
                                              (608) 257-0945 Telephone
                                              (608) 257-5764 Facsimile
                                              aerlandson@hbslawfirm.com