# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WISCONSIN

CAROL CHESEMORE,  DANIEL
DONKLE, THOMAS GIECK, MARTIN
ROBBINS, and NANNETTE STOFLET, on
behalf of themselves, Individually, and on
Behalf of All Others Similarly Situated,

       Plaintiffs,

       v.

ALLIANCE HOLDINGS, INC., DAVID B.
FENKELL, KAREN FENKELL, A.H.I INC.,
AH TRANSITION CORP., PAMELA
KLUTE, JAMES MASTRANGELO,
STEPHEN  W. PAGELOW, and JEFFREY
A. SEEFELDT, ALPHA INVESTMENT
CONSULTING GROUP, LLC and JOHN
MICHAEL MAIER,

       Defendants,

and

TRACHTE BUILDING SYSTEMS, INC.
EMPLOYEE STOCK OWNERSHIP PLAN
and ALLIANCE HOLDINGS, INC.
EMPLOYEE STOCK OWNERSHIP PLAN
AND TRUST,

       Nominal Defendants.

**Civil Action No. 09-CV-00413-wmc**

Judge William M. Conley

## PLAINTIFFS' MOTION
## FOR FINAL APPROVAL OF CLASS SETTLEMENTS

# TABLE OF CONTENTS

Page

I.      PROCEDURAL BACKGROUND..................................................................... 2

II.     THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL. ................................. 3

      A.      The Proposed Settlements Are Fair, Reasonable, And Adequate.......................... 4

            1.      The Strength of Plaintiffs' Case Compared to the Amounts of the Settlements Supports the Approval of the Settlements.............................. 5

            2.      The Complexity, Length, and Expense of Continued Litigation Favors Settlement...................................................................... 9

            3.      The Absence of Opposition to the Settlements Supports Their Approval. ...................................................................... 10

            4.      The Settlements Are the Products of Good Faith, Arm's Length Negotiations. ...................................................................... 11

            5.      Experienced Class Counsel Strongly Endorse the Settlements. ............... 12

            6.      The Stage of the Proceedings And the Amount of Discovery Completed Support Approval of the Settlements. .................................. 12

      B.      The Notice Fairly Advises the Class and Subclass About the Terms of the Settlements.................................................................................... 13

III.    THE PROPOSED PLAN OF ALLOCATION SHOULD BE APPROVED................... 14

IV.     CONCLUSION.................................................................................... 16

# TABLE OF AUTHORITIES

Page

CASES

*Am. Int'l Group, Inc. v. ACE INA Holdings, Inc.*,
 Nos. 07-C-2898, 09-C-2026, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012) .........................5, 12

*Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*,
 616 F.2d 305 (7th Cir. 1980) .......................................................................................... passim

*Boos v. AT&T, Inc.*,
 704 F. Supp. 2d 600 (W.D. Tex. 2010).....................................................................................9

*Butler v. Am. Cable & Telephone LLC*,
 No. 09-cv-5336, 2011 WL 4729789 (N.D. Ill. Oct. 6, 2011) ................................................13

*Chesemore v. Alliance Holdings, Inc.*,
 284 F.R.D. 416 (W.D. Wis. 2012) ...........................................................................................9

*Chesemore v. Alliance Holdings, Inc.*,
 886 F. Supp. 2d 1007 (W.D. Wis. 2012) (hereinafter, "*Liability Op.*") ...................................6

*Chesemore v. Alliance Holdings, Inc.*,
 948 F. Supp. 2d 928 (W.D. Wis. 2013) (hereinafter, "*Remedies Op.*")...................................6

*Cohen v. Resolution Trust Corp.*,
 61 F.3d 725 (9th Cir. 1995), *vacated on other grounds*, 72 F.3d 686 (9th Cir. 1996) ...........15

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
 768 F.2d 884 (7th Cir. 1985) ............................................................................................3, 14

*Florin v. Nationsbank of Georgia, N.A.*,
 60 F.3d 1245 (7th Cir. 1995) ...................................................................................................9

*GE Capital Corp. v. Lease Resolution Corp.*,
 128 F.3d 1074 (7th Cir. 1997) .................................................................................................5

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*,
 212 F.R.D. 400 (E.D. Wis. 2002) ...........................................................................................11

*Holmes v. Continental Can Co.*,
 706 F.2d 1144 (11th Cir. 1983) .............................................................................................15

*In re Am. Bank Note Holographics, Inc.*,
 127 F. Supp. 2d 418 (S.D.N.Y. 2001)....................................................................................10

# TABLE OF AUTHORITIES

Page

*In re AT&T Mobility Wireless Data Services Sales Litig.,*
270 F.R.D. 330 (N.D. Ill. 2010)................................................................13

*In re General Motors Corp. Engine Interchange Litig.,*
594 F.2d 1106 (7th Cir. 1979) ...............................................................5

*In re Marsh ERISA Litig.,*
265 F.R.D. 128 (S.D.N.Y. 2010) ...........................................................9

*In re Mexico Money Transfer Litig.,*
164 F. Supp. 2d 1002 (N.D. Ill. 2000), *aff'd,* 267 F.3d 743 (7th Cir. 2001) ....................10, 12

*Isby v. Bayh,*
75 F.3d 1191 (7th Cir. 1996) ..............................................................3, 5, 12

*Mangone v. First USA Bank,*
206 F.R.D. 222 (S.D. Ill. 2001) ...........................................................11

*Mars Steel Corp. v. Cont'l Ill. Nat. Bank & Trust Co. of Chicago,*
834 F.2d 677 (7th Cir. 1987) ...............................................................5

*Matz v. Household Int'l Tax Reduction Inv. Plan,*
No. 96-C-1095, 2014 WL 2699944 (N.D. Ill. June 12, 2014).................9

*Summers v. UAL Corp. ESOP Comm.,*
No. 03-C-1537, 2005 WL 3159450 (N.D. Ill. Nov. 22, 2005) ...............14

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.,*
463 F.3d 646 (7th Cir. 2006) ..............................................................4, 5

*Tussey v. ABB, Inc.,*
746 F.3d 327 (8th Cir. 2014) ...............................................................7

*Williams v. Rohm & Haas Pension Plan,*
658 F.3d 629 (7th Cir. 2011) ...............................................................6

**STATUTES**

ERISA ...........................................................................................7, 9, 12

ERISA § 208 ................................................................................10

**OTHER AUTHORITIES**

4 Herbert B. Newberg and Alba Conte, *Newberg on Class Actions* § 11.41 (4th ed. 2002).........11

## TABLE OF AUTHORITIES

<u>Page</u>

Fed. R. Civ. P. 23(e)(1)................................................................................13

Fed. R. Civ. P. 23(e)(2)..................................................................................4

Plaintiffs Carol Chesemore, Daniel Donkle, Thomas Gieck, Martin Robbins, and Nannette Stoflet (collectively, "Plaintiffs"), on behalf of themselves and all members of the Class and Subclass certified under the Court's Opinion and Order dated September 22, 2011 and as amended pursuant to its Order dated March 6, 2014 ("the Class" and "the Subclass," respectively), respectfully submit this memorandum in support of their Motion for Final Approval of Class Settlements.  The proposed settlements at issue include the following: (a) the Class Settlement with Defendants Pamela Klute, James Mastrangelo, and Jeffrey A. Seefeldt (collectively, "the Trustee Defendants") and Defendant Stephen W. Pagelow;[1] (b) the Subclass and Class Settlement with Defendants Alliance Holdings, Inc., A.H.I., Inc., and AH Transition Corp. (collectively, "the Alliance Entities");[2] (c) a Partial Settlement with Defendants David B. Fenkell and Karen Fenkell (collectively, "the Fenkells") regarding Plaintiffs' Phantom Stock claims against them; (d) a Partial Settlement with David B. Fenkell regarding Plaintiffs' claims against his Alliance ESOP account;[3] and (e) the Class Settlement with Defendants Alpha Investment Consulting Group, LLP and John Michael Maier[4] (collectively, "the Alpha Defendants").  For each of the aforementioned proposed settlements (collectively, "the Settlements") of the above-captioned action ("the Action"), Plaintiffs filed with the Court a

---

[1] Plaintiffs filed with the Court on March 10, 2014 a formal settlement agreement with the Trustee Defendants and Defendant Pagelow.  *See* ECF No. 899.

[2] Class Counsel anticipates that formal settlement agreements with the Alliance Defendants will be filed shortly.

[3] Entering final agreements with the Fenkells is conditioned on them providing certain confirmatory discovery which has still not yet been provided.  Until such confirmatory discovery has been provided, no final agreement will be entered.  As such, Plaintiffs request for final approval is conditioned on a final settlement agreement with the Fenkells being signed and filed prior to the Final Approval Hearing.

[4] Class Counsel anticipates that formal settlement agreements with the Alpha Defendants will be filed shortly; however the Alpha Defendants settlement is conditioned on final approval of all the other settlements, including the Fenkell Defendants.

settlement term sheet that set forth the agreement in principle between Plaintiffs and the settling parties.  Plaintiffs now request that the Court grant final approval of the Settlements and approve the Proposed Plan of Allocation.

## I.    PROCEDURAL BACKGROUND

As the Court is familiar with this case after the Phase One Liability Trial and the Phase Two Trial on Remedies, Plaintiffs do not believe that a detailed description of the allegations or procedural history of the Action is necessary.  A summary of the material terms of the Settlements as well as the procedural background of the Action up to the filing of Plaintiffs' Motions for Preliminary Approval of Class Action Settlements can be found in those motions. *See* ECF No. 876 and ECF No. 910.

After the Court granted preliminary approval of the Settlements by Orders dated February 19, 2014 and April 9, 2014, pursuant to the former Order, the Trachte Building Systems, Inc. Employee Stock Ownership Plan ("Trachte ESOP") and the Alliance Holdings, Inc. Employee Stock Ownership Plan and Trust ("Alliance ESOP") provided, in electronic form, Class and Subclass member data to Class Counsel.  Declaration of R. Joseph Barton ("Barton Suppl. Decl.") ¶ 4.[5]  Pursuant to the April 9, 2014 Order, on April 21, 2014, by First-Class Mail, Gilardi & Co. LLP, the settlement administrator retained by Class Counsel, sent the Notice and Questionnaire approved by the Court to three hundred and ninety (390) Class and Subclass members.  Declaration of Nashira Washington Regarding Compliance with the Class Notice Procedures ("Washington Decl.") (ECF No. 917) ¶¶ 2-3.  Gilardi also established a toll-free number on March 27, 2014 for potential inquiries of Class and Subclass members, and, on April

_____

[5] References to "Barton Decl." are to the Declaration of R. Joseph Barton filed with Class Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses.  *See* ECF No. 936.  References to "Barton Suppl. Decl." are to the Declaration of R. Joseph Barton filed with this motion.

21, 2014, a settlement website where Class and Subclass members could easily access documents and updates related to the Settlements and the Action, which included, *inter alia*, the Notice, the Questionnaire, settlement term sheets, the Proposed Plan of Allocation, as well as the Third Amended Complaint and various Orders of the Court. *Id*. ¶¶ 11-12.  Settlement-related documents and updates were also posted on the firm website of Lead Counsel of the Class and Subclass, Cohen Milstein Sellers & Toll, LLP.  Barton Suppl. Decl. ¶ 5.  In addition, Class Counsel held two town hall meetings – lasting two hours each – at Trachte headquarters in Sun Prairie in Wisconsin on June 16, 2014 to address any questions participants and designated beneficiaries of the Trachte ESOP might have regarding the Settlements. *Id.* ¶ 6.  Those unable to attend in person were provided the opportunity to participate electronically or by telephone. *Id.* ¶ 6.  After the mailing of the Notice and Questionnaire, Class Counsel, either in person, by telephone, or electronically, received and responded to a number of inquiries from Class and Subclass members about the Settlements and/or requests for additional information.  Declaration of Settlement Administrator ¶¶ 3-4; Declaration of Alina Lindblom ¶ 7.  To the knowledge of Class Counsel, no member of the Class or Subclass filed objections to any aspect of the Settlements.  Barton Suppl. Decl. ¶ 7.

## II.      THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL.

Public policy strongly favors settlement as a method for settling disputes, particularly class actions. *Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 313 (7th Cir. 1980) (noting an "overriding public interest in favor of settlement" in "the class action context"); *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985) (recognizing "the general policy favoring voluntary settlements of class action disputes"); *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation").  The Seventh Circuit describes the approval of a class action settlement proposal as

"a two-step process" that consists of (a) "a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval'" and (b), after class members have been provided notification, "a fairness hearing" that offers them an opportunity to be heard.  *See Armstrong*, 616 F.2d at 314 (citation omitted).  On February 19, 2014, the Court granted preliminary approval of the class settlements with the Trachte Defendants and the Alliance Defendants, and the partial settlement with the Fenkells regarding Plaintiffs' Phantom Stock claims against them.  ECF No. 889.  On April 9, 2014, the Court granted preliminary approval of the class settlement with the Alpha Defendants and the partial settlement with David B. Fenkell regarding Plaintiffs' claims against his Alliance ESOP account, and approved the revised Notice and Questionnaire, which added those two recent settlements.  ECF No. 913.  As stated above, Class Counsel complied with the settlement procedure and timeline set forth in the Court's April 9, 2014 Order, by sending the Notice and Questionnaire to three hundred and ninety (390) Class and Subclass members by the Court-ordered deadline of April 21, 2014.  Pursuant to the same Order, the July 3, 2014 deadline for filing objections to the Settlements has now passed, and Class Counsel have received no objections.  The Settlements are ready for final approval.

    A.    <u>The Proposed Settlements Are Fair, Reasonable, and Adequate.</u>

A district court may approve a proposed class settlement only if it determines that the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *Synfuel Techs., Inc. v. DHL Express (USA), Inc*., 463 F.3d 646, 652 (7th Cir. 2006).  The Seventh Circuit has identified the following factors that the court should consider in making such determination: (1) the strength of the plaintiffs' case measured against the terms of the settlement, including the amounts of the defendants' settlement offers; (2) the likely complexity, length, and expense of continued litigation; (3) the amount of opposition to the settlements among affected parties; (4)

4

the presence of collusion in attaining a settlement; (5) the opinion of competent counsel; and (6) the stage of the proceedings and the amount of discovery completed at the time of settlement. *See, e.g., Isby*, 75 F.3d at 1199 (citing *Hiram Walker*, 768 F.2d at 889); *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997); *Synfuel*, 463 F.3d at 653 (quoting *Isby*). In this case, the totality of these factors favors a determination that the Settlements are fair, reasonable, and adequate.

### 1.   The Strength of Plaintiffs' Case Compared to the Amounts of the Settlements Supports the Approval of the Settlements.

"The most important factor relevant to the fairness of a class action settlement" is "the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel*, 463 F.3d at 653 (internal quotations omitted); *Isby*, 75 F.3d at 1199; *Am. Int'l Group, Inc. v. ACE INA Holdings, Inc.*, Nos. 07-C-2898, 09-C-2026, 2012 WL 651727, at *4-6 (N.D. Ill. Feb. 28, 2012) (citing *Synfuel*). The inquiry concerning the fairness of a proposed settlement in a class action requires careful inspection. *Mars Steel Corp. v. Cont'l Ill. Nat. Bank & Trust Co. of Chicago*, 834 F.2d 677, 682 (7th Cir. 1987). The Seventh Circuit has cautioned that "[a] fairness hearing is not a trial on the merits," *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1132 (7th Cir. 1979); and "reviewing a settlement proposal" must not be mistaken for "ordering a remedy in a litigated case." *Armstrong*, 616 F.2d at 314-15; *Isby*, 75 F.3d at 1197. The Seventh Circuit has advised district courts as follows:

> [b]ecause settlement of a class action, like settlement of any litigation, is basically a bargained exchange between the litigants, the judiciary's role is properly limited to the minimum necessary to protect the interests of the class and the public. Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel.

*Armstrong*, 616 F.2d at 315. The Court should not focus on individual components of the settlement, but rather view the settlement in its entirety. *Isby*, 75 F.3d at 1199.

In this case, the Court's determinations in the Phase One Liability Trial, issued on July 24, 2012, and the Phase Two Remedies Trial, issued on June 4, 2013, probably provide the most objective measures available of the strength of Plaintiffs' case and the relief that they are likely to attain, on behalf of themselves and members of the Class and Subclass, in continued litigation. In its July 2012 Order on liability, the Court found the Trustee Defendants, the Alliance Defendants, and Defendant David B. Fenkell liable for breaches of their fiduciary duties in connection with the 2007 Transaction, but dismissed all claims against the Alpha Defendants. *Chesemore v. Alliance Holdings, Inc.*, 886 F. Supp. 2d 1007, 1013-14 (W.D. Wis. 2012) (hereinafter, "*Liability Op.*").   In its June 2013 Order on remedies, which ordered the Trustee Defendants to restore $6.47 million (plus prejudgment interest) to the Trachte ESOP, the Alliance Defendants to reinstate Trachte ESOP participants in the Alliance ESOP and restore $7.8 million (plus prejudgment interest) to the plan accounts, and Defendant David B. Fenkell to restore to Trachte Building Systems, Inc. ("Trachte") the $2.8 million he received in Phantom Stock proceeds as part of the 2007 Transaction, the Court awarded Plaintiffs and the Class and Subclass a total of $17.2 million (plus prejudgment interest).  *Chesemore v. Alliance Holdings, Inc.*, 948 F. Supp. 2d 928, 950 (W.D. Wis. 2013) (hereinafter, "*Remedies Op.*").  The Court also ordered Defendants Alliance Holdings, Inc. and David B. Fenkell to indemnify the Trustee Defendants for any relief they are required to pay.  *See id*.

While Plaintiffs have already prevailed on their claims against all Defendants except Karen Fenkell, there was no guarantee that the Court would have reached a favorable finding against Karen Fenkell and Plaintiffs also faced the risks of appeal.  *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 634-35 (7th Cir. 2011) (finding that district court properly took into account the prospect of appellate review in evaluating the risk and cost of the litigation

6

for purposes of approving the settlement).  Indeed, a roughly contemporaneous ERISA fiduciary breach case in which the district court entered judgment of more than $30 million dollars illustrates this risk on appeal as the Eighth Circuit recently reversed a significant portion of the district court's findings of liability.  *Tussey v. ABB, Inc.*, 746 F.3d 327, 332 & 341 (8th Cir. 2014).

Despite the favorable findings of the Court on Plaintiffs' claims against some of the Defendants, the high risks of uncollectability and significant depletion of available insurance coverage for Defendants weigh in favor of the Settlements at this time.  For example, through discovery, Class Counsel became aware that the total insurance available for the Trustee Defendants and Defendant Pagelow to satisfy the claims against them was $7 million, of which amount no more than $3.5 million remains.  Class Action Settlement Agreement Between Plaintiffs and the Trustee Defendants (ECF No. 899) ("Settlement with Trustee Defs.") § IV(2). The Trustee Defendants also represented that, in the aggregate, their personal non-exempt assets do not exceed $900,000.  *Id*. § IV(1)(a).  Furthermore, Class Counsel became aware through discovery that the total insurance available for the Alpha Defendants was $2 million and that the policy at issue contains multiple exclusions to coverage.  Settlement Term Sheet Between Plaintiffs and the Alpha Defendants (ECF No. 907) ("Settlement with Alpha Defs.") at 2.  Thus, even if the Court's liability decision regarding Plaintiffs' claims against the Alpha Defendants was reversed on appeal, it is unlikely, in light of information about their finances provided to Class Counsel, that the Alpha Defendants would be able to pay even a fraction of any award entered against them.

In light of these risks, and as a result of the Settlements attained with Defendants, Plaintiffs have secured settlements amounting to a combined total of approximately $12.575

million, which include (a) from the Class Settlement with the Trustee Defendants and Defendant Pagelow, a payment of $3.25 million to be distributed to Class Members; (b) from the Partial Settlement with the Fenkells regarding the Phantom Stock proceeds, a payment of $1.8 million to be evenly divided between Trachte and the Subclass; (c) from the Subclass Settlement with the Alliance Defendants, a total of $7 million in both Alliance and AH Transition stock and cash to be distributed to Subclass Members; (d) from the Class Settlement with the Alliance Defendants, a payment of $150,000 for the benefit of the Class; and (e) from the partial settlement with Defendant David Fenkell regarding his Alliance ESOP account, a cash payment of at least $375,000.  The $12.575 million constitutes approximately 72% of the total amount awarded (before prejudgment interest) pursuant to the Court's June 2013 Order on remedies.

The non-cash components of the Settlements here are significant and should be considered even if there is no precise monetary value assigned.  *See Laguna v. Coverall N. Am.*, Inc., No. 12-55479, 2014 WL 2465049, at *4 (9th Cir. Jun. 3, 2014) (finding a district court class not required to assign a monetary value to the non-monetary terms of settlement).  First, the Settlements require the assignment of Pagelow's Sellers' Note with a face value of $1.3 million (and accumulated interest of $1.42 million) and the Alliance Entities' Sellers' Note with a face value of $4.3 million (and accumulate interested of $4.85 million).  Declaration of Jeff Burbach (ECF No. 929) ("Burbach Decl.") ¶¶ 3-4.  Although these Notes likely have little present fair market value, they are more valuable in the possession of the Trachte ESOP than they are to a third-party.  *Id.* ¶¶ 5-6.  Pagelow also released his claim to have his Alliance ESOP account restored, which was worth in excess of $1 million at the time of the 2007 Transaction. Settlement with Trustee Defs. § XI(2).  Finally, the Settlements require the Alliance Entities to

bear all expenses related to the Notice and Administration of the Settlement.  Settlement Term

Sheet with Alliance Defendants (ECF No. 874) ("Settlement with Alliance Defs.") ¶ 1(c).

Finally, although no direct economic benefit results from the Class Settlement with the

Alpha Defendants, Plaintiffs have obtained agreement from the Alpha Defendants not to seek

attorneys' fees or costs from Plaintiffs, the Class or the Trachte or Alliance ESOPs, thereby

protecting the economic interests of the Class and Subclass in the ESOPs and the value of their

sponsors' stock.  *Cf. Matz v. Household Int'l Tax Reduction Inv. Plan*, No. 96-C-1095, 2014 WL

2699944, at *1 (N.D. Ill. June 12, 2014) (awarding the defendant plan in an ERISA class action,

in favor of which the court granted summary judgment, litigation costs against the plaintiffs).

In light of the strength of Plaintiffs' case as well as the high risks of uncollectability, the

total amount from the Settlements represents an excellent result that weighs heavily in favor of

approving the Settlements.

### 2.    The Complexity, Length, and Expense of Continued Litigation Favor Settlement.

"Many courts have recognized the complexity of ERISA breach of fiduciary duty

company stock claims."  *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138 (S.D.N.Y. 2010); *Boos*

*v. AT&T, Inc.*, 704 F. Supp. 2d 600, 612 n.13 (W.D. Tex. 2010) (observing that ERISA is "an

area repeatedly referred to as complex and difficult.").  In this complex area, the Seventh Circuit

has observed that "very few areas of the law are as unsettled and complex as ESOP valuation."

*Florin v. Nationsbank of Georgia, N.A.*, 60 F.3d 1245, 1248 (7th Cir. 1995) (citing Robert J.

Gross, *ESOP Valuation Issues*, 3 J. of Employee Ownership L. & Fin. 53 (Winter 1991)).  This

case was no exception.  *Chesemore v. Alliance Holdings, Inc.*, 284 F.R.D. 416, 418 (W.D. Wis.

2012) (describing this as a "complicated case").  Plaintiffs' claims raised numerous difficult legal

and factual issues under ERISA and required substantial fact and expert discovery, particularly in

9

light of the complexity of the 2007 Transaction.  Barton Decl. ¶¶ 34-46.  The lawsuit involved

extensive briefing on a variety of motions, which included motions to dismiss, a motion for class

certification, motions for summary judgment, myriad motions relating to discovery disputes, and

motions in limine, as well as two trials, multiple rounds of mediation, and extensive settlement

negotiations.  *Id.* ¶¶ 30-33, 47-67.  Although the Court has issued its determinations on liability

and relief, the litigation and associated costs and expenses are far from over.  Absent the

Settlements, an appeal by the Alliance Defendants, the Trustee Defendants and Defendant

Fenkell would likely follow, as would a trial on the claims against Defendant Karen Fenkell.  *See*

Barton Decl. ¶ 56.  The Alpha Defendants would likely seek the costs incurred in the litigation,

which were likely in the tens of thousands, and, if awarded, would likely reduce the amounts

from the settlements with the other Defendants.  Settlement with Alpha Defs. at 1.  Similarly,

Plaintiffs would appeal the adverse rulings as to Defendants Pagelow and Alpha (and cross-

appeal on the ERISA § 208 claim).  Thus, each subsequent step in the continued litigation of this

matter would likely require Plaintiffs to incur further expenses without the guarantee of a larger

recovery – or any recovery – particularly given the diminishing ability of some Defendants to

pay.  The complexity, length, and expense of continued litigation therefore favors approval of the

Settlements.

> 3.    The Absence of Opposition to the Settlements Supports Their Approval.

The complete absence of objections to a settlement lends strong support to the fairness,

reasonableness, and adequacy of the settlement.  *See In re Mexico Money Transfer Litig.*, 164

F. Supp. 2d 1002, 1021 (N.D. Ill. 2000) (holding that the fact that more than "99.9% of class

members have neither opted out nor filed objections . . . is strong circumstantial evidence in

favor of the settlement"), *aff'd*, 267 F.3d 743 (7th Cir. 2001); *In re Am. Bank Note Holographics,*

*Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) (stating that "the lack of objections may well

evidence the fairness of the Settlement").  Pursuant to the Court's April 9, 2014 Order, on April

21, 2014, Gilardi sent by First-Class Mail the Notice and Questionnaire approved by the Court to

three hundred and ninety (390) Class and Subclass members.  Washington Decl. ¶¶ 2-3.  The

deadline for Class and Subclass members to object to the Settlements was July 3, 2014.  To date,

Class Counsel has received no objections to the Settlements.  Barton Suppl. Decl. ¶ 7.

> 4.    The Settlements Are the Products of Good Faith, Arm's Length
>        Negotiations.

"There is usually an initial presumption of fairness when a proposed class settlement,

which was negotiated at arm's length by counsel for the class, is presented for court approval."

*See* 4 Herbert B. Newberg and Alba Conte, *Newberg on Class Actions* § 11.41 (4th ed. 2002);

*see also Mangone v. First USA Bank*, 206 F.R.D. 222, 225-26 (S.D. Ill. 2001) ("[A] settlement

proposal arrived at after arms-length negotiations by fully informed, experienced and competent

counsel may be properly presumed to be fair and adequate."); *Great Neck Capital Appreciation

Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 410 (E.D. Wis. 2002) ("A

strong presumption of fairness attaches to a settlement agreement when it is the result of this type

of negotiation").  The Settlements resulted after extensive, arm's length negotiations that were

conducted only after rigorous discovery regarding the merits of Plaintiffs' claims and hard-

fought and contentious litigation through motions to dismiss, class certification, summary

judgment, motions to compel discovery, and trials on liability and relief.  Barton Decl. ¶¶ 35-46,

51-63.  Class Counsel had conducted arm's length negotiations with counsel for different sets of

Defendants over the course of nearly two years before attaining the Settlements.  *Id*. ¶ 51.

Plaintiffs reached the Class Settlement with the Trustee Defendants and Defendant Pagelow

through a mediation facilitated by Magistrate Judge Oppeneer.  *Id*. ¶ 52.  Plaintiffs achieved the

Class Settlement with the Alliance Defendants through a mediation facilitated by the retired

Honorable Judge Wayne Anderson. *Id.* ¶ 55. In another mediation facilitated by Judge Anderson, Plaintiffs and Defendant David B. Fenkell reached an agreement regarding his Alliance ESOP account. *Id.* ¶ 63. There is no evidence of collusion in the attainment of any of the Settlements.

5.      Experienced Class Counsel Strongly Endorse the Settlements.

The opinion of the attorneys who engaged in the negotiations of the settlement at issue and litigated the action is entitled to significant weight. *Isby*, 75 F.3d at 1200 (stating that "the district court was entitled to give consideration to the opinion of competent counsel that the settlement was fair, reasonable and adequate"); *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1020 (stating that "[t]he court places significant weight on the unanimously strong endorsement of these settlements by Plaintiffs' well-respected attorneys"). Here, Lead Class Counsel, who have many years of experience in litigating and serving as lead or co-lead counsel in numerous ERISA class actions, including ESOP-related cases, and who have negotiated numerous ERISA class-action settlements that have been approved by federal courts throughout the United States, have determined that the Settlements are fair, reasonable, and adequate. *See* Barton Decl. ¶¶ 4, 9-10; Barton Suppl. Decl. ¶ 3.

6.      The Stage of the Proceedings and the Amount of Discovery Completed
         Support Approval of the Settlements.

"The stage of the proceedings at which settlement is reached is important because it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Armstrong*, 616 F.2d at 325; *see also Am. Int'l Group, Inc.*, 2012 WL 651727, at *8 (quoting *Armstrong*). Here, Class Counsel have litigated the Action over the course of five years. Plaintiffs reached the Settlements after Class Counsel had reviewed and analyzed over 430,000 pages of documents, propounded and responded to numerous sets of interrogatories,

12

document requests, and requests for admission, taken and defended numerous depositions, and submitted and analyzed expert reports.  Barton Decl. ¶¶ 35-46.  And they reached the Settlements only after Class Counsel had briefed oppositions to Defendants' motions to dismiss, motion for class certification, motions for summary judgment, and numerous discovery motions, engaged in a seven-day Phase One Liability Trial and a four-day Phase Two Remedies Trial, and received a favorable determination on liability against the Trustee Defendants, the Alliance Defendants, and Defendant David B. Fenkell.  It was at an advanced stage of litigation when Class Counsel were sufficiently informed to "evaluate the merits of plaintiffs' claims" that Plaintiffs reached the Settlements.  *Armstrong*, 616 F.2d at 325.  Thus, just as all the other factors discussed above do, the stage of the proceedings and the amount of discovery completed in this case strongly favor approval of the Settlements.

> B.    The Notice Fairly Advises the Class and Subclass About the Terms of the Settlements.

Once a district court grants preliminary approval of a proposed class settlement, it "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).  Although the precise form of notice is discretionary, an adequate notice generally informs the class members of "the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the hearing."  *In re AT&T Mobility Wireless Data Services Sales Litig.*, 270 F.R.D. 330, 351 (N.D. Ill. 2010) (citing 3 *Newberg on Class Actions* § 8.32 (4th ed. 2010)); *Butler v. Am. Cable & Telephone LLC*, No. 09-cv-5336, 2011 WL 4729789, at *13 (N.D. Ill. Oct. 6, 2011) (quoting *In re AT&T*).  Here, the Notice sent to the Class and Subclass members, which the Court previously approved in its preliminary approval of the Settlements, satisfies the requirement of Rule 23(e)(1) in that it (a) informs the Class and

Subclass members of the nature of the Action and the general terms of each of the Settlements; (b) provides the addresses of the settlement website established by the settlement administrator and of the firm website of Cohen Milstein Sellers & Toll, LLP – where Class and Subclass members can easily access documents related to the Settlements – as well as the street address of the United States District Court for the Western District of Wisconsin – where Class and Subclass members may obtain additional information about the Action; and (c) states the date, time, and place of the fairness hearing where Class and Subclass members can appear and be heard.  Plaintiffs thus respectfully request that the Court confirm the adequacy of the Notice to Class and Subclass members.  *See* Order (ECF No. 913) at 4 (finding that the Notice "adequately put[s] class members on notice of the proposed settlements").

## III.    THE PROPOSED PLAN OF ALLOCATION SHOULD BE APPROVED.

As with the approval of a class settlement, courts must determine that the proposed plan of allocation of settlement proceeds is fair, reasonable, and adequate.  *See Hiram Walker*, 768 F.2d at 890-91; *Summers v. UAL Corp. ESOP Comm.*, No. 03-C-1537, 2005 WL 3159450, at *2 (N.D. Ill. Nov. 22, 2005) (citing *Hiram Walker*).  The objective of a plan of allocation is to provide an equitable basis upon which to distribute the settlement proceeds among eligible class members.  In *Summers*, which involved breaches of fiduciary duties in an ERISA-governed ESOP, the district court found that the plan of allocation of settlement funds distributed on a *pro-rata* basis, based on the number of shares the class member held at a date closest to the beginning of the class period, was reasonable.  *See* 2005 WL 3159450, at *2.  Here, as in *Summers*, the Proposed Plan of Allocation submitted to the Court, which describes the manner in which the cash, stock and notes from the Settlements will be distributed, is primarily based on the *pro-rata* amounts in the Class members' Alliance ESOP accounts at the time of the 2007

14

Transaction or in their Trachte ESOP accounts presently.  *See* Plan of Allocation (ECF No. 910-1).

A plan of allocation in "[a] class action settlement need not necessarily treat all class members equally."  *Cohen v. Resolution Trust Corp.*, 61 F.3d 725, 728 (9th Cir. 1995), *vacated on other grounds*, 72 F.3d 686 (9th Cir. 1996).  While there is a heightened concern when the terms of the settlement require "differential treatment of the named plaintiffs" than the unnamed class members, "there is less concern [where] the named plaintiffs are not receiving preferential treatment *vis a vis* the unnamed plaintiffs."  *Id*. (contrasting *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1148 (11th Cir. 1983) (where named plaintiffs were to receive half of the settlement fund)).  Even when the named plaintiff receives differential treatment from the rest of the class, such a class settlement is proper and may be approved if the differential treatment is "rationally based on legitimate considerations."  *Id*.  And, in a case in which a subgroup of the class is treated differently, the court must ensure that the settlement is "fair, reasonable and adequate to *all concerned*."  *Id* (emphasis in original).  Where the disparate treatment is rationally based on legitimate considerations and there was no indication of any collusion, the settlement may be approved.  *See id.* at 727-28 (approving such a settlement).

Here, with respect to the settlement proceeds from the Class Settlement with the Alliance Defendants, the Settlements and Proposed Plan of Allocation offer greater liquidity for some Class members than others.  This is not a situation in which Plaintiffs or some Class members receive differential treatment from the rest of the class.  Instead the greater liquidity afforded to some Class members rather than to others under the Settlements and the Proposed Plan of Allocation is attributed to legitimate considerations – such as differences in circumstances concerning normal retirement age, becoming disabled, or death, on the one hand, or, on the

other, diversification rights triggered by having reached fifty-five years of age or older – which make these Class members in greater need of a cash distribution of their retirements than others. Therefore, the Court should find that the Proposed Plan of Allocation is fair, reasonable, and adequate, and approve it.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the Settlements and approve the Proposed Plan of Allocation.


Dated:  July 10, 2014                          Respectfully submitted,


                                               /s/ R. Joseph Barton
                                               R. Joseph Barton
                                               **COHEN MILSTEIN SELLERS
                                               & TOLL, PLLC**
                                               1100 New York Ave. NW
                                               West Tower, Suite 500
                                               Washington, DC 20005-3934
                                               (202) 408-4600 Telephone
                                               (202) 408-4699 Facsimile
                                               jbarton@cohenmilstein.com

                                               Andrew W. Erlandson
                                               **HURLEY, BURISH & STANTON, S.C.**
                                               33 East Main Street, Suite 400
                                               Madison, WI 53703
                                               (608) 257-0945 Telephone
                                               (608) 257-5764 Facsimile
                                               aerlandson@hbslawfirm.com

                                               *Counsel for Plaintiffs and the Class*

16