# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

CAROL CHESEMORE,  DANIEL DONKLE,
THOMAS GIECK, MARTIN ROBBINS, and
NANNETTE STOFLET, on behalf of
themselves, Individually, and on Behalf of All
Others Similarly Situated,

     Plaintiffs,

     v.

ALLIANCE HOLDINGS, INC., DAVID B.
FENKELL, KAREN FENKELL, A.H.I INC.,
AH TRANSITION CORP., PAMELA
KLUTE, JAMES MASTRANGELO,
STEPHEN  W. PAGELOW, and JEFFREY A.
SEEFELDT, ALPHA INVESTMENT
CONSULTING GROUP, LLC and JOHN
MICHAEL MAIER,

     Defendants,

and

TRACHTE BUILDING SYSTEMS, INC.
EMPLOYEE STOCK OWNERSHIP PLAN
and ALLIANCE HOLDINGS, INC.
EMPLOYEE STOCK OWNERSHIP PLAN
AND TRUST,

Nominal Defendants.

Judge William M. Conley

Magistrate Judge Stephen L. Crocker

Case No. 09-CV-00413

**CLASS ACTION SETTLEMENT
AGREEMENT BETWEEN PLAINTIFFS,
THE ALLIANCE ENTITIES, AND THE
ALLIANCE ESOP**

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................ 1

II.    RECITALS ......................................................................................... 1

III.   DEFINITIONS .................................................................................... 8

IV.    REPRESENTATIONS & CONDITIONS OF THE SETTLEMENT ............................ 12

V.     SETTLEMENT CLASS ........................................................................ 16

VI.    CLASS NOTICE ................................................................................ 17

VII.   SETTLEMENT PAYMENTS ................................................................. 18

VIII.  DISTRIBUTION OF THE SETTLEMENT FUNDS ..................................... 21

IX.    VALUATION OF THE ACCOUNTS OF THE SUBCLASS ........................... 26

X.     DISTRIBUTIONS FROM THE ALLIANCE ESOP ..................................... 31

XI.    ATTORNEYS' FEES, EXPENSES & SERVICE AWARD ............................ 41

XII.   APPROVAL OF THE SETTLEMENT ..................................................... 44

XIII.  SETTLEMENT ADMINISTRATION ....................................................... 45

XIV.   ASSIGNMENT OF CLAIMS ................................................................ 48

XV.    ISSUANCE OF NOTICE UNDER THE CLASS ACTION FAIRNESS ACT ....... 54

XVI.   EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION .............. 55

XVII.  MISCELLANEOUS PROVISIONS ........................................................ 56

1902007.1

## I.   INTRODUCTION

Subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, this Class Action Settlement Agreement ("Settlement Agreement") is made and entered into by, between and among (1) Plaintiffs Carol Chesemore, Daniel Donkle, Thomas Gieck, Martin Robbins and Nannette Stoflet (collectively "Plaintiffs"), on behalf of themselves, individually, and on behalf of the certified Class and Subclass, (2) Defendants Alliance Holdings, Inc. ("Alliance"), A.H.I., Inc. ("A.H.I.") and A.H. Transition Corporation ("AH Transition") (collectively, the "Alliance Entities"), and (3) nominal Defendant Alliance Holdings, Inc. Employee Stock Ownership Plan ("Alliance ESOP"), to settle Claims against the Alliance Entities and the Alliance ESOP and only the Alliance Entities and the Alliance ESOP, in *Chesemore et al. v. Alliance Holdings, Inc. et al.,* No. 09-cv-413 (W.D. Wis.) on, and subject to, the terms and conditions below.

## II.   RECITALS

WHEREAS, on June 30, 2009, Plaintiffs Carol Chesemore, Daniel Donkle, Thomas Gieck, and Martin Robbins filed a Class Action Complaint in the United States District Court for the Western District of Wisconsin on behalf of themselves and a class of participants and beneficiaries in the Trachte Building Systems, Inc. Employee Stock Ownership Plan ("Trachte ESOP"), asserting claims for relief under the Employee Retirement Income Security Act of 1974 ("ERISA") for alleged violations in connection with the 2007 eleven (11) step sale of Trachte Building Systems, Inc. ("Trachte") to the Trachte ESOP ("the 2007 Transaction");

WHEREAS, Defendants Jeffrey Seefeldt, James Mastrangelo and Pamela Klute (collectively, the "Trustee Defendants") and Stephen W. Pagelow ("Pagelow"),

1

respectively, filed Motions to Dismiss Plaintiffs' Class Action Complaint on August 31, 2009;

WHEREAS, the Alliance Entities and Defendant David B. Fenkell ("David Fenkell") filed a Motion to Dismiss Plaintiffs' Class Action Complaint on October 5, 2009;

WHEREAS, on January 25, 2010, Plaintiffs Carol Chesemore, Daniel Donkle, Thomas Gieck, Martin Robbins, and Nannette Stoflet filed an Amended Class Action Complaint for alleged violations of ERISA, asserting claims on behalf of themselves and a class of participants and beneficiaries in the Trachte ESOP;

WHEREAS, on March 1, 2010, the Alliance Entities, Alliance ESOP and David Fenkell, the Trustee Defendants and Pagelow, respectively, filed Motions to Dismiss Plaintiffs' Amended Class Action Complaint;

WHEREAS, on February 17, 2011, the Court granted, in part, the Motion to Dismiss of the Alliance Entities, Alliance ESOP and David Fenkell, dismissing Defendant A.H.I. and two of Plaintiffs' three theories of liability in Count I against Alliance; the Court denied Defendants' Motions to Dismiss in all other respects;

WHEREAS, Plaintiffs filed a Motion for Class Certification on March 17, 2011;

WHEREAS, Plaintiffs filed a Second Amended Class Action Complaint for alleged violations of ERISA, asserting claims on behalf of themselves and a class of participants and beneficiaries in the Trachte ESOP on May 27, 2011;

WHEREAS, on May 27, 2011, the Court ordered bifurcated trials on liability and equitable relief;

2

WHEREAS, on June 27, 2011, all Defendants (except nominal Defendant Trachte ESOP) filed Motions for Summary Judgment and Plaintiffs filed a Motion for Partial Summary Judgment;

WHEREAS, on September 22, 2011, the Court granted Plaintiffs' Motion for Class Certification, certified a Class and Subclass, appointed Plaintiffs as representatives of the Class and the Subclass, and appointed the law firm of Cohen, Milstein, Sellers & Toll, PLLC as Lead Class Counsel and Hurley, Burish & Stanton, S.C. as Liaison Class Counsel;

WHEREAS, on October 6, 2011, the Court held an oral argument on the Parties' cross-Motions for Summary Judgment, and at that hearing, among other things, orally granted Pagelow's Motion for Summary Judgment, denied the Motions for Summary Judgment of the Alpha Investment Consulting Group, LLC and John Maier (jointly the "Alpha Defendants") and the Trustee Defendants, and granted in part and denied in part both the Alliance Entities' and Alliance ESOP's Motion for Summary Judgment, as well as portions of Plaintiffs' Motion for Partial Summary Judgment;

WHEREAS, the Court held the Phase One Liability Trial from October 11, 2011 through October 19, 2011;

WHEREAS, on March 28, 2012, the Court memorialized a number of rulings made from the bench on October 6, 2011, including: (1) granting the Alliance Entities' and Alliance ESOP's Motion for Summary Judgment as to Plaintiffs' claims in Count I (ERISA § 208) and Count II (ERISA § 404), insofar as that claim was predicated on ERISA § 208, of the Amended Complaint, reserving ruling as to equitable remedies, and denying the Alliance Entities' Motion for Summary Judgment in all other respects; (2)

3

granting Plaintiffs' Motion for Summary Judgment in part and finding that the Alpha Defendants were fiduciaries with respect to the Trachte ESOP; (3) granting Pagelow's Motion for Summary Judgment on all counts; and (4) denying the Alpha Defendants' and the Trustee Defendants' Motions for Summary Judgment;

WHEREAS, on July 24, 2012, the Court issued its Opinion and Order on the Phase One Liability Trial, holding that the Alliance Entities and the Trustee Defendants breached their fiduciary duties in connection with the 2007 Transaction, and that, accordingly, the Plaintiffs may proceed to the Phase Two Relief Trial against these Defendants, but dismissing all claims against the Alpha Defendants;

WHEREAS, the Court issued its Order granting Plaintiffs' Motion to Amend their Complaint to add Karen Fenkell as a Defendant and to assert a cause of action that Karen Fenkell is liable as a gratuitous transferee on July 25, 2012;

WHEREAS, the Court held the Phase Two Relief Trial from July 25, 2012 through July 30, 2012;

WHEREAS, the Settling Parties engaged in mediation before Magistrate Judge Peter A. Oppeneer on September 28, 2012, but did not reach a final settlement;

WHEREAS, Plaintiffs, on behalf of themselves and the Class, have executed a Settlement in Principle with the Trustee Defendants and Pagelow (jointly the "Trachte Defendants") which, among other things, requires the Trachte Defendants to pay $3.25 million to settle the Claims by the Class and includes an assignment of the Trachte Defendants' Claims against any other Defendant for "contribution, indemnification or otherwise in the 2007 Transaction;"

4

WHEREAS, on June 4, 2013, the Court issued its Opinion and Order on the Phase Two Relief Trial (the "June 4 Order"), which, among other things, ordered: (1) the Alliance Entities and David Fenkell "jointly and severally to restore to the Alliance ESOP $7,803,543 plus prejudgment interest, which shall be allocated to the accounts of the members of the subclass in proportion to their holdings in the Alliance ESOP as of August 29, 2007, with exclusion of the [Trustee Defendants]," (2) David Fenkell to "restore to Trachte Building Systems Inc., the  $2,896,000 he received as part of [the 2007 Transaction], if Trachte will agree to restore Fenkell's phantom stock plan," (3) the Trustee Defendants to "pay to the Trachte ESOP $6,473,856.82 plus prejudgment interest which shall be allocated to the class members' accounts according to their current shares as of the date of this judgment, with the exclusion of the [Trustee Defendants]", and (4) the Alliance Entities and David Fenkell to "indemnify [the Trustee Defendants] for any compensatory relief they are required to pay;"

WHEREAS, Nominal Defendant Alliance ESOP filed a Motion for Clarification of the June 4 Order on July 1, 2013;

WHEREAS, in its October 16, 2013 Order, the Court indicated it intended to direct the clerk of court to enter judgment as follows:

1.  Defendants [Pagelow and the Alpha Defendants] are dsmissed with prejudice.

2.  Defendants Alliance Holdings, Inc., David B. Fenkell, A.H.I., Inc. and AH Transition Corporation are jointly and severally liable to restore to the Alliance ESOP $7,803,543 plus prejudgment interest, which shall in turn be distributed in cash according to the accounts of the members of the subclass in proportion to their holdings in the Alliance ESOP as of August 29, 2007, with the exclusion of [the Trustee] Defendants, unless any member of the class should elect to receive their pro rata share in stock in lieu of cash, in which case the stock allocation shall be made by an independent fiduciary as set forth above.

3.    Defendant Fenkell shall restore to Trachte Building Systems, Inc. the $2,896,000 received in phantom stock proceeds as part of the August 29, 2007 Transaction, provided Trachte restores Fenkell's phantom stock plan in return.

4.    [The Trustee Defendants] shall pay to the Trachte ESOP $6,473,856.82 plus prejudgment interest, which shall be allocated to the class members' accounts according to their current shares as of the date of this judgment, with the exclusion of [the Trustee Defendants].

5.    Defendants Alliance and Fenkell shall indemnify [the Trustee Defendants] for any compensatory relief they are required to pay.

6.    Defendant Fenkell shall be barred from continuing as trustee of the Alliance ESOP.

WHEREAS, on December 6, 2013, Plaintiffs filed a Motion for an Order that Defendant David Fenkell's Alliance ESOP account may be used to satisfy his liability in the June 4 Order;

WHEREAS, on January 29, 2014, the Court ordered that Plaintiffs may use Defendant David Fenkell's Alliance ESOP account to satisfy the judgment against him requiring he restore $7,803,543 plus prejudgment interest to the Alliance ESOP, that Plaintiffs may obtain this amount upon entry of a final judgment and order authorizing the application of Fenkell's participant benefits to satisfy the judgment, and that the Alliance ESOP was preliminarily enjoined "from transferring any of Defendant David Fenkell's benefits provided under its Plan pending anticipation of entry of a final judgment and order of execution authorizing the application of Fenkell's participant benefits to satisfy the judgment against him in the amount of $7,803,543."

WHEREAS, Plaintiffs and the Alliance Entities exchanged proposed settlement terms in October and November, 2013 and engaged in mediation sessions before Retired United States District Judge Wayne Andersen on January 9, 2014 and February 3, 2014;

6

WHEREAS, the Alliance ESOP represents, based on its good faith analysis of the relevant business records, that the value of the accounts of those Subclass Members who are entitled to immediate distribution rights under this Settlement Agreement had a value of approximately $2,465,000 for purposes of the 2007 Transaction;

WHEREAS, the Alliance ESOP represents that the dollar value of David Fenkell's Alliance ESOP account as of December 31, 2012 was $502,619.91;

WHEREAS, the Alliance Entities represent that the seller's note that A.H.I. received in the 2007 Transaction has a principal amount of $4,370,000, which has and continues to accrue interest, and had a market value of $369,000 on Alliance's audited financial statements noted on the Alliance ESOP valuation dated December 31, 2012;

WHEREAS, the Alliance ESOP represents that the amount of Pagelow's Alliance ESOP account transferred as part of the 2007 Transaction was valued for purposes of the 2007 Transaction at $1,069,700.25, and that the combined total value of the Trustee Defendants' Alliance ESOP accounts for purposes of the 2007 Transaction was $478,805.24;

WHEREAS, Plaintiffs, on behalf of themselves and the Class, filed a Motion for Preliminary Approval with the Court on February 12, 2014, seeking approval of, among other things, the settlement set forth in their Settlement Term Sheet with the Alliance Entities, which expressly contemplated the terms to be set forth in a final Settlement Agreement;

WHEREAS, the Court preliminarily approved this settlement on February 18, 2014, and scheduled the Final Approval and Fairness Hearing for June 17, 2014;

7

NOW, THEREFORE, the Settling Parties, in consideration of the promises, covenants and agreements herein described, and for other good and valuable consideration, acknowledged by each of them to be satisfactory and adequate, and without any admission or concession as to any matter of fact or law, and intending to be legally bound, do hereby mutually agree as follows:

## III.   DEFINITIONS

As used in this Settlement Agreement, the following terms have the following meanings, unless a section or subsection of this Settlement Agreement specifically provides otherwise:

1.      The "2007 Transaction" means the transaction described in the Complaint involving the eleven (11) steps that transferred ownership of Trachte from Pagelow and the Alliance Entities to the Trachte ESOP on or about August 29, 2007.

2.      "Action" or "Litigation" means *Chesemore, et al. v. Alliance Holdings, Inc. et al.,* No. 09-cv-413, filed in the United States District Court for the Western District of Wisconsin.

3.      "Alliance Entities" means Defendants Alliance Holdings, Inc. , A.H.I., Inc., and AH Transition Corporation.

4.      "Alliance Escrow Account" means the Escrow Account that will hold the Cash Settlement Funds.

5.      "Alliance ESOP" means the Alliance Holdings, Inc. Employee Stock Ownership Plan.

8

6.     "Alliance Seller's Note" means the Subordinated Promissory Note dated August 29, 2007 with principal amount of $ 4,370,000, with interest accruing thereon, provided by Trachte to A.H.I. as part of the 2007 Transaction.

7.     "Claims" means any and all claims of any nature whatsoever (including claims for any and all losses, damages, unjust enrichment, attorneys' fees, disgorgement of fees, litigation costs, injunction, declaration, contribution, indemnification or any other type or nature of legal or equitable relief), whether accrued or not, whether already acquired or acquired in the future, whether known, unknown, or unsuspected in law or equity, as well as of any claim or right obtained by assignment, brought by way of demand, complaint, cross-claim, counterclaim, third-party claim or otherwise.

8.     "Class" means the class certified under Federal Rules of Civil Procedure 23(b)(1) and (b)(2) by the Court's Order issued on September 22, 2011.

9.     "Class Counsel" means Cohen Milstein Sellers & Toll, P.L.L.C. and Hurley, Burish & Stanton, S.C.

10.     "Class Notice" means the Notice of Pendency of Class Action and Proposed Class Settlement, as approved by the Court.

11.     "Class Representatives" means Carol Chesemore, Daniel Donkle, Thomas Gieck, Martin Robbins and Nannette Stoflet.

12.     "Cash Settlement Funds" means jointly the Class Cash Settlement Fund and Subclass Cash Settlement Fund.

13.     "Class Cash Settlement Fund" means the Class Cash Settlement (defined in Section VII.2) plus any interest or other earnings.

9

14. "Court" means the United States District Court for the Western District of Wisconsin.

15. "Defendants" means anyone named as a Defendant in the Third Amended Complaint.

16. "Effective Date of Settlement" means the date defined in Section XII.3 of this Settlement Agreement.

17. "ERISA" means the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 et seq.

18. "Escrow Agent" means the person or entity designated by Lead Class Counsel to hold the Cash Settlement Funds.

19. "Escrow Agreement" means the agreement between Lead Class Counsel, the Alliance Entities and the Escrow Agent governing the Alliance Escrow Account.

20. "Fenkell Defendants" means Defendants David B. Fenkell and Karen G. Fenkell.

21. "Final Approval Motion" means the motion to be filed by Class Counsel requesting that the Court grant final approval of the Settlement pursuant to Fed. R. Civ. P. 23(e).

22. "Final Approval and Fairness Hearing" means the hearing by the Court scheduled to finally approve the Settlement.

23. "Final Approval Date" means the date upon which the Court enters the Final Approval Order.

24. "Final Judgment" or "Final Approval Order" means the Court's final order and entry of judgment finally approving the Settlement.

25.    "Independent Fiduciary" means the individual or firm appointed to serve as independent fiduciary as provided in Section IX (Valuation of the Accounts of the Subclass).

26.    "Lead Class Counsel" means Cohen Milstein Sellers & Toll PLLC.

27.    "Liquidity Allotment" means the $1,528,300 the Alliance Entities will make available only to provide liquidity under Section X.2(e) for immediate cash distributions with respect to stock allocated to the Subclass members who are Immediate Distributees.

28.    "Phantom Stock Plan Proceeds" means the $2,896,000 in phantom stock proceeds received by David Fenkell as part of the 2007 Transaction.

29.    "Plaintiffs" means Carol Chesemore, Daniel Donkle, Thomas Gieck, Martin Robbins and Nannette Stoflet.

30.    "Plan of Allocation" means the plan for distribution of the proceeds of the Cash Settlement Funds and Subclass Stock Settlement submitted by Class Counsel and approved by the Court.

31.    "Preliminary Approval" means the February 19, 2014 Order from the Court granting the motion for preliminary approval of the Settlement.

32.    "Released Parties" means any person or persons who receive a release by any party to this Settlement Agreement.

33.    "Settlement" or "Settlement Agreement" means this Class Action Settlement Agreement, including any exhibits attached hereto.

34.    "Settlement Administrator" means a person or entity designated by Class Counsel to administer the Cash Settlement Funds and/or Subclass Stock Settlement.

11

35.     "Settlement Class" shall have the meaning set forth in Section V.1.

36.     "Settlement Class Representatives" means the Plaintiffs.

37.     "Settling Defendants" means the Alliance Entities and the Alliance ESOP.

38.     "Settling Parties" means the Settling Defendants and Plaintiffs, on behalf of themselves, individually, and on behalf of the Class and the Subclass.

39.     "Subclass Cash Settlement Fund" means the Subclass Cash Settlement (defined in Section VII.1) plus any interest or other earnings.

40.     "Subclass" means the Subclass certified under Federal Rules of Civil Procedure 23(b)(1) and (b)(2) by Court's Order on September 22, 2011.

41.     "Tax" or "Taxes" means any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) imposed by any governmental authority, including income tax and other taxes and charges on or regarding franchises, windfall or other profits, gross receipts, property, sales, use, capital stock, payroll, employment, social security, workers' compensation, unemployment compensation, or net worth; taxes or other charges in the nature of excise, withholding, ad valorem, stamp, transfer, value added, or gains taxes; license, registration and documentation fees; and customs' duties, tariffs, and similar charges.

42.     "Trachte Defendants" means the Trustee Defendants and Pagelow.

43.     "Trustee Defendants" means Pamela Klute, James Mastrangelo, and Jeffrey A. Seefeldt.

## IV.    REPRESENTATIONS & CONDITIONS OF THE SETTLEMENT

1.      **Court Approval of the Settlement.**  This Settlement Agreement is conditioned upon the Court approving this Settlement under Rule 23 of the Federal Rules

12

of Civil Procedure as fair, reasonable and adequate on behalf of the Class and Subclass certified by the Court. Exclusion of the Trachte Defendants and their heirs, beneficiaries, assigns, and spouses from the Class and Subclass is a material condition of this Settlement Agreement.

2.      **Determinations Regarding PTE 2003-39.** This Settlement Agreement is conditioned on a determination that the settlement is not a prohibited transaction, or that the requirements of Prohibited Transaction Exemption ("PTE") 2003-39 are satisfied.

3.      **Financial Condition of the Alliance Entities.** This Settlement Agreement is conditioned on the financial condition of the Alliance Entities having not materially deteriorated between the last information provided to Class Counsel during this Litigation (as of December 31, 2010) and the Final Approval Date. The absence of a material decline of the financial condition of the Alliance Entities between the date that this Settlement Agreement is executed and the Effective Date of Settlement is a continuing condition of this Settlement. As such, the Settling Defendants will provide Class Counsel with the financial information described in Section IX.5(a)(i)-(iii) and will inform Class Counsel of any materially adverse changes in the financial condition of the Alliance Entities between the execution of this Settlement Agreement and the Effective Date of Settlement. In the absence of any such disclosure in writing to Class Counsel, Plaintiffs and Class Counsel will be entitled to rely upon the fact that there has been no material adverse change to the financial condition of the Alliance Entities.

4.      **Alliance ESOP Governing Plan Document.** The Alliance ESOP represents that it has provided Class Counsel with the Alliance Holdings, Inc. Employee Stock Ownership Plan & Trust (As Amended and Restated Effective January 1, 2012) and

all amendments thereto, which is the current version of the written instrument governing the Alliance ESOP within the meaning of ERISA § 402 (the "Alliance ESOP Plan Document"). The Settling Defendants will promptly provide Class Counsel with a copy of any subsequent amendments or modifications to the terms of the Alliance ESOP enacted or made effective between the execution of this Settlement Agreement and the Effective Date of Settlement. In the absence of any such disclosure in writing to Class Counsel, Plaintiffs and Class Counsel will be entitled to rely upon the fact that there has been no amendment or modification to the terms of the Alliance ESOP Plan Document that would materially impact the terms of this Settlement.

     5.    **The Alliance Seller's Note.** A material condition of this Settlement is that one or more of the Alliance Entities currently own all rights the Alliance Seller's Note and that the Alliance Entities have not taken any action to transfer, sell or encumber any rights in connection with the Alliance Seller's Note. The Alliance Entities warrant that one or more of them are the rightful owner of all rights of the Alliance Seller's Note and have the power to transfer and assign all rights on the execution of this Settlement Agreement. The Alliance Entities also warrant and represent that they will take no action to transfer, sell or encumber any rights in connection with the Alliance Seller's Note between the execution of this Settlement Agreement and the Effective Date of Settlement. In the absence of any such disclosure in writing to the contrary to Class Counsel, Plaintiffs and Class Counsel will be entitled to rely upon the fact no other person has made any claim to any right in connection with the Alliance Seller's Note.

     6.    **Alliance Entities' Ability to Liquidate the Stock Settlement.** A material condition of this Settlement is the assurance that the Alliance Entities will have sufficient

14

resources to make distributions to the Subclass members who are either (a) entitled to receive immediate distributions pursuant to Section X.2 of this Settlement Agreement as a result of the Liquidity Allotment provided for in Section X.2(e), and (b) entitled to receive deferred distributions pursuant to Section X.3. The Settling Parties acknowledge that the accuracy of the following are material conditions of this Settlement:

(a)     **The Amount for Immediate Distributees.** The Alliance ESOP has represented that according to calculations based on records of the Alliance ESOP, the value of the accounts of the participants who are entitled to immediate distributions pursuant to Section X.2 does not exceed $2,465,000.

(b)     **The Liquidity Allotment.** The Alliance Entities represent that as of the date of the execution of this Settlement Agreement they have at least $1,528,300 available in cash or cash equivalents to fund the Liquidity Allotment. The Alliance Entities warrant that they will have at least $1,528,300 in cash or cash equivalents available to fund the Liquidity Allotment between the date of execution of this Settlement Agreement and the Effective Date of Settlement. The foregoing warranties and representations are continuing conditions of this Settlement. The Alliance Entities will inform Class Counsel in writing in the event the Alliance Entities do not have at least $1,528,300 available in cash or cash equivalents at any time between the execution of this Settlement Agreement and the Effective Date of Settlement.

(c)     **The Note Securing the Payments to the Deferred Distributees**. The Alliance Entities have represented to Class Counsel that the Deferred Distributees Note that will be provided pursuant to Section X.4(b)(iv) will not be

15

subordinated to any debt owed by any of the Alliance Entities as of the execution of this Settlement Agreement. As the absence of debt that would have superior rights to the Deferred Distributees Note is a continuing condition of this Settlement, the Alliance Entities will not take any action between the execution of this Settlement Agreement and the Effective Date of Settlement to incur debt to which the Deferred Distributees Note would be subordinated without the consent of Class Counsel.

7.      **Materiality of Conditions & Representations**. The Settling Defendants acknowledge that Plaintiffs and Class Counsel consider the representations and conditions in Section IV.3 through IV.6 to be material representations and conditions that have induced Plaintiffs and Class Counsel to enter into this Settlement on behalf of the Class and Subclass and to recommend that the Court approve this Settlement pursuant to Federal Rule of Civil Procedure 23.

## V.    SETTLEMENT CLASS

1.      The Settlement Class will be the Class and Subclass certified by the Court under Federal Rules of Civil Procedure 23(b)(1) and (b)(2) in the Court's Order of September 22, 2011 (D.E. 446), as revised pursuant to the Court's Order of March 6, 2014 (D.E. 897), except for the excluded persons set forth in subsection 2 below.

(a)      The Class shall be defined as:

Participants in the Trachte ESOP at any time from August 29, 2007 to the present who had an account or received an allocation which they did not subsequently forfeit under the terms of the Trachte ESOP plan document and the beneficiaries of such participants.

(b)      The Subclass shall be defined as:

All persons who were participants or beneficiaries of the Alliance ESOP at the time of the 2007 Transaction and whose accounts were transferred to the Trachte ESOP on or about August 29, 2007 as part of the 2007 Transaction.

16

2.      The following persons shall be excluded from the Settlement Class: (a) any person named as a Defendant in this lawsuit, (b) any fiduciary of the Trachte ESOP or the Alliance ESOP during the 2007 Transaction, and (c) any immediate family member, legal representative, or heir, successor or assign of the any excluded persons in subsections 2(a) or 2(b).

3.      The Settling Defendants will not object to or oppose final certification of the Settlement Class.

## VI.   CLASS NOTICE

**1.      Provision of Notice.**  Notice of the Settlement will be provided to the Class. Upon the Court's preliminary approval of this Settlement Agreement or by the date specified by the Court. Class Counsel will be responsible for providing Class Notice to the Class as directed by the Court.

**2.      Contents.**  The Class Notice will contain a brief description of the claims advanced by the Class and Subclass, a summary of the terms of the Settlement Agreement, information on the attorneys' fees and costs sought by Class Counsel, and a notice of the Final Approval and Fairness Hearing, in the form approved by the Court.

**3.      Method of Providing Notice.**  Class Notice shall be provided to each individual Class member: (a) by electronic notice to all known Class members for whom electronic information is available, (b) by mailing for all known Class members for whom electronic contact information is not available, and (c) by posting the Class Notice on a website maintained by Lead Class Counsel and/or the Settlement Administrator.

**4.      Settlement Administrator.**  In the sole discretion of Class Counsel, Class Counsel may hire a Settlement Administrator to provide Class Notice to Class members or otherwise assist with the administration of the Settlement.  The Settling Defendants shall

17

reasonably cooperate with the Settlement Administrator, by providing information in their custody or control regarding the members of the Subclass.

5.    **Costs of Class Notice.**  The Alliance Entities will pay for the cost of providing the Class Notice to the Class, including the expense of hiring of a Settlement Administrator.  To the extent that the Class Notice is combined with notice of another settlement in this Litigation and (i) the final settlement agreement of any such other settlement in this Litigation requires another settling defendant to pay a separate and additional amount toward the costs of a settlement administrator and/or providing class notice in an addition to the amounts paid to settle the claims, and (ii) the other settlement also receives Final Approval by the Court and becomes effective, then the separate and additional amount actually paid by the other settling defendant(s) toward the costs of class notice will be used to offset or reimburse that amount paid by the Alliance Entities toward the costs of providing the combined Class Notice and/or the costs of the Settlement Administrator for activities that benefit multiple such defendants.

## VII.   SETTLEMENT PAYMENTS

1.    **Subclass Settlement.**  As settlement of the Claims of the Subclass, the Alliance ESOP will restore the accounts of the Subclass in the Alliance ESOP and the Alliance Entities will pay $7,000,000, which will consist of $5,500,000 in stock ("Subclass Stock Settlement") and $1,500,000 in cash ("Subclass Cash Settlement").

(a)    **Subclass Stock Settlement.**

(i)    Restoration of Alliance ESOP Accounts.  The Alliance ESOP will cause the Alliance ESOP accounts of Subclass members to be restored no later than one (1) business day after the Effective Date of Settlement.

18

(ii)    Payment of the Subclass Stock Settlement.  The Alliance Entities will provide $5,500,000 in stock to be paid into the restored Alliance ESOP accounts of the Subclass consistent with the Plan of Allocation as directed by the Settlement Administrator and/or the Independent Fiduciary.

(iii)    Contribution of the Alliance versus AH Transition Stock. To the extent that each such stock is owned in sufficient quantities by one or more of the Alliance Entities on the date that this Settlement Agreement is executed, the Alliance Entities will contribute a sufficient amount of both Alliance stock and AH Transition stock to the Subclass Stock Settlement to enable the restoration of the Alliance ESOP accounts of the Subclass on a pro rata basis, in the same proportion of Alliance stock and AH Transition stock as they contained immediately before the 2007 Transaction.

(b)    **Subclass Cash Settlement.**

(i)    Payment into an Escrow Account.  The Alliance Entities have paid the Subclass Cash Settlement into the Alliance Escrow Account.

(ii)    The Subclass Cash Settlement Fund.  The Subclass Cash Settlement plus any interest or other earnings will constitute the Subclass Cash Settlement Fund.

(iii)    Management of the Subclass Cash Settlement Fund.  Until distribution in a manner authorized by the Court or the Escrow Agreement, the Subclass Cash Settlement Fund will be held in the Alliance Escrow

Account for which the Escrow Agent will act on the instructions as authorized by the Escrow Agreement or as ordered by the Court.

  (iv) <u>Qualified Settlement Fund.</u>  The Subclass Cash Settlement Fund is intended by the Settling Parties to be a "qualified settlement fund" for federal income tax purposes under Treas. Reg. § 1.468B-1.

  2. **Class Settlement.**  As settlement of the Claims for indemnification and contribution assigned by Pagelow and the Trustee Defendants to the Class, the Alliance Entities will pay $150,000 in cash (the "Class Cash Settlement") and assign to the Alliance Seller's Note to the Class, including any accrued interest or costs of collection.

  (a) **Class Cash Settlement Fund.**

  (i) <u>Payment into an Escrow Account.</u>  The Alliance Entities have paid the Class Cash Settlement into the Alliance Escrow Account.

  (ii) <u>The Class Cash Settlement Fund.</u>  The Class Cash Settlement plus any interest or other earnings will constitute the Class Cash Settlement Fund.

  (iii) <u>Management of the Class Settlement Fund.</u>  Until distribution in a manner authorized by the Court or the Escrow Agreement, the Class Cash Settlement Fund will be held in the Alliance Escrow Account for which the Escrow Agent will act on the instructions as authorized by the Escrow Agreement or as ordered by the Court.

  (iv) <u>Qualified Settlement Fund.</u> The Class Cash Settlement Fund is intended by the Settling Parties to be a "qualified settlement fund" for federal income tax purposes under Treas. Reg. § 1.48B-1.

(b)     **Alliance Seller's Note.**

(i)     As of the date of the execution of this Settlement Agreement, the Alliance Entities warrant that one or more of them own all rights to the Alliance Seller's Note and they have taken and will take no action to transfer, sell or encumber any rights in connection with the Alliance Seller's Note other than as provided in this Agreement.

(ii)     Upon the Effective Date of Settlement, the Alliance Seller's Note will be deemed assigned from the Alliance Entities to the Class care of Class Counsel.  Within three (3) business days of the Effective Date of Settlement, the Alliance Entities will execute any documents necessary to effectuate the assignment of the Alliance Seller's Note.

(ii)     At Class Counsel's request, and consistent with the Plan of Allocation approved by the Court, the Alliance Entities will deliver the Alliance Seller's Note to Class Counsel or any person that the Court approves that shall receive the Seller's Note pursuant to the Plan of Allocation and will take any and all other steps necessary to make any such assignment effective, including by, at Class Counsel's request, executing an assignment or cancellation of the Alliance Seller's Note.

## VIII.   DISTRIBUTION OF THE SETTLEMENT FUNDS

1.     **Distributions From Settlement Funds Before the Effective Date of Settlement.**  Prior to the Effective Date of Settlement, Class Counsel will be authorized to pay from the Subclass Settlement Funds any actual or estimated taxes on any income earned on the funds in the Alliance Escrow Account and all tax-related costs and expenses. To the extent that there are any non-tax-related settlement-related expenses required to be

21

paid by the Class or Subclass in connection with this Settlement Agreement, Class Counsel will be authorized to pay such expenses from the Settlement Funds in the Alliance Escrow Account up to $ 75,000. Any dispute regarding the reasonableness of any expense incurred, paid or owing will be adjudicated by the Court, but in no event will the Settling Parties cause or allow the Subclass Settlement Fund or the Class Settlement Fund to fail to make a payment in a timely manner.

2. **Attorneys' Fees, Expenses/Costs and Service Awards.** Pursuant to the deadline set by the Court and prior to the time that Class members have to object to any such award, Class Counsel may file any motion with the Court requesting the payment of attorneys' fees, reimbursement of litigation expenses and costs, and/or service awards to the Settlement Class Representatives from the Subclass Cash Settlement Fund and/or the Class Cash Settlement Fund, which shall be paid out of the respective Settlement Funds on or after the Effective Date of Settlement but before distribution to the Class and Subclass.

3. **Expense Reserve.** Class Counsel, with the approval of the Court, is authorized to establish a reserve from the Subclass Cash Settlement Fund and/or the Class Cash Settlement Fund to pay any taxes that are or will be owed (but not yet due) and for expenses related to payment of taxes, filing of tax returns or other costs of administration of the Settlement.

4. **Distribution of the Class Cash Settlement Fund to the Class.** The Class Cash Settlement Fund will be distributed to Class members after the payment of any award of attorneys' fees, reimbursement of any litigation expenses and costs, and/or any service awards to the Class Representatives approved by the Court and the deduction of any expenses for Class Notice or administration of the Settlement, the payment of any taxes or

22

tax-related expenses and the creation of any reserve for future expenses (as described above) as follows:

      (a)    Class Counsel has submitted a proposed Plan of Allocation to the Court as the recommended method of determining and distributing the proceeds of the Class Cash Settlement Fund after deduction of any award of attorneys' fees and reimbursement of any litigation expenses and costs, approved by the Court ("the Net Class Settlement Fund") to Class members.

      (b)    The Settling Defendants and the Alliance ESOP shall have no input and shall take no position on the Plan of Allocation, the method of allocation, or the distribution of the Class Cash Settlement Fund except to the extent the proposed Plan of Allocation is inconsistent with this Settlement Agreement or purports to impose duties or requirements the Alliance Entities or the Alliance ESOP beyond the scope of those agreed to in this Settlement Agreement;

      (c)    In the event that the proposed Plan of Allocation is rejected or modified by the Court or on appeal, such rejection or modification will not constitute a material modification of this Settlement, will not void this Settlement Agreement, and will not provide a basis for any Settling Party to withdraw from this Settlement Agreement.

**5.**    **Distribution of the Subclass Cash Settlement Fund to the Subclass.** The Subclass Cash Settlement Fund will be distributed to Subclass members after the payment of any award of attorneys' fees, reimbursement of any litigation expenses and costs, and/or any Service Awards to the Settlement Class Representatives approved by the Court and the deduction of any expenses for Class Notice or administration of the

1902007.1

Settlement, the payment of any taxes or tax-related expenses and the creation of any reserve for future expenses (as described above) as follows:

(a)     Class Counsel has submitted a proposed Plan of Allocation to the Court as the recommended method of determining and distributing the proceeds of the Subclass Cash Settlement Fund after deduction of any award of attorneys' fees and reimbursement of any expenses and costs approved by the Court (the "Net Subclass Settlement Fund") to the Subclass members.

(b)     Class Counsel has proposed a Plan of Allocation whereby the Net Subclass Cash Settlement Fund is paid into the Alliance ESOP to be distributed to the accounts of the Subclass members on a pro rata basis based on the value of each Subclass member's account in the Alliance ESOP as of the 2007 Transaction and whereby along with the Liquidity Allotment (subject to the Liquidity Allotment not being exhausted), sufficient cash from this Settlement and other settlements is intended to permit the members of the Subclass who are Immediate Distributees to liquidate the entirety of their Alliance ESOP accounts immediately.

(c)     The Settling Defendants will have no input and will take no position on the Plan of Allocation, the method of allocation, or the distribution of the Subclass Settlement Fund, unless and only to the extent that the Plan of Allocation is modified to require the Alliance Entities to immediately liquidate stock in excess of the Liquidity Allotment. The Settling Defendants reserve their right to object to any interpretation, redrafting, or reformulation of the Plan of Allocation that seeks to require the Alliance Entities to immediately liquidate sock in excess of the Liquidity Allotment.

(d)    In the event that the proposed Plan of Allocation is rejected or modified by the Court or on appeal, such rejection or modification will not constitute a material modification of this Settlement, will not void this Settlement Agreement, and will not provide a basis for any Settling Party to withdraw from this Settlement Agreement;

**6.    Distribution of the Subclass Stock Settlement.** The Alliance Entities shall transfer the Subclass Stock Settlement to the Alliance ESOP either: (i) one (1) business day after the Final Approval Date, or (ii) three (3) business days after the completion of the Independent Fiduciary's determination of fair market value (as required by Section IX), whichever is later. The Subclass Stock Settlement will be held in trust by the Alliance ESOP trustee for benefit of the Subclass members until distribution of the Subclass Stock Settlement.  By no later than one (1) business day after the Effective Date of the Settlement, or three (3)  business days after the Independent Fiduciary's determination of fair market value (as required by Section IX), the Alliance ESOP will distribute the Subclass Stock Settlement to the Alliance ESOP accounts of the Subclass members consistent with the Plan of Allocation and as directed by the Settlement Administrator, but in no event will the Alliance ESOP be required to distribute the Subclass Stock Settlement if the Settlement Administrator has not finished its calculations regarding the amount of stock to be allocated to each Subclass member's Alliance ESOP account.  To the extent that the Subclass Stock Settlement contains sufficient Alliance stock and AH Transition stock, the Alliance ESOP will distribute Alliance stock and AH Transition stock to the Subclass members' restored Alliance ESOP accounts so the Subclass members' restored accounts will contain, on a pro rata basis, the same proportion

25

of Alliance stock and AH Transition stock as they contained immediately before the 2007

Transaction.

7.      **Distribution of the Proceeds of Other Settlements.**  At the option of

Class Counsel, but subject to the approval of the Court, the Plan of Allocation may provide

that the proceeds from settlements with or judgments against the Fenkell Defendants will

be paid into the Alliance ESOP and be allocated pursuant to the Plan of Allocation to the

accounts of the members of the Subclass.  In the event that as a result of any settlement

with or judgment against the Fenkell Defendants, either cash or additional Alliance stock

or AH Transition stock is paid or allocated to members of the Subclass into their Alliance

ESOP accounts, the resulting cash and any stock will distributed in the same manner as the

cash and stock paid pursuant to this Settlement, except that the proceeds from such

settlements or judgments shall only be included in determining the amount that an

Immediate Distributee may receive as an immediate distribution under Section X.2 if Final

Judgment (a) approving any such settlement(s) with the Fenkell Defendants is entered

prior to the Effective Date of this Settlement or (b) as to any judgment against the Fenkell

Defendants becomes final with all appeals exhausted or expired prior to the Effective Date

of this Settlement.  Regardless of whether the cash is included as part of the calculation of

the amount that an Immediate Distributee may receive pursuant ot Section X.2, any cash

from any other settlement or judgment paid or allocated to members of the Subclass into

their Alliance ESOP accounts will distributed pursuant to Section X.1.

IX.     **VALUATION OF THE ACCOUNTS OF THE SUBCLASS**

1.      **Appointment of Independent Fiduciary.**  The Court will appoint an

Independent Fiduciary to make the determination of fair market value in accordance with

Department of Labor ("DOL") Proposed Regulation § 2510.3-18, to oversee the

26

restoration of the Subclass Stock Settlement to the Alliance ESOP accounts of the Subclass, to determine whether and how the cash in the Alliance ESOP accounts should be invested, and to ensure that the requirements for any exemptions to any prohibited transaction are met, to make the determinations required by PTE 2003-39, and to perform any other duties ordered by the Court.  The Settling Parties shall attempt to agree on an Independent Fiduciary to propose to the Court or if unable to agree upon one, will separately submit proposals to the Court.  No person or firm retained or consulted by any party to this Litigation to provide any opinion or services in connection with the 2007 Transaction or in connection with this Litigation will be eligible to serve as Independent Fiduciary.

     2.     **Requirements for Valuation of Stock.**

     (a)     All valuations of any stock in the restored Alliance ESOP accounts of Subclass members will be based on a valuation performed by a qualified independent appraiser (which may include the Independent Fiduciary if the Independent Fiduciary is a qualified appraiser) and will meet the requirements of DOL Proposed Regulation § 2510.3-18.

     (b)     The Independent Fiduciary will be responsible for selecting the person or firm to perform the valuation for purposes of restoring the Subclass's Alliance ESOP accounts.  The following firms and persons are ineligible to serve as appraiser or perform the valuation for this purpose:  (i) Stout Risius Ross ("SRR") and any current or former employee or partner at SRR who was involved with a prior valuation of Alliance regardless of whether such person is still employed or associated with SRR; (ii) Barnes Wendling Valuation Services ("BWVS") or any

27

person at BWVS who was involved with 2007 Transaction regardless of whether such person is still employed or associated with BWVS; and (iii) any other person retained or consulted by any party to this Litigation to provide any valuation-related opinion in the 2007 Transaction or in or related to this Litigation.

    (c)    The person or entity selected by the Independent Fiduciary to perform the valuation must satisfy the independence requirements of DOL Proposed Regulation § 2510.3-18 and satisfy the requirements of a "qualified appraiser" under Internal Revenue Code ("IRC") § 170(f)(11)(E)(ii) and the regulations thereunder.

3.    **Valuation as to Elections Made Before Final Judgment.**  For any Subclass member who makes an election prior to Final Judgment to receive a distribution of all or a portion of the stock allocated to his/her Alliance ESOP account, the valuation used to calculate the value of the Alliance stock and AH Transition stock for purposes of calculating the Subclass Stock Settlement will also be the valuation used to calculate the value of the shares to be distributed to such participant (before any interest) from the Alliance ESOP and reported on any statements indicating the value of their shares or accounts in the Alliance ESOP.

4.    **Valuation as to Elections After Final Judgment.**  With respect to the distributions made to Subclass members who do not make a distribution election until after Final Judgment, the valuation used for purposes of calculating their distribution will be the valuation of Alliance stock and AH Transition stock then being used for all other distributions of the same type to other participants in the Alliance ESOP, so long as the valuation is performed in accordance with DOL Proposed Regulation § 2510.3-18.  With

28

respect to distributions made to participants who do not elect until after Final Judgment to receive a distribution, a fiduciary of the Alliance ESOP will select the appraiser or valuation firm consistent with Section IX.2(a) and (c) of this Settlement Agreement, but shall be permitted to select the appraisers or valuation firms that would otherwise be ineligible under Section IX.2(b).

5. **Valuation and Financial Information To Be Provided.**

   (a)   **To Class Counsel.**

   (i)   <u>Valuations</u>.  Until the time that all Subclass members have received full and complete distributions of their accounts in the Alliance ESOP, the Alliance Entities and/or Alliance ESOP will provide Class Counsel with a copy of any valuations of any asset held in the Alliance ESOP account of any Subclass member within thirty (30) days of the issuance of the valuation report to a fiduciary of the Alliance ESOP.  The valuation will be provided automatically and without further request by Class Counsel.  In the event Class Counsel believes that additional information is needed to understand the valuation report, such information will be provided by the Alliance Entities and/or the Alliance ESOP to Class Counsel upon request by Class Counsel; any dispute about whether such additional information must be provided will be decided by the Court.

   (ii)   <u>Annual Financial Report</u>.  Within ten (10) business days of the execution of this Settlement Agreement, the Alliance Entities will provide Class Counsel with a copy of their most recent audited annual financial statement.  If their audited annual financial statement for 2013 is

29

not yet available at the time of the execution of this Settlement Agreement, the Alliance Entities will also provide their unaudited financial statement for 2013 and an audited financial statement (along with the auditor's opinion) for 2013 within seven (7) days of the completion of the audit.

(iii)    <u>Monthly Financial Statement</u>.  At the earlier of seven (7) days after the last full month prior to the Final Approval Date and/or ten (10) business days prior to the Final Approval and Fairness Hearing, the Alliance Entities will provide Class Counsel with a copy of the Alliance Entities' most recent monthly financial statement.

(iv)    <u>David Fenkell's ESOP Account Statement</u>.  Within ten (10) business days of the execution of this Settlement Agreement, the Alliance Entities will provide Class Counsel with a copy of the account statement for David Fenkell's Alliance ESOP account as of December 31, 2012.  Within ten (10) business days of such statement becoming available, the Alliance Entities will provide Class Counsel with a copy of the account statement for David Fenkell's Alliance ESOP account as of December 31, 2013.

(b)    **To Subclass Members.**

(i)    <u>Disclosures To Be Issued</u>.  The Alliance ESOP has provided Class Counsel with a copy of the current Summary Plan Description for the Alliance ESOP, which Class Counsel has provided to the Settlement Administer to post on website about the Settlement.   Within thirty (30) days of allocation of both the

Subclass Settlement Fund and the Subclass Stock Settlement to the restored accounts of the Subclass members, the Alliance ESOP will send to each Subclass member a statement showing the amount of Alliance stock, AH Transition stock and cash allocated to that Subclass member's account as a result of this Settlement.  Within thirty (30) days the Final Approval and Fairness Hearing Date, the Alliance ESOP will send to each Subclass member a copy of the most recent SPD for the Alliance ESOP.

(ii)    <u>Documents Available Upon Request</u>.  Effective upon the execution of this Settlement Agreement and until a Subclass member has received a complete distribution of the balance of his Alliance ESOP account, any Subclass member will be treated as a participant of the Alliance ESOP for purposes of making any request for documents pursuant to ERISA § 104(b).

(iii)    <u>Valuations</u>.  For as long as a Subclass member remains a participant in the Alliance ESOP and/or has not received a complete distribution of the balance of his Alliance ESOP account, such person will be entitled to receive – in addition to any other documents or information to which participants are entitled under ERISA or the terms of the Alliance ESOP – a copy of any report of the valuation of any asset in his/her account upon written request within thirty (30) days of that request.  A request for a valuation by a Subclass member under this Settlement Agreement will be treated

31

as and will be enforceable as a request made pursuant to ERISA § 104(b).

## X.  DISTRIBUTIONS FROM THE ALLIANCE ESOP

1.  **Distributions of Cash in the Alliance ESOP Accounts.**  Any Subclass member who receives an allocation of cash to his/her Alliance ESOP account may elect to receive a distribution of the cash portion of his/her Alliance ESOP account.  The Alliance ESOP will make such distributions as follows:

(a)  For any Subclass member who makes an election prior to Final Judgment to receive all or any portion of the cash portion of his/her account, the distribution will be paid within thirty (30) days after Effective Date of Settlement.

(b)  For any Subclass member who makes an election after Final Judgment to receive the cash portion of his/her account, the distribution will be paid within sixty (60) days after receipt of the election, but in no event shall the Alliance ESOP be required to pay the distribution prior to thirty (30) days after the Effective Date of Settlement.

(c)  To the extent that any Subclass members have not elected to receive a distribution of the entirety of the cash amount of their accounts prior to Final Judgment (such that the distribution will be paid within thirty (30) days of the Effective Date of Settlement pursuant to subsection (a) of this paragraph), the Independent Fiduciary will make the determination whether such amounts should be invested in an investment that earns interest or other secure investment that generates earnings (other than Alliance stock) and the Alliance ESOP will implement that direction.

32

2.    **Participants Entitled to Immediate Liquidation and Distribution of Stock in their Accounts ("Immediate Distributees").**  Subject to the Liquidity Allotment not being exhausted, the following Subclass members whose accounts are restored with stock from the Subclass Stock Settlement Fund, and have elected a distribution of that stock, will be entitled to liquidate their restored stock allocated from the stock proceeds of this Settlement in Section VII.1(a) as follows (and pursuant to the timing requirements of Section X.4(a)):

(a)    **Full Immediate Distributees.**  Any Subclass member who, as of Final Judgment, has either reached normal retirement age (as defined in the Alliance ESOP Plan Document), is disabled (as determined under the Alliance ESOP Plan Document), or who is the beneficiary of a Subclass member who has died as of Final Judgment will be entitled to make an election to liquidate of all or a portion of the restored stock that they have elected to receive as a distribution.  The liquidation distribution will be made pursuant to the timing requriements of Section X.4(a).

(b)    **25% Immediate Distributees.**  Any Subclass member who has reached age 55 or older and has ten (10) years of participation in the Alliance ESOP at the time that his/her account is restored shall be designated as a Qualified Participant under Alliance ESOP Plan Document Section 7.9.  Any such Subclass member who has elected to receive a distribution of a portion or all of the stock allocated to the Subclass members' restored Alliance ESOP account will have the right to immediately liquidate of up to 25% of the Subclass member's restored Alliance ESOP account (regardless of the portion that constitutes stock, but subject

33

to the limitations for other settlements described in Section VIII.7). The liquidation distribution will be made pursuant to the timing requriements of Section X.4(a).

(c)   **50% Immediate Distributees.** Any Subclass member who is a Qualified Participant and would have attained the sixth year of the Qualified Election Period under Section 7.9 of the Alliance ESOP Plan Document at the time that his/her account is restored, and has elected to receive a distribution of a portion or all of the stock allocated to the Subclass member's restored Alliance ESOP account will have the right to immediately liquidate of up to 50% of the Subclass member's restored Alliance ESOP account (regardless of the portion that constitutes stock, but subject to the limitations for other settlements described in Section VIII.7). The liquidation distribution will be made pursuant to the timing requriements of Section X.4(a).

(d)   **Crediting of Participation.** For purposes of calculating the amount of participation for purposes of Sections X.2(a), X.2(b) and X.2(c), Subclass members who were participants in the Alliance ESOP on the date of the 2007 Transaction shall have participation counted as if they continued to be participants in the Alliance ESOP from the 2007 Transaction until Final Judgment.

(e)   **Alliance Entities' Liquidity Allotment.** The Alliance Entities will make $1,528,300 available to provide liquidity (the "Liquidity Allotment") to immediately repurchase stock distributions from Subclass members who are Immediate Distributees under Section X.2(a)-(c) as follows:

(i)   Insufficiency of the Liquidity Allotment At Final Judgment. To the extent that the total requests for immediate liquidation of the stock

34

received from Immediate Distributees prior to Final Judgment exceed $1,528,300 such that the entire Liquidity Allotment would be insufficient to liquidate all of the stock for those requests, the requests from Full Immediate Distributees will be completely liquidated first, with the remainder of the Liquidity Allotment used pro rata among the requests from the other Immediate Distributees allocated based on the amount of stock allocated to their Alliance ESOP accounts.  Any stock remaining in the Immediate Distributees' Alliance ESOP accounts after exhaustion of the Liquidity Allotment which the Immediate Distributee has elected to receive prior to Final Judgment shall be governed by the timing and payment provisions applicable to deferred distributions in Section X.4(b).

(ii)     Liquidity Allotment Not Exhausted At Final Judgment.  To the extent that the total requests for immediate distribution of stock received from Immediate Distributees prior to Final Judgment do not exceed $1,528,300 and would not exhaust the entire Liquidity Allotment, the Alliance Entities will continue to provide the balance of the Liquidity Allotment for the benefit of the Immediate Distributees who did not request an immediate distribution of stock prior to Final Judgment and the balance of the Liquidity Allotment will remain available to liquidate stock to satisfy distribution requests by Immediate Distributees after Final Judgment, to be paid on an as requested basis until the Liquidity Allotment is exhausted.

(f)     **Amendment of the Plan.**  The references to terms in the Alliance ESOP Plan Document are for reference only; for distribution rights under this

35

Settlement Agreement, no amendment to the Alliance ESOP Plan Document adopted since August 29, 2007 (or a participant's date of termination, if earlier) shall impair, impede or reduce such rights of any Immediate Distributee.

3. **Participants Entitled to Deferred Distributions of Stock in their Accounts ("Deferred Distributees").** The following Subclass members will be entitled to request of distribution of all or a portion of the stock in their Alliance ESOP accounts:

(a)    For any Subclass member whose account is not entitled, as of the time of Final Judgment, to an immediate liquidation of the full amount of stock either under the terms of the Alliance ESOP Plan Document or pursuant to this Settlement Agreement, the stock restored to his or her Alliance ESOP account will be paid in five equal annual installments pursuant to the applicable timing requirements set forth in Section X.4(b) or Section X.4(c).

(b)    For any Subclass member who qualifies as an Immediate Distributee, but does not receive a full liquidation and distribution of the stock in his/her Alliance ESOP account upon request because the Liquidity Allotment was insufficient, the Alliance ESOP will pay the requested remaining amount of the stock to be distributed the stock in the Subclass member's Alliance ESOP account in five equal annual installments as set forth pursuant to the applicable timing requirements set forth in Section X.4(b) or Section X.4(c).

4. **Timing of Distributions of Stock.**

(a)    **Immediate Distributions.**  For any Subclass member who qualifies as an Immediate Distributee (regardless of they actually receive the full payment requested), the Alliance ESOP will pay the full amount that the Subclass member is

36

entitled to receive and elects to receive, in the amount and the manner requested as follows:

(i)     For any Immediate Distributee who makes an election prior to Final Judgment to liquidate all or any portion of the stock allocated to his/her Alliance ESOP account that the Immediate Distributee has a right to immediately liquidate pursuant to this Settlement Agreement, including Section X.5, the cash distribution for the liquidated stock will be paid within thirty (30) days after the Effective Date of Settlement (limited only by the exhaustion of the Liquidity Allotment), but in no event shall the distribution be paid prior to the distribution of the Settlement Stock Fund to the Subclass members' Alliance ESOP accounts.

(ii)    For any Immediate Distributee who makes an election after Final Judgment to liquidate any or all of the stock portion of his/her Alliance ESOP account that the Immediate Distributee has a right to immediately liquidate pursuant to this Settlement Agreement, including Section X.5, the cash distribution for the liquidated stock will be made within sixty (60) days after receipt of the election (limited only by the Liquidity Allotment not being exhausted), but in no event shall the Alliance ESOP be required to pay the distribution prior to thirty (30) days after the Effective Date of Settlement or prior to the distribution of the Settlement Stock Fund to the Subclass members' Alliance ESOP accounts.

(iii)   The timing of distributions described in Section X.4(a)(i)-(ii) apply only to stock for which the Immediate Distributee has a

37

right to immediately liquidate in his/her Alliance ESOP account under this Settlement Agreement, including Section X.5, and are conditioned on the Liquidity Allotment not being exhausted.  If the distribution was elected prior to Final Judgment, the distribution for any stock for which an Immediate Distributee does not have a right to immediate liquidation, and/or the distribution for any stock remaining with the Immediate Distributee as a result of exhaustion of the Liquidity Allotment, shall be governed by the timing provisions applicable to deferred distributions in Section X.4(b).  If the distribution was elected after Final Judgment, the distribution for any stock for which an Immediate Distributee does not have a right to immediate liquidation, and/or the distribution for any stock remaining with the Immeidate Distributee after exhaustion of the Liquidity Allotment, shall be governed by the timing provisions applicable in Section X.4(c).

(b)     **Deferred Distributions Elected Before Final Judgment.**  For any Subclass member who makes an election prior to Final Judgment to receive all or a portion of the stock restored to his or her Alliance ESOP account and (a) is not entitled to immediately liquidate all of the stock in his/her Alliance ESOP account under this Settlement upon request, (b) is entitled to immediately liquidate all of the stock in his/her Alliance ESOP account, but elects to redeem any portion of the stock in his or her account on an installment basis, or (c) is entitled to immediately liquidate all or a portion of the stock in his/her Alliance ESOP account, but the Liquidity Allotment has been exhausted before completely liquidating the Subclass

38

member's stock, one or more of the Alliance Entities will purchase such stock from the Subclass member in exchange for payments on an installment basis (secured by a note) as follows:

(i)     The first installment will be paid no earlier than January 1, 2015 and no later than January 31, 2015, unless the Effective Date of Settlement has not occurred by January 1, 2015, in which case the first installment will be paid sixty (60) days after the Effective Date of Settlement, but in no event shall the first installment be paid prior to the distribution of the Settlement Stock Fund to the Subclass members' Alliance ESOP accounts.

(ii)    Any subsequent installments will be paid no later than the earlier of thirty (30) days after each anniversary of the date of the first installment payment was to be paid or was paid.

(iii)   The installments will be made in no more than five (5) total installments, with the amount owed and due to be made in approximately equal amounts.

(iv)    The amount payable by installment will be secured by a note (the "Deferred Distributees Note") from Alliance or AH Transition, as applicable, on which interest on the outstanding amount will accrue at the prime rate from the date of Final Judgment to the date of payment. The Deferred Distributees Note will not be subordinated to any debt incurred after the date of Final Judgment.

(v)    In the event that the Alliance Entities fail to liquidate or make any installment payment within the time required by this Settlement Agreement, the entire Deferred Distributees Note, including interest accrued to date, will become due and payable, except that the Alliance Entities will be entitled to an opportunity to cure a late payment once over the life of the Deferred Distributees Note so long as payment is made either within thirty (30) days or upon other terms agreed upon by Class Counsel or approved by the Court.

(c)    **Deferred Distributions Elected After Final Judgment.**  For any Subclass member who exercises the right to take a distribution of stock after Final Judgment consistent with the Alliance ESOP Plan Document and/or who is not otherwise entitled to receive an immediate liquidation of his or her stock under the terms of this Settlement Agreement or the terms of the Alliance ESOP Plan Document, the Alliance ESOP will distribute such stock subject to the following repurchase provisions:

(i)    Beginning January 1, 2015 (or, if the date of Final Judgment occurs after January 1, 2015, the first business day after Final Judgment) and consistent with Section 11.4(b) of the Alliance ESOP Plan Document, the Subclass members will be entitled, within the window period provided by Section 11.4(b)(1) of the Alliance ESOP Plan Document, to elect to put the stock to Alliance (if the stock distributed was Alliance stock), or to AH Transition (if the stock distributed was AH Transition stock).  To the extent that a Subclass member actually makes the election after Final Judgment,

40

but before January 1, 2015, the election will be treated as if made on January 1, 2015.

(ii)    If the Subclass member elects to put the stock, the first installment will be paid within thirty (30) days after the date of the election to put the stock, in accordance with Section 11.4(b)(2) of the Alliance ESOP Plan Document, but in no event prior to the Effective Date of Settlement.  If the Effective Date of Settlement is after January 1, 2015, the first installment will be paid within thirty (30) days after the Effective Date of Settlement in accordance with Section 11.4(b)(2) of the Alliance ESOP Plan Document, but in no event shall the first installment be paid prior to the distribution of the Settlement Stock Fund to the Subclass members' Alliance ESOP accounts.

(iii)    All subsequent installments will be paid no later than thirty (30) days after each anniversary of the actual date of the first installment payment.

(iv)    The installments will be made in no more than five (5) total installments, with the amount owed and due to be paid in approximately equal amounts.

(v)    The amount payable by installment will be secured by a note from Alliance or AH Transition, as applicable, including interest at the prime rate pursuant to the terms of the Alliance ESOP Plan Document in existence at the time of execution of this Settlement Agreement.

41

      (vi)      In the event that one or more of the Allliance Entities fail to liquidate any stock or make any installment payment within the time required by this Settlement Agreement, the entire Deferred Distributees Note, including interest accrued to date, will become due and payable, except that the Alliance Entities collectively will be entitled to one opportunity to cure a late payment once over the life of the Deferred Distributees Note so long as payment is made either within thirty (30) days or upon other terms agreed upon by Class Counsel or approved by the Court.

      (vii)     If the Alliance ESOP Plan Document is amended after the execution of this Settlement Agreement to expand the put option rights provided to participants in the Alliance ESOP (described in Section 11.4(b) of the Alliance ESOP Plan Document), any Subclass member whose distribution rights is governed by this Section X.4(c) shall also be provided such additional put option rights as of the later of the Effective Date of the Settlement or the effective date of the amendment.

      (viii)    Notwithstanding the timing rules in Section X.4(c)(i) that would otherwise govern the timing of distributions and put elections, a Subclass member subject to and eligible to make an election pursuant to Section X.4(c)(i) may elect to exercise his or her right to receive a distribution under this Section X.4(c) before June 1, 2015, regardless of any Alliance ESOP Plan Document provision or related processes. Such distribution will be based upon the valuation completed for purposes of this

Settlement. Any Subclass member who has not exercised a distribution right prior to May 31, 2015 pursuant to the preceding sentence will have his or her distribution rights made available and processed pursuant to the Alliance ESOP Plan Document provisions and related processes. The Alliance ESOP will issue a notice and the appropriate forms to the members of the Subclass (in a manner approved by Class Counsel) by no later than January 31, 2015, informing the members of the Subclass of this right.

5.    **Additional Distribution Rights of Subclass Members.**

(a)    **Retention of Rights Under the Plan.** In addition to any rights afforded in this Settlement, any Subclass member will be entitled to exercise, at the Subclass member's option, any rights to diversification or distribution available under the Alliance ESOP Plan Document in effect either (1) at the time of their termination of employment with Trachte or the 2007 Transaction, whichever was earlier or (2) at the time they exercise their distribution rights. This subparagraph will only apply to determine the terms that govern Subclass members' distribution rights, but shall not permit any Subclass member to make retroactive distribution elections.

(b)    **Equal Treatment With Other Participants.** In the event that other similarly situated categories of non-Subclass participants in the Alliance ESOP are permitted to have their stock liquidated or receive benefits sooner than the Subclass members are permitted under this Settlement Agreement, the Alliance ESOP shall permit each Subclass member to elect to receive his/her distribution

43

under the same timeframe notwithstanding any contrary provision in this

Settlement Agreement or the Alliance ESOP Plan Document.

## XI.   ATTORNEYS' FEES, EXPENSES & SERVICE AWARD

1.   **Defendants' Payment of Fees/Expenses.**  In addition to any amounts

being paid under this Settlement Agreement, the Alliance Entities will pay $5.325 million

to Class Counsel as attorneys' fees and costs as follows:

(a)   $4.25 million within 30 days after entry of Final Judgment;

(b)   $300,000 by December 1, 2015;

(c)   $300,000 by December 1, 2016;

(d)   $237,500 by December 1, 2017;

(e)   $237,500 by December 1, 2018.

(f)   If the Alliance Entities' insurer(s) make(s) payment to the Alliance

Entities to settle, pay or reimburse Claims made by or related to this Litigation or

arising out of the 2007 Transaction, the Alliance Entities will have an affirmative

duty to disclose such payments to Class Counsel, and the amounts otherwise due to

Class Counsel in 2017 and 2018 will be accelerated up to fifty (50) percent of the

amount of any such payment(s) made by the Alliance Entities' insurers, which will

be made to Class Counsel for the amounts owed in 2017 and 2018 with the latter

obligation being satisfied first.  Such payments will be made to Class Counsel

within thirty (30) days of the date that any of the Alliance Entities receive

payment(s) from their insurer(s), and any amount not paid within thirty (30) days

will accrue interest at the prime rate compounded quarterly.  Acceleration of either

or both of the 2017 or 2018 payments to Class Counsel shall not delay or otherwise

alter the Alliance Entities' payment obligations to Class Counsel under Section

44

XI.1(a), (b) or (c).

2.      **Defendants' Payment of Out-of-Pocket Expenses in 2014.**  In addition to any amounts incurred by Class Counsel to provide Class Notice or in connection with retention of a Settlement Administrator and determined reasonable by agreement of the Parties or the Court, the Alliance Entities will also reimburse Class Counsel for any out-of-pocket expenses incurred in 2014 up to $20,000, which amounts will be paid within thirty (30) days of the entry of Final Judgment or, if submitted after Final Judgment, within thirty (30) days of Class Counsel submitting proof of the itemized expenses to the Alliance Entities' counsel.

3.      **Payment of Fees/Expenses to Lead Class Counsel.**  All amounts to be paid pursuant to this Section will be paid into an account designated by Lead Class Counsel to be distributed to any other Class Counsel.  Neither the Settling Defendants nor the Alliance ESOP will have any input as to the division of such fees and expenses among Class Counsel.

4.      **Payment of Fees/Expenses Upon Final Judgment.**  The payment of the fees and expenses that the Alliance Entities have agreed to pay to Class Counsel pursuant to this Section will be due upon the entry of Final Judgment and regardless of whether the Effective Date of Settlement has occurred.  To the extent that the Alliance Entities pay amounts to Class Counsel pursuant to this Section prior to the Effective Date of Settlement and approval of the Settlement is reversed on appeal, upon written request by counsel for the Alliance Entities, Class Counsel will return to the Alliance Entities all such amounts within thirty (30) days of the Alliance Entities' written request.

5.     **Request for Additional Amounts for Attorneys' Fees and Expenses.**  In addition to the amounts to be paid by the Alliance Entities to Class Counsel in this Section, it is expressly contemplated that Class Counsel will seek an award of attorneys' fees and reimbursement of expenses in an amount to be awarded by the Court out of the Settlement Funds by this Settlement and/or other settlements, and/or an award of fees and expenses or costs against any other non-Settling Defendants, including David Fenkell.  Nothing in this Settlement Agreement will be construed to limit any ability of Plaintiffs or Class Counsel to seek an award of attorneys' fees or reimbursement of expenses or costs from any non-Settling Defendants.

6.     **Defendants' Non-Opposition.**  With respect to any request for attorneys' fees or expenses or a Service Award to be paid out of any Settlement Fund created by this Settlement or pursuant to any other settlement, neither the Alliance Entities nor the Alliance ESOP will take any position on any such request or the amount to be awarded pursuant to any such request.

7.     **Defendants' Attorneys' Fees & Expenses.**  The Alliance Entities and the Alliance ESOP will bear their own attorneys' fees, expenses and costs.  No amount of the attorneys' fees, expenses or costs of this Litigation incurred by the Alliance Entities, the Alliance ESOP or any fiduciary of the Alliance ESOP or any person that the Alliance Entities or the Alliance ESOP has agreed or does agree to indemnify will be paid by, or charged to, any amounts paid in this Settlement or, directly or indirectly, to the Alliance ESOP account of any Subclass member.

## XII.   APPROVAL OF THE SETTLEMENT

1.     **Final Approval of the Settlement.**  On behalf of Plaintiffs and the Class, Class Counsel will file a Final Approval Motion.  Settling Defendants will either join in or

46

1902007.1

not oppose the Final Approval Motion. The Final Approval Motion will seek and the proposed Final Approval Order will provide for, among other things: (a) Final Approval of the Settlement Agreement pursuant to Fed. R. Civ. P. 23(e); (b) entry of Final Judgment as to the Settling Parties in this Settlement Agreement; and (c) the Court's retention and continuing jurisdiction pending implementation, interpretation, administration, and consummation of the Settlement. At the time of the Final Approval Motion, Plaintiffs may at their option, but are not required to, also seek (a) approval of a Plan of Allocation and (b) approval of an award of fees, expenses and/or Service Award to the Class Representatives.

2.  **Determination Regarding Prohibited Transaction Exemption.** The Independent Fiduciary will issue to counsel for the Alliance Entities, Class Counsel and the Court its determination whether this Settlement constitute a prohibited transaction and whether PTE 2003-39 is satisfied. The responsibility for expenses incurred in connection with the Independent Fiduciary's determination and any opinion by the Independent Fiduciary, will be borne by the Alliance Entities.

3.  **Effective Date of Settlement.** The Effective Date of Settlement shall occur only when each of the following events has occurred and shall be the date on which the last (in time) of the following events occurs: (a) each and every condition in this Settlement Agreement has been satisfied or waived; (b) the Court has entered a Preliminary Approval Order; (c) the Court has entered a Final Approval Order, and (d) the time for appeal of the Final Approval Order has expired (if no appeal is filed) or all appeals have been concluded with the affirmance of the Final Approval Order approving this Settlement Agreement.

## XIII.  SETTLEMENT ADMINISTRATION

1.  **Appointment of Settlement Administrator.** Class Counsel, at its option, may utilize a Settlement Administrator to administer the Settlement. Settling Defendants

47

will have no input on the selection of the Settlement Administrator, but will reimburse Class Counsel for the reasonable expense of the Settlement Administrator within thirty (30) days after the entry of Final Judgment.  If the Settlement Administrator continues to perform work in relation to this Settlement more than thirty (30) days after the entry of Final Judgment, the Alliance Entities will reimburse Class Counsel for the reasonable expense of the Settlement Administrator within thirty (30) days of such written request by Class Counsel.  To the extent that there is any dispute about the reasonableness of such expenses, the reasonableness will be determined by the Court.

2.    **Settlement Administrator's Responsibilities.**  As determined by Class Counsel, the Settlement Administrator may undertake the following tasks to administer this Settlement Fund consistent with the terms of this Settlement and the Plan of Allocation as approved by the Court:  (a) sending the Class Notice to the Class members in a manner consistent with any applicable Court order; (b) providing counsel for the Settling Parties with copies of any objections to the Settlement (to the extent such objections are not filed with the Court); (c) responding to questions from Class members; (d) monitoring the Qualified Settlement Fund and filing all informational and other tax returns necessary or advisable with respect to the Settlement Funds (including without limitations the returns described in Treas. Reg. Section 1.468B-2(k); (e) coordinating any distribution, including with the Independent Fiduciary and/or administrator of the Alliance ESOP; and (f) any other responsibilities assigned by Class Counsel related to administration of the Settlement and consistent with the orders of the Court.

3.    **Administration Costs.**  The Alliance Entities will bear all administration costs of implementing the Settlement, including the costs of providing Class Notice (as set

48

forth in Section VI.5), an Independent Fiduciary, the performance of valuation and the hiring of a qualified independent valuation firm (if the valuation is not performed by the Independent Fiduciary itself), and the reasonable costs of a Settlement Administrator (determined reasonable by agreement of the Parties or the Court), as well as the costs incurred by the Independent Fiduciary, the Settlement Administrator, any independent valuation firm and the costs of any steps necessary to ensure the continued tax-qualification of the Alliance ESOP. No part of the Settlement Funds shall be used to pay for or reimburse any costs incurred by the Alliance Entities or the Alliance ESOP related to administration of this Settlement. In the event that the Settlement is not approved or approval is reversed on appeal, no portion of such costs will be reimbursable to the Alliance Entities by Plaintiffs, the Class, the Subclass or Class Counsel.

4.      **Prohibition on Assessment of Expenses to the Subclass Accounts.** The accounts of Subclass members (whether the accounts consist of amounts paid pursuant to this Settlement or from the proceeds of another settlement) will not be charged or assessed any amount by the Alliance Entities or the Alliance ESOP for any of the following: (1) expenses related to administration or implementation of this Settlement (including any of the expense set forth in Section XIII.3), (2) expenses incurred in allocating or distributing any amounts paid into the Alliance ESOP or the Subclass members' accounts from any other settlement or judgment or (3) any amount paid to the Fenkells to resolve any Claims by or against the Fenkells.

5.      **Tax Treatment of the Alliance ESOP.** The Alliance Entities and the Alliance ESOP will use their best efforts, including any correction procedures necessary (e.g. through EPCRS) to ensure that the Settlement comports with IRS rules, and that the

49

Alliance ESOP maintains its tax qualification. The Alliance Entities will be responsible for bearing all costs related to such procedures and maintaining the tax qualification of the Alliance ESOP. In the event that the IRS raises any issues concerning the Settlement, the Alliance Entities and/or the Alliance ESOP will provide copies to Class Counsel of such correspondence to and from the IRS. Class Counsel, the Class and the Subclass agree to work cooperatively with the Alliance Entities and the Alliance ESOP to resolve any such IRS issues concerning the Settlement.

## XIV.  ASSIGNMENT OF CLAIMS

1.  **Assignment of Plaintiffs' Claims Against David Fenkell to Alliance Entities.** Upon the Effective Date of Settlement, Plaintiffs, on behalf of themselves, the Class, and the Subclass, will and do assign to the Alliance Entities and the Alliance ESOP any Claims that they may have against David Fenkell related to the 2007 Transaction, including any rights the Class or Subclass have as the result of any judgment in this Action to the extent such Claims are above the dollar amount in David Fenkell's Alliance ESOP account, except as to the Retained Claims.

2.  **Assignment of Trustees and Pagelow's Claims Against David Fenkell to the Alliance Entities.** Upon the Effective Date of Settlement, Plaintiffs, on behalf of themselves and the Class, will and do assign to the Alliance Entities any and all Claims, including any rights as the result of any judgment in this action, that have been assigned to the Class by the Trustee Defendants or Pagelow as against David Fenkell arising from the 2007 Transaction.

3.  **Plaintiffs' Retained Claims Against the Fenkell Defendants.** Plaintiffs, on behalf of themselves, the Class and the Subclass (and as to the Claim for attorneys' fees and expenses, Class Counsel), do and will retain (a) any and all Claims against David

50

Fenkell up to the amount that does now or will exist in David Fenkell's Alliance ESOP account, (b) any Claim with respect to the $2,896,000 that David Fenkell received in phantom stock proceeds, the proceeds transferred to his wife, Karen Fenkell, and any Claim for attorneys' fees or expenses related solely to or specifically incurred in pursuit of those Claims, and (c) any Claim for attorneys' fees, expenses or costs to which Plaintiffs or Class Counsel are entitled to pursue pursuant to ERISA § 502(g) against David Fenkell or any other non-Settling Defendant (altogether, the "Retained Claims"). Any amounts recovered by Plaintiffs against the Fenkell Defendants on any of the Retained Claims, whether by settlement or judgment, will belong to Plaintiffs, the Class, and/or the Subclass and are not assigned pursuant to this Settlement Agreement.

4. **Defense and Indemnification by Alliance Entities.** In consideration of the assignment of Claims by Plaintiffs, the Class and the Subclass, the Alliance Entities shall defend, indemnify and hold harmless the Class, Subclass, Class Counsel and the Class's predecessor(s) in interest (i.e. the Trustee Defendants and Pagelow) (collectively, "the Assigning Parties") as to any assigned Claims against the Fenkell Defendants, in any litigation to enforce any judgment against the Fenkell Defendants, as well as against any claims asserted by the Fenkell Defendants against the Assigning Parties in any other litigation.

5. **Assignment of Claims By Defendants Against Alpha to Plaintiffs.** Upon the Effective Date of Settlement, the Alliance Entities and the Alliance ESOP will assign any Claims that they have against the Alpha Defendants (i.e. John Michael Maier and Alpha Investment Consulting). At Class Counsel's option and upon Class Counsel's

1902007.1

request, the Alliance Entities and the Alliance ESOP will additionally or alternatively release any of their Claims against the Alpha Defendants.

6.      **Reversion of any Assigned Claims In the Event of Unenforceability.**
Each of the Settling Parties is accepting assignment of any Claims regardless of the enforceability of such assignments.  In the event that a court subsequently determines that Claims for contribution and/or indemnity are not cognizable under ERISA or that such Claims cannot be assigned, such subsequent determination will have no effect on the validity of the Settlement Agreement.  In the event that a court determines that any such assignment is legally unenforceable, after the exhaustion of any appeals of such determination, the assigned Claims will revert back to the party to this Settlement Agreement that originally assigned the Claim pursuant to this Settlement Agreement.

## XIV.  RELEASES

1.      **Release by Plaintiffs of the Alliance Entities.**  Upon the Effective Date of Settlement, Plaintiffs, the Subclass and the Class will release any and all Claims whatsoever, whether known or unknown, against the Alliance Entities, any and all past and present officers, employees, directors, principals, trustees, insurers, advisors, attorneys and agents of the Alliance Entities, and all predecessors and successors thereof, based upon, arising out of, or in any way related to, directly or indirectly, any duty, responsibility, act or omission related to the 2007 Transaction, except as follows: (a) the Retained Claims shall not be released; and (b) any Claims of Plaintiffs, the Class and the Subclass against David Fenkell related to the 2007 Transaction or this Litigation shall not be released to the extent they are assigned to the Alliance Entities by this Settlement Agreement; (c) any claim for attorneys' fees or expenses against the Alliance Entities shall be released only upon the

52

payment of all agreed-upon fees and expenses by the Alliance Entities pursuant to Section XI.1 and XI.2.

2.     **Release by the Alliance Entities of Plaintiffs.**  Upon the Effective Date of Settlement, the Alliance Entities will release any and all Claims whatsoever, whether known or unknown, against Plaintiffs, the Subclass, the Class, Class Counsel, any and all past and present officers, employees, directors, principals, insurers, advisors, attorneys and agents of Plaintiffs, the Subclass, the Class, and Class Counsel related to this Litigation including any Claims for attorney's fees, costs, expenses or sanctions, relating to the filing, commencement, prosecution or settlement of this Litigation.

3.     **Release by the Alliance ESOP of Plaintiffs.**  Upon the Effective Date of Settlement, the Alliance ESOP will release any Claim or challenge as to the correctness of any distribution or allocation or correctness of the amount in the Alliance ESOP accounts of Plaintiffs or the Subclass.

4.     **Release of the Trachte Trustees and Pagelow by the Settling Defendants.**  Upon the Effective Date of Settlement and the effective date of the settlement between Plaintiffs and the Trustee Defendants and Pagelow, the Alliance Entities and the Alliance ESOP will release any Claims that they have against the Trustee Defendants and Pagelow.  In the event that the effective date of the settlement between Plaintiffs and the Trustee Defendants and Pagelow does not occur, the Alliance Entities and the Alliance ESOP will assign to the Class any Claims that the Alliance Entities and Alliance ESOP have against the Trustee Defendants and Pagelow.

5.     **Release of Trachte and the Trachte ESOP by the Settling Defendants.** Upon the Effective Date of  Settlement and the effective date of the settlement between

53

Plaintiffs and the Fenkell Defendants related to the Phantom Stock Proceeds and the effective date of the settlement between Plaintiffs and the Trustee Defendants and Pagelow, the Alliance Entities and the Alliance ESOP will release any and all Claims against Trachte and its Releasees (any and all past and present officers, employees, directors, principals, insurers, advisors, attorneys and agents of Trachte, and all predecessors and successors thereof) and the Trachte ESOP and its Releasees (any and all past and present fiduciaries, insurers, and all predecessor and successors thereof), based upon, arising out of, or in any way related to, directly or indirectly, any duty, responsibility, act or omission related to the 2007 Transaction, except that the Alliance Entities and Alliance ESOP will not release any Claims against David Fenkell.

(a)     In the event that the effective date of the settlement between Plaintiffs and the Trustee Defendants and Pagelow or the effective date of the settlement between Plaintiffs and the Fenkell Defendants does not occur, at Class Counsel's option, the Alliance Entities and the Alliance ESOP will assign any Claims that they have against Trachte, the Trachte ESOP and their respective Releasees or release any such Claims, except that the Alliance Entities and Alliance ESOP will not assign or release any Claims against David Fenkell.

(b)     In the event that the Alliance Entities or the Alliance ESOP pursue any claim against David Fenkell related to the 2007 Transaction and David and/or Karen Fenkell in turn assert any claim for contribution or indemnity against Trachte or the Trachte ESOP, the Alliance Entities agree as follows:

54

(i)     The Alliance Entitles will litigate and defend and bear the expense of defending the rights of Trachte, the Trachte ESOP and their Releases for the sole and limited purpose of attempting to defeat any claims for contribution or indemnity by David and/or Karen Fenkell;

(ii)    After the Effective Date of Settlement, any judgment by the Alliance Entities or the Alliance ESOP against David and/or Karen Fenkell (which is final and for which all appeals have been exhausted) rendered in favor of the Alliance Entities or the Alliance ESOP shall be deemed satisfied to the extent and only to the extent that Trachte or the Trachte ESOP has been or is determined to be liable to David and/or Karen Fenkell (or is responsible for any judgment to the Fenkells) for that portion or percentage of such judgment.  To the extent necessary to enforce this Settlement Agreement, a copy of this Settlement Agreement may be filed with the court, and without further notice, the court may enter an order that such judgment shall be deemed satisfied to the extent, and only to the extent, that Trachte or the Trachte ESOP has been determined to be liable to or responsible for any portion of judgment obtained by the Alliance Entities or the Alliance ESOP against David and/or Karen Fenkell.

6.    **Limitation on Scope of Release**

(a)    **Non Released Claims.**  Notwithstanding the foregoing or any other language in this Settlement Agreement, the Settling Parties are not releasing Claims to enforce this Settlement Agreement.  Notwithstanding any language in this Section or any other language in this Settlement Agreement, Plaintiffs, the

55

Subclass and the Class are not releasing Claims based on the representations made by any of the Settling Defendants set forth in Section II (Recitals) or Section IV (Conditions and Representations).  Nothing in this Settlement Agreement shall be interpreted to or does release any Claims by Plaintiffs, the Subclass or the Class against any Defendant other than the Settling Defendants.  Nothing in this Settlement Agreement shall be interpreted to or does release any Claims that have been assigned to Plaintiffs, the Subclass or the Class by the Settling Defendants as part of this Settlement Agreement.

(b)     **Claims Against David Fenkell and Karen Fenkell.**  No Claim for fees or costs against the Fenkell Defendants is being released by this Settlement Agreement, nor is any Claim or amount for fees or costs against the Fenkell Defendants being assigned pursuant to this Settlement Agreement and such Claims are specifically retained by Class Counsel, Plaintiffs, the Subclass and the Class.

7.     **Waiver of Insurance Claims by David Fenkell.**  Plaintiffs and Class Counsel agree that, if Claims under ERISA § 502(g) for fees and costs against David Fenkell are settled after the execution of this Settlement Agreement, Plaintiffs shall require, as a condition to any settlement, that David Fenkell expressly waive any and all Claims against the issuer(s) of Federal Insurance Policy No. 8173-2200 and National Union Fire Insurance Company of Pittsburgh PA Policy No. 01-257-67-31, or any of their affiliates (the "Insurers"), which Claims arise from or relate to the 2007 Transaction or this Litigation. The waiver shall be in a form approved by the insurers, such approval not to be unreasonably withheld.

56

8.   **Waiver of Rights to Receive Proceeds From This Settlement.**  The Alliance Entities will not, either directly or indirectly, receive any of the proceeds from this Settlement.

9.   **Waiver of Right to Receive Proceeds of Other Settlements.**  The Settling Defendants agree that they have no right to the proceeds under any other settlement between Plaintiffs and any other Defendant in this Litigation except as specifically assigned herein.

## XV.   ISSUANCE OF NOTICE UNDER THE CLASS ACTION FAIRNESS ACT

1.   **CAFA Notice.**  Pursuant to the Class Action Fairness Act of 2005 ("CAFA"), within the time ordered by the Court and within the time required by CAFA, Settling Defendants, at their own expense, shall prepare and provide notices and materials required by CAFA, as set forth in 28 U.S.C. § 1715(b)(1)-(8), to the Attorney General of the United States and the Attorneys General of all states in which any Class members reside or any other appropriate Federal Official or appropriate State Official identified by the Court ("the Appropriate Officials").

2.   **CAFA Notice Provided to Class Counsel.**  Settling Defendants will provide Class Counsel with a copy of the CAFA notice and materials that the Settling Defendants intend to send to the Appropriate Officials.

3.   **Final Approval and Fairness Hearing.**  In accordance with CAFA, 28 U.S.C. § 1715(d), the Settling Parties will request that the Court set the Final Approval and Fairness Hearing for the later of sixty (60) days from the date on which Class Notice was provided to Class and Subclass members or ninety (90) days from the date on which Defendants are required to provide notice under 28 U.S.C. § 1715(b).

57

1902007.1

## XVI.   EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION

1.     In the event that the Court refuses to enter the Final Approval Order or approval of the Settlement is reversed on appeal, either Class Counsel or the Alliance Entities may void this Settlement so long as the Settling Party exercising such right provides written notice to counsel for all other Settling Parties, which notice shall be delivered within fourteen (14) days of the order that such Settling Party relies upon in exercising its rights under this Section.

2.     In the event that one of the conditions of this Settlement is not met and the Effective Date of Settlement has not yet occurred, the Settling Party who did not fail to meet the condition may void this Settlement so long as the Settling Party exercising such right provides written notice to counsel for all other Settling Parties and the Court which notice will be made within fourteen (14) days of the notification of the condition not being met, but no later than the Effective Date of Settlement.

3.     In the event that the Court refuses to grant the Final Approval Motion or the Final Approval Order is reversed on appeal and one of the Settling Parties exercises its right to withdraw from the Settlement within the time specified above in Paragraph 1 of this Section or one of the Settling Parties exercises its right to withdraw from the Settlement within the time specified above in Paragraph 2 of this Section, (a) the Settlement Funds and Subclass Stock Settlement shall be returned to the Alliance Entities; (b) the Settling Parties will not be released from the Claims asserted in this Action; (c) both this Settlement Agreement and the Settlement Term Sheet shall be void *ab initio*; and (d) the Settling Parties' positions, rights and responsibilities shall be as if neither this Settlement Agreement nor the Settlement Term Sheet ever existed.

58

## XVII.  MISCELLANEOUS PROVISIONS

1.      **No Party Is the Drafter.**  This Settlement Agreement is drafted by all Settling Parties, and is the result of arm's-length negotiations between competent legal counsel; therefore, it shall not be construed more strictly against one Settling Party than any other.

2.      **Headings.**  The headings in this Settlement Agreement are used for purposes of convenience and ease of reference only and are not meant to have any legal effect, nor are they intended to influence the construction of this Settlement Agreement in any way.

3.      **Good Faith.**  The Settling Parties acknowledge that it is their intent to consummate this Settlement.  They agree to exercise their best efforts and to act in good faith to cooperate to the extent necessary to effectuate and implement all terms and conditions of this Settlement Agreement.  The Settling Parties agree that the amount paid to the Settlement Funds and the other terms of the Settlement were negotiated in good faith at arm's length by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

4.      **Modification.**  This Settlement Agreement may be amended or modified only by written instrument signed by, or on behalf of, all Settling Parties affected by the amendment or their successors in interest.

5.      **Representations.**  This Settlement Agreement constitutes the entire agreement among the Settling Parties and no representations, warranties or inducements have been made to any Settling Party concerning this Settlement Agreement or the Settlement Term Sheet, other than the representations, warranties, and covenants contained and memorialized in this Settlement Agreement.  In the event of any conflict between this

59

Settlement Agreement and the Settlement Term Sheet, this Settlement Agreement shall control.

      **6.**      **Authorization.** Each signatory to this Settlement Agreement represents that he or she is authorized to enter into this Settlement Agreement on behalf of the respective parties he or she represents.

      **7.**      **Counterparts.** This Settlement Agreement may be executed in one or more original counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument.

      **8.**      **Binding Effect.** This Settlement Agreement, after Final Approval and subject to any Order of the Court, shall be binding upon, and inure to the benefit of, the successors, assigns, executors, administrators, heirs and legal representatives of the Settling Parties, provided, however, that no assignment by any Settling Party shall operate to relieve such Settling Party of its obligations hereunder.

      **9.**      **Effect of Amendment of the Plan.** No amendment of the terms of the Alliance ESOP Plan Document can be used to defeat, decrease or impair any rights provided to Subclass members pursuant to this Settlement Agreement. Any amendment of the terms of the Alliance ESOP Plan Document can only provide greater rights to Subclass members than provided under this Settlement Agreement.

      **10.**      **Governing Law.** All terms of this Settlement Agreement shall be governed by and interpreted according to the laws of the State of Wisconsin without regard to its rules of conflicts of law, to the extent not preempted by ERISA, and in accordance with the laws of the United States.

11.     **Waiver.**  The waiver of one Settling Party of any breach of this Settlement Agreement by any other Settling Party shall not be deemed a waiver of any other breach of this Settlement Agreement.  The provisions of this Settlement Agreement may not be waived except by a writing signed by the affected Settling Party, or Counsel for that Settling Party, or orally on the record in court proceedings.

12.     **Continuing Jurisdiction.** The Settling Parties agree to submit to the jurisdiction of the Court regarding any disputes related to implementing and enforcing the Settlement embodied in this Settlement Agreement.  Any and all disputes related to this Settlement that are not satisfactorily resolved by the Settling Parties shall be submitted to the Court for resolution.  The Final Approval Order will provide that the Court will have continuing jurisdiction over this Settlement.

13.     **Extensions.**  The Settling Parties reserve the right, subject to the Court's approval, to make any reasonable extensions of time that might be necessary to carry out any of the provisions of this Settlement Agreement.

14.     **Notice.**  Whenever this Settlement Agreement provides for notice to be given to the Settling Parties, such notice shall be served on the Settling Parties through their respective counsel listed on the signature page of this Settlement Agreement.

15.     **No Admission of Liability.**  Neither this Settlement Agreement nor the Settlement, nor any negotiation, nor act performed, nor document executed, nor proceedings held pursuant to or in forbearance of this Settlement Agreement, even if this Settlement Agreement is canceled or terminated: (a) is, or may be deemed to be, or may be used as an admission of, or evidence of the validity of any settled Claims, or of any wrongdoing, negligence, misrepresentation, breach of any duty, violation or liability of the

61

Alliance Entities; (b) is, or may be deemed to be, or may be used as an admission of, or evidence of any infirmity in the Claims asserted by Plaintiffs, the Class or the Subclass; or (c) is, may be deemed to be, or may be used as an admission of, or evidence of, any fault or omission of any Settling Party hereto in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal, including in this Action.  This Settlement Agreement may be used in such proceedings as may be necessary to consummate or enforce this Settlement Agreement, or the Final Order, and any Settling Party may file this Settlement Agreement and/or the Final Order in any action that may be brought against it or any of the Released Parties in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim, or in any action that may be brought to enforce any claim assigned pursuant to this Settlement Agreement.

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound hereby, have caused this Settlement Agreement to be executed by them or their duly authorized counsel, on the dates set forth below.

July 24, 2014

R. Joseph Barton
**COHEN MILSTEIN SELLERS
& TOLL, PLLC**
1100 New York Avenue, NW
West Tower, Suite 500
Washington, DC 20005-3934
(202) 408-4600 Telephone
(202) 408-4699 Facsimile

July 24, 2014

Charles C. Jackson
Emily A. Glunz
**MORGAN, LEWIS & BOCKIUS LLP**
77 West Wacker Drive
Chicago, Illinois  60601-5094
Phone:  (312) 324-1156
Fax: (312) 324-1001
charles.jackson@morganlewis.com

62

jbarton@cohenmilstein.com

Andrew W. Erlandson
**HURLEY, BURISH & STANTON, S.C.**
33 East Main Street, Suite 400
Madison, WI 53703
(608) 257-0945 Telephone
(608) 257-5764 Facsimile
aerlandson@hbslawfirm.com

*Attorneys for Plaintiffs, the Class and
Subclass*

eglunz@morganlewis.com

Christopher A. Weals
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Ave., NW
Washington, DC 20004
Phone: (202) 739-3000
Fax: (202) 739.3001
cweals@morganlewis.com

*Attorneys for Defendants Alliance Holdings,
Inc., A.H.I., Inc. and AH Transition Corporation*

July 24, 2014

Lars C. Golumbic
Sarah A. Zumwalt
**GROOM LAW GROUP, CHTD.**
1701 Pennsylvania Avenue, NW
Washington, DC 20006
Phone (202) 861-6615
Fax: (202) 659-4503
lgolumbic@groom.com
szumwalt@groom.com

*Attorneys for Defendant Alliance Holdings, Inc.
Employee Stock Ownership Plan*

63