IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CAROL CHESEMORE, DANIEL
DONKEL, THOMAS GIECK, MARTIN
ROBBINS, and NANETTE STOFLET, on
behalf of themselves, individually, and on
behalf of all others similarly situated,

                    Plaintiffs,                         OPINION AND ORDER

         v.                                                 09-cv-413-wmc

ALLIANCE HOLDINGS, INC., DAVID B.
FENKELL, PAMELA KLUTE, JAMES
MASTRANGELO, STEPHEN W. PAGELOW,
JEFFREY A. SEEFELDT, TRACHTE
BUILDING SYSTEMS, INC. EMPLOYEE
STOCK OPTION PLAN, ALLIANCE HOLDINGS,
INC. EMPLOYEE STOCK OPTION PLAN,
A.H.I., INC., ALPHA INVESTMENT
CONSULTING GROUP, LLC, JOHN MICHAEL
MAIER, AH TRANSITION CORPORATION, and
KAREN FENKELL,

                    Defendants;

PAMELA KLUTE, JAMES MASTRANGELO,
and JEFFREY A. SEEFELDT,

                    Cross Claimants,

         v.

ALLIANCE HOLDINGS, INC., and STEPHEN W.
PAGELOW,

                    Cross Defendants.

---

        The court previously granted preliminary approval of six settlements based on

term sheets describing the essential elements of the settlements and approved a class

notice based on those terms.  (2/18/14 Order (dkt. #889); 4/9/14 Order (dkt. #913);

Notice (dkt. #910-2).)  There are now several motions before the court, which primarily seek final approval of these class action settlements.  On July 24, 2014, the court held a fairness hearing on these settlements at which all parties appeared by counsel.  While all class members had been properly notified in advance of the basic terms of the various settlements and petitions for attorneys' fees -- as well as the date and time of the hearing (at which some members of the class were present) -- none voiced an objection in writing or orally.

The parties have now filed fully executed settlement agreements, which the court will approve in this opinion and order.  (Dkt. ##899, 960, 966, 984.)  The court will also address plaintiffs' motions for (1) payment of incentive awards (dkt. #921); (2) attorneys' fees as part of the settlement (dkt. #928); and (3) attorneys' fees and costs pursuant to ERISA § 502(g)(1) against David Fenkell (dkt. #934).   In opposing plaintiffs' motion for attorneys' and costs pursuant to ERISA § 502(g)(1), Fenkell raises objections that extend beyond the attorneys' fees issue.  The Alliance defendants were granted an opportunity to respond to his broader objections, which they now have, with Fenkell filing a reply brief as well.  The court will, therefore, address the various issues raised by Fenkell and enter final judgment against him on all unsettled claims, essentially bringing a close to all aspects of the case before this court save one.[1]

---

[1] The court previously appointed an independent fiduciary to complete a valuation of the Alliance and AH Transition Corporation stock and PTE determinations.  (Dkt. #969.) As indicated in that order, the court will retain jurisdiction over enforcement of the settlement, including over any objections by the independent fiduciary based on the PTE determinations.

BACKGROUND

**A. Overview of Settlement Agreements**

The court previously granted plaintiffs' motion for preliminary approval of plaintiffs' settlement with (1) the Alliance defendants (Alliance Holdings, Inc., A.H.I., Inc. and AH Transition Corporation); (2) the Trachte Trustee defendants (James Mastrangelo, Jeffrey Seefeldt, Pamela Klute and Stephen Pagelow);[2] (3) the Trachte defendants (Trachte Building Systems, Inc. and Trachte Building Systems, Inc. Employee Stock Ownership Plan); (4) the Alpha defendants (Alpha Investment Consulting Group, LLC and John Michael Maier); (5) defendants David and Karen Fenkell on claims concerning the phantom stock proceeds; and (6) David Fenkell regarding claims against Fenkell's Alliance ESOP account.  Plaintiffs' remaining, unsettled substantive claims are against defendant David Fenkell alone.

**B. Plan of Allocation**

The Plan of Allocation sets forth the cash and other remedies available to class and subclass members.  First, the "Gross Class Cash Settlement Fund" consists of (1) $3.25 million paid pursuant to the Trachte Trustees Settlement, plus any earnings and interest accrued thereon, and (b) the $150,000 paid to the escrow account pursuant to the Alliance Settlement.  Taxes, attorneys' fees and costs, and any incentive awards will be paid from this gross settlement fund.  That fund will be distributed to authorized

---

[2] For ease of reference, the court includes Pagelow in the collective descriptor "Trachte Trustee defendants."

members of the class who received any allocation to their Trachte ESOP account after the August 29, 2007 (excluding certain individuals, *e.g.*, individual defendants and other fiduciaries). The "Net Class Cash Settlement Fund" will be allocated *pro rata* based on those members' units or shares of Trachte stock in the account, less any shares of such stock that were received for Alliance or AH Transition stock in the 2007 Transaction.

The Plan of Allocation sets forth the settlement award to subclass members. That settlement consists of both stock and cash. The Subclass Stock Settlement consists of $5.5 million in shares of Alliance and AH Transition stock as valued by the independent fiduciary appointed by the court. The "Gross Subclass Cash Settlement" consists of: (a) $1.5 million, plus any earnings and interest, in the Alliance Escrow Account; (b) $900,000, plus any earnings and interest, minus any payments by Trachte (including payments by Trachte for attorneys' fees and expenses) in the Fenkell Escrow Account;[3] and (c) $375,000, plus any earnings and interest accrued, from the Fenkell Alliance ESOP Account Settlement. The stock and cash will be distributed to any member of the Class whose Alliance ESOP account was transferred to the Trachte ESOP in the August 29, 2007, Transaction, excluding individual defendants and fiduciaries. The total value of the Subclass Settlement will be allocated on a *pro rata* basis for each recognized claim compared to the total of all recognized claims. The Plan also describes various categories

---

[3] The Fenkells agree to deposit $1.8 million in an escrow account to resolve all claims concerning the $2.896 million phantom stock option. The subclass and Trachte agree to split the $1.8 million proceeds evenly, with the subclass receiving $900,000, plus $270,000 toward attorneys' fees from Trachte's $900,000 allotment.

of claimants -- full immediate, partial immediate, installment and deferred -- based on whether the claimant has reached the normal retirement age, as well as other criteria.

Finally, the Plan of Allocation provides for assigning a seller's note with a market value as of December 2013 of approximately $369,000 to the Trachte ESOP to be held in trust as an asset of the Trachte ESOP for the exclusive benefit of the participants.

## C.  Notice Process

Pursuant to the court's second order granting preliminary approval, on April 21, 2014, the settlement administrator retained by class counsel, Gilardi & Co., L.L.P., sent a notice and questionnaire to 390 class and subclass members.  Gilardi established a toll-free number for potential questions and a website containing documents and updates related to the settlement.  In addition, class counsel held two town hall meetings, lasting approximately two hours each, at Trachte headquarters in Sun Prairie, Wisconsin.  Those unable to attend in person were provided an opportunity to participate electronically or by telephone.  Class counsel received and responded to a number of inquiries either in person or by telephone or electronically.  Through the date of the final approval hearing on July 24, 2014, no objections have been received from class or subclass members.

OPINION

## I.  Final Approval of Class Action Settlements

The court may approve a proposed class action settlement only if it determines that it is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In making this

determination, the court considers various factors, including "the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement." *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996); *see also Mirfasihi v. Fleet Mortg. Corp.*, 450 F.3d 745, 748 (7th Cir. 2006) (listing "the probability of plaintiff prevailing on its various claims, the expected costs of future litigation, and hints of collusion" as factors for consideration).

This case presents a somewhat unique situation given that the settlements occurred after a full trial and final decision on the merits of plaintiffs' claims (except as to a lone, remaining claim for phantom stock proceeds brought against defendant Karen Fenkell) as well as a subsequent trial and final decision as to remedies (again except for the claim against Karen Fenkell).  At least with respect to a judgment from *this* court, there is certainty, although questions and risks remain with respect to appeal and ability to collect.   In light of this, the court's primary focus is on whether the settlement is fair and reasonable as compared to the "net expected gain." *In re Fort Wayne Telsat, Inc.*, 665 F.3d 816, 820 (7th Cir. 2011).   "The 'expected gain' is the gain if the judgment is favorable, discounted (that is, multiplied) by the probability of a favorable judgment." *Id.*

Here, the court awarded a total of $17.2 million plus prejudgment interest, which as explained below is valued at approximately $2 million (*see infra* p.19), to the class and

6

subclass as part of its remedies award *plus* an anticipated award of reasonable attorneys' fees and costs pursuant to ERISA § 502(g)(1).  The combined settlement contemplates total payments of approximately $17.3 million, although approximately $5.5 million of that consists of negotiated attorneys' fees and costs, and class counsel seeks additional fees from the common fund portion of the total settlement as described below.  After fees and costs, the class will, therefore, receive approximately $12 million in cash and stock, or roughly 62% of the total remedies award, inclusive of prejudgment interest.

Given the limited, remaining risks before this court, this combined settlement amount is arguably low, but discounting for the uncertainties of further complications, delays and possible reversals on appeal and in ultimate collection, as well as considering members' understandable desire for closure and prompt payment, this settlement is more than understandable.  Indeed, it strikes the court as fair, reasonable and adequate.

Looking at the *discrete* settlements, each also appear fair, reasonable and adequate. For example, the court ordered the Trachte Trustee defendants to restore $6.47 million (plus prejudgment interest) to the Trachte ESOP, but the settlement provides for a $3.25 million in cash to the class to satisfy any claims against the Trustee defendants.  As plaintiffs explain, the total insurance available to the Trustee defendants to satisfy claims against them was $7 million, of which only $3.5 million remains after allowable discounts for defense costs.  Given the limited personal resources of those individuals, the proportion of that settlement is certainly fair and reasonable.  Similarly, the settlement with David and Karen Fenkell to restore $1.8 million of the $2.896 million phantom stock options also appears fair and reasonable.

7

Further evidence of the essential fairness of the overall settlement here is that there were no objections filed to the proposed settlements, nor is there any sign of collusion.  If anything, the varied positions of not only plaintiffs against the defendants, but amongst defendants, and the lengthy negotiations only after plaintiffs' trial victories, confirm these separate settlements were the product of hard fought, arms-length negotiations.

While the issued class notice was based on provisions in the term sheets, rather than the final, executed settlement agreements, the court finds that any differences between the terms sheets and final agreements are not material, and the class notice adequately described the settlement.  *See generally* 2 McLaughlin on Class Actions § 6:17 (10th ed. 2013) ("The settlement notice does not need to describe every facet of the settlement, or describe in exhaustive detail those features it does describe. It must contain enough information about the settlement and its implications for participants to enable class members to make an informed decision about whether to be heard concerning the settlement or, if allowed, to opt-out.") (citing cases).

Finally, in his opposition to plaintiffs' motion for attorneys' fees pursuant to ERISA § 502(g)(1), Fenkell attempts to raise what amounts to a back-door (and certainly self-serving) objection to the settlement between plaintiffs and the Alliance defendants. Fenkell argues that any assignment of plaintiffs' unsettled claims against Fenkell to the Alliance defendants as part of the settlement will violate ERISA because it would be "the equivalent of a contribution to Alliance."  (Fenkell's Opp'n to Pls.' Mot. for Atty's Fees (dkt. #938) 27.)   Putting aside the issue of whether Fenkell is correct that ERISA

prohibits contribution between co-defendants,[4] Fenkell lacks standing as a non-settling party to raise an objection to the settlement agreement between plaintiffs and the Alliance defendants unless he can show he would face "plain legal prejudice" as a result of the agreement. *Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 248 (7th Cir. 1992). A "settlement which does not prevent the later assertion of a non-settling party's claims, although it may force a second lawsuit against the dismissed parties," does *not* constitute legal prejudice. *Id.* at 247. Here, whether ERISA permits contribution -- not to mention whether the Alliance defendants stepping in the shoes of plaintiffs in executing a judgment against Fenkell can be characterized properly as "contribution" -- are issues that need not be decided by this court to find that the settlement between plaintiffs and the Alliance defendants is fair and reasonable. Indeed, to the extent any assignment of unsettled claims may prove to be worth less than the Alliance defendants are paying as a matter of law or fact is a bonus to the plaintiff class, not a reason for this court to disapprove it.

## II. Incentive Fees for Class Representatives

Also before the court is plaintiffs' motion for payment of incentive awards to the five class representatives. (Dkt. #921.) Specifically, plaintiffs seek an award of $25,000

---

[4] A cursory review of the case law suggests that this issue is far from settled.

to Nanette Stoflet, and $10,000 each to Carol Chesemore, Martin Robbins, Thomas Gierck and Daniel Dockel.  (*Id.* at 13.)[5]

Incentive awards for class representatives are fairly common.  *See In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722-23 (7th Cir. 2001) (describing purpose of incentive awards as "induc[ing] individuals to become named representatives").  In deciding whether an incentive award is appropriate and what the amount should be, courts may consider "the actions the plaintiff has taken to protect the interest of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

As detailed in plaintiffs' brief, here, the class representatives (1) initiated the lawsuit by contacting plaintiffs' counsel after the 2007 town hall meeting describing the transaction at issue; (2) took on the risk of ERISA's fee-shifting statute in filing the lawsuit; (3) risked retaliation as current employees at least at the time the lawsuit was filed (with the exception of plaintiff Donkel); (4) participated in discovery efforts, including, their own depositions and attending depositions of other witnesses; (5) served as witnesses or attended the two trials; and (6) participated in numerous settlement

---

[5] The class notice disclosed that class counsel may seek an incentive award for the class representatives, though the notice did not disclose the exact amounts of the incentive awards sought.  (Notice (dkt. #910-2).)  As described above, none of the class members objected to the proposed settlement.  Moreover, none of the defendants opposed plaintiffs' motion for incentive awards.  Finally, for reasons explained above, the court finds the amounts sought reasonable and certainly no greater than one might expect given the commitment required to see this litigation through to conclusion.

discussions.   Accordingly, the court finds a sufficient basis for approving incentive awards.

As for the appropriate amount, district courts in this circuit have awarded incentive fee awards ranging from $5,000 to $25,000.   *See Cook*, 142 F.3d at 1016 (affirming incentive award of $25,000 where class representative spent hundreds of hours with attorney, providing them with an abundance of information, and reasonably feared workplace retaliation); *Redman v. RadioShack Corp.*, No. 11 C 6741, 2014 WL 497438, at *12 (N.D. Ill. Feb. 7, 2014) (awarding $5,000 to each class representative); *In re Sw. Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 4510197, at *11 (N.D. Ill. Aug. 26, 2013) (approving $15,000 award for two class representatives because of active participation in litigation); *Heekin v. Anthem, Inc.*, No. 1:05-cv-01908-TWP-TAB, 2012 WL 5878032, at *1 (S.D. Ind. Nov. 20, 2012) (awarding $25,000 each to two class representatives based on extensive involvement over seven years of litigation); *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 412 (E.D. Wis. 2002) (approving $5,000 awards where plaintiffs were "required to respond to discovery requests, produce documents, meet with counsel in preparation for their depositions and undergo depositions").[6]

---

[6] An empirical study of incentive awards found that the average award was $15,992, and that the award on average represented 0.16% of the total class recovery.   Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303, 1308 (2006).   Here, the total recovery is approximately $17.3 million (including attorney's fees and costs), and therefore the total incentive award of $65,000, represents 0.38% of the total award.   While this amount is greater than the average, the court finds it reasonable, especially in light of the length of this action and the extensive involvement of the class representatives.   Moreover, the average

Here, discovery was extensive and settlement occurred after both liability and damages trials, on the eve of entry of judgment. Coupled with the class representatives' apparent personal involvement -- especially that of plaintiff Nanette Stoflet -- the court finds the requested awards appropriate, and will grant plaintiffs' motion.

## III.  Attorneys' Fee Award and Costs as part of Settlement

Plaintiffs are seeking fee awards based on (1) negotiated amounts for two of the settlements and (2) 33% of the settlement funds for which plaintiffs did not negotiate a specific amount. In the first category of attorneys' fees and costs award, the Alliance defendants, as part of their settlement, agreed to pay $5,345,000 to class counsel in attorneys' fees and costs. Similarly, the Trachte defendants agreed to pay 30% of the $900,000 Trachte received as part of the Fenkells' settlement of the phantom stock options claim as attorneys' fees and also agreed to contribute $25,000 towards costs. In the second category, plaintiffs seek an award of 33% from each of the three "common funds": (1) $3.25 million settlement fund from the Trachte Trustees; (2) $900,000 from the settlement with the Fenkells on the phantom stock options claim; and (3) $375,000 from the Fenkells. In addition to the fees sought as part of the class action settlement, plaintiffs also seek attorneys' fees and costs pursuant to ERISA § 502(a)(1) from David Fenkell based on the unsettled claims. The class notice described each of these category of fees sought. (Notice (dkt. #910-2) p.15.)

---

award across the five class representatives is $13,000, which is slightly less than the average in the empirical study.

### A. Negotiated Fees

Plaintiffs contend that the court should review their first category of requests for attorneys' fees -- those premised on fee amounts negotiated with defendants -- using the lodestar method.  (Pls.' Mot. (dkt. #928) 20 (citing *Redman v. RadioShack Corp.*, No. 11 C 6741, 2014 WL 497438, at *9 (N.D. Ill. Feb. 7, 2014); *Kearney v. Hyundai Motor Am.*, No. SACV 09-1298-JST, 2013 WL 3287996, at *7-8 (C.D. Cal. June 28, 2013)).)  The lodestar is "the product of the hours reasonably expended on the case multiplied by a reasonable hourly rate." *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014).

Counsel for plaintiffs have spent over 16,000 hours of professional time on this action from its inception until April 30, 2014, at current hourly rates ranging from $395 (for lower-level associates) to $895 (for highest-level partners), for a total lodestar amount of $7,948,619.50.  (Declaration of R. Joseph Barton ("Barton Decl.") (dkt. #936) ¶¶ 68-69, 73; *id.* Ex. F (dkt. #936-6).)[7]  In light of the length of this case, involving extensive discovery, motions practice (including, motions to dismiss, motion for class certification, motions for summary judgment), two trials, and ongoing settlement discussions, the court finds that the total amount of time spent on this action is reasonable.  Moreover, class counsel has demonstrated that their hourly rates are on par with the market rates charged by other plaintiffs' firms handling ERISA breach of fiduciary duty cases, recognizing that ERISA cases involve a national rate standard.  (Pls.' Br. (dkt. #928) 36-37.)

---

[7] The court agrees with plaintiffs that in determining a fee award is it appropriate to rely on *current*, rather than historical, rates.  (Pls.' Br. (dkt. #928) n.12.)

While this total amount does not distinguish -- and it would be difficult, if not impossible to distinguish -- between time spent with respect to pursuing overlapping claims and remedies against the various defendants, the bulk of the fee request under the first category concerns the approximate $4.7 million award as part of the settlement with the Alliance defendants.[8]   The contribution to the total settlement from the Alliance defendants represents approximately 60% of the total settlement ($7 million in cash and stock out of a total contribution of approximately $12 million).  As such, it is reasonable for the Alliance defendants to pay the bulk of the attorneys' fee award under the lodestar method.  *See also Goodyear v. Estes Exp. Lines, Inc.*, No. 1:06-CV-863, JDT-TAB, 2008 WL 687130, at *4 (S.D. Ind. Mar. 10, 2008) (holding that an attorneys' fee request by agreement of the parties that does not diminish the class members' award is "presumptively reasonable").[9]

In their settlement with Trachte defendants, Trachte agreed to pay $270,000 in attorney's fees and $25,000 in expenses, separate from the $900,000 the subclass will receive from the Fenkells' phantom stock option claim.  Similarly, this request for fees is

---

[8] The Alliance defendants agreed to pay a total of $5.325 million in attorneys' fees and expenses, plus an additional $20,000 toward expenses incurred in 2014.  Class counsel proposes that the Alliance settlement should cover approximately 60% of the total costs incurred by plaintiffs since their settlement represents approximately 60% of the total settlement.  The court finds this method reasonable, and therefore has allocated $4,693,361 of the $5,325,000 award toward fees, with the remaining $631,639 allocated toward expenses.

[9] Of course, this presumption is lessened by an absence of a true, arm's length negotiation over the amount appropriately allocated to fees.  This is because defendants' primary interest, if not sole interest, is total dollars paid.  Even if the negotiations involved specific discussions about the likely *additional*, fee award owed by statute, the bottom line is still the total amount paid.

separate from the cash contribution to the class members.  Regardless, the court finds a $270,000 fee award based on the proportion of the $900,000 contribution compared to the total class settlement contribution is reasonable.

### B.  Common Fund Fees

As for the second category of attorneys' fees requests, class counsel seeks a fee award representing one-third of the "common fund" settlements.  In other words, class counsel seeks (1) approximately $1.1 million from the Trachte Trustees $3.25 cash contribution to the class settlement; (2) $300,000 from the $900,000 contribution from the Fenkells' phantom stock option settlement; and (3) $125,000 also from the Fenkells based on claims concerning David Fenkell's Alliance ESOP account.  "When attorney's fees are deducted from class damages, the district court must try to assign fees that mimic a hypothetical *ex ante* bargain between the class and its attorneys."  *Williams v. Rohn & Haas Pension Plan*, 658 F.3d 629, 635 (7th Cir. 2011) (citing *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718-19 (7th Cir. 2001)).[10]

In making this determination, the court considers "actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions," in addition to "the amount of work involved, the risks of

_____

[10] Recently, the Seventh Circuit clarified -- or arguably simply reiterated -- that a district court may opt to review a request for attorneys' fees from a common settlement fund using the lodestar method.  *Am. Art China Co., Inc. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014) ("[I]n our circuit, it is legally correct for a district court to choose either.  Doing so is obviously not an abuse of discretion."); *see also Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994) (approving both methods based on the circumstances).

nonpayment, and the quality of representation." *Williams*, 658 F.3d at 635-36 (quoting *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005)) (citing *Synthroid*, 264 F.3d at 721).

While class counsel attempts to cabin the first category of fees from their fee request from the common fund settlement, the court opts to consider the reasonableness of the total fee award. If one were to add the attorneys' fees and costs in the first category described above to the class settlement contribution, the total negotiated settlement would be approximately $17.3 million ($11.675 million to the class and subclass plus $5.64 million in negotiated attorneys' fees and costs). As such, the $4,963,361 already awarded by the court under the first category of fees represents approximately 29% of the total negotiated settlement. Plaintiffs request an additional $1.525 million from the common settlement funds, bringing the award up to 37% of the total settlement fund. This strikes the court as too high on an *ex ante* contingency fee basis, but perhaps not on a lodestar basis. An award of 25% of the common fund settlements, would result in an additional $1.13 million in fees, for a total of $6.095 million, which represents approximately 35% of the total settlement. The court finds this amount from an *ex ante* approach to be reasonable and consistent with other awards in common fund class actions. (Pls.' Br. (dkt. #928) 30 (describing awards ranging from 20% to 40% in common fund class action settlements).) Moreover, assigning a lower percentage to this additional recovery is consistent with negotiated fee agreements that guarantee plaintiffs' counsel a higher percentage of the first dollars in and a lower percentage of longer recoveries; in this case, the reduction hits at just over the first $11

16

million recovered.  Accordingly, the court will award $812,500.00 in attorney's fees from the Trachte Trustees common fund settlement, $225,000.00 from the Trachte ESOP common fund settlement, and $93,750.00 from the settlement with David Fenkell concerning the Alliance ESOP claim.

### C. Costs

Class counsel also seeks reimbursement of costs advanced by class counsel in the total amount of $1,068,005.29, and provides documentation in support of that request. (Barton Decl., Ex. G (dkt. #936-7).)[11]  As described above, the court -- consistent with class counsel's request -- has apportioned $631,639.00 of the total $5.325 million combined payment from the Alliance defendants to costs.  Moreover, the Alliance defendants agreed to pay $20,000 to cover costs in 2014, for a total contribution to costs of $651,639.00.  Trachte ESOP and Trachte Building Systems also agreed to contribute $25,000 to cover costs as part of their settlement.  The court will, therefore, award the remainder $391,366.29 from the common fund.

---

[11] For reasons which are not clear to the court, class counsel removed $13,454.92 from its costs request in light of Trachte's agreement to pay up to $25,000 in costs.  Moreover, class counsel allotted the $20,000 from the Alliance Entity defendants to 2014 expenses, but provided no record of 2014 costs.  The court finds it easier to simply consider one total request and apportion the costs across defendants.  Accordingly, the court has added the $13,454.92 back into the total amount.  Class counsel has not provided any detail on the amount of expenses in 2014, but given that that the only activities have involved finalizing settlements, the court will assume that those expenses are limited.

**IV. Unsettled Claims Against David Fenkell and Award of Attorneys' Fees**

Finally, plaintiffs seek an award of attorneys' fees and costs against defendant David Fenkell pursuant to ERISA § 502(g)(1), which allows an award to a party who has achieved "some success on the merits."  While the class has settled two claims with Fenkell and his wife, the settlements do not resolve the court's finding (1) that Fenkell, along with the Alliance defendants, are jointly and severally liable to restore to the Alliance ESOP $7,803,543 plus prejudgment interest; and (2) that Fenkell and Alliance Holdings shall indemnify the Trachte Trustees.  (Remedies Order (dkt. #790) 37-38.)

In the face of plaintiffs' motion for attorneys' fees, Fenkell responds with a panoply of objections, a number of which are unrelated -- or at most, tangentially related -- to plaintiffs' motion.  Recognizing this, the Alliance defendants sought leave to reply, which they have now done, to which Fenkell has also filed a sur-reply.  The court addressed above Fenkell's purported objection to the settlement between the Alliance defendant and plaintiffs.  Fenkell's other objections primarily concern whether the Alliance defendants' settlement "extinguished" his liability, thereby rendering any judgment against him moot and, in turn, undermining any basis for awarding attorneys' fees to plaintiffs pursuant to ERISA § 502(g)(1).[12]

**A.  Judgment Against David Fenkell**

---

[12] This opposition is oddly framed, in that Fenkell raises these objections but then indicates that he will "petition" the court after the settlements are approved.  (Fenkell's Opp'n (dkt. #938) 15.)  The court sees no reason for delaying entry of judgment in this case, and therefore will resolve the issues raised by Fenkell rather than waiting for some future filing raising the same issues.

First, Fenkell argues that the settlements described above result in a payment of $7,894,000, which exceeds the $7,803,543 awarded by the court in its remedies decision. (Fenkell's Opp'n (dkt. #983) 21.)   Not only is Fenkell's math wrong, but it skirts the court's award of prejudgment interest in order to make the math work.   In arriving at the $7,894,000 number, Fenkell adds the following amounts:

- $5.5 million in stock to the subclass from the Alliance defendants;

- $1.5 million in cash to the subclass from the Alliance defendants;

- $150,000 in cash to the *class* from the Alliance defendants;

- $369,000 value of the seller's note assigned to plaintiffs by the Alliance defendants; and

- $375,000 from the Fenkell's Alliance ESOP account as part of plaintiffs' settlement with the Fenkells.

As emphasized by the italics above, the $150,000 in cash to the class should not be included in this creative accounting at all, since the $7.8 million award only concerns subclass claims, not class claims. More importantly, the court also awarded prejudgment interest to be calculated from the date of the breach (August 29, 2007) at the current prime rate, compounded quarterly.   (6/4/13 Opinion & Order (dkt. #790) 37.)   Based on that order, plaintiffs calculated total prejudgment interest through August 29, 2014, as $1,984,471.42, for a total award of $9,788,014.42:

| Time (Years) | Year | Award | Prime Interest Rate | Prejudgment Interest | Award + Prejudgment Interest |
|---|---|---|---|---|---|
| 1 | 2008 | $7,803,543.00 | 3.25% | $ 256,722.86 | $ 8,060,265.86 |
| 2 | 2009 | $7,803,543.00 | 3.25% | $ 521,891.45 | $ 8,325,434.45 |
| 3 | 2010 | $7,803,543.00 | 3.25% | $ 795,783.62 | $ 8,599,326.62 |
| 4 | 2011 | $7,803,543.00 | 3.25% | $ 1,078,686.36 | $ 8,882,229.36 |
| 5 | 2012 | $7,803,543.00 | 3.25% | $ 1,370,896.11 | $ 9,174,439.11 |
| 6 | 2013 | $7,803,543.00 | 3.25% | $ 1,672,719.04 | $ 9,476,262.04 |
| 7 | 2014 | $7,803,543.00 | 3.25% | $ 1,984,471.42 | $ 9,788,014.42 |

| | | |
|---|---|---|
| Award | | $7,803,543.00 |
| Prime Interest Rate | | 3.25% |
| Compounding Periods / ' | | 4 |
| Years | | 7 |
| Interest | $ | 1,984,471.42 |
| AWARD + PREJUDGMENT INTEREST | $ | 9,788,014.42 |

(Declaration of Alina Lindblom, Ex. A (dkt. #943-1).)

Fenkell responds by arguing that the court should effectively reconsider its prejudgment interest award. In Fenkell's view, the settlement negotiated between plaintiffs and the Alliance defendants effectively assigns the prejudgment interest to the Alliance defendants, and as such, it would not serve the purpose of prejudgment interest to award it in a judgment against Fenkell. (Fenkell's Opp'n (dkt. #938) 26.)

In its remedies order, the court described its reasons for awarding prejudgment interest in this case. (*See* 6/4/13 Opinion & Order (dkt. #790) 33-34.) Fenkell's argument here fails to raise any credible basis for upending that award. The prejudgment interest award was intended to compensate plaintiffs fully. The fact that this award likely provided plaintiffs with another bargaining chip in their settlement with the Alliance defendants has nothing to do with plaintiffs' right to receive full compensation from a nonsettling defendant. Similarly, it has nothing to do with the fact that the

20

Alliance defendants have separately negotiated the right to pursue Fenkell for the judgment entered against him.  The court sees no basis for reconsidering this award, and further finds that plaintiffs' calculation of the amount as $1,984,471.42 is sound.

The Alliance defendants and Fenkell have already been adjudged jointly and severally liable to the subclass for a total of $9,788,014.42.  Because plaintiffs are not allowed to recover more than their total damages, the court must determine the judgment against Fenkell on his unsettled claims in light of the plaintiffs' settlements with other defendants.  *See Donovan v. Robbins*, 752 F.2d 1170, 1178 (7th Cir. 1985) ("Since a plaintiff's total recovery, from all the tortfeasors together, is not allowed to exceed his total damages, the amount that the nonsettling defendants will have to pay will be smaller, the larger the settlement is.") (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 348 (1971)).

As part of the settlements, plaintiffs have received $7,744,000 to cover plaintiffs' award for subclass claims of $7.8 million plus prejudgment interest, leaving $2,044,014.42 including prejudgment interest unsatisfied by the settlements.   In *Donovan*, the Seventh Circuit embraced the proportionate or comparative fault approach to determine the amount of a judgment against a non-settling defendant.  *Donovan*, 752 F.2d at 1181 (describing the approach as a "neat solution"); *see also Lumpkin v. Envirodyne Indus., Inc.*, 933 F.2d 449, 464 (7th Cir. 1991) (explaining that *Donovan* "advocated the adoption of a rule based on comparative fault" where "no party pays more than its adjudicated fair share").  Under this approach -- which contemplates a settlement before a finding of damages -- the court "fixes the percentage of the plaintiff's damages that is

21

attributable to the fault of the settling defendants, multiplies that percentage by the judgment against the nonsettling defendants, and deducts the resulting amount from the judgment." *Id.* at 1180.

In light of the procedural posture of this case, where the court awarded and allocated damages before any defendant settled, the court need not hold a hearing as Fenkell suggests.   In the remedies order, the court previously concluded "of the defendants found liable, Fenkell is far and away the most culpable party."   (6/3/14 Opinion & Order (dkt. #790) 30.)   Given this earlier finding, as well as the court's previous factual findings in this case as a whole, the court finds compelling evidence to conclude that Fenkell's crucial role in developing overseeing and implementing the 2007 transaction makes him responsible for at least 51% of plaintiffs' damages, including in particular at least 51% of the damages attributable for the wrongful conduct of the Alliance defendants.[13]   The court need not fix a specific percentage, however, because the unsatisfied portion of this part of the remedies award -- $2,044,014.42 -- is far less than

---

[13] The court makes this finding for purposes of assigning fault generally and allocating responsibility with respect to plaintiffs' fees and costs, but since the Alliance defendants did not pursue a cross claim for contribution from Fenkell in this case the court will not rule on the merits of that specific claim.

51% of the total award.[14]  As such, the court finds that a judgment against Fenkell in the amount of $2,044,014.42 is fair under a proportionate or comparative approach. [15]

In addition to entering judgment against Fenkell in that amount, the court will also enter judgment requiring him to indemnify defendants Mastrangelo, Seefeldt and Klute for any compensatory relief they are required to pay.  (6/4/13 Opinion & Order (dkt. #790) 38.)  Whether the fact that those defendants settled plaintiffs' claims against them with insurance proceeds alone moots this part of the judgment, as Fenkell now argues, is not an issue before in this case.[16]

## B.  Award of Attorneys' Fees Pursuant to ERISA § 502(g)(1)

Plaintiffs also seek an award of attorneys' fees and costs against Fenkell pursuant to ERISA § 502(g)(1) in the amount left unpaid by the settling Alliance defendants, based on their total lodestar fees of $7,948,619.50.  (Pls.' Opening Br. (dkt. #934).)[17]  ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1), provides:

---

[14] By way of example, if Fenkell were 51% at fault, the amount attributable to his fault would be $4,991.887.35; if 75% at fault, $7,341,010.82; and if 90% at fault, $8,809.212.98.  Indeed, if Fenkell were at least 21% at fault, a judgment in the full amount of the unsatisfied portion of the total judgment would be justified.

[15] In the alternative, if the court were to adopt a "*pro tanto* approach," which involves "accounting for the settlement with a dollar-for-dollar reduction in the damages . . . owed" by the nonsettling defendant, the result would be the same.  *See Schadel v. Iowa Interstate R.R., Ltd.*, 381 F.3d 671, 674 (7th Cir. 2004).

[16] As a legal matter, this would now appear to be a subrogated claim of the insurers, but that, too, is not an issue before the court.

[17] Fenkell argues that plaintiffs' request violates Fed. R. Civ. P. 7(b)(1)(C) because plaintiffs fail to define the relief sought.  (Fenkell's Opp'n (dkt. #938) 10 n.5.)  Fenkell's

> In any action under this subchapter (other than an action
> described in paragraph (2)) by a participant, beneficiary, or
> fiduciary, the court in its discretion may allow a reasonable
> attorney's fee and costs of action to either party.

Recently, in *Hardt v. Reliance Standard Life Insurance Co.*, 560 U.S. 242 (2010), the

Supreme Court provided guidance to district courts in exercising discretion under this

fee-shifting provision.  The Court found that a party need not be a prevailing party, like

for example, in civil rights cases under 42 U.S.C. § 1988.  Rather, the party must simply

show "some degree of success on the merits before a court may award attorney's fees

under § 1132(g)(1)." *Id.* at 245.

Once a party has shown "some success on the merits," the court decides whether

awarding fees is appropriate, employing one of two tests: the substantial justification test

and the five-factor test.  *Raybourne v. Cigna Life Ins. Co. of New York*, 700 F.3d 1076, 1089

(7th Cir. 2012).  More recently, the Seventh Circuit took the approach that the district

court need *only* consider whether a party achieved some degree of success on the merits.

*Temme v. Bemis Co., Inc.*, -- F.3d --, No. 14-1085, 2014 WL 3843789, at *4 (7th Cir. Aug.

6, 2014).

This court need not delve into the arguable differences in the *Raybourne* and

*Temme* tests, however, because Fenkell does not challenge plaintiffs' right to an award

under ERISA § 502(g)(1).  Rather, he argues only that there should be *no* judgment

entered against him, and in turn, no attorneys' fees.  The court having already rejected

---

brief, however, belies this argument.  Specifically, Fenkell describes in great detail the
attorneys' fee requests as part of the settlement, even creating a useful chart.  (*Id.* at 11.)

this argument earlier in its opinion, nothing more need be said with respect to plaintiffs'
right to an award of fees.

Plaintiffs' actual requested award is based on plaintiffs' counsel's calculated fees of
$7,948,619.50, which the court has already found to be reasonable.  (*See supra* pp.12-
13.)  While Fenkell asserts that the fees are "patently unreasonable" (Fenkell's Opp'n
(dkt. #938) 19) -- and reiterated this objection at the fairness hearing -- he failed to
provide *any* specific examples of excessive charges, choosing instead to lob this general,
vague objection, contrary to clearly established case law in this Circuit.  *See, e.g., RK Co.
v. See*, 622 F.3d 846, 854 (7th Cir. 2010) (affirming fee award where defendant failed to
"detail his objections to the fee petition such that the court can determine what portion
of the fees, if any, were not reasonably expended"); *Hutchison v. Amateur Elec. Supply, Inc.*,
42 F.3d 1037, 1048 (7th Cir. 1994) (holding that where defendant fails to "state
objections [to fee requests] with particularly and clarity "the district court should not
reward the defendants by denying the plaintiff's counsel an opportunity to defend his
claim against specific challenges, whatever their source"); *Ohio-Sealy Mattress Mfg. Co. v.
Sealy Inc.*, 776 F.2d 646, 664 (7th Cir. 1985) ("Counsel who oppose the fees have a
similar responsibility to state objections with particularity and clarity.").

This, then, leaves only the question of the appropriate portion to be awarded
against Fenkell specifically.  While the court generally agrees with plaintiffs that an award
of attorneys' fees against multiple defendants where there is a common, intertwined core
of facts need not necessarily be apportioned based on individual damages awards (Pls.'
Opening Br. (dkt. #934) 43 (citing cases)), plaintiffs have secured $4,693,361 in

25

negotiated fees from the Alliance defendants and $270,000 in negotiated fees from the Trachte defendants. Class counsel has also secured $1,131,250 in attorneys' fees from the common fund. The court appreciates plaintiffs' counsel's argument that an award under § 502(g)(1) is to plaintiffs, whereas an award from the common fund goes to class counsel. Regardless, both awards are for reasonably attorneys' fees. Therefore, the court opts to consider the total amount regardless of its specific source. In light of the prohibition against a plaintiff recovering more than that awarded, *see Zenith Radio*, 401 U.S. at 348, and the difficulty of differentiating between fees incurred for claims against individual defendants, the court finds that it is appropriate to reduce any attorneys' fee awarded against Fenkell on plaintiffs' unsettled claims by the amount already received in approved, negotiated fees and awarded out of the common fund.

Accordingly, the court will award plaintiffs $1,854,008.50 in attorney's fees pursuant to ERISA § 502(g)(1) against David Fenkell for the remaining, unsettled claims.[18] Of course, should Fenkell continue to dispute the judgment against him in further proceedings before this court and on appeal, the full amount of additional fees plaintiffs incur will also fall on him alone.

---

[18] As a check on this amount, the court also considered the amount of attorneys' fees reasonably awarded against Fenkell in light of the court's total remedies award. Including prejudgment interest, the court awarded approximately $19 million to plaintiffs. Of that, Fenkell was solely responsible for $2.896 million based on the phantom stock option claim and was jointly and severally liable with the Alliance defendants for approximately $9.8 million. Assuming Fenkell was 51% at fault as compared to the Alliance defendants, it is fair to apportion approximately $7.89 million ($2.896 million plus $4.998 million) to Fenkell, which represents approximately 42% of the total award. Applying that same percentage to plaintiffs' counsel's lodestar fees, Fenkell would be responsible for approximately $3.28 million in fees, well below the amount left unsatisfied by the various fee awards from the settlements.

Finally, the court must consider plaintiffs' request for reimbursement of costs also pursuant to ERISA § 502(g)(1).  Plaintiffs request costs in the amount not covered by the negotiated contribution of costs described above and totaling $391,366.29.  That amount, however, was sought from the common settlement fund, and the court granted that request.  (*See supra* p.17.)  Accordingly, there are no unsatisfied costs to be awarded against Fenkell.

## ORDER

IT IS ORDERED that:

1) plaintiffs' motion for payment of incentive awards to the class representatives (dkt. #921) is GRANTED.  Class representative Nanette Stoflet is awarded $25,000, and class representatives Carol Chesemore, Martin Robbins, Thomas Gierck and Daniel Dockel are awarded $10,000 each;

2) plaintiffs' motion for attorneys' fees and costs (dkt. #928) is GRANTED.  The court awards plaintiffs $4,693,361.00 in attorneys' fees and $651,639.00 in costs from the Alliance defendants, and $270,000 in attorneys' fees and $25,000 in costs from the Trachte defendants.  The court awards class counsel $812,500.00 in attorney's fees from the Trachte Trustees common fund settlement, $225,000.00 from the Trachte ESOP common fund settlement, and $93,750.00 from the settlement with David Fenkell concerning the Alliance ESOP claim.  The court awards class counsel $391,366.29 in costs from the combined common fund settlements;

3) plaintiffs' motion for attorneys' fees and costs pursuant to ERISA § 502(g)(1) against defendant David Fenkell (dkt. #934) is GRANTED.  Plaintiffs are awarded $1,854,008.50 in attorneys' fees against Fenkell;

4) plaintiffs' motion for final approval of settlement agreements (dkt. #946) is GRANTED;

5) the clerk of court is directed to enter judgment against David Fenkell on the unsettled claims as follows:

   a. David Fenkell is liable to restore to the Alliance ESOP $2,044,014.42;

b. David Fenkell shall indemnify defendants Mastrangelo, Seefeldt and Klute for any compensatory relief they are required to pay;

c. David Fenkell shall be barred from continuing as trustee of the Alliance ESOP; and

d. David Fenkell is liable to plaintiffs for attorneys' fees and costs in the total amount of $1,854,008.50;

6) except for the unsettled claims against David Fenkell for which the court will enter judgment as described in paragraph 5 of this order, all other claims in this action are dismissed, with the court retaining jurisdiction over enforcement of the settlements, including over any objections by the independent fiduciary based on the PTE determinations; and

7) the clerk of court is directed to close this case.

Entered this 4th day of September, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

28