IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

CAROL CHESEMORE, DANIEL
DONKEL, THOMAS GIECK, MARTIN
ROBBINS, and NANETTE STOFLET, on
behalf of themselves, individually, and on
behalf of all others similarly situated,

                        Plaintiffs,

       v.

ALLIANCE HOLDINGS, INC., DAVID B.
FENKELL, PAMELA KLUTE, JAMES
MASTRANGELO, STEPHEN W. PAGELOW,
JEFFREY A. SEEFELDT, TRACHTE
BUILDING SYSTEMS, INC. EMPLOYEE
STOCK OPTION PLAN, ALLIANCE HOLDINGS,
INC. EMPLOYEE STOCK OPTION PLAN,
A.H.I., INC., ALPHA INVESTMENT
CONSULTING GROUP, LLC, JOHN MICHAEL
MAIER, AH TRANSITION CORPORATION, and
KAREN FENKELL,

                  Defendants;

PAMELA KLUTE, JAMES MASTRANGELO,
and JEFFREY A. SEEFELDT,

             Cross Claimants,

       v.

ALLIANCE HOLDINGS, INC., and STEPHEN W.
PAGELOW,

             Cross Defendants.

OPINION AND ORDER

09-cv-413-wmc

---

     In an unusual motion in a case that continues to have unusual twists and turns,

defendant Alliance Holdings, Inc., and nominal defendant Alliance Holdings, Inc.

Employee Stock Option Plan ("Alliance ESOP" and collectively "Alliance defendants")

now purport to have a right to a post-judgment, temporary restraining order against defendant David Fenkell.  More specifically, the Alliance defendants now request: (1) an order requiring Fenkell to restore $2.044 million to Alliance ESOP within seven days or hold him in civil contempt; (2) an order freezing Fenkell's assets and establishing a constructive trust to cover the $3.25 million indemnity requirement in the judgment, pending disposition of the Seventh Circuit appeal from this court's final judgment; and (3) an order requiring Fenkell to pay all of their attorneys' fees and costs attendant to obtaining enforcement of the judgment.  (Alliance Br. (dkt. #1066:41.)

BACKGROUND

On September 8, 2014, the court issued a final judgment providing, in pertinent part, that:

  a.  David Fenkell is liable to restore to the Alliance ESOP $2,044,014.42;

  b.  David Fenkell shall indemnify defendants Mastrangelo, See[f]eldt and Klute for any compensatory relief they are required to pay.

(9/8/14 Judgment (dkt. #986); 10/17/14 Am. Judgment (dkt. #999) (amending attorney's fees part of judgment; not pertinent to present motion).)[1]  On November 17, 2014, the court granted the Alliance defendants and plaintiffs' unopposed motion to permit registration in other districts of the judgment for enforcement against Fenkell

---

[1] As part of a settlement agreement between plaintiffs and the Trustee defendants (Mastrangelo, Seefeldt and Klute), the Trustee defendants agreed to pay $3.25 million to plaintiffs.  (Settlement Agreement between Plaintiffs and Trustee Defendants (dkt. #899) p.18.)

pursuant to 28 U.S.C. § 1963.  (Dkt. #1017.)  Significant, post-judgment discovery has occurred since that date.

On August 14, 2015, the Alliance defendants brought the present motion for an *ex parte* temporary restraining order.  (Dkt. #1066.)  In the motion and in supporting materials, the Alliance defendants present evidence that generally demonstrates: (1) since at least 2007 (and perhaps much earlier), David Fenkell has transferred significant amounts of money *from* accounts held in his name or held jointly with his wife *to* accounts held solely in his wife's name; (2) his wife, Karen Fenkell, relies on David Fenkell to manage the money in the accounts held solely in her name, is generally unaware of the amount of money in those accounts, and the placement of those assets; and (3) power of attorney documents give David Fenkell broad control over assets in her accounts and he exercises that control regularly.

The court effectively denied *ex parte* relief by affording Fenkell an opportunity to be heard on the motion.  On August 24, 2015, Fenkell submitted an opposition brief and a declaration.  (Dkt. ##1081, 1082.)  In his response, Fenkell pokes holes in some of the Alliance defendant's proposed facts (or inferences to be drawn from those facts) -- e.g., the amount of control he can exercise over Mrs. Fenkell's Barclays account, or whether the arrangement he and his wife have is unusual -- but for the most part the record appears undisputed.

OPINION

Before addressing the merits of the motion, the court must first address Fenkell's numerous challenges to the Alliance defendants' standing and other jurisdictional concerns.   First, Fenkell argues that Alliance Holdings lacks standing because it was dismissed with prejudice as a result of its settlement agreement with plaintiffs.  While all claims against Alliance Holdings were dismissed, this motion in effect seeks execution of a judgment entered by the court, and the court retains jurisdiction over that request.  *See India Breweries, Inc. v. Miller Brewing Co.*, 612 F.3d 651, 657 (7th Cir. 2010) ("An order is final for purposes of § 1291 if it ends the litigation on the merits and leaves nothing for the [district] court to do but execute the judgment." (internal quotation marks and citation omitted)).   Second, Fenkell contends that the court lacks jurisdiction over Alliance ESOP because it was never a party.  To the contrary, the Alliance ESOP was a nominal defendant, and, as importantly, the court ordered Fenkell to restore money to the Alliance ESOP as part of its remedies order as set forth in the final judgment.  Third, Fenkell challenges this court's jurisdiction over Karen Fenkell, but the court need not revisit this issue since the court is not being asked to exercise jurisdiction over Mrs. Fenkell, at least for now.  Indeed, Karen Fenkell was not found liable and the judgment is not directed against her.  Accordingly, the court is satisfied that the Alliance defendants' motion -- at least as framed by the court -- is properly before it. [2]

---

[2] The court also rejects Fenkell's argument that the court should deny the motion on procedural grounds because the Alliance defendants failed to submit an affidavit or verified complaint.  (Fenkell's Opp'n (dkt. #1081) 11-12.)  Unlike other motions for TRO, this motion comes on a full and complete record, indeed after judgment.  Moreover, the Alliance defendants submit significant evidence in the form of deposition

What is substantially less clear, and oddly ignored by both sides, is whether the Alliance defendants have invoked the proper vehicle for the relief sought. Ignoring the titling of their motion, the Alliance defendants are effectively seeking to execute on a judgment by means of (1) an order requiring Fenkell to pay $2.044 million or be held in civil contempt; and (2) the temporary freezing of assets and establishment of a constructive trust sufficient to cover the order requiring Fenkell to indemnify the Trachte trustee defendants up to $3.25 million. Despite the nature of the relief sought, the Alliance defendants do not invoke Federal Rule of Civil Procedure 69. In fact, they don't even cite to that provision. At least as a starting point, the court will.

Rule 69 provides in part that "[a] money judgment is enforced by execution, unless the court directs otherwise." Fed. R. Civ. P. 69(a)(1). Rule 69 further provides that "[t]he procedure on execution -- and in proceedings supplementary to and in aid of judgment or execution -- must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." *Id.*; *see also Dexia Crédit Local v. Rogan*, 629 F.3d 612, 626-28 (7th Cir. 2010) (requiring district courts to apply procedures of state in which they sit even if assets are located in another state). Moreover, while this case concerns ERISA, the court is still directed to look to state law, for this court, Wisconsin, for procedures on how to execute on a judgment. *See Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 834-35 (1988) (holding that state

---

testimony and banking records for which counsel for Alliance defendants' attests to the authenticity of these documents. Most notably, Fenkell does not describe what support is missing from the motion, nor offer any materially conflicting evidence.

methods for collecting money judgments against employee welfare benefit plans govern since ERISA provides no mechanism for that purpose).[3]

Despite having received permission to register the judgment in other jurisdictions, however, the Alliance defendants still have not sought a writ of execution in this court or, as far as the court can tell, any other court. Interestingly, once the judgment has been registered in a district court in another state, then the law of the state where the judgment was registered applies. *See Pac. Reinsurance Mgmt. Corp. v. Fabe*, 929 F2d 1215, 1219 (7th Cir. 1991) (looking to Illinois law to enforce Central District of California judgment registered in Northern District of Illinois court).

As for the Alliance defendants' request for a contempt order, there is some precedent for enforcing an order compelling delivery of assets through a contempt order. In *Laborers' Pension Fund v. Dirty Work Unlimited, Inc.*, 919 F.2d 1215 (7th Cir. 1990), the Seventh Circuit rejected the debtor's argument that "the court should not have used contempt to enforce its order. *Id*. at 1219. At the same time, however, the Seventh Circuit held "that, according to Rule 69(a) of the Federal Rules of Civil Procedure, a writ of execution would have been the proper means of enforcement." *Id*. In so holding, as required by Rule 69(a), the court also looked to Illinois law for support of using contempt as a means of enforcement of a court order compelling the delivery of assets.

---

[3] While the requirement to look to state law is clear enough, the Seventh Circuit has provided some leeway:  "We endeavor to provide the same procedural rights and processes that the parties would enjoy in Illinois state court here in federal court; however, we need not apply every jot and tittle of Illinois procedural law." *GE Betz Inc. v. Zee Co.*, 718 F.3d 615, 626-67 (7th Cir. 2013).

Here, the Alliance defendants do not direct the court to any provisions of Wisconsin law that authorizes the use of a contempt order to enforce its judgment. Moreover, Wisconsin Statute § 815.02 states that:

> A judgment which requires the payment of money or the delivery of property may be enforced in those respects by execution. Where it requires the performance of any other act[,]a certified copy of the judgment may be served upon the party, person or officer who is required to obey the same, and if he or she refuse[s] he or she may be punished for contempt, and his or her obedience enforced.

Still, plaintiffs' claims against Fenkell and the other defendants are equitable claims under 29 U.S.C. §§ 404, 406, and the remedies afforded the plaintiffs similarly are equitable in nature. (*See* 7/24/12 Op. & Order (dkt. #733 (finding Fenkell violated 29 U.S.C. §§ 404(a), 406(b)); 6/4/13 Op. & Order (dkt. #790 (granting equitable relief to plaintiffs against Fenkell under 29 U.S.C. § 1109(a)).) Accordingly, the court's order that Fenkell "is liable to restore to the Alliance ESOP $2,044,014.12" and that he "shall indemnify" the trustee defendants arguably require Fenkell to perform specific "acts." As such, Wisconsin law may provide a mechanism for the court to enforce the judgment by means of a contempt order. [4]

In the alternative, Federal Rule of Civil Procedure separately provides that if a judgment "requires a party . . . to perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done" and hold the "disobedient party in contempt" for failing to do so.

---

[4] In a cursory review of Wisconsin cases, it looks like contempt orders are only routinely used in the family law context to enforce divorce judgments. *See* Wis. Stat. § 767.77.

Much of Fenkell's opposition concerns whether the Alliance defendants have a right to satisfy the judgment from assets held solely in Mrs. Fenkell's name, including an extensive overview of Pennsylvania marital asset law. Without diving into the specifics of this argument, Fenkell's position appears to be that all marital assets are "entireties property" under Pennsylvania law, and entireties property cannot be used to execute on a judgment against only one of the spouses. (Fenkell's Opp'n (dkt. #1081) 42-43.) If this description of the law is accurate, the court is hard-pressed to see how a judgment creditor could collect on *any* monetary judgment against any married individual in Pennsylvania. Regardless, the court need not delve into this dispute since the Alliance defendants represent that Fenkell has sufficient assets in his own name to satisfy the judgment order requiring him to restore over $2 million to the Alliance ESOP. (Alliance Defs.' Br. (dkt. #1066) 31.) Moreover, Fenkell has had more than ample time to restore the $2.044 million to the Alliance ESOP as ordered in this court's final judgment. Nevertheless, the court will give Fenkell one more week to comply with its judgment. Barring that the court will hold a hearing on September 10, 2015, at 10:00 a.m., at which time Mr. Fenkell shall appear in person and show cause why he should not be held in civil contempt.

As for the second request -- that the court freeze Fenkell and his wife's assets and establish a constructive trust for the purposes of satisfying the judgment order requiring Fenkell to indemnify the Trachte trustees -- the Alliance defendants' motion falls short of demonstrating that they have standing to pursue this request at this time. Indeed, in their own motion, the Alliance defendants state that the duty to indemnify a portion of

the judgment is "now possessed by plaintiffs," and will pass to Alliance "in the event the Seventh Circuit affirms this Court's approval of the settlement agreement in this case." (Alliance Defs.' Br. (dkt. #1066) 8, n.1.)  While the Alliance defendants direct the court to authority for such an order, *see Resolution Trust Corp. v. Ruggerio*, 994 F.2d 1221, (7th Cir. 1993) (affirming district court's order granting judgment creditors' petition to impose trust on assets held nominally in the debtor's wife's name), given the conditional character of this portion of the judgment (by the Alliance defendants' own characterization), the court doubts that it has the authority to issue the order sought, at least at this time.  Absent either authority more clearly on point with the circumstances at stake here or clarity as to the status of this portion of the judgment, the court will deny this portion of the motion at this time.  Given the amount at stake here, and pending the submission of legal authority on this point or clarity as to the status of the Alliance defendants' current right to indemnity, the court will deny further relief as to this portion of the motion.

## ORDER

IT IS ORDERED that in response to Alliance Holdings, Inc., and Alliance Holdings, Inc., Employee Stock Option Plan's motion for a temporary restraining order that on or before September 4, 2015, defendant Fenkell is ordered to RESTORE to the Alliance ESOP $2,044,014.42.  Barring that, the court will hold a hearing on September 10, 2015, at 10:00 a.m., at which David Fenkell is ordered to appear in person to show

cause why he should not be held in civil contempt of this court's final judgment.  In all other respects, the motion is DENIED without prejudice.

Entered this 27th day of August, 2015.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge