IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CAROL CHESEMORE, DANIEL
DONKEL, THOMAS GIECK, MARTIN
ROBBINS, and NANETTE STOFLET, on
behalf of themselves, individually, and on
behalf of all others similarly situated,

                Plaintiffs,

  v.

ALLIANCE HOLDINGS, INC., DAVID B.
FENKELL, PAMELA KLUTE, JAMES
MASTRANGELO, STEPHEN W. PAGELOW,
JEFFREY A. SEEFELDT, TRACHTE
BUILDING SYSTEMS, INC. EMPLOYEE
STOCK OPTION PLAN, ALLIANCE HOLDINGS,
INC. EMPLOYEE STOCK OPTION PLAN,
A.H.I., INC., ALPHA INVESTMENT
CONSULTING GROUP, LLC, JOHN MICHAEL
MAIER, AH TRANSITION CORPORATION, and
KAREN FENKELL,

                Defendants;

PAMELA KLUTE, JAMES MASTRANGELO,
and JEFFREY A. SEEFELDT,

                Cross Claimants,

  v.

ALLIANCE HOLDINGS, INC., and STEPHEN W.
PAGELOW,

                Cross Defendants.

OPINION AND ORDER

09-cv-413-wmc

---

On September 10, 2015, the court held a hearing to determine whether it should hold defendant David Fenkell in contempt for his failure to comply with an order requiring him to restore the sum of $2,044,014.42 to the Alliance ESOP, an amount representing the remaining shortfall to certain of its beneficiaries as the result of fiduciary

breaches principally orchestrated and perpetuated by defendant David Fenkell. Fenkell appeared in person and by his counsel. For the reasons described during the hearing and set forth below, the court will hold Fenkell in civil contempt. If Fenkell fails to restore the required funds or post an appropriate bond on or before December 9, 2015, *or* fails to post bond to assure its payment pending appeal, he shall pay a fine to the clerk of court for the Western District of Wisconsin of $500 *per day* and doubling every seven days thereafter until he is in full compliance. Should the aggregate of those fines exceed $1 million, the court will further order Fenkell to appear to show cause why he should not be held in custody until in full compliance with this order.

BACKGROUND

On September 8, 2014, the court issued a final, amended judgment providing, in pertinent part that: "David Fenkell is liable to restore to the Alliance ESOP $2,044,014.42. (9/8/14 Judgment (dkt. #986); 10/17/14 Am. Judgment (dkt. #999); 9/5/14 Op. & Order (dkt. #985) 21-23 (reducing amount required of defendant Fenkell to restore money wrongfully taken from the ESOP after payment of $7,744,000 made by other defendants found to be jointly and severally liable and amending attorney's fees award).) After almost a full year had passed with no apparent effort by Fenkell to comply, the court ordered Fenkell on August 28, 2015, to restore these funds on or before September 4, 2015, or appear in person to show cause why he should not be held in civil contempt of this court's judgment. (Dkt. #1087 at 9-10.) Still refusing to restore these funds, counsel for Fenkell instead filed a motion for reconsideration and a response to the court's August 28 order, making several arguments in opposition to the

court's order and in anticipation of the contempt hearing. (Dkt. #1090.) In response to the Alliance defendants' opposition to Fenkell's motion for reconsideration (dkt. #1097), Fenkell requested leave to file a reply at the September 10 hearing, which the court granted. Fenkell subsequently filed a reply (dkt. #1107), which the court has also considered.

OPINION

The court will address defendant Fenkell's various arguments as follows: (1) jurisdictional issues; (2) the court's contempt power; (3) the relevance of claimed state exemptions from execution of certain assets; and (4) Fenkell's ability to pay.

I. Jurisdictional Challenge

Fenkell's most novel argument is that by setting a final date for Fenkell to comply with the court's equitable judgment (or risk contempt), this court effectively amended its final judgment, something beyond its jurisdiction to do while an appeal is pending in the Seventh Circuit. In setting a date for compliance with certain provisions of the judgment, however, the court is not amending the judgment. The original judgment was entered more than a year ago; the amended judgment, which contains largely immaterial changes to the issues presented here, was entered shortly thereafter, on October 31, 2014, now more than a year ago as well. As a result, Fenkell has had over a year to comply with the requirement that he restore losses to Alliance ESOP and has wholly failed to do so. Absent a stay, "all orders and judgments of courts must be complied with promptly." *Maness v. Meyers*, 419 U.S. 449, 458 (1975). By setting a deadline for

3

compliance, in response to specific requests of the Alliance defendants and now plaintiffs, the court is simply acting to enforce its judgment, not amending it.

While Fenkell also appears to argue more generally that this is a "closed case," and therefore this court lacks jurisdiction to enforce its judgment, the law is to the contrary. *See, e.g., HSBC Bank USA, N.A. v. Townsend*, 793 F.3d 771, 787 (7th Cir. 2015) ("A court in a civil case routinely retains jurisdiction to enforce its judgment[.]"); *see also Analytical Eng'g, Inc. v. Baldwin Filters, Inc.*, 425 F.3d 443, 451 (7th Cir. 2005) ("Under Rule 70, therefore, a district court may direct a party to complete a specific act where the district court previously directed the same party to perform the same act in its final judgment and that party has failed to comply."). If this were not so, there would be no point to seeking a stay of enforcement pending appeal or seeking a bond be posted in lieu of enforcement as contemplated by Federal Rule of Civil Procedure 62, both steps defendant Fenkell has assiduously avoided in favor of a strategy of asset preservation techniques to keep his and his wife's judgment creditors at bay.

## II. Court's Contempt Power

Fenkell also argues that the court lacks authority to hold Fenkell in contempt, reasoning that the only enforcement tool available to his judgement creditors is to execute on his non-exempt assets, something he explains are now non-existent by virtue of legitimate asset transfers consistent with property and bankruptcy laws. In support of this argument, Fenkell relies on the fact that the relevant provision of the judgment only requires that he "restore" money to the Alliance ESOP, which he likens to a judgment under Wisconsin law that "requires the payment of money," as opposed to a judgment

that "requires the performance of any other act." (Fenkell's Opp'n (dkt. #1095) 33 (quoting Wis. Stat. § 815.02).)

The court already addressed this statutory language once in its August 28 opinion and order, concluding that the relevant remedy of restoration afforded to plaintiffs in the judgment was equitable in nature, rather than merely a money judgment. (8/28/15 Op. & Order (dkt. #1087) 7.) The United States Supreme Court's decision in *CIGNA Corporation v. Amara*, 563 U.S. 421, 131 S. Ct. 1866 (2011), provides additional support for this conclusion. In *CIGNA*, the Court held that certain remedies properly fell under the "other appropriate equitable relief" contemplated by ERISA § 502(a)(3), including an injunction "requir[ing] the plan administrator to pay to already retired beneficiaries money owed them under the plan as reformed." *Id.* at 1880. In other words, the mere fact that a judgment required payment of money does *not* mean that the relief provided is a legal, as opposed to an equitable remedy.

Here, rather than order the payment of money damages, the court deliberately ordered defendant Fenkell to "restore" certain money wrongfully taken from the Alliance ESOP, equitable relief intended to make the fund whole, without regard to Fenkell's possible monetary liability to other defendants who had stepped forward to restore other sums under their joint and several liability with Fenkell. As the court explained in its August 28 opinion, Federal Rule of Civil Procedure 70 sets forth provisions for enforcing a judgment, and in particular supports this court's authority to find Fenkell in contempt for his failure to restore the funds to the Alliance ESOP. *See* Fed. R. Civ. P. 70(e) ("The court may also hold the disobedient party in contempt."); *Stotler & Co. v. Able*, 870 F.2d

5

1158, 1164 (7th Cir. 1989) ("Rule 70 permits a court to find a party in contempt if he fails to honor a court's order.").[1]

Indeed, there is significant support for use of the court's contempt power to enforce an equitable remedy that requires the payment of money, including in ERISA cases. *See Cent. States, Se. & Sw. Areas Pension Fund v. Wintz Properties, Inc.*, 155 F.3d 868, 876 (7th Cir. 1998) (affirming contempt order against president of company in an ERISA action based on company's failure to comply with preliminary order requiring payment to multiemployer pension fund); *Donovan v. Mazzola*, 716 F.2d 1226, 1239 & n.9 (9th Cir. 1983), *cert. denied*, 464 U.S. 1040 (1984) (contempt appropriate in enforcing order to post a bond under ERISA; "Even if the bond requirement was deemed to be an order to pay money just as an equitable decree of restitution ordering the payment of money may be enforced through a contempt action so may an order requiring a party to post a bond." (internal citations omitted)); *Usery v. Fisher*, 565 F.2d 137, 139 (10th Cir. 1977) (approving district court's use of contempt to enforce order requiring payment of unpaid wages in an FLSA suit, in part, because the consent order was "not a money judgment" and was equitable in nature); *Hodgson v. Hotard*, 436 F.2d 1110, 1113-14 (5th Cir. 1971) (reversing district court's refusal to find defendant in contempt in FLSA action to enforce order requiring payment of wages, finding that district court's decision rested on an erroneous belief that the judgment entered was a money judgment); *Securities & Exchange Comm'n v. Solow*, 682 F. Supp. 2d 1312, 1325-26 (S.D. Fla. 2010)

---

[1] Not surprisingly, on the heels of this court's August 28, 2015, order, plaintiffs filed their own motion to compel enforcement of the provision of the judgment requiring Fenkell to pay attorneys' fees. (Dkt. #1088.) Because the court views the award of attorneys' fees under ERISA more akin to a monetary judgment than the equitable remedy of restitution to the Plan itself, the court will decline to exercise its contempt power to enforce that provision of the judgment.

6

(using equitable powers to hold defendant in contempt for failing to pay money as required by a disgorgement order).

### III. Inability to Comply

Before finding Fenkell in contempt, the Plan must also establish by clear and convincing evidence that (1) the judgment "set forth an unambiguous command"; (2) Fenkell "violated that command"; (3) "the violation was significant, meaning that [Fenkell] did not substantially comply with the order"; and (4) Fenkell "failed to make a reasonable and diligent effort to comply." *Ohr ex rel. Nat'l Labor Relations Bd. v. Latino Exp., Inc.*, 776 F.3d 469, 475 (7th Cir. 2015). For reasons already discussed, the first three elements are unquestionably satisfied. The only element in dispute, therefore, is whether Fenkell cannot comply with the court's order due to an inability to pay the amount due. *See Lightspeed Media Corp. v. Smith*, 761 F.3d 699, 712 (7th Cir. 2014) ("Inability to pay is indeed a valid defense in contempt proceedings[.]") (citing *In re Resource Tech. Corp.*, 624 F.3d 376, 387 (7th Cir. 2010)). Indeed, it is on this element that Fenkell mainly makes his stand. (Fenkell's Resp. (dkt. #1095) 13-14.)

As to this element, *Fenkell* bears the burden of proof. *See In re Resource Tech.*, 624 F.3d at 387. Moreover, "[w]here there has been no effort at even partial compliance with the court's order," as it true here, "the inability-to-pay defense requires a showing of a *complete* inability to pay." *Lightspeed Media Corp.*, 761 F.3d at 712 (citing *In re Resource Tech.*, 624 F.3d at 387) (quotation marks omitted) (emphasis added).

Given that the evidence shows Fenkell was actually taking affirmative steps to put his assets (at least technically) outside the reach of the Plan and other creditors, it is

hardly surprising that Fenkell largely ignores his obligation to show "reasonable and diligent efforts" to restore funds to the Plan. Instead, Fenkell argues that "[t]here has been no showing - and there will not be any showing - that Mr. Fenkell's failure to pay is willful, contemptuous, and not as a result of his inability to pay pursuant to the August 28th Order *with non-exempt assets.*" (*Id.* at 14 (emphasis added); *see also* 9/10/15 Hr'g Tr. (dkt. #1104) 33.)

Fenkell asserts several arguments in support of his claim that all of his assets (save vehicles which are already subject to a writ of execution by plaintiffs) are exempt or otherwise outside of the reach of this court or the judgment creditors. After hearing Fenkell's testimony, the court has no basis to doubt that Fenkell's *belief* that assets titled in his name are non-exempt and assets titled in his wife's name or assets held in tenancy in the entireties are not subject to this court's order, even though it is also clear from his testimony that he *could* use his own assets, and indeed virtually all of the assets now titled solely in his wife's name remain in his control.[2]

Fenkell nevertheless believes that having structured his finances in such a way to avoid execution on those assets, he has no obligation to take affirmative steps to restore funds he wrongfully appropriated from the Plan that would have otherwise benefitted Alliance retirees and others due to retire. The sincerity of his belief does not, however,

---

[2] Fenkell asserts that any control he has over funds in his wife's name is in a fiduciary capacity only, and therefore his use of those funds to discharge his obligations here would constitute a breach of his duty to her. This is incredible on a number of levels. First, Fenkell has not even *asked* her for permission to use the funds for this purpose. Second, if past behavior is any predictor, it is likely, if not a near certainty, that she would freely give it, rather than have her husband incur monetary penalties by using other retirement funds to discharge his equitable obligation. Third, it is doubtful that Fenkell's use of those funds, and even more so millions more in assets held in tenancy by the entities by Fenkell and his wife, would constitute a breach of any duty, particularly since virtually *all* of these funds were earned by David Fenkell during his marriage to Karen Fenkell.

save a meritless legal position. *See McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 190 (1949) ("Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance. Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act. An act does not cease to be a violation of a law and of a decree merely because it may have been done innocently.").

All of this is to say that Fenkell's repeated position that he cannot comply with the court's order because he lacks non-exempt assets or assets not held in tenancy in the entireties under Pennsylvania law with his wife rests on a *non sequiter*. The court is not being asked to execute on exempt assets, nor for that matter, on any assets at all. Rather, the court is being asked to hold Fenkell in contempt for not acting where he has the ability to do so. Noticeably absent from the legal authority cited by Fenkell's counsel is any case holding that a court's equitable powers to require a party to perform an act (albeit one involving payment of funds) are limited to executing on non-exempt assets for purposes of execution on a monetary judgment. *See, e.g., Usery*, 565 F.2d at 139 (discussing options available in executing on a money judgment as compared to enforcing an equitable remedy).

Regardless, the court is *not* ordering Fenkell to liquidate a specific asset to comply with its order that he restore funds to the Alliance ESOP. Even if certain assets *are* exempt or otherwise unavailable were the Plan seeking to execute on a judgment, these arguments are of no consequence. As such, the court need not consider: whether the retirement account funds held in Fenkell's name are exempt under either Wisconsin and/or Pennsylvania law; whether ERISA's anti-alienation provision is in play; whether

9

the court has jurisdiction over Karen Fenkell or assets titled solely in her name; or whether any assets held in tenancy by the entireties are also exempt from execution. The court need only determine that Fenkell has the ability to comply. Fenkell has wholly failed to meet his burden to show an inability to comply. Indeed, he has not even undertaken to make such a showing, given his position that he need not do so.

Relying on evidence established at trial, as well as the Alliance defendants' brief in support of a motion for temporary restraining order and in supporting materials, and based on Fenkell's own testimony both at trial and post-trial proceedings, the court finds by clear and convincing evidence that: (1) David Fenkell has been the sole source of income (except for a relatively small inheritance from Karen Fenkell's father) for his family since 1988 (Alliance Defs.' Mot. for TRO (dkt. #1066) 14); (2) from 2001 through 2011, Fenkell was paid over $27 million from Alliance Holdings and also made more than $4 million from DBF Consulting, LLC (*id.* at 14); (3) together the Fenkells have approximately $13 million in various accounts, though the vast majority of that money is now held in accounts titled solely in Karen Fenkell's name (*id.* at 14-15, 18-20); (3) David Fenkell exercises significant control over Karen Fenkell's accounts, including regularly authorizing wire transfers from these accounts (*id.* at 26-27);[3] and (4) David Fenkell has retirement accounts titled in his own name (*id.* at 15).

At the hearing, Fenkell's testimony and certain financial evidence further support the court's finding that Fenkell has sufficient assets under his control to either restore

---

[3] Of particular note, David Fenkell authorized approximately $2.5 million in wire transfers from his wife's Barclays account to the law firm of Jackson Lewis from December 2013 to November 2014 -- his principal counsel on the merits of this lawsuit against him. (Alliance Defs.' Mot. for TRO (dkt. #1066) 26-27.)

$2,044,014.42 to the Alliance ESOP or to post a bond in that amount.[4]  Specifically, the evidence demonstrates that:  (1) there are approximately $10 million in funds held in Barclays accounts in his wife's name or held in tenancy in the entireties with his wife (Exs. 2-4, 6 (dkt. ##1103-2, 1103-3, 1103-4, 1103-6)); (2) David Fenkell has check-writing authority over those funds (dkt. ##1073-1 at p.2, 1073-10); and (3) Fenkell has retirement account funds in his own name exceeding $1,700,000 (Exs. 5, 7, 8 (valuing Spencer Phantom Stock at $600,000) (dkt. ##1103-5, 1103-7, 1103-8)).

From all of this evidence, the court concludes that there are many sources of funds and avenues of compliance available to Fenkell.  In no particular order, he may:

- pledge his own, his wife's or a portion of their combined assets to post a bond in the amount of $2,044,014.42 or to obtain a loan in that same sum;
- liquidate his retirement accounts; or
- agree with his wife to liquidate either assets titled in her name or other substantial assets held by them in tenancy by the entireties.

How he wishes to comply is a decision that remains in David Fenkell's hands.  As such, he holds the proverbial keys to an ultimate jail cell.  *See In re Grand Jury Proceedings*, 280 F.3d 1103, 1107 (7th Cir. 2002) ("If the contemnor retains the ability to purge the contempt and obtain his release by committing an affirmative act—and thereby 'carries the keys of his prison in his own pocket,' *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 442 (1911) -- the order is coercive, and therefore civil.").

---

[4] If Fenkell is willing to pledge his unencumbered interest in the Alliance ESOP to restore funds in a manner that is legally binding, which the Alliance defendants represented to be worth roughly $575,000 at the hearing, then he may post a bond reduced by the value of his Alliance ESOP. (*See* 9/10/15 Hr'g Tr. (dkt. #1104) 92.)

ORDER

IT IS ORDERED that:

1) Defendant David Fenkell's motion for reconsideration (dkt. #1090) is DENIED.

2) Fenkell is ordered to restore $2,044,014.42 to the Alliance ESOP or provide a bond assuring the payment of this sum pending appeal.

3) If defendant Fenkell fails to restore these funds or post an appropriate bond by December 9, 2015, then he shall pay to the Western District of Wisconsin Clerk of Court a fine of $500 *per day* beginning on December 10, 2015, and doubling every week thereafter, until in full compliance.

4) If the total of these fines should exceed $1 million, then defendant Fenkell is ordered to appear before this court in Madison, Wisconsin, to show cause why he should not be held in custody until in full compliance.

5) Any fines received from Fenkell by the Clerk of Court shall be remitted to plaintiffs to offset unpaid damages, fees and costs as periodically directed by the court.

Entered this 18th day of November, 2015.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge